Erin Rae Espinosa v.
Charles L. Ryan, Director of the Arizona Department of Corrections
and
The Attorney General of the State of Arizona


Case No.


Appendix Exhibit "K" to
Petition for a Writ of Habeas Corpus
Under 28 U.S.C. § 2254 by a Person in State Custody
(Non-Death Penalty)



SCOTT BALES
CHIEF JUSTICE

JANET JOHNSON
CLERK OF THE COURT

# Supreme Court

STATE OF ARIZONA
ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007-3231

TELEPHONE: (602) 452-3396

September 22, 2015

**RE:  ESPINOSA v HON. RICHTER/STATE ex rel. MONTGOMERY**
      Arizona Supreme Court No. CV-15-0073-PR
      Court of Appeals, Division One No. 1 CA-SA 15-0047
      Maricopa County Superior Court No. CR2014-006004-001

GREETINGS:

The following action was taken by the Supreme Court of the State
of Arizona on September 22, 2015, in regard to the above-
referenced cause:

**ORDERED: Petition for Review of a Special Action Decision of the
Court of Appeals = DENIED.**

Janet Johnson, Clerk

TO:
Richard D Coffinger
Virginia L Richter
Diane Meloche
Ruth Willingham
adc



**Court of Appeals**

RUTH WILLINGHAM
CLERK OF THE COURT

STATE OF ARIZONA
DIVISION ONE
STATE COURTS BUILDING
1501 WEST WASHINGTON STREET
PHOENIX ARIZONA 85007

Phone (602) 542-4821
Fax   (602) 542-4833



DIVISION ONE
FILED: 10/13/2015
RUTH A. WILLINGHAM,
CLERK
BY: DN

October 13, 2015

Michael K Jeanes, Clerk
Maricopa County Superior Court
201 West Jefferson Street
Phoenix, Arizona  85003

Dear Mr. Jeanes:

RE:  1 CA-SA 15-0047

ESPINOSA v. HON RICHTER/STATE
Maricopa County Superior Court
CR2014-006004-001

Certified copy of ORDER declining jurisdiction of special action is
included herewith in the above entitled and numbered cause.

There are no physical record items to be returned to your Court.

*Any electronically filed materials will be retained by the Court of
Appeals.*

RUTH WILLINGHAM, CLERK

By____dtn_____
            Deputy Clerk

Enclosures (as noted)
c:
Richard D Coffinger
Richard D Coffinger
Diane Meloche
Diane Meloche
Hon Virginia L Richter, Commissioner
Hon Virginia L Richter, Commissioner
Hon Virginia L Richter, Commissioner

IN THE

# Court of Appeals

STATE OF ARIZONA
DIVISION ONE



DIVISION ONE
FILED: 2/27/2015
RUTH A. WILLINGHAM,
CLERK
BY: RB

| | |
|---|---|
| ERIN RAE ESPINOSA, | Court of Appeals |
| Petitioner, | Division One |
| | No. 1 CA-SA 15-0047 |
| v. | |
| | Maricopa County |
| | Superior Court |
| THE HONORABLE VIRGINIA RICHTER, | No. CR2014-006004-001 |
| Commissioner of the SUPERIOR | |
| COURT OF THE STATE OF ARIZONA, | |
| in and for the County of | |
| MARICOPA, | |
| | |
| Respondent Commissioner, | |
| | |
| STATE OF ARIZONA ex rel. WILLIAM | |
| G. MONTGOMERY, Maricopa County | |
| Attorney, | |
| | |
| Real Party in Interest. | |

## ORDER DECLINING SPECIAL ACTION JURISDICTION

The court, Presiding Judge Margaret H. Downie, and Judges Patricia K. Norris and Randall M. Howe participating, has considered the petition for special action filed by the petitioner.

**IT IS ORDERED** that the Court of Appeals, in the exercise of its discretion, declines to accept jurisdiction in this special action.

**IT IS FURTHER ORDERED** vacating this Court's previous order requiring the filing and service of a response.

/s/
_____
MARGARET DOWNIE, Presiding Judge

To:
Richard D Coffinger
Richard D Coffinger
Diane Meloche
Diane Meloche
Hon Virginia L Richter
Hon Virginia L Richter
Hon Virginia L Richter
Michael K Jeanes

The foregoing instrument is a full, true and correct
copy of the original on file in this office.
ATTEST_____10/28/2015_____
RUTH WILLINGHAM, CLERK OF THE COURT
of Division One Court of Appeals,
State of Arizona
BY_____Donna Nance_____

| ATTACHMENT COVER PAGE | (ENDORSED) **ELECTRONICALLY FILED** |
|---|---|
| ARIZONA SUPREME COURT<br><br>STREET ADDRESS: 1501 W. Washington<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Phoenix, AZ 85007<br>BRANCH NAME: Arizona Supreme Court<br>WEBSITE: www.azcourts.gov/clerkofcourt | **Arizona Supreme Court**<br>on **Mar 04, 2015 4:33 PM MST**<br><br>*CLERK OF THE COURT*<br>*Janet Johnson*<br><br>*By Deputy Clerk:  AC* |
| ATTACHMENT NAME: **Lower Court Case Decision: Decisions of the Court of Appeals and Superior Court** | |
| CASE NAME: **Mrs Erin Rae Espinosa vs. Virginia Richter** | CASE NUMBER:<br><br>CV-15-0073 |
| *Please log on to www.TurboCourt.com regularly for updates* | |

Please staple this to your original attachment

AZturboCourt.gov Form Set #1356697

# IN THE SUPREME COURT

## STATE OF ARIZONA

| | | |
|---|---|---|
| ERIN RAE ESPINOSA, | ) | NO. |
| | ) | |
| | ) | Court of Appeals, Div. 1 |
| Petitioner, | ) | No. 1 CA-SA 15-0047 |
| | ) | |
| vs. | ) | Maricopa County Superior |
| | ) | Court |
| MARICOPA COUNTY SUPERIOR | ) | No. CR2014-006004-001 DT |
| COURT; and the HON. VIRGINIA | ) | |
| RICHTER, Commissioner, and; | ) | |
| | ) | |
| STATE OF ARIZONA, ex rel. | ) | DECISIONS OF THE |
| WILLIAM G. MONTGOMERY, | ) | COURT OF APPEALS AND |
| Maricopa County Attorney, real party | ) | SUPERIOR COURT |
| in interest, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

RICHARD D. COFFINGER
Attorney at Law
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID #03040
623-937-9214
623-937-7072 (fax)
r.coffinger@gmail.com
Attorney for Petitioner

IN THE

# Court of Appeals
STATE OF ARIZONA
DIVISION ONE

DIVISION ONE
FILED: 2/27/2015
RUTH A. WILLINGHAM,
CLERK
BY: RB

```
ERIN RAE ESPINOSA,              )  Court of Appeals
                                )  Division One
                Petitioner,     )  No. 1 CA-SA 15-0047
                                )
        v.                      )  Maricopa County
                                )  Superior Court
THE HONORABLE VIRGINIA RICHTER, )  No. CR2014-006004-001
Commissioner of the SUPERIOR    )
COURT OF THE STATE OF ARIZONA,  )
in and for the County of        )
MARICOPA,                       )
                                )
        Respondent Commissioner,)
                                )
STATE OF ARIZONA ex rel. WILLIAM)
G. MONTGOMERY, Maricopa County  )
Attorney,                       )
                                )
        Real Party in Interest. )
                                )
```

### ORDER DECLINING SPECIAL ACTION JURISDICTION

The court, Presiding Judge Margaret H. Downie, and Judges Patricia K. Norris and Randall M. Howe participating, has considered the petition for special action filed by the petitioner.

**IT IS ORDERED** that the Court of Appeals, in the exercise of its discretion, declines to accept jurisdiction in this special action.

**IT IS FURTHER ORDERED** vacating this Court's previous order requiring the filing and service of a response.

/s/
_____
MARGARET DOWNIE, Presiding Judge

To:
Richard D Coffinger
Richard D Coffinger
Diane Meloche
Diane Meloche
Hon Virginia L Richter
Hon Virginia L Richter
Hon Virginia L Richter
Michael K Jeanes

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
02/25/2015 8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CR2014-006004-001 DT

COMMISSIONER VIRGINIA L. RICHTER

01/23/2015
CLERK OF THE COURT
D. Van Hoorn
Deputy

STATE OF ARIZONA                    RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)             RICHARD D COFFINGER

### RUILING [sic][RULING]

This Court has considered the defendant's Motion to Dismiss, the State's Response, the defendant's Reply and the oral arguments of counsel. The Motion is denied. Retrial is not barred when a mistrial is declared because of manifest necessity. *State v. Givens,* 161 Ariz.278,279, 778P.2d 643,644 (App. 1989).

When the defendant testified, under direct and cross-examination, without objection, she essentially denied that she "knew" her license was revoked because she relied on her attorney's advice that she was able to drive once she obtained her SIIRDL license. By testifying to her reliance upon her attorney's advice she waived her attorney client privilege. *State Farm Mut. Auto. Ins. Co. v. Lee,* 199 Ariz. 52,62, 13 P.3d. 1169,1179 (2000), for the privilege cannot be used as both a sword and a shield. *Accomazzo v. Kemp,* 234 Ariz. 169, 176-177, 319 P.3d 231, 236-237 (App. 2014). Through her testimony, the defendant placed her attorney's advice in issue and created the need for the State to call Mr. Coffinger as a witness, to address the essential element of knowledge. Mr. Coffinger clearly cannot act as both attorney and witness. Thus the Court was left with no alternative but to declare a mistrial.

Manifest necessity does not mean absolute necessity. *Givens* at 282, 647. The defendant's testimony occurred at the close of trial on January 9, 2015. Before reconvening trial on January 12, 2015, the Court addressed its concerns with counsel in chambers. No objections were raised and no alternatives were offered. Before the jury was dismissed the Court's decision was explained to the defendant and she was given an opportunity to be heard. The trial could not proceed with Mr. Coffinger as both her witness and her attorney. The only alternative available, to preserve the defendant's right to an impartial jury, was to declare a mistrial.

| ATTACHMENT COVER PAGE | (ENDORSED) **ELECTRONICALLY FILED** |
|---|---|
| ARIZONA SUPREME COURT<br><br>STREET ADDRESS: 1501 W. Washington<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Phoenix, AZ 85007<br>BRANCH NAME: Arizona Supreme Court<br>WEBSITE: www.azcourts.gov/clerkofcourt | Arizona Supreme Court<br>on **Mar 04, 2015 4:33 PM MST**<br><br>*CLERK OF THE COURT*<br>*Janet Johnson*<br><br>*By Deputy Clerk:*  AC |
| ATTACHMENT NAME: **PETITION - Petition for Review to Arizona Supreme Court: Petition for Review of a Special Action Decision of the Court of Appeals** | |
| CASE NAME: **Mrs Erin Rae Espinosa vs. Virginia Richter** | CASE NUMBER:<br><br>CV-15-0073 |
| Please log on to www.TurboCourt.com regularly for updates | |

Please staple this to your original attachment

AZturboCourt.gov Form Set #1358697

| ATTACHMENT COVER PAGE | (ENDORSED) **ELECTRONICALLY FILED** |
|---|---|
| ARIZONA SUPREME COURT<br><br>STREET ADDRESS:1501 W. Washington<br><br>MAILING ADDRESS:<br><br>CITY AND ZIP CODE: Phoenix, AZ 85007<br><br>BRANCH NAME:Arizona Supreme Court<br><br>WEBSITE:www.azcourts.gov/clerkofcourt | **Arizona Supreme Court**<br>on **Mar 04, 2015 4:33 PM MST**<br><br>*CLERK OF THE COURT*<br>*Janet Johnson*<br><br>*By Deputy Clerk:*  AC |
| ATTACHMENT NAME:  **Certificate of Service: Petitioner's Certificate of Service** | |
| CASE NAME:  **Mrs Erin Rae Espinosa vs. Virginia Richter** | CASE NUMBER:<br><br>CV-15-0073 |
| Please log on to www.TurboCourt.com regularly for updates | |

Please staple this to your original attachment

AZTurboCourt.gov Form Set #1358697

1   RICHARD D. COFFINGER
    ATTORNEY AT LAW
2   6838 N. 58TH DRIVE
    GLENDALE, AZ 85301
3   STATE BAR ID #03040
    623-937-9214
4   623-937-7072 (FAX)
    r.coffinger@gmail.com (email)
5

6
                    **IN THE SUPREME COURT**
7
                    **STATE OF ARIZONA**
8
    **ERIN RAE ESPINOSA,**              )   NO.
9                                       )
                                        )   Court of Appeals, Div. 1
10                     Petitioner,      )   No. 1 CA-SA 15-0047
                                        )
11        vs.                           )   Maricopa County Superior
                                        )   Court
12  **MARICOPA COUNTY SUPERIOR**        )   No. CR2014-006004-001 DT
    **COURT; and the HON. VIRGINIA**    )
13  **RICHTER, Commissioner, and;**     )   **PETITIONER'S**
                                        )   **CERTIFICATE OF**
14  **STATE OF ARIZONA, ex rel.**       )   **SERVICE**
    **WILLIAM G. MONTGOMERY,**          )
15  **Maricopa County Attorney, real party** )
    **in interest,**                    )
16                                      )
                       Respondents.     )
17  _____ )

18        I hereby certify that on March 4, 2015, I electronically filed Petitioner's

19  Petition for Review of a Special Action Decision of the Court of Appeals, and

20  Certificate of Compliance with the Clerk of the Supreme Court, by using the

21  AZTurboCourt e-filing system.

22        A copy of this Petition and Certificate of Compliance were emailed this date

23  to Diane Meloche, Maricopa County Attorney's Office, Bureau Chief, 301 W.

24  Jefferson, Second Floor, Phoenix, AZ 85003; and Deputy County Attorney Richard

25  Serden, Maricopa County Attorney's Office, 301 W. Jefferson, Ste. 600, Phoenix, AZ

26  85003, Attorneys for Appellee.

27  ///

28  ///

RESPECTFULLY SUBMITTED this 4th day of March, 2015.

RICHARD D. COFFINGER
State Bar ID 003040
Attorney for Petitioner

2

| ATTACHMENT COVER PAGE | (ENDORSED) **ELECTRONICALLY FILED** |
|---|---|
| **ARIZONA SUPREME COURT**<br><br>STREET ADDRESS:1501 W. Washington<br><br>MAILING ADDRESS:<br><br>CITY AND ZIP CODE: Phoenix, AZ 85007<br><br>BRANCH NAME:Arizona Supreme Court<br><br>WEBSITE:www.azcourts.gov/clerkofcourt | **Arizona Supreme Court** on **Mar 04, 2015 4:33 PM MST**<br><br>*CLERK OF THE COURT*<br>*Janet Johnson*<br><br>*By Deputy Clerk:* *AC* |
| ATTACHMENT NAME: **Certificate of Compliance: Petitioner's Certificate of Compliance** | |
| CASE NAME: **Mrs Erin Rae Espinosa vs. Virginia Richter** | CASE NUMBER:<br>**CV-15-0073** |
| **Please log on to www.TurboCourt.com regularly for updates** | |

**Please staple this to your original attachment**

AZTurboCourt.gov Form Set #138697

1  RICHARD D. COFFINGER
   Attorney at Law
2  6838 N. 58th Drive
   Glendale, AZ 85301
3  State Bar ID #03040
   623-937-9214
4  623-937-7072 (fax)
   r.coffinger@gmail.com
5
   Attorney for Petitioner
6

7              **IN THE SUPREME COURT**

8              **STATE OF ARIZONA**

9  **ERIN RAE ESPINOSA,**                    )    NO.
                                             )
10                                           )    Court of Appeals, Div. 1
                      Petitioner,            )    No. 1 CA-SA 15-0047
11                                           )
              vs.                            )    Maricopa County Superior
12                                           )    Court
   **MARICOPA COUNTY SUPERIOR**             )    No. CR2014-006004-001 DT
13 **COURT; and the HON. VIRGINIA**         )
   **RICHTER, Commissioner, and;**          )    **PETITIONER'S**
14                                           )    **CERTIFICATE OF**
   **STATE OF ARIZONA, ex rel.**            )    **COMPLIANCE**
15 **WILLIAM G. MONTGOMERY,**               )
   **Maricopa County Attorney, real party** )
16 **in interest,**                          )
                                             )
17                    Respondents.           )
                                             )
18  ─────────────────────────────────────────)

19        Pursuant to Ariz. R. Crim. P. 31.13(b)(2), undersigned counsels certify that

20  Petitioners' Petition for Review of a Special Action Decision of the Court of Appeals

21  uses proportionally spaced type of 14 points or more, is double spaced using a roman

22  font, and contains approximately 3472 words.

23        RESPECTFULLY SUBMITTED this 4th day of March, 2015.

24

25

26  RICHARD D. COFFINGER
    Bar ID 003040
27  Attorney for Petitioner

28

 

you are working with

Timeout in 30 min | User: **rcoffinger**    Home    Your Profile

 

# Your Payment was Successful

| | | | |
|---|---|---|---|
| **Form Set** | 1358697 | **Case #** | |
| **Keyword/Matter #** | | **Status** | Delivered |
| **Service** | e-File | **Payment Amount** | $ 286.00 |
| **Filing Type** | Appellate Courts Filings | **Location** | Arizona Supreme Court - Arizona Suprem |

Payment Transaction # **88740834400214022**

VIEW PAYMENT RECEIPT    VIEW FORM SET

# IN THE SUPREME COURT

## STATE OF ARIZONA

| | | |
|---|---|---|
| **ERIN RAE ESPINOSA,** | ) | NO. |
| | ) | |
| | ) | Court of Appeals, Div. 1 |
| Petitioner, | ) | No. 1 CA-SA 15-0047 |
| | ) | |
| vs. | ) | Maricopa County Superior |
| | ) | Court |
| **MARICOPA COUNTY SUPERIOR** | ) | No. CR2014-006004-001 DT |
| **COURT; and the HON. VIRGINIA** | ) | |
| **RICHTER, Commissioner, and;** | ) | |
| | ) | **PETITION FOR REVIEW** |
| **STATE OF ARIZONA, ex rel.** | ) | **OF A SPECIAL ACTION** |
| **WILLIAM G. MONTGOMERY,** | ) | **DECISION OF THE** |
| **Maricopa County Attorney, real party** | ) | **COURT OF APPEALS** |
| **in interest,** | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

RICHARD D. COFFINGER
Attorney at Law
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID #03040
623-937-9214
623-937-7072 (fax)
r.coffinger@gmail.com
Attorney for Petitioner

Petitioner, ERIN RAE ESPINSOA, by and through undersigned counsel, petitions the Supreme Court to review the February 27, 2015 order of Division 1 of the Court of Appeals, which declined special action jurisdiction. This court has jurisdiction pursuant to Art. 6, §5 of the Arizona Constitution, A.R.S. §12-102, Rule 8(b) and ( c), Ariz.R.Pro.Spec.Act., and Rules 22 and 23, R. Civ. App. Pro. A petition for special action is the appropriate vehicle for obtaining appellate review of an interlocutory double jeopardy claim. *Nalbandian v. Superior Court (Corbin, RPI)*, 163 Ariz. 126, 130, 786 P.2d 977 (App. Div. 1 1989).

A.  Issues Presented for Review, But Not Decided by the Court of Appeals

1.  Does the double jeopardy prohibition, guaranteed in Art. 2, Sect. 10 of the Arizona Constitution bar petitioner's retrial because Respondent Comm. Richter's *sua sponte* mistrial declaration was without petitioner's consent and without a manifest necessity?

2.  Was Respondent Comm. Richter's order conditionally disqualifying petitioner's defense counsel from representing her during the retrial, an abuse of discretion or arbitrary and capricious?

3.  Was Respondent Comm. Richter's order denying petitioner's motion to strike Respondent RPI's sentence enhancement allegation that she committed the offense while she was released from confinement on felony probation, an abuse of discretion, or arbitrary and capricious?

1

4. Was Respondent Comm. Richter's order denying petitioner's motion to preclude Respondent RPI's alternative theory that petitioner committed the offense "while a restriction is placed on the person's driver license or privilege to drive", an abuse of discretion, or arbitrary or capricious?

There are no additional issues presented and not decided by the Court of Appeals which may need to be decided if review is granted.

B. <u>Factual and Procedural Discussion</u>

On March 8, 2011, pursuant to A.R.S. §28-1401, et. seq., the Arizona Department of Transportation, Motor Vehicle Division, Driver's License Section (MVD) issued petitioner a Special Ignition Interlock Restricted Driver's License (SIIRDL) that was valid on August 18, 2011.  MVD never gave written notice to petitioner of the SIIRDL destination restrictions provided in A.R.S. §28-1402(A). Pursuant to A.R.S. §28-1401(D), MVD did not delete from its records its three year revocation order of petitioner's driver license and privilege to drive, from October 18, 2010, to October 18, 2013.

On August 18, 2011, Peoria Police Officer Kunde was working a school zone speed enforcement assignment at the West Wing Elementary School.  He conducted a DUI prescription drug investigation of petitioner at the school after the SUV she was driving– which was equipped with a certified ignition interlock device– rolled backwards on an inclined driveway, into another stopped vehicle causing minor

damage.   Petitioner normally walked her two children to and from the school, however, she drove to the school that day to pick them up, because it was a hot summer afternoon, and she wanted to give them a ride home in her SUV that had air conditioning. Petitioner was taking her prescription drug, Clonazepam, that day, as prescribed by her physician who was treating her for clinical anxiety.

The one count information charges that  on August 18, 2011, petitioner committed the offense of Aggravated DUI (impaired) by a prescription drug (clonazapam), while her driver's license or privilege was revoked or "while a restriction is placed on the person's driver license or privilege to drive as a result of violating A.R.S. §28-1381, §28-1382 or under §28-1385", in violation of A.R.S. §28-1383(A)(1), a class 4, non-dangerous, non-repetitive felony.

At petitioner's preliminary hearing, Respondent RPI expressly waived its theory that she committed the offense while her driver's license or privilege was restricted.

Respondent RPI filed an allegation that petitioner committed the offense while released from confinement on probation for her prior class 6 undesignated offenses, that were ultimately designated as class 1 misdemeanors.

On January 7, 2015, Respondent Comm. Richter denied petitioner's motion to strike the State's allegation petitioner committed the offense while released from confinement on probation for a felony offense, and her motion to preclude

3

Respondent RPI from arguing its alternative theory that petitioner committed the

offense while her driver's license or privilege was restricted.

> Petitioner gave the following testimony on direct examination at her jury trial:
>
> Q [By Defense Counsel Mr. Coffinger] How did you become aware that there was even this opportunity to have some kind of restored driving privilege?
> A When -- well when I received the letter [the Corrective Notice form from MVD of its 3 year driver license revocation order]. ... I called Mr. Coffinger, because he's a lawyer, and I asked him what that meant. He said it means you have to apply for a SIIRDL driver's license and once you get your SIIRDL driver's license you can drive.
> Q You did that based upon my telling you about that possibility?
> A Yes. [Emphasis supplied] [RT (1/8/15) p. 15]

Petitioner also testified on direct examination that she never received any written

notice from MVD of any SIIRDL destination restrictions, and that she was unaware

of such restrictions on the date of the alleged offense. On cross-examination, she

testified as follows:

> Q. [by DCA Serden] Did you ask Mr. Coffinger whether there were additional restriction under ARS 28-1402?
> A. No, I didn't.
> Q. Did you think it incumbent upon yourself to go find out what restrictions were under ARS 28-1402?
> A. I'm sorry I didn't. I called Mr. Coffinger and I felt he explained it to me fully.
> Q. Did you ask him–... what ARS 28-1402 says?
> A. I never said anything about ARS. When it says restricted interlock, that tells me you are restricted. You just have to have an interlock.
> [DCA Serden then used a video projector to display on a screen in the jury's view a copy of A.R.S. §28-1402]
> Q. Then it says "only as follows," and without going into this only as follows, there are a bunch of specific restrictives or times and places that

4

you can drive; Correct?

A.  Is that a law book?  Are you suggesting that I was remiss, because I didn't go to a law library?  I called a lawyer, [...] and I asked when I was at the MVD, so because I have this insurance and I have my interlock I can drive now?  She said, yes.  She never gave any[...] you could go here, but not here.  You can go here or– never, never.  I would not have been driving under those circumstances, if that his what they told me or if my lawyer had told me.  I would not have driven the car.

[DCA Serden then projected a copy of petitioner's SIIRDL, which included on the front the notation, "Restricted Interlock A.R.S. 28-1402"]

Q.  Well did you see that right there?

A.  Yes, I did.  But it says "restricted interlock."  I was restricted, because I needed an interlock and then I was fine. "Restricted interlock."

Q.  So you thought the rest of that was just extraneous and had no meaning or affect?

A.  I called and I asked a lawyer what it meant.

Q.  That's not an answer to my question.  My question is did you ignore that part, which clearly gives you notice that this is a restricted license, pursuant to ARS 28-1402? Did you ignore that explicit very clear unequivocal information on the front of your driver's license?

A.  I didn't– I called a lawyer to ask what it meant.  I called a lawyer. Isn't that being proactive enough? [Emphasis supplied] [Reporter's Transcript 1/8/15 pgs. 53, 56, 57]

Out of the presence of the jury, DCA Serden then requested Respondent Comm. Richter to be allowed to call petitioner's defense counsel as a witness, which she denied.

On January 12, 2015, Respondent Comm. Richter informed the parties while the jury was not present, that she was going to order a *sua sponte* mistrial, because she believed petitioner had waived her attorney-client privilege and Respondent RPI was entitled to call petitioner's defense counsel as a witness in rebuttal.  Petitioner

did not consent to the mistrial declaration.

After Respondent Comm. Richter released the 10 trial jurors, both attorneys then spoke off-the-record with them.  The jurors stated that three of them were inclined to return a guilty verdict, and seven of them were inclined to return a not guilty.  Respondent Comm. Richter then addressed petitioner on the record stating:

> Ms. Espinosa, you have two options: Either to continue with Mr. Coffinger as your lawyer and make sure that he does not become a witness in the retrial, or to have him be as a witness and have other counsel represent you in this matter. [Emphasis supplied] [RT 1/12/15 p. 6].

On February 19, 2015, Respondent Comm. Richter denied petitioner's motion to dismiss with prejudice based upon the Arizona Constitution's double jeopardy prohibition.

> D.  Reasons the Petition of Review Should be Granted
>
> 1.  The Double Jeopardy Prohibition, Guaranteed in Art. 2, Sect. 10 of the Arizona Constitution, Bars Petitioner's Retrial Because Respondent Comm. Richter's *Sua Sponte* Mistrial Declaration was Without Petitioner's Consent and Without a Manifest Necessity

In *Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271-2 (1984), recon. den., the Arizona Supreme Court's seminal opinion on the double jeopardy issue, the court stated:

> ...We hold, therefore, that jeopardy attaches under art. 2, § 10 of the Arizona Constitution when a mistrial is granted on motion of defendant or declared by the court under the following conditions:

1. <u>Mistrial is granted because of improper conduct or actions by the prosecutor</u>; and

2. <u>such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows [footnote omitted] to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal</u>; and

3. <u>the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial</u>. [Emphasis supplied]

Each of the three *Pool* requirements were established during petitioner's trial, because:

1. The *sua sponte* mistrial declaration was caused by DCA Serden's improper conduct or actions of requesting to call defense counsel as a State's witness;

2. DCA Serden knew or should have known that his request was not only improper, but also prejudicial, and he pursued this conduct with indifference to a significant resulting danger of a mistrial, or reversal; and,

3. The conduct caused prejudice to petitioner, because of Respondent Comm. Richter's *sua sponte* mistrial declaration.

As in *Pool*, in *McLaughlin v. Fahringer*, 150 Ariz. 274, 723 P.2d 92 (1986), the Arizona Supreme Court again sustained the defendant's interlocutory double jeopardy claim, because the record did not establish a manifest necessity, stating:

...A mistrial negates the defendant's "valued right to have his trial completed by a particular tribunal" [citations omitted]. <u>An improperly declared mistrial is a bar to retrial, provided, however, that it was not declared with the defendant's consent.</u> [citation omitted] ... <u>In instances where the trial court declares a mistrial *sua sponte*, whether the Double Jeopardy Clause permits retrial without the defendant's consent depends on whether there is a manifest necessity for the mistrial or whether the ends of public justice will otherwise be defeated</u> [citations omitted].

<u>....The record in this case does not reveal any circumstances which we believe rise to the level of manifest necessity calling for the declaration of a *sua sponte* mistrial.</u>

<u>The record indicates that the trial court made no real effort to determine whether there were any feasible alternatives to declaring a mistrial. At the very least a short recess should have been pursued in order to determine if the statements in question were admissible and under what theory. Petitioner was without fault as to the quandary the judge found himself in when he had not promptly ruled upon the state's pretrial motions....</u>

*          *          *

<u>No manifest necessity existed for the *sua sponte* declaration of a mistrial.</u> .... [Emphasis supplied] 150 Ariz. at 277-278

In *State v. Aguilar*, 217 Ariz. 235, 172 P.2d 423 (App. Div. 2 2007),  the court reversed the defendant's conviction for the aggravated assault charge, and ordered its dismissal with prejudice, for the double jeopardy violation, stating:

<u>...Because the trial court had feasible alternatives to declaring a mistrial, under the strictest scrutiny, there was no manifest necessity to declare the mistrial.</u> [citation omitted]

*          *          *

<u>We conclude that "along the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny,"</u> *Washington*, 434 U.S. at 510, 98 S.Ct. at 833, <u>the failure of a prosecutor to discover and disclose evidence requires an exacting inquiry. Under such circumstances, we are required to strike the balance in favor of the defendant.</u> [citation omitted]. [Emphasis supplied]

8

A.R.S. §13-4062, provides the attorney-client privilege in criminal cases, stating:

> A person shall not be examined as a witness in the following cases:
>
> \*          \*          \*
>
> (2) An attorney, without consent of the attorney's client, as to any communication made by the client to the attorney, or the attorney's advice given in the course of professional employment.

Respondent Comm. Richter relied upon *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000) for ruling that petitioner had impliedly waived her attorney-client privilege by her direct testimony about the advice she received from her attorney about her SIIRDL.

Petitioner did not cross the line and assert the fourth factor of the attorney-client relationship which *State Farm* held, triggered an implied waiver. Petitioner did not allege her reasonable and good-faith belief that MVD's issuance to her of her SIIRDL allowed her to lawfully drive while her three year driver license revocation remained on her record, ***and*** her subjective belief, based on her investigation into and evaluation of the law, that included information and advice she received from her attorney. *State Farm* holds that this fourth factor is required to establish an implied waiver of the attorney-client privilege.

Petitioner's direct examination testimony consisted of only two questions and answers relating to the advice she received from her defense counsel.

Ariz.Supr.Ct.R. 42 entitled, "Arizona Rules of Professional Conduct," includes

ER 1.6 entitled "Confidentiality of Information," which states in part:

> (a) A lawyer shall not reveal information relating to the representation of a client <u>unless the client gives informed consent</u>....

In *State v. Fodor,* 179 Ariz. 442, 880 P.2d 662 (App. Div. 1 1994), the court recognized that the attorney-client privilege is a separate issue from the attorney's ethical duty to preserve confidential communications with the client, stating:

> ...[A] lawyer's potential ethical conflict has nothing to do with whether a client communication with a lawyer is protected by the attorney-client privilege [A.R.S. §13-4062(2)].  179 Ariz. at 449

2.   <u>Respondent Comm. Richter's Order Conditionally Disqualifying Petitioner's Defense Counsel from Representing Her During the Retrial, was an Abuse of Discretion or Arbitrary and Capricious</u>

In *Cottonwood Estates, Inc. v. Paradise Building, Inc.*, 128 Ariz. 99, 104, 105, 624 P.2d 296, 301, 302 (1981), the Arizona Supreme Court established the requirements for disqualifying an attorney based on opposing counsel's request to call the attorney as witness.  The court held that the ethical prohibition against an attorney representing a client in a case in which the attorney may be as a witness does not apply when the opposing party's attorney requests to call the attorney as a witness. The court held that opposing counsel is required to file a disqualification motion

> ... to prevent opposing counsel from contriving some tactical need for calling the attorney thereby triggering disqualification. .... To call for the disqualification of opposing counsel for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated....

By misusing the advocate-witness prohibition, an attorney might elbow opposing counsel out of the litigation for tactical reasons. .... When an attorney is to be called other than on behalf of his client, a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client.

By requesting Respondent Comm. Richter to allow DCA Serden to call defense counsel as a State's witness to impeach petitioner's testimony, he was engaged in the very tactic which the court stated would not to be tolerated.  It was clearly his effort to elbow opposing counsel out of the litigation.

Disqualification of defense counsel prior to retrial would create an unjust hardship on petitioner due to the financial burden she has incurred from paying him substantial attorney's fees during his representation of her in the five successive DUI prosecutions for the same DUI arrest over 3½ years.  His involuntary removal would also deny petitioner her constitutional right to due process of law by being represented in the criminal case by counsel of her choice. *Pipkins v. Helm*, 132 Ariz. 237, 239, 644 P.2d 1323 (App. Div. 2 1982).

3.  <u>Respondent Comm. Richter's Order Denying Petitioner's Motion to Strike Respondent RPI's Sentence Enhancement Allegation That She Committed the Offense While She Was Released from Confinement on Felony Probation was an Abuse of Discretion, or Arbitrary and Capricious,</u>

Respondent RPI refiled a sentence enhancement allegation, pursuant to A.R.S. §13-708(C), that it had previously filed in one of the prior dismissed prosecutions,

11

that alleged petitioner committed the Aggravated DUI, class 4 felony while released from confinement while she was on probation for a class 6 undesignated felony offense in Maricopa County Superior Court case CR2009-126740-001-DT.

On April 23, 2012, in that case, Maricopa County Superior Court Comm. Phemonia Miller entered an order designating both of those offenses as class 1 misdemeanors. A.R.S. §13-604(A) provides in part, "The offense shall be treated as a felony for all purposes until such time as the court may actually enter an order designating the offense a misdemeanor." [Emphasis supplied] Therefore, Comm. Miller's class 1 misdemeanor designations of petitioner's prior offenses applied retroactively to the date of the entry of judgments of guilt. *State v. Winton*, 153 Ariz. 302, 736 P.2d 386 (App. Div. 1 1987, nor *State v. Martinez*, 172 Ariz. 437, 837 P.2d 1172, rev. den., cert den 113 S.Ct. 1601, 507 U.S. 992, 123 L.Ed.2d 163 (App. Div. 1 1992).

4. Respondent Comm. Richter's Order Denying Petitioner's Motion to Preclude Respondent RPI's Alternative Theory That Petitioner Committed the Offense "While a Restriction Is Placed on the Person's Driver License or Privilege to Drive", was an Abuse of Discretion, or Arbitrary and Capricious

On December 2, 2014, during the preliminary hearing before Comm. James Rummage, DCA Serden expressly waived his second alternative theory, stating:

> And so the State has provided the Court with a preponderance [sic][probable cause] of the evidence that her privilege to drive was revoked on the date of August 18th, 2011....
>
> *        *        *

12

To make the Court's job easier, Your Honor, <u>I'm not reiterating the restricted argument</u>. I'm just stating <u>I'm relying [only] on the revocation argument</u>. [RT (12/22/14) at page 52] [Emphasis supplied]

This concession by DCA Serden was binding on Respondent RPI and limited it thereafter at trial to the single theory of revocation that it ultimately asserted at petitioner's preliminary hearing.

## CONCLUSION

The Supreme Court should grant review of this petition for special action and enter an order directing Respondent Comm. Richter to enter an order dismissing the information with prejudice, and vacating any retrial. In the alternative, with respect to the relief requested, this court should enter an order (1) directing Respondent Comm. Richter to grant petitioner's motion to strike the State's allegation, pursuant to A.R.S. §28-708( C), that petitioner committed the offense while on probation release status for a felony conviction, because the class 6 offenses were designated as class 1 misdemeanor offenses prior to the filing of the criminal case, and (2) directing Respondent Comm. Richter to grant petitioner's motion in *limine* to limit Respondent RPI's theory of the case to aggravated DUI while driver license or privilege revoked, rather than allowing it to argue alternatively, that she committed the offense while her driver license or privilege was restricted, because Respondent RPI expressly waived the latter theory at petitioner's preliminary hearing.

13

RESPECTFULLY SUBMITTED this 4th day of March, 2015.


/s/ Richard D. Coffinger
RICHARD D. COFFINGER
State Bar ID 003040
Attorney for Petitioner

IN THE

# Court of Appeals

STATE OF ARIZONA

DIVISION ONE

DIVISION ONE
FILED: 2/27/2015
RUTH A. WILLINGHAM,
CLERK
BY: RB

| | | |
|---|---|---|
| ERIN RAE ESPINOSA, | ) | Court of Appeals |
| | ) | Division One |
| Petitioner, | ) | No. 1 CA-SA 15-0047 |
| | ) | |
| v. | ) | Maricopa County |
| | ) | Superior Court |
| THE HONORABLE VIRGINIA RICHTER, | ) | No. CR2014-006004-001 |
| Commissioner of the SUPERIOR | ) | |
| COURT OF THE STATE OF ARIZONA, | ) | |
| in and for the County of | ) | |
| MARICOPA, | ) | |
| | ) | |
| Respondent Commissioner, | ) | |
| | ) | |
| STATE OF ARIZONA ex rel. WILLIAM | ) | |
| G. MONTGOMERY, Maricopa County | ) | |
| Attorney, | ) | |
| | ) | |
| Real Party in Interest. | ) | |

## ORDER DECLINING SPECIAL ACTION JURISDICTION

The court, Presiding Judge Margaret H. Downie, and Judges
Patricia K. Norris and Randall M. Howe participating, has considered
the petition for special action filed by the petitioner.

**IT IS ORDERED** that the Court of Appeals, in the exercise of its
discretion, declines to accept jurisdiction in this special action.

**IT IS FURTHER ORDERED** vacating this Court's previous order
requiring the filing and service of a response.

/s/

_____
MARGARET DOWNIE, Presiding Judge

IN THE

# Court of Appeals

STATE OF ARIZONA
DIVISION ONE



DIVISION ONE
FILED: 2/27/2015
RUTH A. WILLINGHAM,
CLERK
BY: RB

ERIN RAE ESPINOSA,

Petitioner,

v.

THE HONORABLE VIRGINIA RICHTER,
Commissioner of the SUPERIOR
COURT OF THE STATE OF ARIZONA,
in and for the County of
MARICOPA,

Respondent Commissioner,

STATE OF ARIZONA ex rel. WILLIAM
G. MONTGOMERY, Maricopa County
Attorney,

Real Party in Interest.

Court of Appeals
Division One
No. 1 CA-SA 15-0047

Maricopa County
Superior Court
No. CR2014-006004-001

15 FEB 27 PM 1: 34
FILED
MICHAEL K. JEANES, CLERK
BY:

## ORDER DECLINING SPECIAL ACTION JURISDICTION

The court, Presiding Judge Margaret H. Downie, and Judges
Patricia K. Norris and Randall M. Howe participating, has considered
the petition for special action filed by the petitioner.

**IT IS ORDERED** that the Court of Appeals, in the exercise of its
discretion, declines to accept jurisdiction in this special action.

**IT IS FURTHER ORDERED** vacating this Court's previous order
requiring the filing and service of a response.

/s/

MARGARET DOWNIE, Presiding Judge

```
To:
Richard D Coffinger
Richard D Coffinger
Diane Meloche
Diane Meloche
Hon Virginia L Richter
Hon Virginia L Richter
Hon Virginia L Richter
Michael K Jeanes
```

RICHARD D. COFFINGER
ATTORNEY AT LAW
6838 N. 58TH DRIVE
GLENDALE, AZ 85301
STATE BAR ID #03040
623-937-9214
623-937-7072 (FAX)
r.coffinger@gmail.com (email)

# IN THE COURT OF APPEALS

## STATE OF ARIZONA

### DIVISION ONE

|  |  |
|---|---|
| ERIN RAE ESPINOSA, | NO. |
| Petitioner, | Maricopa County Superior Court No. CR2014-006004-001 DT |
| vs. | |
| MARICOPA COUNTY SUPERIOR COURT; and the HON. VIRGINIA RICHTER, Commissioner, and; | PETITIONER'S CERTIFICATE OF SERVICE |
| STATE OF ARIZONA, ex rel. WILLIAM G. MONTGOMERY, Maricopa County Attorney, real party in interest, | |
| Respondents. | |

I hereby certify that on February 26, 2015, I electronically filed Petitioner's Petition for Special Action and Certificate of Compliance with the Clerk of the Court of Appeals, Division One, by using the AZTurboCourt e-filing system.

A copy of this Petition and Certificate of Compliance were emailed this date to Diane Meloche, Maricopa County Attorney's Office, Bureau Chief, 301 W. Jefferson, Second Floor, Phoenix, AZ 85003; and Deputy County Attorney Richard Serden, Maricopa County Attorney's Office, 301 W. Jefferson, Ste. 600, Phoenix, AZ 85003, Attorneys for Appellee.

///

///

1   RESPECTFULLY SUBMITTED this 26th day of February, 2015.

2

3                                     RICHARD D. COFFINGER
                                      State Bar ID 003040
4                                     Attorney for Petitioner

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| ATTACHMENT COVER PAGE | (ENDORSED)<br>**ELECTRONICALLY FILED** |
|---|---|
| COURT OF APPEALS DIVISION 1<br><br>STREET ADDRESS: 1501 West Washington<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Phoenix, AZ 85007<br>BRANCH NAME: Court of Appeals Division 1<br>WEBSITE: www.azcourts.gov/coa1 | **Court of Appeals Division 1**<br>on **Feb 26, 2015 11:28 AM MST**<br><br>*CLERK OF THE COURT*<br>*Ruth Willingham, Clerk*<br><br>By Deputy Clerk:  JT |
| ATTACHMENT NAME: **Certificate of Compliance: Petitioner's Certificate of Compliance** | |
| CASE NAME: **Erin Rae Espinosa vs. Virginia Richter** | CASE NUMBER:<br>SA-15-0047 |
| Please log on to www.TurboCourt.com regularly for updates | |

Please staple this to your original attachment

AZturboCourt.gov Form Set #1352970

1
RICHARD D. COFFINGER
Attorney at Law
2
6838 N. 58th Drive
Glendale, AZ 85301
3
State Bar ID #03040
623-937-9214
4
623-937-7072 (fax)
r.coffinger@gmail.com
5

Attorney for Petitioners
6

7
**IN THE COURT OF APPEALS**

8
**STATE OF ARIZONA**

9
**DIVISION ONE**

10
**ERIN RAE ESPINOSA,**       )     NO.

11
                    )     Maricopa County Superior

Petitioner,     )     Court
12
                    )     No. CR2014-006004-001 DT

vs.                  )
13
                    )

**MARICOPA COUNTY SUPERIOR**   )
14
**COURT; and the HON. VIRGINIA**   )
**RICHTER, Commissioner, and;**    )
15
                    )     **PETITIONER'S**
**STATE OF ARIZONA, ex rel.**      )     **CERTIFICATE OF**
16
**WILLIAM G. MONTGOMERY,**     )     **COMPLIANCE**
**Maricopa County Attorney, real party** )
17
**in interest,**                  )

                    )
18
          Respondents. )

19
                    )

20
       Pursuant to Ariz. R. Crim. P. 31.13(b)(2), undersigned counsels certify that

21
Petitioner's Petition for Special Action uses proportionally spaced type of 14 points

22
or more, is double spaced using a roman font, and contains 10,433 words.

23
       RESPECTFULLY SUBMITTED this 26th day of February, 2015.

24

25

26
                /s/ Richard D. Coffinger
                RICHARD D. COFFINGER
27
                Bar ID 003040
                Attorney for Petitioner
28

| ATTACHMENT COVER PAGE | (ENDORSED) **ELECTRONICALLY FILED** |
|---|---|
| **COURT OF APPEALS DIVISION 1**<br><br>STREET ADDRESS:1501 West Washington<br><br>MAILING ADDRESS:<br><br>CITY AND ZIP CODE: Phoenix, AZ 85007<br><br>BRANCH NAME:Court of Appeals Division 1<br><br>WEBSITE:www.azcourts.gov/coa1 | **Court of Appeals Division 1**<br><br>on **Feb 26, 2015 11:28 AM MST**<br><br>*CLERK OF THE COURT*<br><br>*Ruth Willingham, Clerk*<br><br>*By Deputy Clerk:*  JT |
| ATTACHMENTNAME: **Petition for Special Action: Petition for Special Action** | |
| CASE NAME: **Erin Rae Espinosa vs. Virginia Richter** | CASE NUMBER:<br><br>SA-15-0047 |
| Please log on to www.TurboCourt.com regularly for updates | |

Please staple this to your original attachment

AZturboCourt.gov Form Set #1352970

RICHARD D. COFFINGER
Attorney at Law
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID #03040
623-937-9214
623-937-7072 (fax)
r.coffinger@gmail.com
Attorneys for Petitioner

## IN THE COURT OF APPEALS
## STATE OF ARIZONA
## DIVISION ONE

| | |
|---|---|
| **ERIN RAE ESPINOSA,** | NO. SA-15-0047 |
| Petitioner, | Maricopa County Superior Court No. CR2014-006004-001 DT |
| vs. | |
| **MARICOPA COUNTY SUPERIOR COURT; and the HON. VIRGINIA RICHTER, Commissioner, and;** | |
| **STATE OF ARIZONA, ex rel. WILLIAM G. MONTGOMERY, Maricopa County Attorney, real party in interest,** | **PETITION FOR SPECIAL ACTION** |
| Respondents. | |

Petitioner, ERIN RAE ESPINSOA, by and through undersigned counsel, respectfully submits her Petition for Special Action, pursuant to Ariz.R.P.Spec.Act.

### JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear and determine this Petition for Special Action and to grant the relief requested by virtue of Art. VI, Sec. 9 of the Arizona

Constitution, and Rule 4(a) and (b), Ariz.R.P.Spec.Act., 17(B), A.R.S. and A.R.S. §12-120.21(A)(4).

Petitioner, is a defendant in the felony criminal case of *State of Arizona, Plaintiff, vs. Erin Rae Espinosa, Defendant,* case CR2014-006004-001 DT, "the criminal case" which is currently pending before Respondent MARICOPA COUNTY SUPERIOR COURT and currently assigned to Respondent the HON. VIRGINIA RICHTER, a duly acting and qualified commissioner and judge pro tem thereof. STATE OF ARIZONA ex rel. WILLIAM G. MONTGOMERY is the duly elected Maricopa County Attorney, whose office represents the State of Arizona, and is prosecuting petitioner in the criminal case. Deputy Maricopa County Attorney (DCA) Richard E. Serden is the assigned prosecutor in the criminal case.

On February 19, 2015, Respondent Comm. Richter denied petitioner's motion to dismiss the information with prejudice [Appendix Item 1]. Petitioner's motion was based on Respondent Comm. Richter's prior *sua sponte* mistrial declaration on January 12, 2015, during the first trial [Appendix Item 2], without petitioner's consent and without a manifest necessity. This order and her order that the matter be reset for trial violated the double jeopardy prohibition guaranteed by Art. 2, Sect. 10 of the Arizona Constitution, and was an abuse of discretion or was arbitrary and capricious.

A status conference is currently set before Respondent Comm. Richter on

**March 19, 2015.** Petitioner may file in Respondent Superior Court her application for an interlocutory stay, seeking to restrain Respondent Comm. Richter from proceeding with a retrial until a final determination is made of this petition for special action. In the event if such application is denied, petitioner may file an application for a stay order in this court.

A petition for special action is the appropriate vehicle for obtaining appellate review of an interlocutory double jeopardy claim. *Nalbandian v. Superior Court (Corbin, RPI)*, 163 Ariz. 126, 130, 786 P.2d 977 (App. Div. 1 1989). Accord: *Jones v. Kiger*, 194 Ariz. 523, 984 P.2d 1161 (App. Div. 1 1999); *Lemke v. Rayes,* 213 Ariz. 232, 141 P.3d 407 (App. Div. 1 2006), rev. den., hab corp. den., affmd 719 F.3d 1093, cert. den. 134 S.Ct. 1303.

Double jeopardy protects not only against convictions but also against multiple prosecutions. *Fitzgerald v. Superior Court in and for County of Maricopa,* 173 Ariz. 539, 845 P.2d 465 (App. Div. 1 1992); *Ferreira v. Superior Court (State),* 189 Ariz. 4, 938 P.2d 53 (App. 1996); *Miller v. Superior Court (State)*, 189 Ariz. 127, 938 P.2d 1128 (App. 1997).

*Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984), recon. den. and *McLaughlin v. Fahringer*, 150 Ariz. 274, 723 P.2d 92 (1986) both support petitioner's argument for the court's acceptance of jurisdiction, and entry of an order granting relief, however, both cases predate *Nalbandian*, supra, and neither

case expressly established its holding.

As to Argument IV, the court of appeals has appellate special action jurisdiction of petitioner's claim that Respondent RPI expressly waived an alternative theory of criminal liability at her preliminary hearing, which Respondent Comm. Richter allowed it to reassert at trial, over petitioner's objection. *Dunlap v. Superior Court, In and For County of Maricopa*, 169 Ariz. 82, 817 P.2d 27 (App. Div. 1 1991); *Brooks v. Jennings*, 17 Ariz.App. 407, 498 P.2d 481 (App. Div. 1 1972).

Special action jurisdiction is also appropriate because this petition presents issues that are a matter of statewide concern, importance and public significance. *State ex rel. Pennartz v. Olcovage*, 200 Ariz. 582, 30 P.3d 649 (App. 2001); *Alvarado v. Superior Court (Romley)*, 166 Ariz. 279, 802 P.2d 430 (App. Div.1 1990).

**STATEMENT OF ISSUES**

1. Does the double jeopardy prohibition, guaranteed in Art. 2, Sect. 10 of the Arizona Constitution bar petitioner's retrial because Respondent Comm. Richter's *sua sponte* mistrial declaration was without petitioner's consent and without a manifest necessity?

2. Was Respondent Comm. Richter's conditional order disqualifying petitioner's defense counsel from representing her during the retrial, an abuse of discretion or arbitrary and capricious, because Respondent RPI failed to file a motion

4

to disqualify defense counsel from representing petitioner based on its intent to call defense counsel as a witness?

3. Was Respondent Comm. Richter's order denying petitioner's motion to strike Respondent RPI's sentence enhancement allegation that she committed the offense while she was released from confinement on probation, an abuse of discretion, or arbitrary and capricious, because her prior class 6 undesignated probationary offenses were designated class 1 misdemeanors?

4. Was Respondent Comm. Richter's order denying petitioner's motion to preclude Respondent RPI's alternative theory that petitioner committed the offense "while a restriction is placed on the person's driver license or privilege to drive", an abuse of discretion, or arbitrary or capricious, because Respondent RPI expressly waived this theory at the preliminary hearing?

## STATEMENT OF FACTS

On August 18, 2011, Peoria Police Officer Kunde was working a school zone speed enforcement assignment at the West Wing Elementary School. He conducted a DUI prescription drug investigation of petitioner at the school after the SUV she was driving– which was equipped with a certified ignition interlock device– rolled backwards on an inclined driveway, into another vehicle causing minor damage. Petitioner, who lived close to the school, and normally walked her two children to and from the school, drove to pick them up, because it was a hot summer afternoon, and

5

she wanted to give them a ride home in her SUV with air conditioning. [Reporter's Transcript (RT) 1/8/15 p. 7-8, 22-26]

On the date of the offense, petitioner was taking the drug as prescribed by her physician who was treating her for clinical anxiety.

On March 8, 2011, pursuant to A.R.S. §28-1401, et. seq., the Arizona Department of Transportation, Motor Vehicle Division, Driver's License Section (MVD) issued petitioner a Special Ignition Interlock Restricted Driver's License (SIIRDL) [Appendix Item 3] that was valid on August 18, 2011, the date of the alleged offense. Pursuant to A.R.S. §28-1401(D), MVD did not delete from its records, its three year revocation order of petitioner's driver license and privilege to drive, from October 18, 2010, to October 18, 2013.

## PROCEDURAL DISCUSSION

Petitioner is charged in the criminal case by way of a one count information filed December 22, 2014, [Appendix Item 4] following a preliminary hearing that date before Comm. James Rummage.  The information charges that on August 18, 2011, petitioner committed the offense of Aggravated DUI (impaired) by a prescription drug (clonazapam), while her driver's license or privilege was revoked or "while a restriction is placed on the person's driver license or privilege to drive as a result of violating A.R.S. §28-1381, §28-1382 or under §28-1385", in violation of A.R.S. §28-1383(A)(1), a class 4, non-dangerous, non-repetitive felony.

6

The current prosecution is the fifth prosecution against petitioner for the same alleged DUI prescription drug (clonazepam) offense in the 3 ½ years following her arrest.

On February 8, 2012, the first prosecution– which did not allege that petitioner's driver license or privilege was revoked or restricted– was filed as a misdemeanor in the Peoria Municipal Court (case TR2012-001138 ).  On April 4, 2013, that prosecution was dismissed without prejudice on the motion of the Peoria City Prosecutor, "so that the case could be submitted to the Maricopa County Attorney's Office for felony consideration."

The first three felony prosecutions (CR2013-441390, dismissed 2/28/14; CR2014-001538, dismissed 7/8/14; and CR2014-002044, dismissed 11/24/14) were all dismissed without prejudice because of errors made by Respondent RPI  in obtaining or filing a valid indictment or information.

At the preliminary hearing, Respondent RPI expressly waived its theory that the petitioner committed the offense while her driver's license or privilege was restricted, however, Respondent Comm. Richter allowed Respondent RPI to reassert this theory at trial, over petitioner's objection, when she denied petitioner's motion *in limine* to preclude this theory [Appendix Item 5].

On January 2, 2015, Respondent RPI filed an allegation that petitioner committed the offense while released from confinement on probation for her prior

7

Aggravated DUI alcohol with a child under age 15 in the vehicle, which was initially a class 6 undesignated felony offense, but was subsequently designated a class 1 misdemeanor before Respondent RPI filed the criminal case. Also, on January 2, 2015, petitioner filed her notice of refiling her motion to strike Respondent RPI's allegation of offenses committed while released from confinement (probation).

On January 7, 2015, Respondent Comm. Richter denied petitioner's motion to strike the State's allegation petitioner committed the offense while released from confinement on probation for a felony offense, and her motion to preclude Respondent RPI from arguing its alternative theory that petitioner committed the offense while her driver's license or privilege was restricted [Appendix Item 11].

Petitioner's jury trial began on January 5, 2015, 13 days after her arraignment. That was the "last day" for trial, pursuant to Rule 8.2, Ariz.R.Crim.P., since the immediate prior case against her had been dismissed, pursuant to Rule 13.1(c), Ariz.R.Crim.P., for Respondent RPI's failure to file a timely information. The last day in the dismissed case, became the last day in the refiled case.

On January 8, 2015, the third day of jury trial, Respondent RPI's final witness, Wayne Ruiz, a MVD custodian of the records testified that (1) petitioner's SIIRDL allowed her to lawfully drive on the date of the alleged offense, and (2) MVD had not provided petitioner with any written notice of the SIIRDL destination restrictions provided in A.R.S. §28-1402(A) [RT, 1/8/14, p. 32].

Petitioner then testified on direct examination as follows:

Q [By Defense Counsel Mr. Coffinger] How did you become aware that there was even this opportunity to have some kind of restored driving privilege?

A When -- well when I received the letter [the Corrective Notice form from MVD of its 3 year driver's license revocation order]. It says after all the requirements are complete you can get your license back, so I called Mr. Coffinger, because he's a lawyer, and I asked him what that meant. He said it means you have to apply for a SIIRDL driver's license and once you get your SIIRDL driver's license you can drive.

Q You did that based upon my telling you about that possibility?

A Yes. [Emphasis supplied] [RT (1/8/15) p. 15]

Petitioner also testified on direct examination that she never received any written notice from MVD of any SIIRDL destination restrictions, and that she was unaware of such restrictions on the date of the alleged offense [RT 1/8/15 p. 40]. On cross-examination, she testified as follows:

Q. [by DCA Serden] Did you ask Mr. Coffinger whether there were additional restriction under ARS 28-1402?

A. No, I didn't.

Q. Did you think it incumbent upon yourself to go find out what restrictions were under ARS 28-1402?

A. I'm sorry I didn't. I called Mr. Coffinger and I felt he explained it to me fully.

Q. Did you ask him–... what ARS 28-1402 says?

A. I never said anything about ARS. When it says restricted interlock, that tells me you are restricted. You just have to have an interlock. [DCA Serden then used a video projector to display on a screen in the jury's view a copy of A.R.S. §28-1402]

Q. Then it says "only as follows," and without going into this only as follows, there are a bunch of specific restrictives or times and places that you can drive; Correct?

A. Is that a law book? Are you suggesting that I was remiss, because I didn't go to a law library? I called a lawyer, [...] and I asked when I was at the MVD, so because I have this insurance and I have my

9

interlock I can drive now?  She said, yes.  She never gave any[...] you could go here, but not here.  You can go here or– never, never.  I would not have been driving under those circumstances, if that his what they told me or if my lawyer had told me.  I would not have driven the car.
[DCA Serden then projected a copy of petitioner's SIIRDL (Appendix Item 3), which included on the front the notation, "Restricted Interlock A.R.S. 28-1402"]
Q.  Well did you see that right there?
A.  Yes, I did.  But it says "restricted interlock."  I was restricted, because I needed an interlock and then I was fine. "Restricted interlock."
Q.  So you thought the rest of that was just extraneous and had no meaning or affect?
A. I called and I asked a lawyer what it meant.
Q.  That's not an answer to my question.  My question is did you ignore that part, which clearly gives you notice that this is a restricted license, pursuant to ARS 28-1402? Did you ignore that explicit very clear unequivocal information on the front of your driver's license?
A.  I didn't– I called a lawyer to ask what it meant.  I called a lawyer. Isn't that being proactive enough? [Emphasis supplied] [RT 1/8/15 p. 53, 56, 57]

Excerpts from the court reporter's transcript of the relevant trial testimony of

MVD Records Custodian Ruiz and petitioner on January 8, 2015, are attached as

Appendix Items 6 and 7, respectively.

After the jury had been excused for the day and directed to return on Monday,

January 12, 2015, for the anticipated last day of trial, the following proceedings

occurred:

MR. SERDEN: Can I call Mr. Coffinger to the stand to explain what he told her about the ignition interlock?
THE COURT: No.
MR. SERDEN: That's now the issue.  Now she's going to rely on my attorney told me it.  I have no responsibility in this case.  I mean they are opening this can of worms.  He asked the questions, so his statement to her were completely legally wrong. [Emphasis supplied] [RT 1/8/15 p.

73]

On January 12, 2015, when the parties, but not the jury, were present, Respondent Comm. Richter stated "...[W]hen we broke on Thursday, Mr. Serden had made a request to call Mr. Coffinger as a witness based upon Ms. Espinosa's testimony."[RT 1/12/15, p. 3] [Appendix Item 8]. DCA Serden then stated:

> ... The State requested that it be allowed to call Mr. Coffinger for testimony. As the Court is aware, one of the elements the State has to prove is that the defendant knew or should have known her license was revoked and/or restricted. In that circumstance, <u>she testified that based upon a conversation she had had with Mr. Coffinger, she believed that once she got the Special Ignition Interlock Restricted Driver's License her privilege to drive was not longer revoked.</u> <u>So, based on that conversation, the State made [a]... comment to the Court and Mr. Coffinger that it was going to request that it be allowed to call Mr. Coffinger to either confirm or deny that statement.</u> [Emphasis supplied] [RT 1/12/15, p. 3, 4]

Respondent Comm. Richter then stated:

> ... <u>[B]ased upon the nature of Ms. Espinosa's testimony and the elements that the State must prove, I do believe that it is appropriate that the State be allowed to explore that issue with Mr. Coffinger.</u> <u>And given that situation, obviously, we can't proceed with Mr. Coffinger being both your lawyer and a witness in your case.</u> <u>So the only option I have is to declare a mistrial....</u> [Emphasis supplied] [RT 1/12/15, p. 4]

Petitioner did not consent to Respondent Comm. Richter's *sua sponte* mistrial declaration. Respondent Comm. Richter then advised the jury:

> Due to events that have occurred in this matter, we are no longer able to proceed with this trial. So you will not be required to participate any longer. [RT 1/12/15, p. 5]

Prior to Respondent Comm. Richter's *sua sponte* mistrial declaration, the

11

record does not reflect her consideration of either (1) any less drastic viable alternative to adequately address Respondent RPI's request to call defense counsel as a witness, or (2) the fact that the attorney-client privilege in criminal cases, provided in A.R.S. §13-4062(2), absolutely precluded Respondent RPI from calling defense counsel as a witness without petitioner's informed express or implied consent, or (3) the additional prohibitions imposed on defense counsel by the ethical requirements in Rule 42, Ariz.Supre.Ct.R., E.R. 1.6, relating to his duty to preserve the confidential communications with his client.  Respondent RPI never moved for a disqualification of defense counsel, and Respondent Comm. Richter never conducted a hearing on whether defense counsel should be required to withdraw. Both attorneys then spoke off-the-record with the 10 trial jurors that remained in the jury room.   The jurors stated that– although none of them had made a final determination of their verdict– 3 of them were inclined to return a verdict of guilty, and 7 of them were inclined to return a verdict of not guilty.  Respondent Comm. Richter then addressed petitioner on the record stating:

> Ms. Espinosa, you have two options: Either to continue with Mr. Coffinger as your lawyer and make sure that he does not become a witness in the retrial, or to have him be as a witness and have other counsel represent you in this matter. [Emphasis supplied] [RT 1/12/15 p. 6].

On February 19, 2015, Respondent Comm. Richter heard oral argument on petitioner's motion to dismiss with prejudice.  At the conclusion of the hearing, she

denied petitioner's motion stating:

> I do believe that my Declaration of a Mistrial was based on manifest necessity.
>
> I do believe that Ms. Espinosa waived her attorney-client privilege when she discussed the basis for her believing that her license was not revoked or restricted at the time she was driving, on her conversations with you, which were explored, which were – the door was opened when she testified on direct, and which was explored in cross-examination, without objection.
>
> I do not believe that my decision to declare a mistrial was done in haste or that I did not consider any viable alternatives based upon the fact that I do believe that Ms. Espinosa placed your conversations with her at issue on the main issue of her knowledge of the restriction or revocation of her license.
>
> I don't believe that the State should have been precluded from calling you as a witness to explore those conversations.
>
> I don't think there were any alternatives. I do believe she waived on the privilege, and that further discussion on that issue would not have provided me with any better resolution of this other than to declare a mistrial.
>
> I did give the parties an opportunity to be heard when we came back into chambers on Monday morning. It was not a decision that I entered in haste. We concluded the trial on Thursday, and it was not until Monday that I presented my decision to counsel.
>
> I do not believe, Mr. Coffinger, based upon Ms. Espinosa's statements in that trial, that it would have been proper for you to have continued as counsel because of the conflict that existed, and the conflict that clearly indicates under the comments of Rule ER 3.7 that that would officiate any substantial hardship that might be effected upon Ms. Espinosa by having new counsel when you've obviously been with her throughout the past four years or so that this matter has been pending. [Emphasis supplied] [RT 2/19/15 p. 3-4] [Appendix Item 9]

On February 23, 2015, Respondent Comm. Richter issued her minute entry "Ruling", in which she further explained her basis for her denial of petitioner's motion to dismiss with prejudice, which states:

> ... Retrial is not barred when a mistrial is declared because of manifest necessity. *State v. Givens,* 161 Ariz.278,279, 778P.2d 643,644 (App. 1989).
>
> <u>When the defendant testified, under direct and cross-examination, without objection, she essentially denied that she "knew" her license was revoked because she relied on her attorney's advice that she was able to drive once she obtained her SIIRDL license. By testifying to her reliance upon her attorney's advice she waived her attorney client privilege.</u> *State Farm Mut. Auto. Ins. Co. v. Lee,* 199 Ariz. 52,62, 13 P.3d. 1169,1179 (2000), <u>for the privilege cannot be used as both a sword and a shield</u>. *Accomazzo v. Kemp,* 234 Ariz. 169, 176-177, 319 P.3d 231, 236-237 (App. 2014). <u>Through her testimony, the defendant placed her attorney's advice in issue and created the need for the State to call Mr. Coffinger as a witness, to address the essential element of knowledge</u>. Mr. Coffinger clearly cannot act as both attorney and witness. Thus the Court was left with no alternative but to declare a mistrial.
>
> Manifest necessity does not mean absolute necessity. *Givens* at 282, 647. The defendant's testimony occurred at the close of trial on January 9, 2015. Before reconvening trial on January 12, 2015, the Court addressed its concerns with counsel in chambers. No objections were raised and no alternatives were offered. Before the jury was dismissed the Court's decision was explained to the defendant and she was given an opportunity to be heard. The trial could not proceed with Mr. Coffinger as both her witness and her attorney. The only alternative available, to preserve the defendant's right to an impartial jury, was to declare a mistrial. [Emphasis supplied] [Appendix Item 10]

## **ARGUMENT**

I.  <u>The Double Jeopardy Prohibition, Guaranteed in Art. 2, Sect. 10 of the Arizona Constitution, Bars Petitioner's Retrial Because Respondent Comm. Richter's</u>

14

*Sua Sponte* Mistrial Declaration was Without Petitioner's Consent and Without a Manifest Necessity

A.    Respondent Comm. Richter's *Sua Sponte* Declaration of a Mistrial was Without a Manifest Necessity Because the Record Does not Reflect Her Consideration of any Less Restrictive Alternatives

A mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted. *State v. Hardy*, 230 Ariz. 281, 283 P.3d 12, cert. den. 133 S.Ct. 935, 184 L.Ed.2d 732 (2012). Accord: *State v. Speer*, 221 Ariz. 449, 212 P.3d 787, cert. den 130 S.Ct. 1520, 559 U.S. 947, 176 L.Ed.2d 126 (2010).

In *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984), recon. den., the Arizona Supreme Court granted special action relief of ordering the dismissal with prejudice of the criminal prosecution against the defendant whose motion for a mistrial was necessitated by prosecutorial misconduct, stating:

> ... The Oregon Supreme Court... held that the Oregon constitutional prohibition against double jeopardy was violated:
>
>> when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the [danger of] resulting mistrial or reversal. When this occurs, it is clear that the burden of a second trial is not attributable to the defendant's preference for a new trial over completing the trial infected by error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force the defendant to such a choice. *State v. Kennedy*, 295 Or. [260] at 276, 666 P.2d [1316] at 1326 [(1983)].

15

*       *       *       *

We cannot agree with the fundamental premise of the plurality in *Oregon v. Kennedy*, [456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)], that a test broader than intent to provoke a mistrial, "would offer virtually no standards." *Oregon v. Kennedy*, 456 U.S. at 674, 102 S.Ct. at 2089. We agree with the opinion of Justice Stevens for the four-member minority that so specific an intent must necessarily involve a subjective inquiry and is too difficult to determine. 456 U.S. at 689, 102 S.Ct. at 2097. Also, we believe that the [*Kennedy*] Court's decision fails to give effect to its own pronouncements regarding the purpose of the double jeopardy clause. The Court acknowledges that the clause gives the defendant an interest in having the prosecution completed by the tribunal before which the trial is commenced. This "interest" expresses a policy against multiple trials [citation omitted]. The fundamental principle is that:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Green v. United States*, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

*       *       *

...We hold, therefore, that jeopardy attaches under art. 2, § 10 of the Arizona Constitution when a mistrial is granted on motion of defendant or declared by the court under the following conditions:

> 1. Mistrial is granted because of improper conduct or actions by the prosecutor; and
>
> 2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows [footnote omitted] to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal; and

16

3. <u>the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial.</u> [Emphasis supplied]

Petitioner has satisfied each of the three-prongs of the *Pool* test, because:

1. Respondent Comm. Richter's *sua sponte* declaration of a mistrial was a result of DCA Serden's improper conduct or actions– by requesting to call defense counsel as a witness,  when petitioner had neither expressly or impliedly waived her attorney-client privilege, and defense counsel was ethically precluded from revealing his confidential communications with his client by Ariz.Supr.Ct.R. 42, E.R. 1.6;

2. DCA Serden knew or should have known that his request was not only improper, but also prejudicial because he did not move to disqualify petitioner's defense counsel, and  he pursued this conduct with indifference to a significant resulting danger of a mistrial, or reversal; and,

3. The conduct caused prejudice to petitioner because Respondent Comm. Richter ruled that the issue could not be cured by any means short of a mistrial.

The *Pool* court concluded its analysis, stating:

<u>We agree with the Oregon Supreme Court that when such conduct occurs the burden of another trial cannot be attributed to defendant's preference to start anew rather than "completing the trial infected by error" and is, rather, attributable to the "state's readiness, though perhaps not calculated intent, to force the defendant to such a choice."</u> *State v. Kennedy*, 295 Or. at 276, 666 P.2d at 1326. <u>In such a situation, the State has intentionally exposed the defendant to multiple trials for the same crime and has destroyed his expectation of completing the proceeding before the original tribunal. This is exactly what the double jeopardy provision was intended to prevent.</u>

...[W]e are compelled to conclude that <u>the prosecutor intentionally engaged in conduct which he knew to be improper, that he did so with indifference</u>, if not a specific intent, <u>to prejudice the defendant</u>. The purpose ... was, at best, <u>to avoid the significant danger of acquittal which had arisen</u>, prejudice the jury and obtain a conviction no matter what the danger of mistrial or reversal. <u>Accordingly, we hold that jeopardy attached and retrial is barred</u>. [Emphasis supplied]

In *State v. Breit*, 930 P.2d 792, 802 (1996), the Supreme Court of New Mexico cited *Pool*, supra, with approval, noting,

...like the Pennsylvania Supreme Court in *[Commonwealth v.]Smith* [532 Pa. 177, 615 A.2d 321 (1992)] a growing number of state courts have rejected or expanded upon the [U.S. Supreme Court's] *Kennedy* rule when double-jeopardy claims are urged under their own state constitutions. Most notably is the view taken by the Oregon Supreme Court in *Kennedy* [supra].

*Breit*, supra, also cited with approval the Texas Court of Criminal Appeals in *Bauder v. State* [Bauder II], 921 S.W.2d at 699 (reversing Bauder I, 880 S.W.2d 502), along with the North Carolina Court of Appeals in *State v. White*, 85 N.C.App. 81, 354 S.E.2d 324, 329 (1987), aff'd 322 N.C. 506, 369 S.E.2d 813 (1988), and the Michigan Court of Appeals in *People v. Dawson*, 154 Mich. App. 260, 397 N.W. 2d 277, 282 (1986), aff'd 431 Mich. 234, 427 N.W.2d 886 (1988).

In *McLaughlin*, supra, the 74 year old great-grandmother of the alleged victim, was charged with molesting her four-year-old great-granddaughter. The *McLaughlin* court stated:

Prior to trial the prosecutor filed a motion *in limine* which sought to admit all the statements the victim made regarding who molested her. ....

       *             *            *

...[I]n the prosecutor's opening statement she stated that the victim was taken to a counseling center and told an employee, "Granny touches my private parts when she's not supposed to". Defense counsel objected based on hearsay.... Ultimately the trial court declared a mistrial *sua sponte* over petitioner's objection.

*        *        *        *

[T]he only issue is <u>whether the declaration of a *sua sponte* mistrial by the trial court over petitioner's objection would bar reprosecution of petitioner on double jeopardy grounds. We believe reprosecution would place petitioner twice in jeopardy.</u>

*        *        *        *

...A mistrial negates the defendant's "valued right to have his trial completed by a particular tribunal" [citations omitted]. <u>An improperly declared mistrial is a bar to retrial, provided, however, that it was not declared with the defendant's consent.</u> [citation omitted] ... <u>In instances where the trial court declares a mistrial *sua sponte*, whether the Double Jeopardy Clause permits retrial without the defendant's consent depends on whether there is a manifest necessity for the mistrial or whether the ends of public justice will otherwise be defeated</u> [citations omitted].

....<u>The record in this case does not reveal any circumstances which we believe rise to the level of manifest necessity calling for the declaration of a *sua sponte* mistrial</u>.

<u>The record indicates that the trial court made no real effort to determine whether there were any feasible alternatives to declaring a mistrial. At the very least a short recess should have been pursued in order to determine if the statements in question were admissible and under what theory. Petitioner was without fault as to the quandary the judge found himself in when he had not promptly ruled upon the state's pretrial motions....</u>

*        *        *

<u>No manifest necessity existed for the *sua sponte* declaration of a mistrial</u>. .... [Emphasis supplied] 150 Ariz. at 274-278

Respondent Comm. Richter did not make any effort to determine whether the attorney-client privilege, and/or Ariz.Supr.Ct. R. 42, E.R. 1.6 precluded Respondent RPI from calling petitioner's defense counsel as a witness for the state.

19

In *State v. Aguilar*, 217 Ariz. 235, 172 P.2d 423 (App. Div. 2 2007), after the jury had been sworn, during the first day of the first trial, the State acknowledged that it had failed to make a timely disclosure of a ballistics report it wanted to introduce in evidence.  The trial judge considered granting a brief postponement of the trial, but four jurors informed the judge that they would be unavailable  if a continuance was granted.  The judge declared a mistrial and Aguilar was forced to retrial 2 1/2 weeks later, at which the State was allowed to admit the ballistic report in evidence. The defendant was convicted, sentenced and he appealed.  Div. 2 of the Court of Appeals reversed his conviction and ordered the dismissal of the charge with prejudice, stating:

> [The defendant contends] his second trial was barred by the Fifth Amendment's protection against double jeopardy.1 We agree....
>
> *          *          *
>
> ...When the court declares a mistrial *sua sponte*, retrial will not be barred if there was a "manifest necessity for the mistrial or ... the ends of public justice will otherwise be defeated." *McLaughlin v. Fahringer*, [supra].
>
> *          *          *
>
> ... [W]hen a mistrial is declared because critical evidence for the prosecution is unavailable, we should apply the "strictest scrutiny." [citation omitted]
>
> Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this "abhorrent" practice.
>
> ... [S]ee also *Gori v. United States*, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526-27, 6 L.Ed.2d 901 (1961) (Fifth Amendment protects defendants when "a judge exercises his authority to help the prosecution, at a trial

20

in which its case is going badly, by affording it another, more favorable opportunity to convict the accused."). Accordingly, we must apply the strictest scrutiny here.

"Manifest necessity" can arise in many different situations and the courts have not attempted to adopt a single, all encompassing definition. See *McLaughlin*, 150 Ariz. at 277, 723 P.2d at 95 (listing various examples of manifest necessity). Although absolute necessity is not required, *Givens*, 161 Ariz. at 281, 778 P.2d at 646, the United States Supreme Court has said there are various "degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Washington*, 434 U.S. at 506, 98 S.Ct. at 831. And, in *Gusler v. Wilkinson*, 199 Ariz. 391, ¶ 18, 18 P.3d 702, 706 (2001), our own supreme court stated that the prosecutor's "burden 'is a heavy one.' Indeed, the very term 'manifest necessity' emphasizes 'the magnitude of the prosecutor's burden.'" Id., quoting *Washington*, 434 U.S. at 505, 98 S.Ct. at 830; see also *Evans v. Abbey*, 130 Ariz. 157, 159, 634 P.2d 969, 971 (App.1981) ("A mistrial is not warranted when the court ha[s] the ability to prevent its necessity.").

　　　　　　*　　　　　　　*　　　　　　　*

Additionally, our supreme court has found that when a trial court fails to consider viable alternatives to a mistrial, manifest necessity has not been shown. *McLaughlin*, [supra]. In *McLaughlin*... [o]ur supreme court concluded that the trial court had not adequately considered alternatives such as a short recess to resolve the evidentiary issue and thus there was no manifest necessity to declare a mistrial. Id. at 277-78, 723 P.2d at 95-96.

Here, the trial court considered continuing the trial as an alternative to declaring a mistrial.... The court did not question the jurors who indicated they were unable to return, nor is there any record of the reasons for their claimed unavailability. We find the court in this case failed to sufficiently investigate whether the four jurors had legitimate reasons for their unavailability or whether it was simply more convenient to have their duties concluded immediately. To the extent the court based its declaration of a mistrial on its finding that the jury could not reconvene after a week-long recess, the record does not support a finding of manifest necessity under the strictest scrutiny [citation omitted].

21

... Because a short recess could have cured the problem, the court's declaration of mistrial was, at least, premature....

Finally, the alternative urged by the defense—to preclude the ballistics report and proceed with the first trial—was entirely feasible....

&ast;  &ast;  &ast;

The trial court expressed concern over the state being deprived of the report as evidence. But the trial court could not elevate this concern over the defendant's right to be protected from double jeopardy. See *Washington*, 434 U.S. at 503-04, 98 S.Ct. at 829-30. ..."The prohibition against double jeopardy unquestionably `forbids the prosecutor to use the first proceeding as a trial run of his case.'" *Id.* at 508 n. 24, 98 S.Ct. at 832 n. 24, quoting Note, Twice in Jeopardy, 75 Yale L.J. 262, 287-88 (1965). Because the trial court had feasible alternatives to declaring a mistrial, under the strictest scrutiny, there was no manifest necessity to declare the mistrial. See *id.* at 507-08, 98 S.Ct. at 831-32.

&ast;  &ast;  &ast;

...The mistrial was intended to and clearly did benefit the prosecution. Unless the mistrial was at Aguilar's request or due to his actions, see [*State v. Givens*] [161 Ariz 278] at 280-82, 778 P.2d [643] at 645-47 [(App. Div. 1 1989)], or unless the "mistrial has been granted in the sole interest of the defendant," *Gori*, 367 U.S. at 369, 81 S.Ct. at 1527 (emphasis added), double jeopardy bars a mistrial....

We conclude that "along the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny," *Washington*, 434 U.S. at 510, 98 S.Ct. at 833, the failure of a prosecutor to discover and disclose evidence requires an exacting inquiry. Under such circumstances, we are required to strike the balance in favor of the defendant. [citation omitted]. [Emphasis supplied]

In Respondent Comm. Richter's explanation of her ruling [Appendix Item 10],

she cites *State v. Givens*, 161 Ariz. 278, 778 P.2d 643 (App. 1989), which cited *Gori*,

supra, however *Givens* is not dispositive.  In *Givens*, after the jury had been selected,

the trial judge granted the Rule 11 motion for a mental examination that the defendant

personally requested, that was not joined in by his defense counsel. The *Givens* court

stated:

> Judge Ybarra's declaration of mistrial on her own motion was premised on her inability to admonish the jury during the potentially protracted Rule 11 evaluation. It is clear that the mistrial was declared only to protect the defendant's right to an impartial jury. <u>Judge Ybarra was faced with a jury, which had already been on hold for about a week, being placed on indefinite hold.</u> Without being able to admonish and police the jury, Judge Ybarra exercised her discretion and declared the mistrial in the primary interest of the defendant.... [Emphasis supplied] 161 Ariz. at 281

    B. <u>Based on the Attorney-Client Privilege in Criminal Cases Which Petitioner Neither Expressly nor Impliedly Waived, She had the Right to Preclude Respondent RPI From Calling Her Defense Counsel as a Rebuttal Witness to Impeach Her Testimony</u>

        1. <u>Petitioner's Testimony That She was Advised by Her Defense Counsel that MVD Could Issue Her a SIIRDL That Would Allow Her to Drive After the First 90 Days of Her 3 Year Driver License Revocation, Did Not Waive Her Attorney-Client Privilege</u>

A.R.S. §13-4062, entitled, "Anti-marital fact privilege; other privileged communications," includes subsection (2) which provides the attorney-client privilege in criminal cases, and states:

> <u>A person shall not be examined as a witness </u>in the following cases:
>       *            *            *
> (2) <u>An attorney, without consent of the attorney's client</u>, as to any communication made by the client to the attorney, or the attorney's advice given in the course of professional employment. [Emphasis supplied]

Respondent Comm. Richter cited two cases in support of her ruling that petitioner waived her attorney-client privilege: *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000); and, *Accomazzo v. Kemp*, 234 Ariz. 169, 319 P.3d

231 (App. 2014).

*State Farm Mut. Auto. Ins. Co.,* supra, was a bad faith class action by automobile insurance policyholders in which the plaintiffs sought discovery of files and other documents relating to State Farm's rejection of their underinsured and uninsured motorist claims. The majority opinion was written by former Justice Feldman. Former Justices Martone and McGregor dissented. The majority opinion includes a thorough discussion of a party's implied waiver of its attorney-client privilege, stating,

> ...We assume <u>client and counsel will confer in every case, trading
> information for advice. This does not waive the privilege.</u> We assume
> <u>most, if not all actions, taken will be based on counsel's advice. This
> does not waive the privilege. Based on counsel's advice, the client will
> always will have subjective evaluations of its claims and defenses. This
> does not waive the privilege. All of this occurred in the present case,
> and none of it, separately or together, created an implied waiver.</u> But the
> present case has one more factor– <u>State Farm claims its actions were the
> result of its reasonable and good-faith belief that its conduct was
> permitted by law, **and** its subjective belief based on it's claims agents'
> investigation into an evaluation of the law.</u>   It turns out that <u>the
> investigation and evaluation included information and advice received
> from a number of lawyers.  It is the last element, combined with the
> others, that impliedly waives the privilege.</u> State Farm claims that its
> actions were prompted by what its employees knew and believed, not by
> what its lawyers told them.  But <u>a litigant cannot with one hand wield
> the sword– asserting as a defense that, as the law requires, it made a
> reasonable investigation into the state of the law and in good faith drew
> conclusions from that investigation– and with the other hand raise the
> shield– using the privilege to keep the jury from finding out what its
> employees actually did, learned in, and gained from that investigation.</u>
> [Emphasis supplied] 199 Ariz. at 66

Unlike *State Farm*, petitioner did not cross the line and assert the fourth factor.

In *Accomazzo*, supra, the court accepted a petition for a special action and granted relief in a dissolution of marriage case in which the court held that the attorney-client privilege is not automatically waived when a party challenges the enforceability of an agreement that was the subject of an attorney-client consultation. This opinion, written by Judge Swann, states:

> ¶ 9 When a party affirmatively places privileged communications at issue, it waives the attorney-client privilege. *State Farm Mut. Auto. Ins. Co. v. Lee*, [supra]. The test we apply is "whether the client asserting the privilege has interjected the issue into the litigation and whether the claim of privilege, if upheld, would deny the inquiring party access to proof needed fairly to resist the client's own evidence on that very issue." *Id.* at 62, 13 P.3d at 1179 (2000) (quoting Restatement (Third) of Law Governing Lawyers § 80 cmt. b). In other words, <u>a party cannot use privileged information as a sword while asserting the privilege as a shield.</u> *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 158, 382 P.2d 560, 568 (1963). The bare assertion of a claim or defense does not necessarily place privileged communications at issue in the litigation, and the mere fact that privileged communications would be relevant to the issues before the court is of no consequence to the issue of waiver. As a matter of common law and legislative policy, the privilege serves as a narrow impediment to the search for the truth, and "<u>the party that would assert the privilege has not waived unless it has asserted some claim or defense, such as the reasonableness of its evaluation of the law, which necessarily includes the information received from counsel.</u>" *Lee*, 199 Ariz. at 62, ¶ 28, 13 P.3d at 1179. [Emphasis supplied] 234 Ariz. at 172

In *State v. Fodor*, 179 Ariz. 442, 448-450, 880 P.2d 662 (App. Div. 1 1994) the court of appeals reversed the defendant's perjury conviction based on the state's introduction in evidence at trial of a transcript of a wire-tapped conversation between the defendant and an attorney that she had called for legal advice, stating:

> ... <u>In the criminal context, "unless a client consents, a lawyer may not be</u>

<u>required to disclose communications made by the client to the lawyer or</u> <u>advice given to the client in the course of professional employment</u>." *Samaritan Foundation v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1993) .... "The privilege is intended to encourage the client in need of legal advice to tell the lawyer the truth." *Id.* Our supreme court further stated, "the privilege is central to the delivery of legal services in this country." *Id.*

The test for determining whether a communication is protected by the attorney-client privilege is a subjective one; it focuses primarily on the state of mind of the client. [citations omitted]. The trial court must examine the circumstances under which the communication was made [citations omitted]. From those circumstances, the court must decide whether the party consulting the attorney believes that he or she is approaching the attorney in a professional capacity and with the intent of securing legal advice....

*          *          *

...*As we observe above, <u>the purpose of the attorney-client privilege is to</u>* <u>encourage full disclosure to a legal adviser by one seeking legal</u> <u>services</u>....

.... <u>[T]he state's argument is contrary to the purpose of the attorney-</u> <u>client privilege– that of "encouraging clients to divulge matters freely</u> <u>to their lawyers</u>." Wolfram, *supra*, §6.3.5; [citation omitted]. <u>If we were</u> <u>to adopt the state's argument, we would effectively abolish the attorney-</u> <u>client privilege.</u>

Furthermore, although it is not necessary for us to determine whether a constitutional violation exists here, we observe that the federal courts have found constitutional implications in some violations of the attorney-client privilege. Thus, when the state "intentionally invades the attorney-client relationship or privileged information resulting from an unintentional intrusion is disclosed and prejudice results," a Sixth Amendment violation occurs. *Bishop v. Rose*, 701 F.2d 1150, 1156 (6th Cir.1983).... *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir.1980)...[Emphasis supplied]

In *State v. Holsinger*, 124 Ariz. 18, 22, 23, 601 P.2d 1054, 1058, 1059 (1979),

the Arizona Supreme Court reversed the defendant's convictions for offenses

including first degree murder, entered by the former Maricopa County Superior Court Judge Sandra Day O'Connor, holding that, along with other trial errors, the prosecutor's cross-examination of defendant regarding her confidential communications with her attorneys violated her attorney-client privilege, stating:

> The attorney-client privilege, A.R.S. §13-4062(2), belongs to the client and concerns communications between the attorney and the client. The reason for the privilege is not to protect the client, but to encourage free exchange of information between the attorney and the client and to promote the administration of justice [citation omitted]. Neither the client nor the attorney can be compelled to disclose these communications against the client's wishes [citations omitted]. Neither does the defendant in a criminal case waive the attorney-client privilege when she takes the stand to testify in her own behalf:
>
>> "To say that the broad protection of (the attorney-client privilege) is not available to a defendant when he takes the stand in a criminal case would entail consequences far more detrimental to the interests of society than does the rejection of the evidence that might be disclosed. When the client, especially one accused of crimes, asks for advice and guidance in the premises, he should be able to speak freely without any fear and in full confidence that what is said by him or to him by his attorney will not be subsequently subject to disclosure if he takes the witness stand during the trial of his case. Any other policy than strict inviolability, unless expressly waived, would seriously hamper the administration of justice, for the client would perhaps refrain from telling the truth or withhold the truth, while the lawyer would be reluctant to give the correct advice and counsel if he thought it would be subject to disclosure in the event his client took the stand to testify in his own behalf." *People v. Shapiro*, 308 N.Y. 453, 459, 126 N.E.2d 559, 562 (1955). [Emphasis supplied]

Petitioner's direct examination testimony– which consisted of only two

27

questions and answers– relating to the advice she received from her defense counsel, regarding MVD's authority to issue her a SIIRDL that would allow her to drive after her 3 year revocation order had been in effect for 90 days, was set forth on page 7 of this petition.  Contrary to respondents' arguments, this benign testimony by petitioner did not waive her attorney-client privilege.

Petitioner's entire cross-examination regarding the advice she received from her defense counsel regarding the SIIRDL is set forth on pages 7-8 of this petition. She testified (1) she did not ask her defense attorney whether there were additional restrictions under A.R.S. §28-1402; (2) she did not think it was incumbent on her to "go find out" what restrictions were under A.R.S. §28-1402; (3) she did not ask her defense attorney what A.R.S. §28-1402 states.  Finally, when cross-examined about the notation on her SIIRDL that stated "Restricted Interlock A.R.S. 28-1402", she stated "I called and asked a lawyer what it meant," and "I called a lawyer to ask what it meant. I called a lawyer.  Isn't that being proactive enough?"

2.  Petitioner Did Not Impliedly Waive the Attorney-Client Privilege, Because She Did Not Make a Direct or Indirect Attack on Her Defense Counsel's Competence or Reputation

Respondent RPI's response to petitioner's motion to dismiss the information with prejudice filed in the trial court cites on pages 5-6, *State v. Cuffle*, 171 Ariz. 49, 51, 828 P.2d 773, 776 (App. 1992), stating:

When the defendant testified regarding her conversation with Mr. Coffinger about the SIIRDL, several things happened.  First, she waived

28

the attorney-client privilege regarding their discussion. "In general, the attorney-client privilege is not absolute. Because this privilege is personal to the client, [s]he may elect to waive the protection of the privilege. Such a waiver is a consent to disclosure of the communications that occurred between the client and the attorney." ... *Cuffle* (citation and footnote omitted).

In *Cuffle*, the Arizona Supreme Court held that a requirement for a criminal defendant's implied waiver of the attorney-client privilege was that the client make an attack on the competency or reputation of his or her attorney, stating:

> ... A client ... waives the attorney-client privilege, however, if he claims that the attorney has rendered ineffective assistance. Such a claim "is a direct attack on the competence of an attorney and constitutes a waiver of the attorney-client privilege." *State v. Moreno*, 128 Ariz. 257, 260, 625 P.2d 320, 323 (1981); *[State v.] Griswold*, 105 Ariz. [1] at 5, 457 P.2d [331] at 335. Under a direct ineffective assistance of counsel claim, an attorney should be allowed to defend himself, at least with regard to the particular contentions asserted, by revealing "at least that much of what was previously privileged as is necessary...." *Moreno*, 128 Ariz. at 260, 625 P.2d at 323; *State v. Zuck*, 134 Ariz. 509, 515, 658 P.2d 162, 168 (1982).
>
> *          *          *          *
>
> ... As we stated in *Moreno*, "[t]he claim of ineffective assistance of counsel is a direct attack on the competence of an attorney and constitutes a waiver of the attorney-client privilege." 128 Ariz. at 260, 625 P.2d at 323.

> A defendant will not be allowed to use the attorney-client privilege as a shield to block inquiry into an issue that he has raised. See *Bishop v. Superior Court*, 150 Ariz. 404, 411 n. 4, 724 P.2d 23, 30 n. 4 (1986). ... Appellant's claim attacks the integrity not only of the attorney, but also of the entire fact-finding process. *Id.* In order to make an appropriate finding, the trial court needs to have all relevant facts relating to the claim before it. Id. We do not believe the trial court erred in this hearing when it allowed appellant's trial attorney to testify regarding the specific issue of whether or not appellant entered into informed no contest pleas. [Emphasis supplied] 171 Ariz. at 51-53, 828 P.2d at 775-777

In *Cuffle*, the defense counsel was called to testify as a witness for the State at the hearing before the superior court on defendant's motion to withdraw his no contest plea. In the criminal case, Respondent RPI requested to call defense counsel as a fact witness during the a jury trial. *Cuffle* is also not dispositive because– unlike Cuffle– petitioner has neither directly nor indirectly attacked the competence or reputation of her defense counsel.

The attorney-client privilege, which is the oldest of privileges for confidential communications known to common law, is rigorously guarded to encourage full and frank communication between attorneys and their clients, and thereby to promote broader public interests in observance of law and administration of justice. *State v. Towery*, 186 Ariz. 168, 920 P.2d 290 (1996), cert. den. 117 S.Ct. 985, 519 U.S. 1128, 136 L.Ed.2d 867, den. PCR affmd 204 Ariz. 386, 64 P.3d 828, recon. den., cert. dis. 124 S.Ct. 44, 539 U.S. 986, 156 L.Ed.2d 702.

C.   <u>Independent of the Attorney-Client Privilege, Defense Counsel has an Ethical Obligation to Preserve His Confidential Communications With His Client, and, Therefore, Without His Client's Express or Implied Informed Consent, He Could not Have Testified About Such Communication With Petitioner as a Witness for Respondent RPI</u>

Ariz.Supr.Ct.R. 42 entitled, "Arizona Rules of Professional Conduct," includes ER 1.6 entitled "Confidentiality of Information," which states in part:

> (a) A lawyer shall not reveal information relating to the representation of a client <u>unless the client gives informed consent</u>....

30

In *Fodor*, supra, the court recognized that the attorney-client privilege is a separate issue from the attorney's ethical duty to preserve confidential communications with the client, stating:

> ...[A] lawyer's potential ethical conflict has nothing to do with whether a client communication with a lawyer is protected by the attorney-client privilege [A.R.S. §13-4062(2)].  179 Ariz. at 449

II.   Respondent Comm. Richter's Conditional Order Disqualifying Petitioner's Defense Counsel from Representing Her During the Retrial, was an Abuse of Discretion or Arbitrary and Capricious, Because Respondent RPI Failed to File a Motion to Disqualify Defense Counsel from Representing Petitioner Based on its Intent to Call Defense Counsel as a Witness

In *Cottonwood Estates, Inc. v. Paradise Building, Inc.*, 128 Ariz. 99, 104, 105, 624 P.2d 296, 301, 302 (1981), the Arizona Supreme Court established the requirements for disqualifying an attorney based on opposing counsel's request to call the attorney as witness, stating:

> The prejudice [to the attorney's client] requirement of [former] DR 5-102(B) [replaced with ER 3.7] works to preclude the folly of an attorney giving testimony detrimental to the interest he is advocating as well as to prevent opposing counsel from contriving some tactical need for calling the attorney thereby triggering disqualification. [citation omitted].... To call for the disqualification of opposing counsel for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated. [citations omitted].
>
> By misusing the advocate-witness prohibition, an attorney might elbow opposing counsel out of the litigation for tactical reasons. [citations omitted] When an attorney is to be called other than on behalf of his client, a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's

31

client. [Emphasis supplied]

ER 3.7 entitled, "Lawyer as Witness" states in part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness <u>unless</u>:
>
>              *            *            *
>
> (3) <u>disqualification of the lawyer would work substantial hardship on the client.</u> [Emphasis supplied]

The Comment to ER 3.7 states in part:

> [4] ... [P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. <u>Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness</u>.... [Emphasis supplied]

Undersigned counsel has represented petitioner for over three and one-half years in five successive criminal prosecutions, including the 4 day jury trial in the criminal case. During defense counsel's representation of petitioner, he has been successful in preventing Respondent RPI from obtaining a conviction against her. Based on the procedural history of this case, it is reasonable to infer, that – by requesting Respondent Comm. Richter to allow Respondent RPI to call defense counsel as a State's witness to impeach petitioner's testimony that her defense counsel did not inform her of the SIIRDL destination restrictions provided in A.R.S.

§28-1402(A)– Respondent RPI was engaged in the very tactic that the late Justice Jack D. H. Hay condemned in *Cottonwood Estates, Inc.,* supra, when he stated such practice "will not be tolerated" by the courts. This tactic was an attempt to misuse the advocate-witness prohibition as a means to "elbow opposing counsel out of the litigation", and was the reason Respondent Comm. Richter entered her *sua sponte* mistrial order.

Disqualification of defense counsel prior to retrial would create an unjust hardship on petitioner due to the financial burden she has incurred from paying him substantial attorney's fees during his representation of her in the five successive DUI prosecutions against her over the 3½ years since her arrest. His involuntary removal would also deny petitioner her constitutional right to due process of law by being represented in the criminal case by counsel of her choice.

Due process of law, as it is expressed in the right-to-counsel provisions of the state and federal constitutions, comprehends a right to appear and defend with retained counsel of one's own choice. *Pipkins v. Helm*, 132 Ariz. 237, 239, 644 P.2d 1323 (App. Div. 2 1982).

III.   <u>Respondent Comm. Richter's Order Denying Petitioner's Motion to Strike Respondent RPI's Sentence Enhancement Allegation That She Committed the Offense While She Was Released from Confinement on Probation was an Abuse of Discretion, or Arbitrary and Capricious, Because Her Prior Class 6 Undesignated Probationary Offenses Were Designated Class 1 Misdemeanors</u>

Respondent RPI refiled a sentence enhancement allegation, pursuant to A.R.S.

§13-708(C), that it had previously filed in one of the prior dismissed prosecutions,

that alleged petitioner committed the Aggravated DUI, class 4 felony while released

from confinement while she was on probation for a class 6 undesignated felony

offense in Maricopa County Superior Court case CR2009-126740-001-DT.

On April 23, 2012, in that case, Maricopa County Superior Court Comm.

Phemonia Miller entered an order designating both of those offenses as class 1

misdemeanors [Appendix Items 12 and 13]. These class 1 misdemeanor designations

applied retroactively to the date of the entry of judgments of guilt. *State v. Winton*,

153 Ariz. 302, 736 P.2d 386 (App. Div. 1 1987, nor *State v. Martinez*, 172 Ariz. 437,

837 P.2d 1172, rev. den., cert den 113 S.Ct. 1601, 507 U.S. 992, 123 L.Ed.2d 163

(App. Div. 1 1992).

IV.   Respondent Comm. Richter's Order Denying Petitioner's Motion to Preclude
      Respondent RPI's Alternative Theory That Petitioner Committed the Offense
      "While a Restriction Is Placed on the Person's Driver License or Privilege to
      Drive", was an Abuse of Discretion, or Arbitrary and Capricious, Because
      Respondent RPI Expressly Waived this Theory at the Preliminary Hearing

Rule 13.5, Ariz.R.Crim.P., entitled, "Amendment to the charges...", states in

part:

> b. **Altering the Charges; Amendment to Conform to the Evidence**.
> The preliminary hearing or grand jury indictment limits the trial to the
> specific charge or charges stated in the magistrate's order or grand jury
> indictment. The charge may be amended only to correct mistakes of fact
> or remedy formal or technical defects, unless the defendant consents to
> the amendment. The charging document shall be deemed amended to
> conform to the evidence adduced at any court proceeding. [Emphasis
> supplied]

On December 2, 2014, during the preliminary hearing before Comm. James Rummage, DCA Serden initially argued that Respondent RPI had established probable cause that petitioner committed the Aggravated DUI offense charged in the direct complaint, under the alternative theories, that petitioner's

> ... privilege to drive was revoked and it had a restriction on it at the same time. And so under either one of those theories, the State has presented the Court with sufficient evidence from the Court's probable cause. [RT (12/22/14) at page 46] [Emphasis supplied]

Petitioner responded to DCA Serden's "while restricted" theory arguing that Respondent RPI had established probable cause to believe petitioner's driver license was restricted, pursuant to A.R.S. §28-1402(B), but not "as a result of violating §28-1381 or 28-1382 or under 28-1385"– as required for the crime of Aggravated DUI in violation of A.R.S. §28-1383(A)(1). DCA Serden expressly waived his second alternative theory, stating:

> ... [Y]ou've heard the testimony of Mr. Ruiz [MVD Records Custodian]. ... The Defendant was allowed under certain circumstances to drive under those special restrictions under... 28-1402.

> But the bottom line is, her privilege to drive was still revoked. She's not permitted to drive unless she was driving under those certain circumstances. Whether she was driving under those circumstances or not is irrelevant to these proceedings. The testimony and the evidence is her privilege to drive was revoked. It was revoked before she drove and it was revoked for an additional two years afterwards. That's the bottom line.

> And so the State has provided the Court with a preponderance [sic][probable cause] of the evidence that her privilege to drive was revoked on the date of August 18th, 2011....

35

> \*          \*          \*
>
> To make the Court's job easier, Your Honor, <u>I'm not reiterating the</u> <u>restricted argument.</u> I'm just stating <u>I'm relying [only] on the revocation</u> <u>argument.</u> [RT (12/22/14) at pages 50-52] [Emphasis supplied]

This concession by DCA Serden was binding on Respondent RPI and limited it thereafter at trial to the single theory of revocation that it ultimately asserted at petitioner's preliminary hearing.

## CONCLUSION

The Court of Appeals should accept jurisdiction of this petition for special action and enter an order directing Respondent Comm. Richter to enter an order dismissing the information with prejudice, and vacating any retrial.   In the alternative, with respect to the relief requested, this court should enter an order (1) directing Respondent Comm. Richter to grant petitioner's motion to strike the State's allegation, pursuant to A.R.S. §28-708( C), that petitioner committed the offense while on probation release status for a felony conviction, because the class 6 offenses were designated as class 1 misdemeanor offenses prior to the filing of the criminal case, and (2) directing Respondent Comm. Richter to grant petitioner's motion in *limine* to limit Respondent RPI's theory of the case to aggravated DUI while driver license or privilege revoked, rather than allowing it to argue alternatively, that she committed the offense while her driver license or privilege was restricted, because Respondent RPI expressly waived the latter theory at petitioner's preliminary hearing.

RESPECTFULLY SUBMITTED this ___ day of February, 2015.


/s/ Richard D. Coffinger
RICHARD D. COFFINGER
State Bar ID 003040
Attorney for Petitioner

| ATTACHMENT COVER PAGE | | (ENDORSED)<br>**ELECTRONICALLY FILED** |
|---|---|---|
| **COURT OF APPEALS DIVISION 1** | | |
| STREET ADDRESS: 1501 West Washington | | **Court of Appeals Division 1** |
| MAILING ADDRESS: | | on **Feb 26, 2015 11:28 AM MST** |
| CITY AND ZIP CODE: Phoenix, AZ 85007 | | |
| BRANCH NAME: Court of Appeals Division 1 | | *CLERK OF THE COURT* |
| WEBSITE: www.azcourts.gov/coal | | *Ruth Willingham, Clerk* |
| ATTACHMENT NAME: **APPENDIX - Petition for Special Action: Petitioner's Appendix to Petition for Special Action** | | *By Deputy Clerk:* JT |
| CASE NAME: **Erin Rae Espinosa vs. Virginia Richter** | | CASE NUMBER:<br>**SA-15-0047** |

Please log on to www.TurboCourt.com regularly for updates

Please staple this to your original attachment

AZturboCourt.gov Form Set #1353970

RICHARD D. COFFINGER
Attorney at Law
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID #03040
623-937-9214
623-937-7072 (fax)
r.coffinger@gmail.com

Attorneys for Petitioner

# IN THE COURT OF APPEALS
## DIVISION ONE
## STATE OF ARIZONA

| | | |
|---|---|---|
| **ERIN RAE ESPINOSA,** | ) | NO. |
| | ) | |
| | ) | Maricopa County Superior |
| Petitioner, | ) | Court |
| | ) | No. CR2014-006004-001 DT |
| vs. | ) | |
| | ) | |
| **MARICOPA COUNTY SUPERIOR** | ) | |
| **COURT; and the HON. VIRGINIA** | ) | |
| **RICHTER, Commissioner, and;** | ) | **PETITIONER'S APPENDIX** |
| | ) | **TO PETITION FOR SPECIAL** |
| **STATE OF ARIZONA, ex rel.** | ) | **ACTION** |
| **WILLIAM G. MONTGOMERY,** | ) | |
| **Maricopa County Attorney, real party** | ) | |
| **in interest,** | ) | |
| | ) | |
| Respondents. | ) | |

Item 1

Item 2

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
02/24/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-006004-001 DT                          02/19/2015


                                    CLERK OF THE COURT
COMMISSIONER VIRGINIA L. RICHTER            D. Van Hoorn
                                               Deputy


STATE OF ARIZONA                     RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)              RICHARD D COFFINGER



MINUTE ENTRY


10:31 a.m.

Courtroom CCB 1004

State's Attorney:        Richard Serden
Defendant's Attorney:    Richard Coffinger
Defendant:               Present

Court Reporter, Renee Mobley, is present.

A record of the proceeding is also made by audio and/or videotape.

This is the time set for Oral Argument Motion to Dismiss.

Argument is presented.

For reasons as set forth on the record, and good cause appearing,

IT IS ORDERED denying the Defendant's Motion to Dismiss.

Docket Code 005                  Form R000D                    Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-006004-001 DT                                      02/19/2015

The Court will prepare a written order with its reasoning for denying the Defendant's Motion to Dismiss.

Defense counsel makes an oral Motion to Continue Trial.

Over the State's objection, and good cause appearing,

IT IS ORDERED granting the Defendant's motion.

IT IS FURTHER ORDERED vacating Trial on 02/23/2015 at 10:30 a.m. before this division.

IT IS FURTHER ORDERED setting a Status Conference for 03/19/2015 at 8:15 a.m. before this division.

IT IS FURTHER ORDERED excluding all applicable time limits.

NEW LAST DAY:  04/20/2015 (28 DAYS EXCLUDED)

11:17 a.m.  Matter concludes.

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
01/15/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-006004-001 DT                        01/12/2015

COMMISSIONER VIRGINIA L. RICHTER      CLERK OF THE COURT
                                            D. Van Hoorn
                                               Deputy

STATE OF ARIZONA                        RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)                 RICHARD D COFFINGER

TRIAL MINUTE ENTRY
DAY FOUR

Courtroom CCB 1004

State's Attorney:        Richard Serden
Defendant's Attorney:    Richard Coffinger
Defendant:               Present

Court Reporter, Renee Mobley, is present.

A record of the proceeding is also made by audio and/or videotape.

10:39 a.m. Trial to Jury continues from January 8, 2015.

The jury is not present.

Discussion is held.

Upon the Court's own motion, for reasons as set forth on the record,

    IT IS ORDERED declaring a mistrial and excusing the jury from further consideration of this cause.

Docket Code 012                 Form R012                        Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-006004-001 DT                                    01/12/2015

10:43 a.m. The Jury is present and thanked by the Court and excused from further consideration of this cause. Court remains in session.

Discussion is held.

10:45 a.m. Court stands at recess.

11:34 a.m. Court reconvenes with Defendant and respective Counsel present.

Court Reporter, Renee Mobley, is present.

A record of the proceeding is also made by audio and/or videotape.

IT IS ORDERED setting a Status Conference for 02/09/2015 at 8:15 a.m. before this division.

IT IS FURTHER ORDERED setting a new Trial date for 02/23/2015 at 10:30 a.m. before this division.

Defense counsel addresses the Court in regards to release conditions.

IT IS ORDERED allowing the Defendant to travel to Florida from January 31, 2015 through February 7, 2015.

IT IS FURTHER ORDERED releasing all exhibits.

IT IS FURTHER ORDERED that counsel/party or written designee take immediate possession of all exhibits referenced above.

ISSUED: Exhibit Release Form

FILED: Exhibit worksheet, Trial worksheet

IT IS FURTHER ORDERED affirming prior release conditions.

NEW LAST DAY: 03/11/2015

11:39 a.m. Matter concludes.

# Item 3



ARIZONA
Driver License

Number          B12600232
Expires         10/18/2013
Date of Birth   09/19/1972
Issued          03/08/2011

RESTRICTED
INTERLOCK
ARS 28-1402

**EXHIBIT**

Item 4

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

FILED
MICHAEL K. JEANES, Clerk
By _____
S. Enteman, Deputy

Richard E Serden
Deputy County Attorney
Bar ID #: 012880
301 West Jefferson, 6th Floor
Phoenix, AZ 85003
Telephone: (602) 506-8506
mcaomod@mcao.maricopa.gov
MCAO Firm #: 00032000
*Attorney for Plaintiff*

DR 11011797 - Peoria Police Department
0131529612

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

THE STATE OF ARIZONA,

    Plaintiff,

vs.

ERIN RAE ESPINOSA,

    Defendant.

CE2014-006004-001 DT

INFORMATION

**COUNT 1:** AGGRAVATED DRIVING OR
ACTUAL PHYSICAL CONTROL WHILE
UNDER THE INFLUENCE OF
INTOXICATING LIQUOR OR DRUGS, A
CLASS 4 FELONY (ERIN RAE ESPINOSA)

THE MARICOPA COUNTY ATTORNEY accuses ERIN RAE ESPINOSA, on this date,

charging that in Maricopa County, Arizona:

**COUNT 1:**

ERIN RAE ESPINOSA, on or about August 18, 2011, *did drive or be in actual physical*

*control of a vehicle, while under the influence of intoxicating liquor, any drug, a vapor releasing*

*substance containing a toxic substance or any combination of liquor, drugs or vapor releasing*

substance, while her driver's license or privilege to drive was suspended, cancelled, revoked or refused, or while a restriction is placed on the person's driver's license or privilege to drive as a result of violating A.R.S. § 28-692, 28-694, 28-1381, 28-1382, 28-1383, or 28-1385, in violation of A.R.S. §§ 28-1381(A)(1), 28-1363(A)(1), 28-3001, 28-3304, 28-3305, 28-3315, 13-701, 13-702, and 13-801.

Dated November ___21___, 2014.

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

BY: _____
/s/ Richard E Serden
Deputy County Attorney

sk

Item 5

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
R. Krane, Deputy
1/7/2015 2:05:21 PM
Filing ID 6328300

1 | RICHARD D. COFFINGER
ATTORNEY AT LAW
2 | 6838 N. 58ᵀᴴ DRIVE
GLENDALE, AZ 85301
3 | STATE BAR ID #03040
623-937-9214
4 | 623-937-7072 (FAX)
r.coffinger@gmail.com (email)
5 |
6 | Attorney for Defendant
7 | IN THE SUPERIOR COURT
8 | MARICOPA COUNTY, STATE OF ARIZONA

9 | STATE OF ARIZONA,                      NO.  CR2014-006004-001 DT

10 |                          Plaintiff,    **DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE THE STATE FROM
11 |             vs.                         PRESENTING EVIDENCE OR
ARGUMENT IN SUPPORT OF ITS
12 |                                         ALTERNATIVE THEORY OF THE
CASE THAT SHE COMMITTED
13 | ERIN RAE ESPINOSA,                      AGGRAVATED DUI, IN VIOLATION
OF  A.R.S. §28-1383(A)(1) "WHILE
14 |                                         A RESTRICTION IS PLACED ON
THE PERSON'S DRIVER'S LICENSE
15 |                          Defendant.     OR PRIVILEGE TO DRIVE"**
(Hon. Virginia Richter)
16 |                                         (JT: 1/5/15 at 10:30 a.m.)

17 | Defendant, ERIN RAE ESPINOSA, by and through undersigned counsel, pursuant to Rule

18 | 16.2, Ariz.R.Crim.Pro., 17 A.R.S., and *State v. Rodriquez*, 126 Ariz. 28, 612 P.2d 484 (1980), moves

19 | the court in *limine* to preclude the State from presenting evidence or argument, in support of its

20 | alternative theory of the case, that she committed the aggravated DUI, in violation of A.R.S. §28-

21 | 1383(A)(1) "while a restriction is placed on the person's driver's license or privilege to drive."

22 | Defendant is entitled to this relief, because the State's only theory of the offense, that it has properly

23 | alleged in the case at bar, is that defendant committed the offense **while her driver's license and/or**

24 | **privilege was revoked.**  This motion is based upon the following memorandum of points and

25 | authorities.

26 | MEMORANDUM OF POINTS AND AUTHORITIES

27 | I.    Procedural Discussion

28 | On September 23, 2014, in CR2014-002044-001 (the State's fourth prosecution for the same

1  DUI), Deputy County Attorney (DCA) Richard E. Serden, the assigned trial prosecutor in the case

2  at bar, filed a direct complaint with a Court Information Sheet (CIS) and Release Questionnaire

3  (Form 4 included)(Exhibit 1), charging defendant with the same offense as in the case at bar.  In

4  Section III, entitled "Probable Cause Statement", of the Release Questionnaire, DCA Serden states

5  in the last sentence: "Her [defendant's] driver's privilege was revoked at the time [August 18,

6  2011]." [Emphasis supplied]

7       On November 24, 2014, Hon. Comm. Charles Donofrio, III, granted defendant's motion to

8  dismiss her fourth re-filed DUI case without prejudice, pursuant to Rule 13.1( c).

9       On November 24, 2014, DCA Serden re-filed a one count direct complaint in the case at bar

10  (the State's fifth DUI prosecution) that was identical to the direct complaint that he filed against

11  defendant in the previously dismissed case ( CR2014-002044-001).  That direct complaint also had

12  a CIS and the same Release Questionnaire (Form 4 included) that DCA Serden filed in the fourth

13  DUI prosecution, which again stated under Section III,  "Probable Cause Statement", in the last

14  sentence, "Her [defendant's] driver's privilege was revoked at the time [August 18, 2011]."

15  [Emphasis supplied]

16       On December 22, 2014, Hon. Comm. James Rummage conducted defendant's preliminary

17  hearing on the direct complaint in the case at bar.  At the conclusion of the State's case, DCA Serden

18  initially argued that the State had alternatively established proof of the aggravated DUI charge

19  stating,

20       ... that her privilege to drive was revoked and it had a restriction on it at the same
        time.  And so under either one of those theories, the State has presented the Court
21       with sufficient evidence from the Court's probable cause. [Reporter's Transcript
        (RT) (12/22/14) at page 46] [Emphasis supplied]
22

23  Undersigned defense counsel responded to this argument, stating:

24       ... Well, first of all I think it's important to look at the Form 4 which was prepared
        by Mr. Serden when he filed the direct complaint.  He sort of added a little bit here
25       in his argument– in support of his argument that he has established probable cause.
        He's gone beyond the... privilege was revoked at the time.  That specifically what
26       was alleged in the form 4.  So I want to deal with that one first. [RT (12/22/14) at
        pages 46, 47]
27

   DCA Serden later responded:
28

                                            2

... [Y]ou've heard the testimony of Mr. Ruiz [MVD Records Custodian]. He said the revocation's still enforced. It's enforced for three years. The Defendant was allowed under certain circumstances to drive under those special restrictions under 1314... or 28-1402.

But the bottom line is, <u>her privilege to drive was still revoked</u>. She's not permitted to drive unless she was driving under those certain circumstances<u>. Whether she was driving under those circumstances or not is irrelevant to these proceedings.</u> The testimony and the evidence is <u>her privilege to drive was revoked. It was revoked before she drove and it was revoked for an additional two years afterwards.</u> That's the bottom line.

And so <u>the State has provided the Court with a preponderance of the evidence [sic][probable cause] that her privilege to drive was revoked on the date of August 18th, 2011....</u>
        \*         \*         \*

To make the Court's job easier, Your Honor, <u>I'm not reiterating the restricted argument</u>. I'm just stating <u>I'm relying on the revocation argument</u>. [RT (12/22/14) at pages 50-52] [Emphasis supplied]

Finally, on January 2, 2015, DCA Serden filed The State's Amended Pretrial Statement, which included the following under "Statement of the Case":

The state alleges that on August 18, 2011:

— the defendant was driving or in actual physical control of a motor vehicle in Maricopa County, Arizona
— the defendant was impaired at least to the slightest degree by drugs
— <u>the defendant's privilege to drive in Arizona was revoked</u>. [Emphasis supplied]

The theory of the case advanced by DCA Serden's argument that the State had established probable cause at the preliminary hearing to hold defendant to answer, clearly limited the State to this single theory– rather than an alternative theory that defendant committed the aggravated DUI offense "while a restriction is placed on the person's driver's license or privilege to drive"– at trial. The State is barred from advancing its alternative theory by its "Statement of the Case" in its amended pretrial statement, which the trial judge, the Hon. Comm. Virginia Richter, read to the jury during the jury selection process. DCA Serden again confirmed defendant's revocation status was the State's only theory of the case when he made his opening statement to the jury on January 6, 2015 .

II. Legal Discussion

Rule 13.5(b), Ariz.R.Crim.Pro., states as follows:

3

b.   **Altering the Charges; Amendment to Conform to the Evidence**. The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding. [Emphasis supplied]

In *State v. Sanders*, 205 Ariz. 208, 215, 217, 69 P.3d 434 (App. Div. 1 2003), and *In re Jeremiah T.*, 212 Ariz. 30, 32-34, 126 P.3d 177 (App. Div. 2 2006), the Arizona appellate court has significantly limited the timing and type of amendment the trial court can grant, pursuant to Rule 13.5, Ariz.R.Crim.P. The court in *Sanders* stated in part:

...[A] proposal to amend will be rejected if its substance or timing is such as to undermine or defeat the interest in a fair trial that the [Sixth] Amendment is designed to protect.... A fair trial, as the United States Supreme Court has observed, is "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues *defined in advance of the proceeding*." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(emphasis added).

                \*     \*     \*

In construing [Rule 13.5(b), Ariz.R.Crim.Pro.], our supreme court has stated that the test to determine what amendments are constitutionally permitted is whether the amendment changes the nature of the offense charged or prejudices the defendant in any way. *State v. Bruce*, 125 Ariz. 421, 423, 610 P.2d 55, 57 (1980). If the answer to both is in the negative, then the amendment passes Sixth Amendment scrutiny and qualifies as a merely formal or technical amendment. *Id.* Examples of permissible amendments include changing one digit in the serial number of a television set in a prosecution for receiving stolen property, *State v. Butler*, 9 Ariz.App. 162, 165, 450 P.2d 128, 131 (1969); changing a corporate name from National Hospitalization, Inc. to National Hospital Plan Insurance Agency in a securities fraud proceeding, *State v. Barber*, 133 Ariz. 572, 577, 653 P.2d 29, 34 (App.1982); or changing the date of the offense by one day when defendant knew long before trial of the correct date, *Bruce*, 125 Ariz. at 423, 610 P.2d at 57. The common theme in these cases is that the defect is minor and correcting it does no harm to the defendant's ability to defend himself. [Emphasis supplied]

The more recent reported Arizona appellate court cases construing the trial court's authority to grant a State's motion to amend, pursuant to Rule 13.5(b), Ariz.R.Crim.P., emphasize that such an amendment is not appropriate if "it prejudices the defendant in any way". *Sanders*, supra, and *In re Jeremiah T.*, supra.

III.   Conclusion

Based on the foregoing this court should preclude the State from presenting evidence or argument, in support of its alternative theory of the case, that defendant committed the aggravated

1     DUI, in violation of A.R.S. §28-1383(A)(1) "while a restriction is placed on the person's driver's

2     license or privilege to drive."

3        RESPECTFULLY SUBMITTED this ___7ᵗʰ___ day of January, 2015.

4

5                            RICHARD D. COFFINGER
                             Attorney for Defendant

6

7   COPY of the foregoing hand-delivered this
    7ᵗʰ day of January, 2015, to:

8

9   Richard Serden
    Maricopa County Attorney
    301 W. Jefferson, Ste. 600

10   Phoenix, AZ 85003

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

IN THE _SUPERIOR_ COURT
STATE OF ARIZONA, COUNTY OF MARICOPA

## RELEASE QUESTIONNAIRE

Information to be supplied by a prosecutor or law enforcement officer

STATE OF ARIZONA vs. _ERIN RAE ESPINOSA_   DOB _09/19/72_   CASE / BK. NO. _CR2014-002044-00_

**A.  GENERAL INFORMATION**

1. Charge and class: _AGG DUI, C4F_

2. Offense Location: _26716 N. HIGH DESERT DRIVE, PEORIA_
   Date: _08/18/11_   Time: _1524_

3. Arrest Location: _SAA_
   Date: _____   Time: _____

**B.  CIRCUMSTANCES OF THE OFFENSE**

1. Was a firearm or other weapon used?
   ☐ Yes   ☑ No
   Type of weapon: _____

   Was anyone injured by the defendant?
   ☐ Yes   ☑ No

   Was medical attention necessary?
   ☐ Yes   ☑ No
   Nature of injuries: _____

2. Was anyone threatened by the defendant?
   ☐ Yes   ☑ No
   Nature & extent of threats: _____

3. If property offense, value of property taken or damaged:
   _____

   Was property recovered?
   ☐ Yes   ☐ No

**C.  CIRCUMSTANCES OF THE ARREST**

1. Did the defendant attempt to:
   Avoid arrest?   ☐ Yes   ☑ No
   Resist arrest?   ☐ Yes   ☑ No
   Explain _____

2. Was the defendant armed when arrested?
   ☐ Yes   ☑ No
   Type of weapon: _____

3. Was evidence of the offense found in the defendant's possession?
   ☐ Yes   ☑ No
   Explain: _____

4. Was the defendant under the influence of alcohol or drugs at the time of the offense?
   ☑ Yes   ☐ No   ☐ Unk

**CRIMES OF VIOLENCE**

1. Relationship of defendant to victim:
   _N/A_
   Do the victim and defendant reside together?
   ☐ Yes   ☐ No

2. How was the situation brought to the attention of the police?
   ☐ Victim
   ☑ Third party
   ☐ Officer observed

3. Have there been any previous incidents involving these same parties?
   ☐ Yes   ☑ No
   Explain: _____

4. Is defendant currently the subject of:
   ☐ An order of protection
   ☐ Injunction against harassment
   ☐ Any other court order
   Explain: _____

**D.  OTHER INFORMATION**

1. Is the defendant presently on probation, parole or any other form of release involving other charges or convictions:
   ☐ Yes   ☑ No
   Explain: _____

2. List any prior arrests, convictions, and / or F.T.A.'s:
   _____

3. Is there any indication the defendant is:
   ☐ An alcoholic?   ☐ An addict?
   ☐ Mentally disturbed?   ☐ Physically ill?
   ☐ Any other court order?

4. Is the defendant currently employed?
   ☐ Yes   ☐ No   _UNKNOWN_
   With whom _____
   How long _____
   Nature of employment _____

5. Where does the defendant currently reside?
   _26884 N. 88TH DRIVE_
   _PEORIA AZ. 85383_
   With whom _____
   How long _____

6. What facts indicate the defendant will flee if released
   Explain: _N/A_

7. What facts does the State have to oppose an unsecured release? Explain: _N/A_

EXHIBIT _1_

E.   **DRUG OFFENSES**

1.   If the defendant is considered a major drug dealer, please state the supporting facts:

_____
_____
_____
_____

2.   What quantities and types of illegal drugs are directly involved in this offense?

_____
_____
_____
_____

Approximate monetary value:   $ _____

3.   Was any money seized?

☐ Yes      ☐ No

Amount:   $ _____

4.   Were any automatic weapons in the possession of the defendant at the time of the arrest?

☐ Yes      ☐ No

Quantity and type: _____

**SECTION III: Probable Cause Statement**

1.   Please summarize and include the information which establishes probable cause for the arrest:

OFFICERS WERE DISPATCHED TO ELEMENTARY
SCHOOL WHERE SUSPECT'S VEHICLE HAD
ROLLED BACKWARDS IN PARKING LOT INTO
ANOTHER PARENT'S CAR. SHE PERFORMED
POORLY ON FST'S AND SHOWED SIGNS
AND SYMPTOMS OF IMPAIRMENT. SHE
ADMITTED TAKING KLONAPEN. A BLOOD
TEST SHOWED CLONAZEPAM AND ITS
METABOLITE. HER DRIVER'S PRIVILEGE
WAS REVOKED AT THE TIME.

\*\* If a fugitive arrest, a form IVA must also be completed \*\*

**MARICOPA COUNTY JUSTICE COURT PRECINCTS**

| | | | |
|---|---|---|---|
| 1. | Buckeye | 13. | Northwest Phoenix |
| 2. | Central Phoenix | 14. | Peoria |
| 3. | Chandler | 15. | Scottsdale |
| 4. | East Mesa | 16. | South Mesa / Gilbert |
| 5. | East Phoenix #1 | 17. | South Phoenix |
| 6. | East Phoenix #2 | 18. | Tempe East |
| 7. | Gila Bend | 19. | Tempe West |
| 8. | Glendale | 20. | Tolleson |
| 9. | Maryvale | 21 | West Mesa |
| 10. | North Mesa | 22. | West Phoenix |
| 11. | North Valley | 23. | Wickenburg |
| 12. | Northeast Phoenix | | |

(Please Refer to Precinct Map)

I certify that the information presented is true to the best of my knowledge.

RICHARD E. SERDEN, DCA
ARRESTING OFFICER - SERIAL NUMBER

MCAO
AGENCY / DUTY PHONE NUMBER

09 | 11 | 14
DATE

3099-031  (V-0-99)

Item 6

EXCERPTS FROM

WAYNE RUIZ'S TRIAL TESTIMONY

JANUARY 8, 2015

Q [By Mr. Coffinger] I'm trying to find out, if she could legally drive, after she got that in the Department's eyes?

A Under a very specific set of circumstances.

Q She could lawfully drive under those circumstances?

A Again, very specific circumstances. [Transcript of Proceedings (TP), p. 23, l. 1-7]

          *                    *                  *


Q [By Mr. Coffinger] Would you agree her driving record shows that she had a valid Arizona driver's license on the date of her arrest, if she was in compliance with her requirements?

A I will concede that she had a valid restricted interlock license. [TP, pg. 27. l. 22-p. 28, l. 2]

          *                    *                  *


Q [By Mr. Coffinger] Did MVD ever send Erin a notice of the restrictions for her SIIRDL license? Please review the records. Tell me if you find such a document.

A No. [TP, pg. 28, l. 13-16]

          *                    *                  *


Q.[By Mr. Coffinger] ...You see the bottom, to the backside of the notice, where it says restrictions, you see that word "restrictions"?

A Yes.

Q You see the word "none" after it?

A Yes, I do.

Q How is a person to know that they have restrictions on their driver's license, if the driver's license that the MVD clerk handed them has the word "restrictions none" on the backside of it?

A That restriction requirement, that doesn't refer to the SIIRDL.

Q How does she know that? It just says the word restrictions?

A It would have been explained to her at the counter at the time of issuance. [TP, pg. 30, l. 7-22]

          *                    *                  *

Q. [By Mr. Coffinger] What I'm asking you is does the MVD have a document that we could put on this screen like the document on the revocation telling what the person was told the restrictions were?

A Not to my knowledge. [TP, pg. 32, l. 4-7]

                *                      *                      *


Q [By Mr. Coffinger] So would it be fair to say that to sort of sum it up, with respect to notifying Ms. Espinoza of the restrictions that MVD was placing on her privilege to drive that it was given to her when they gave her the SIIRDL, it is all dependent on the clerk at the MVD office, where she went to tell her those things verbally?

A Yes. [TP, pg. 32, l. 19-25]

2

Item 7

EXCERPTS FROM

ERIN ESPINOSA'S TRIAL TESTIMONY AND
SUBSEQUENT PROCEEDING

JANUARY 8, 2015

Q [By Mr. Coffinger] How did you become aware that there was even this opportunity to have some kind of restored driving privilege?

A When -- well when I received the letter. It says after all the requirements are complete you can get your license back, so I called Mr. Coffinger, because he's a lawyer, and I asked him what that meant. He said it means you have to apply for a SIIRDL driver's license and once you get your SIIRDL driver's license you can drive.

Q You did that based upon my telling you about that possibility?

A Yes.

Q ... [W]hen you were issued the SIIRDL what license place MVD office -- field office did you go to?

A 59th Avenue. I think it is just south of Bell on the right-hand side.

Q How long did it take?

A I'm very quick. There's actually almost never any wait. Maybe might have to wait ten or 15 minutes, but then went I went up to the counter it was done in four or five minutes.

Q Did you have to provide proof that you had obtained SR 22 insurance?

A Yes.

Q Did you have to provide them with proof that you had an ignition interlock device installed?

A Yes, I did.

Q Did you do that because of some order that MVD had compelled you to do or did you do that, because you wanted to get the SIIRDL?

A I did it voluntarily because I wanted to be able to drive again.

Q You don't know the name of the particular employee --

A No. [Reporter's Transcript (RT), p. 15, l. 2-p. 16, l. 13]

        *         *         *         *

Q [by Mr. Coffinger] Based on what was said to you, you believed you could drive?

A Absolutely.

Q Did you believe at that time that there were any restrictions on your license?

A No. Only that even says restriction interlock. That was my restriction. I had to have an interlock and then I could drive. [RT, p. 17, l. 19- p. 18, l. 2]

        *         *         *         *

Q ... [H]ow long had you had your interlock and been driving with it?

A Before I got this license? You can't drive unless you have the interlock.

Q Until the day you got arrested for the DUI.

A Five months.

Q No problems?

A No. [RT, p. 18, l. 4-11]

        *         *         *         *

Q [by Mr. Coffinger] Did anyone from MVD ever tell you that there were restrictions, other than SR 22 and driving a car with an ignition interlock device, that there were restrictions on when and where you could drive or where you could drive --

A No.

Q -- with your SIIRDL?

A No. The whole thing with the agent was a few minutes, and I even -- I said so because I have my interlock and my SIIRDL driver's license I can drive? And they said, yes, and then you know sent me to take my picture then gave me my license. [RT, p. 40, l. 14-25]

        *         *         *         *

Q [by DCA Serden] Did you receive the MVD notice of revocation of your driver's license?

A Yes.

Q Did you read it?

A Yes.

Q You said you talked to Mr. Coffinger -- with Mr. Coffinger. Did you talk to him about that form?

A The letter that was sent to me? Yes, I asked him what it meant.

Q Now on the form right there in plain language can you read that sentence right there?

A "Your driver's privilege has been revoked for a minimum of 36 months."

Q Did you read that line?

A Is that on the back?

Q I'll hand you the exhibit. It is Exhibit Number 21.

A Okay. I'm sorry. Yes, I read this whole thing.

Q Did you read that line?

A Yes. But then when I called Mr. Coffinger he said that as long as I got my special insurance and my SIIRDL license that I would have my driver's license back and that's exactly what he said.

Q Okay. Let's talk about that for a second. So he told you the only restrictions that you needed were the ignition interlock device and to get the SR 22 insurance?

A Yes.

Q And his question to you and your answer -- his question was were those the only two requirements that you thought you had to satisfy in order to drive?

A I believe so, yes.

Q Your answer was yes?

A Yes.

Q This is exhibit number 20. You're familiar with that; correct?

A Yes.

Q Now this is a photostatic copy of your driver's license without the hole punched, the actual driver's license you've got; correct?

A Yes.

Q Now, I mean no disrespect, but this is important: Can you read and understand English?

A Yes.

Q Can you please read what it says right in the middle of the picture of the Grand Canyon on your driver's license?

A "Restricted interlock."

Q What else does it say?

A "ARS 28-1402."

Q I'll make it bigger.

A No, I can read it.

Q Did you ask Mr. Coffinger, whether there were additional restriction under ARS 28-1402?

A No, I didn't.

Q Did you think it incumbent upon yourself to go find out what restrictions were under arrest 28-1402?

A I'm sorry I didn't. I called Mr. Coffinger and I felt he explained it to me fully.

Q Did you ask him -- what you just told me is that what ARS 28-1402 says?

A I never said anything about ARS. When it says restricted interlock, that tells me you are restricted. You just have to have an interlock. [RT, p. 51, l. 6- p. 53, l. 20]

     *         *         *         *

Q [by DCA Serden] 28-1402. It says that it may be issued -- a special ignition interlock -- you see the fourth line here, where it starts with the word -- actually, I'd like you to read what it says here from "issue" until the word "suspended." [RT, p. 54, l. 11- 15]

        \*             \*             \*             \*

Q [by DCA Serden] From this point right here, the word "issue" to the word "suspended" could you please read what that say?

A "Issue -- a special ignition interlock restricted driver's license that only allows a person who is class D or class G license has been suspended."

Q Then at the bottom of that, it has -- you have to have a certified ignition interlock device; correct?

A Yes.

Q Then it says "only as follows," and without going into this only as follows, there are a bunch of specific restrictives or times and places that you can drive; correct?

A Is that a law book? Are you suggesting that I was remiss, because I didn't go to a law library? I called a lawyer, and I asked when I was at the MVD, so because I have this insurance and I have my interlock I can drive now? She said, yes. She never gave any you could go here, but not here. You can go here or – never, never. I would not have been driving under those circumstances, if that is what they told me or if my lawyer had told me. I would not have driven the car.

Q Well did you see that right there?

A Yes, I did. But it says "restricted interlock." I was restricted, because I needed an interlock and then I was fine. "Restricted interlock."

Q So you thought the rest of that was just extraneous and had no meaning or affect?

A I called and I asked a lawyer what it meant.

Q That's not an answer to my question. My question is did you ignore that part, which clearly gives you notice that this is a restricted license, pursuant to ARS 28-1402? Did you ignore that explicit very clear unequivocal information on the front of your driver's license?

A I didn't -- I called a lawyer to ask what it meant. I called a lawyer. Isn't that being proactive enough? [RT, p. 55, l. 20- p. 57, l. 8]

        \*             \*             \*             \*

MR. SERDEN: Can I call Mr. Coffinger to the stand to explain what he told her about the ignition interlock?

THE COURT: No.

MR. SERDEN: That's now the issue. Now she's going to rely on my attorney told me it. I have no responsibility in this case. I mean they are opening this can of worms. He asked the questions, so his statement to her were completely legally wrong. [Emphasis supplied] [RT, p. 73]

Item 8

1

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA,              )
                               )
        Plaintiff,             )
                               )
vs.                            )   No.
                               )   CR2014-006004-001DT
ERIN RAE ESPINOSA,             )
                               )
        Defendant.             )
_____)


Phoenix, Arizona
February 19, 2015
11:09 a.m.


BEFORE:   THE HONORABLE VIRGINIA L. RICHTER, JUDGE PRO TEM


REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

COURT'S DENIAL OF

MOTION TO DISMISS WITH PREJUDICE


Renée A. Mobley, RPR
Certified Reporter
Certificate No. 50500                        (COPY)

2

1                     A P P E A R A N C E S

2

3

4   On Behalf of the State:

5           Mr. Richard E. Serden
            Deputy County Attorney
6

7

8   On Behalf of the Defendant:

            Mr. Richard D. Coffinger
9           Attorney at Law

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PARTIAL TRANSCRIPT OF PROCEEDINGS

1

2

3    THE COURT:  All right.  Thank you.

4    I have reviewed the motions.  I've listened to

5 the arguments.  I've reviewed all of the cases that were

6 cited by counsel.

7    Your Motion to Dismiss with Prejudice is denied.

8    I do believe that my Declaration of a Mistrial

9 was based on manifest necessity.

10    I do believe that Ms. Espinosa waived her

11 attorney-client privilege when she discussed the basis for

12 her believing that her license was not revoked or

13 restricted at the time she was driving, on her

14 conversations with you, which were explored, which were --

15 the door was opened when she testified on direct, and

16 which was explored in cross-examination, without

17 objection.

18    I do not believe that my decision to declare a

19 mistrial was done in haste or that I did not consider any

20 viable alternatives based upon the fact that I do believe

21 that Ms. Espinosa placed your conversations with her at

22 issue on the main issue of her knowledge of the

23 restriction or revocation of her license.

24    I don't believe that the State should have been

25 precluded from calling you as a witness to explore those

1  conversations.

2          I don't think there were any alternatives.  I do

3  believe she waived on the privilege, and that further

4  discussion on that issue would not have provided me with

5  any better resolution of this other than to declare a

6  mistrial.

7          I did give the parties an opportunity to be heard

8  when we came back into chambers on Monday morning.  It was

9  not a decision that I entered in haste.  We concluded the

10  trial on Thursday, and it was not until Monday that I

11  presented my decision to counsel.

12          I do not believe, Mr. Coffinger, based upon

13  Ms. Espinosa's statements in that trial, that it would

14  have been proper for you to have continued as counsel

15  because of the conflict that existed, and the conflict

16  that clearly indicates under the comments of Rule ER 3.7

17  that that would officiate any substantial hardship that

18  might be effected upon Ms. Espinosa by having new counsel

19  when you've obviously been with her throughout the past

20  four years or so that this matter has been pending.

21          So, based upon all of those issues, the Motion to

22  Dismiss is denied.

23          (Partial transcript was concluded at 11:11 a.m.)

24                  * * * * * * *

25

1

2

3

4

5

6

7                        C E R T I F I C A T E

8

9

10          I, RENÉE A. MOBLEY, RPR, a Certified Reporter in

11     the State of Arizona, do hereby certify that the foregoing

12     4 pages constitute a full, true, and accurate transcript

13     of the proceedings had in the foregoing matter, all done

14     to the best of my skill and ability.

15          SIGNED and dated this 20th day of February, 2015.

16

17

18                    /s/   Renée A. Mobley, RPR

19                    RENÉE A. MOBLEY, RPR

20                    Certified Reporter

21                    Certificate No. 50500

22

23

24

25

Item 9

1

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA,                    )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )   No.
                                     )   CR2014-006004-001DT
ERIN RAE ESPINOSA,                   )
                                     )
        Defendant.                   )
_____)


Phoenix, Arizona
January 12, 2015
10:39 a.m.


BEFORE:  THE HONORABLE VIRGINIA L. RICHTER, JUDGE PRO TEM


REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

DECLARATION OF MISTRIAL


Renée A. Mobley, RPR
Certified Reporter
Certificate No. 50500                        (COPY)

1                     A P P E A R A N C E S

2

3

4    On Behalf of the State:

5              Mr. Richard E. Serden
               Deputy County Attorney
6

7

     On Behalf of the Defendant:
8
               Mr. Richard D. Coffinger
9              Attorney at Law

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2

3          THE COURT:  We are back on the record in

4   CR 2014-006004, State of Arizona vs. Erin Rae Espinosa.

5          Let the record reflect the presence of counsel

6   who previously announced as well as Ms. Espinosa.

7          Gentlemen, when we broke on Thursday, Mr. Serden

8   had made a request to call Mr. Coffinger as a witness

9   based upon Ms. Espinosa's testimony.

10         Mr. Serden.

11         MR. SERDEN:  Yes, Your Honor.  The State

12  requested that it be allowed to call Mr. Coffinger for

13  testimony.

14         As the Court is aware, one of the elements the

15  State has to prove is that the defendant knew or should

16  have known her license was revoked and/or restricted.

17         In that circumstance, she testified that based

18  upon a conversation she had had with Mr. Coffinger, she

19  believed that once she got the Special Ignition Interlock

20  Restricted Driver's License, her privilege to drive was no

21  longer revoked.

22         So, based upon that conversation, the State made

23  an off-the-record -- gave an off-the-record comment to the

24  Court and Mr. Coffinger that it was going to request that

25  it be allowed to call Mr. Coffinger to either confirm or

1   conversations.

2          I don't think there were any alternatives.  I do

3   believe she waived on the privilege, and that further

4   discussion on that issue would not have provided me with

5   any better resolution of this other than to declare a

6   mistrial.

7          I did give the parties an opportunity to be heard

8   when we came back into chambers on Monday morning.  It was

9   not a decision that I entered in haste.  We concluded the

10  trial on Thursday, and it was not until Monday that I

11  presented my decision to counsel.

12         I do not believe, Mr. Coffinger, based upon

13  Ms. Espinosa's statements in that trial, that it would

14  have been proper for you to have continued as counsel

15  because of the conflict that existed, and the conflict

16  that clearly indicates under the comments of Rule ER 3.7

17  that that would officiate any substantial hardship that

18  might be effected upon Ms. Espinosa by having new counsel

19  when you've obviously been with her throughout the past

20  four years or so that this matter has been pending.

21         So, based upon all of those issues, the Motion to

22  Dismiss is denied.

23         (Partial transcript was concluded at 11:11 a.m.)

24                  * * * * * * *

25

1    Due to events that have occurred in this matter,
2 we are no longer able to proceed with this trial.  So you
3 will not be required to participate any longer.

4    It's certainly nothing that occurred with any of
5 you.  So that's not an issue.  It is events that have
6 occurred within the courtroom.

7    The Admonition is lifted.  I cannot speak to you
8 about the matter because I may have additional
9 responsibilities in this case, but I will allow the
10 lawyers to come back into the jury room and answer any
11 questions that you might have.

12    So, at this time, you are released.  And thank
13 you very much for all the time and attention you have
14 given to us.  Hopefully, your service as a juror has not
15 been too unpleasant and that you will be willing to help
16 us out in the future again if you are summoned for jury
17 service.

18    So, at this point in time, you are dismissed.
19 The Admonition is lifted.  You are free to talk about the
20 case or not talk about the case, as you wish.

21    The lawyers will come back into the jury room in
22 a few minutes.  If you do not want to stay and talk with
23 them, you do not have to.  You are free to go.  Thank you.

24    (WHEREUPON, the jury was excused and exited the
25 courtroom.)

1          THE COURT:  Please be seated.

2          Ms. Espinosa, you have two options:  Either to

3   continue with Mr. Coffinger as your lawyer and make sure

4   that he does not become a witness in the retrial, or to

5   have him be as a witness and have other counsel represent

6   you in this matter.

7          THE DEFENDANT:  Thank you.

8          THE COURT:  I'll give the lawyers an opportunity

9   to go talk to the jurors because I'm sure they have

10  questions.  And then once you're done, come back and let

11  us know, and we'll pick a new date.

12         MR. COFFINGER:  Thank you, Your Honor.

13         MR. SERDEN:  Thank you, Your Honor.

14         THE COURT:  Court is in recess.

15         (WHEREUPON, a recess ensued from 10:45 a.m. to

16  11:33 a.m.)

17         THE COURT:  We are back on the record in

18  CR 2014-006004.

19         Let the record reflect the presence of counsel

20  who previously announced as well as Ms. Espinosa.

21         Thank you, gentlemen, for taking the time to

22  explain things to the jury.  I'm sure that they were a

23  little taken aback.

24         I have a new last day in this matter of

25  March 11th.  My suggestion would be that we set trial to

1  begin the week of the 23rd of February.

2         MR. COFFINGER:  Your Honor, I was just going to

3  let the Court know that we are considering filing a

4  Petition For Special Action on the sentencing issue on the

5  whether she was on release on a felony.

6         It's your ruling that she was -- that you would

7  not strike -- you denied my Motion to Strike.

8         It hasn't been decided yet, but if I was to say

9  that I was leaning in favor of -- I'm leaning in favor of

10  seeking that because, as you know, if they were to find

11  her guilty and they were to find that she had committed

12  the offense while on release, you have to take her into

13  custody immediately.

14         If we did an appeal, most likely, it would be

15  many, many, many months until there would be a ruling on

16  that.

17         So that is a critical issue.  So to the extent

18  that we can get a little closer to the March date, we can

19  always apply for a stay if we do file the Petition for

20  Special Action in this court first because, as you know,

21  the rules require that it be filed in this court first

22  versus going directly there.

23         But my thinking would be maybe the first week of

24  March because March 11th is the deadline.

25         THE COURT:  I am not here the week of March 9th,

1  which is why I set it two weeks in advance --

2         MR. COFFINGER:  Oh.

3         THE COURT:  -- so we would have plenty of time to

4  finish the trial rather than have to stop early.

5         MR. COFFINGER:  I see.  Then whatever Your Honor

6  decides.

7         MR. SERDEN:  Is Your Honor going to set a status

8  conference to determine counsel, whether he's going to

9  represent her, because if new counsel is brought on -- if

10  the same defense is going to be raised and new counsel is

11  brought on, I seriously doubt that they're going to say:

12  I'm going to be ready for a March -- or a February 23rd

13  trial date.

14         So I would ask the Court to set a status

15  conference --

16         MR. COFFINGER:  No objection.

17         MR. SERDEN:  -- in, say, three weeks.  And then

18  by that time, hopefully, the defendant and her current

19  attorney can decide whether -- how they're going to

20  proceed.

21         THE COURT:  All right.  Any particular day of the

22  week of the 23rd better for counsel than others?

23         MR. COFFINGER:  You're talking about the trial

24  date, now, Your Honor?

25         THE COURT:  The week of the 23rd; right.

1       MR. SERDEN:  That's a Monday?

2       THE COURT:  February 23rd is a Monday.

3       MR. SERDEN:  That's fine, Your Honor.

4       MR. COFFINGER:  That's fine, Your Honor.

5       THE COURT:  All right.  Let's set trial to begin

6  on Monday, February 23rd, at 10:30 a.m.

7       I'm going to set a status conference.  I think

8  that is a good idea just to make sure everybody is ready

9  to go.

10       Let's see here.  What does February 2nd look

11  like?

12       THE BAILIFF:  February 2nd in this division,

13  Judge, is a good day.

14       MR. COFFINGER:  Your Honor, yeah, the

15  defendant -- well, we need to address this, but we

16  previously presented it.  She has plans to be in

17  Disney World from when?

18       THE DEFENDANT:  January.  We're taking the kids

19  from January 31st until February 8th, we'll be back.

20  We'll be back on the 7th.

21       THE COURT:  Okay.  So let's look at February 9th.

22       THE BAILIFF:  It's available.

23       THE COURT:  So let's set a status conference on

24  February 9th on the 8:15 calendar to determine --

25       MR. COFFINGER:  She said 2/9.

1        THE DEFENDANT:  Thank you, Your Honor.

2        THE COURT:  2/9.

3        MR. COFFINGER:  2/9.  And, Your Honor, with

4   respect to the Oral Motion to Modify Release Conditions to

5   allow her to travel to and from the State of Florida for

6   that --

7        MR. SERDEN:  No objection.

8        MR. COFFINGER:  -- preplanned vacation.

9        THE COURT:  Oh, to Florida?  All right.

10       MR. SERDEN:  Oh, it's Disney World?  Not

11  Disneyland.

12       MR. COFFINGER:  It's Disney World.

13       THE COURT:  All right.  So have fun.

14       THE DEFENDANT:  Thank you for that.

15       THE COURT:  The motion to travel to Florida on

16  the February dates stated is granted.

17       MR. SERDEN:  Your Honor, the February 23rd date

18  is at 10:30?

19       THE COURT:  Yes.

20       MR. SERDEN:  Do you want us in here beforehand to

21  just check in and make sure everything is a go?

22       Because usually what the DUI commissioners do is

23  have you appear at 9:00 and then we start jury selection

24  at 10:30.  It's just to say thumbs up or we've got

25  problems.

```
 1          THE COURT:  That sounds fine.
 2          MR. SERDEN:  Okay.
 3          MR. COFFINGER:  So is it at 9:30, the calendar?
 4          MR. SERDEN:  9:00 o'clock.
 5          MR. COFFINGER:  9:00 o'clock.
 6          THE COURT:  9:00 o'clock, yes.
 7          THE CLERK:  What were those travel dates again?
 8          THE COURT:  February --
 9          THE DEFENDANT:  January 31st -- sorry.
10          THE COURT:  Oh, travel dates?
11          THE CLERK:  Yeah.
12          THE COURT:  I thought you said trial dates.
13          THE DEFENDANT:  January 31st to February 7th.
14          THE CLERK:  Thank you.
15          THE COURT:  All right.  Thank you.
16          (WHEREUPON, the proceedings were concluded at
17   11:39 a.m.)
18                    * * * * * * *
19
20
21
22
23
24
25
```

1

2

3

4

5

6

7                         C E R T I F I C A T E

8

9

10        I, RENÉE A. MOBLEY, RPR, a Certified Reporter in

11   the State of Arizona, do hereby certify that the foregoing

12   11 pages constitute a full, true, and accurate transcript

13   of the proceedings had in the foregoing matter, all done

14   to the best of my skill and ability.

15        SIGNED and dated this 16th day of January, 2015.

16

17

18             /s/   Renée A. Mobley, RPR

19             RENÉE A. MOBLEY, RPR

20             Certified Reporter

21             Certificate No. 50500

22

23

24

25

Item 10

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
02/25/2015 8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CR2014-006004-001 DT                                01/23/2015

                                        CLERK OF THE COURT
COMMISSIONER VIRGINIA L. RICHTER             D. Van Hoorn
                                               Deputy

STATE OF ARIZONA                        RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)                 RICHARD D COFFINGER

### RUILING [sic][RULING]


This Court has considered the defendant's Motion to Dismiss, the State's Response, the defendant's Reply and the oral arguments of counsel. The Motion is denied. Retrial is not barred when a mistrial is declared because of manifest necessity. *State v. Givens,* 161 Ariz.278,279, 778P.2d 643,644 (App. 1989).

When the defendant testified, under direct and cross-examination, without objection, she essentially denied that she "knew" her license was revoked because she relied on her attorney's advice that she was able to drive once she obtained her SIIRDL license. By testifying to her reliance upon her attorney's advice she waived her attorney client privilege. *State Farm Mut. Auto. Ins. Co. v. Lee,* 199 Ariz. 52,62, 13 P.3d. 1169,1179 (2000), for the privilege cannot be used as both a sword and a shield. *Accomazzo v. Kemp,* 234 Ariz. 169, 176-177, 319 P.3d 231, 236-237 (App. 2014). Through her testimony, the defendant placed her attorney's advice in issue and created the need for the State to call Mr. Coffinger as a witness, to address the essential element of knowledge. Mr. Coffinger clearly cannot act as both attorney and witness. Thus the Court was left with no alternative but to declare a mistrial.

Manifest necessity does not mean absolute necessity. *Givens* at 282, 647. The defendant's testimony occurred at the close of trial on January 9, 2015. Before reconvening trial on January 12, 2015, the Court addressed its concerns with counsel in chambers. No objections were raised and no alternatives were offered. Before the jury was dismissed the Court's decision was explained to the defendant and she was given an opportunity to be heard. The trial could not proceed with Mr. Coffinger as both her witness and her attorney. The only alternative available, to preserve the defendant's right to an impartial jury, was to declare a mistrial.

Item 11

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
01/12/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-006004-001 DT                                01/07/2015


                                        CLERK OF THE COURT
COMMISSIONER VIRGINIA L. RICHTER              D. Van Hoorn
                                                 Deputy


STATE OF ARIZONA                        RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)                 RICHARD D COFFINGER



MINUTE ENTRY



3:33 p.m.

Courtroom CCB 1004

State's Attorney:        Richard Serden
Defendant's Attorney:    Richard Coffinger
Defendant:               Present

Court Reporter, Renee Mobley, is present.

A record of the proceeding is also made by audio and/or videotape.

This is the time set for Oral Argument on pending motions.

Motions in Limine are argued to the Court.

For reasons as set forth on the record, and good cause appearing,

The Defendant's Motion to Suppress will be taken under advisement.

Docket Code 005                 Form R000D                      Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-006004-001 DT                                01/07/2015

For reasons as set forth on the record, and good cause appearing,

IT IS ORDERED denying the Defendant's Motion to Strike Allegation.

IT IS ORDERED denying the Defendant's Motion to Preclude.

4:24 p.m. Court stands at recess.

4:29 p.m. Court reconvenes with Defendant and respective Counsel present.

Court Reporter, Renee Mobley, is present.

A record of the proceeding is also made by audio and/or videotape.

Discussion is held.

4:42 p.m.  Matter concludes.

Item 12

# SUPERIOR COURT OF THE STATE OF ARIZONA
## MARICOPA COUNTY

FILED

4/25/12    1:30 pm.

MICHAEL K. JEANES, Clerk

By J. Kosaka
J. Kosaka, Deputy

Division        **CRDU1**
Pros Atty       **DCA**
APO             **David Kozak, WRC**

THE STATE OF ARIZONA

vs.

**ERIN RAE ESPINOSA**

**DOB: 09/19/1972**

Case Number: **CR2009-126740-001-DT**

**ORDER OF DISCHARGE FROM PROBATION**

The defendant was formally judged guilty of the crime of **COUNT 1: AGGRAVATED DRIVING OR ACTUAL PHYSICAL CONTROL WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR OR DRUG, A CLASS 6 UNDESIGNATED OFFENSE.**

Probation Start    Date: 09/28/2010      Prob. Length: Two (2) year(s)        Standard

Please see attached Petition for Earned Time Credit.

Dated this 3rd day of February , 20 12      David Kozak        Phone 602-372-5806
DK:jb/02/03/2012                             Probation Officer David Kozak

☒ IT IS ORDERED pursuant to Rule 27.4(A) or (B) that the defendant is hereby discharged from probation in this case effective **February 19, 2012.**

☐ THE COURT NOTES the defendant failed to comply with conditions _____

☒ IT IS ORDERED the undesignated offense: ☐ REMAIN UNDESIGNATED*; ☒ Be Designated a MISDEMEANOR
*Notice: The defendant may request misdemeanor designation for an undesignated offense; see A.R.S. 13-604. All requests must be submitted to the Court in writing and provide detailed reasons to support the request.

Dated this 23rd day of April , 2012      Phemonia L. Miller
                                          Judge of the Superior Court

PHEMONIA L. MILLER
COMMISSIONER/JUDGE PRO TEM

## ORDER OF DISCHARGE FROM PROBATION

cc: Court (Original)      APD File           Defendant              Pros Atty.

                                                                    Rev. 07/19/2011
**APD Macros**

Item 13

# SUPERIOR COURT OF THE STATE OF ARIZONA
## MARICOPA COUNTY

FILED
4/25/12   1:30pm

MICHAEL K. JEANES, Clerk
By _J. Kosaka_
J. Kosaka, Deputy

Division   **CRDU1**
Pros Atty   **DCA**
APO   **David Kozak, WRC**

THE STATE OF ARIZONA

vs.

**ERIN RAE ESPINOSA**

**DOB: 09/19/1972**

Case Number: **CR2009-126740-001-DT**

**ORDER OF DISCHARGE FROM PROBATION**

The defendant was formally judged guilty of the crime of **COUNT 3:  EXTREME AGGRAVATED DRIVING OR ACTUAL PHYSICAL CONTROL WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR OR DRUGS, A CLASS 6 UNDESIGNATED OFFENSE.**

Probation Start   Date: 09/28/2010   Prob. Length: Two (2) year(s)   Standard

Please see attached Petition for Earned Time Credit.

Dated this _3rd_ day of _February_ , 20_12_.

Probation Officer David Kozak   Phone 602-372-5806

DK:jb/02/03/2012

☒ **IT IS ORDERED** pursuant to Rule 27.4(A) or (B) that the defendant is hereby discharged from probation in this case effective February 19, 2012.

☐ **THE COURT NOTES** the defendant failed to comply with conditions _____

☒ **IT IS ORDERED** the undesignated offense: ☐ REMAIN UNDESIGNATED*; ☒ Be Designated a MISDEMEANOR
   *Notice: The defendant may request misdemeanor designation for an undesignated offense; see A.R.S. 13-604.  All requests must be submitted to the Court in writing and provide detailed reasons to support the request.

Dated this _23rd_ day of _April_ , 20 _12_   _Phemonia L. Miller_

Judge of the Superior Court
PHEMONIA L. MILLER
COMMISSIONER/JUDGE PRO TEM

## ORDER OF DISCHARGE FROM PROBATION

cc:  Court (Original)     APD File          Defendant          Pros Atty.

Rev. 07/19/2011

APD Macros