Erin Rae Espinosa v.
Charles L. Ryan, Director of the Arizona Department of Corrections
and
The Attorney General of the State of Arizona


Case No.


Appendix Exhibit "P" to
Petition for a Writ of Habeas Corpus
Under 28 U.S.C. § 2254 by a Person in State Custody
(Non-Death Penalty)

# IN THE SUPREME COURT

## STATE OF ARIZONA

| | | |
|---|---|---|
| **STATE OF ARIZONA,** | ) | Supreme Court No. |
| | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | Court of Appeals |
| **vs.** | ) | No. 1 CA-CR 17-0001 |
| | ) | |
| **ERIN RAE ESPINOSA,** | ) | Maricopa County Superior Court |
| | ) | No. CR2014-006004-001 |
| Appellant. | ) | |
| | ) | |

## APPELLANT'S PETITION FOR REVIEW

Richard D. Coffinger
Bar No. 003040
6838 N. 58th Dr.
Glendale, AŻ 85301
(623) 937-9214
*Co-Counsel for Appellant*

Lawrence Koplow
Bar No. 019853
111 E. Taylor St., Ste. 120
Phoenix, AZ 85004
(602) 494-3444
*Co-Counsel for Appellant*

Appellant, Erin Rae Espinosa, who is a Canadian citizen and has been a lawful permanent resident in the U.S. for more than ten years, petitions the supreme court to review the memorandum decision (MD) in Case No. 1 CA-CR 17-0001.[1] This court has jurisdiction pursuant to Art. VI, § 3 of the Arizona Constitution, A.R.S. § 12-102(A), and Rule 31.21, Ariz.R.Crim.Pro.

### A. Issues Decided by Court of Appeals Presented for Review

1. Did the combined effect of the numerous acts of prosecutorial misconduct violate appellant's right to due process of law?

2. Did the superior err by denying of appellant's motion to strike appellee's sentence enhancement allegation?

3. Did the superior court err by its *sua sponte* mistrial declaration in appellant's first trial?

4. Did the superior court err by denying of appellant's Rule 20 Motion for Judgment of Acquittal, in her second trial?

5. Did the superior court err by denying appellant's motion to suppress her blood drug content test results and her two subsequent motions for reconsideration?

6. Did the superior court err by its denial of appellant's motion to dismiss, with prejudice, or in the alternative, to suppress the state's blood drug content test

---

[1] This petition is the supreme court's third consideration of appellant's case. She sought special action relief on Issues 2 and 3 in 1 CA-SA 15-0047, which denied relief and this court denied review in Case No. **CV 15-0073-**PR, Appendix 1. After the court of appeals denied appellant's motion for release from prison pending appeal, this court denied her special action in **CV 17-0090-SA,** Appendix 2. The supreme court only grants approximately 5% of the petitions for review filed. While appellant's hope for this court to grant hers is statistically irrational, she is apprehensively optimistic, because as described in the first line of Alexander Pope's poem, *An Essay on Man*, "Hope springs eternal in the human breast." Her hope is consistent with the idiom attributed to Shakespeare, "The third time's the charm."

results due to the state's premature destruction, prior to trial, of her blood sample that she requested for her independent chemical analysis?

**Additional Issues Not Decided by the Court of Appeals That the Supreme Court May Need to Decide if Review Is Granted.**

1. Did the superior court err by its erroneous statement in its sentencing minute entry, a copy of which was sent to Immigration and Customs Enforcement (ICE), that she was unlawfully present in the U.S., which statement was not included in the court reporter's sentencing transcript?[2]

2. Did the court of appeals err in failing to grant appellant's motion to file an over-length reply brief [3] and in issuing its disposition by memorandum decision rather than by published opinion.

**Facts Material to Issues Presented**

The MD, in ¶¶ **2-7**, includes a "Factual and Procedural History." Appellant approves the court's statements in it, with the following corrections and supplementation:

> ¶**3** […]The state subsequently learned [that appellant's driver license] was revoked and subject to a number of restrictions. [Neither appellant's driver license nor privilege to drive was revoked by MVD on the date of the charged offense because it had issued her a valid "Special Ignition Interlock Restricted Driver License" (SIIRDL), which the MD subsequently acknowledges in] ¶**24** […] A custodian of MVD records testified that, commencing October 18, 2010, Espinosa's driver license was revoked for 36 months, and on March 8, 2011, Espinosa applied for and received a SIIRDL, which allowed her to drive during the revocation period. [The MD's statement that appellant's driver license is "subject to a number of restrictions" is

---

[2] Appellant raised this argument with appropriate references to the record on appeal, in her OB on page 20 and in her RB on pages 3-6. Appellant is represented in connection with the erroneous notice to ICE as well as her status with the Consulate General of Canada by her retained counsel, Margarita Silva of Silva and Fontes.

[3] The court of appeals granted permission for the parties to file over-length primary briefs (Appendix 3 and 4); however, it never ruled upon appellant's motion to file an over-length RB (Appendix 5), which its MD also fails to cite.

correct; however, the restrictions were pursuant to A.R.S. § 28-1402, and not, as required for an Aggravated DUI violation of A.R.S. 28-1383(A)(1), "while a restriction is placed on a person's driver license or privilege to drive <u>as a result of violating section 28-1381</u>[DUI] <u>or 28-1382</u> [Extreme DUI] <u>or under section 28-1385</u> [90-Day Admin Per Se Driver License Suspension]."]

¶5 Criminal charges against Espinosa were filed, dismissed, and refiled <u>a number of times</u>. [Emphasis Supplied][The MD fails to acknowledge appellee's concession in its AB on page 33: "The case was filed *exactly six* times."][Emphasis in original, appellee's AB, p.33]

¶5 [...] <u>In 2014, after one of the dismissals, the police department destroyed the second vial of Espinosa's blood, which resulted in Espinosa's inability to independently test the blood after she requested to do so in 2016</u>. Espinosa unsuccessfully moved to dismiss—or alternatively to suppress the blood test results—<u>on the purported basis that the state's failure to preserve the second vial violated her due process rights</u>. [[4]] [Emphasis Supplied][The MD fails to acknowledge that appellee filed the charged offense **ten months** after it admittedly, "inadvertently," prematurely sent a Dispo[sition] Notice to the Peoria Police Department directing it to destroy appellant's blood samples, because the charges against her had been dismissed.]

## REASONS WHY THE PETITION SHOULD BE GRANTED

### 1. Petitioner Was Denied Due Process Based on Numerous acts of Prosecutorial Misconduct

---

[4] Appellee's response in the trial court to appellant's motion to dismiss, with prejudice, or, in the alternative, to suppress blood drug content test results based upon appellee's failure to preserve a sample for appellant's independent testing [R.A. 123] stated, in Footnote 1, on page 2:

The state has determined that, after the dismissal without prejudice of one of the former incarnations of this case, specifically CR2013-441390-001, <u>in February, 2014, the Maricopa County Attorney's Office inadvertently sent a disposition notice [R.A. 129] to the Peoria Police Department that the case had been dismissed. The blood kit was apparently destroyed in September, 2014</u>." [Emphasis Supplied]

Appellant presented her prosecutorial misconduct argument in her OB on pages 29-48 and in her RB on pages 11-32. Appellant began each of these arguments with the Arizona cases and other authorities, establishing the special responsibilities of a prosecutor, including her citation of the seminal Arizona cases *Pool v. Superior Court*, 139 Ariz. 98 (1984) and *State v. Roque*, 213 Ariz. 193 (2006).

The MD fails to address appellant's prosecutorial misconduct argument regarding appellee's "deliberate indifference and intentional ignorance" in its errors in charging appellant with the same prescription drug DUI offense six times. The MD also fails to address her arguments on pages 13-14 of her RB, that appellee's prosecutorial misconduct "could have affected" the jury's verdict (*State v. Jones*, 197 Ariz. 290 (2000)). Appellant's argument was based on the fact that, following the mistrial declaration in her first trial, the ten members of the jury panel (which included two yet to be designated alternates) met with the parties' attorneys and informed them that seven of the jurors were "leaning" toward returning a verdict of not guilty and three of them were "leaning" toward returning a verdict of guilty.

## 2. Error Based on Date of Offense Rather than Date of Misdemeanor Designation of Prior Undesignated Offenses

[The MD states in ¶**19.** [...] [Espinosa has waived (her argument) that the superior court erred by denying her motion to strike the state's

sentence enhancement allegation] <u>because she provides no citation to
the record to support her factual assertion [that her prior aggravated
DUI convictions had been designated misdemeanors before the state
filed the current charge.]</u>

***

<u>[…] absent anything in the record indicating the contrary, which
Espinosa does not provide</u> […]

These statements are erroneous. Appellant included the reference to her
motion in her OB on pages 12-13 as **R.A. Item 23**. Her motion included copies of
Comm. Phemonia Miller's April 23, 2012, orders designating both of her prior
related aggravated DUI undesignated offenses as misdemeanors. The MD then
erroneously holds:

> **¶19** […] <u>the applicable date for determining the proper designation of
> her prior felony conviction is the date of the offense in this case, not
> the date the state filed the charges or the sentence enhancement
> allegation.</u> [Emphasis Supplied]

In appellant's opening brief, on page 50, she cites the memorandum decision
in *State of Arizona v. Dawn Michelle Knapp*, No. 1 CA-CR 10-0787, (2011).[5] The
MD's holding on this issue directly conflicts with the *Knapp* MD, which states:

> **¶9** […] <u>because her prior conviction for the 2005 offense was
> designated a misdemeanor before the conviction for the 2009 offense,
> she did not hav[e] a historical prior felony conviction.</u> *See* A.R.S. 13-
> 604(A)("The [undesignated] offense shall be treated for all purposes

---

[5] Appellant cited the *Knapp* memorandum decision "to assist the appellate court in deciding
whether to issue a published opinion" in her case and provided a hyperlink to *Knapp*. Rule 111 of
the Arizona Supreme Court Rules states the following factors which an appellate court must
consider in deciding whether to issue a published opinion: Whether the decision [e]stablishes,
alters, modifies or clarifies a rule of law," whether it "[c]alls attention to a rule of law which
appears to have been generally overlooked," whether it "[c]riticizes existing law," and whether it
"[i]nvolves a legal or factual issue of unique interest or substantial public importance[.]…

as a felony *until* such time as the court may actually enter an order designating the offense as a misdemeanor." [Emphasis Added]]). […] *see also In re Beren*, 178 Ariz. 400, 402 ( …1994)(acknowledging the our supreme court has previously held "that an open-end conviction is deemed a felony conviction for criminal sentencing considerations until the court designates the offense as a misdemeanor." [citations omitted]).

The statutory definition of a "felony" provided is A.R.S. § 13-105(18), which appellant cited in her RB, on page 33. The MD neither cites this statute nor the *Knapp* MD. In spite of appellant's emphasis on the need for a published opinion to resolve the conflict with *Knapp,* the MD concludes with the court's unexplained statement, "We decline [Espinosa's] invitation to publish this decision as an opinion."

### 3.  Error Based Upon *Sua Sponte* Mistrial Declaration in First Trial

The MD states:

¶6 […] Espinosa testified on cross-examination that, based on her trial attorney's advice before the incident, she did not know her driving privileges were restricted beyond the requirement that an ignition interlock device be installed in her vehicle. […] [T]he court declared a mistrial [based upon her finding that it would be "appropriate that the State be allowed" to call her attorney as a witness] and denied Espinosa's request that the case be dismissed with prejudice. [Emphasis Supplied]

In appellant's first trial, she initially testified that she became aware of MVD's authority to issue her a SIIRDL, after she had served the first 90 days of her three year driver license revocation from her attorney. She later testified that

she never received any written notification from MVD of her SIIRDL's destination restrictions and was unaware of them on the date of the alleged offense. [R.T. January 8, 2015, p. 138-139] This testimony was corroborated by appellee's witness MVD Records Custodian Wayne Ruiz, who testified that it is not the policy of MVD to provide persons issued a SIIRDL with a written notice of the destination restrictions, pursuant to A.R.S 28-1402." [*id.*, p. 69]

On cross examination, she testified that she never asked her attorney "whether there were any additional restrictions under ARS 28-1402." The prosecutor then projected a copy of A.R.S. §28-1402 in the view of the jury and appellant, at which time she testified:

> Is that a law book? Are you suggesting that I was remiss, because I didn't go to a law library? I called a lawyer, [...] and I asked when I was at the MVD, so because I have this insurance and I have my interlock I can drive now? She said, yes. She never gave any [...] you could go here, but not here. You can go here or– never, never. I would not have been driving under those circumstances, if that is what they told me or if my lawyer had told me. I would not have driven the car. [...] I called and I asked a lawyer what it meant.
>
> ***
>
> [...] I called a lawyer to ask what it meant. I called a lawyer. Isn't      that being proactive enough? [Emphasis supplied] [RT January 8, 2015, p. 154, l.7-p. 155, l.10]

The superior court's *sua sponte* mistrial declaration was error because other less drastic remedies were not explored and it was granted without a manifest necessity and appellant's consent.

### 4. Denial of Appellant's Rule 20 Motion in Second Trial

The MD states:

¶24 Substantial evidence supports a conclusion that Espinosa's driver license was revoked *and* restricted at the time of the incident.

Appellant's OB states on page 27:

Wayne Ruiz, an ADOT-MVD custodian of records, testified that **on August 18, 2011, the date of her DUI arrest, appellant had a valid driver license and privilege [to drive] that was restricted pursuant to A.R.S. §28-1402** even though her three-year revocation order remained on her MVD driver license record [as required by A.R.S. § 28-1402(D)]. Appellant's defense witness, Richard Schweinsburg, a retired 20-year MVD custodian of records,  also testified that appellant's SIIRDL was valid and he never "heard of this kind of novel interpretation that you're still revoked [even] if you have a driver license." [Id. 159, l. 8-10] [Emphasis Supplied]

Appellant cites *State v. Mitchell*, 136 Ariz. 364 (1983), in her OB, on page 64, and in her RB, on page 41. The MD fails to cite *Mitchell,* which holds that, in

an aggravated DUI charge:

[I]t is the suspension, revocation or refusal of the privilege to drive by the State of Arizona which is the gravamen of the offense… [Emphasis Supplied]

### 5. Error Because the "Good Faith" Exception to Suppression of Appellant's Blood Drug Content Test Was Waived by Appellee's Failure to Present It at Suppression Hearing

The MD states:

¶28 Espinosa argues the court erred in failing to reconsider the denial of her suppression motion. Espinosa appears to repeat her contention that the state waived its good faith exception argument by failing to raise it in response to the motion to suppress or in response to Espinosa's first motion for reconsideration.

¶29 We reject this argument.[6] When the state responded to the motion to suppress, and when Espinosa first moved for reconsideration, our supreme court had yet to publish *Valenzuela* and overturn *Brito* [183 Ariz. 535 (App.Div.1-1995)]. *Brito* was, therefore, good law at the time, and the state would have no reason to argue for application of the good faith exception. By arguing for application of the good faith exception in its post-*Valenzuela* response to Espinosa's second motion for reconsideration, the state properly preserved the issue. [...] [Emphasis Supplied]

Appellant cites *State v. Brita*, 158 Ariz. 121 (1988) on page 65 of her OB and on page 42-45 of her RB, which included her citation of five other cases in accord). Neither appellee's AB nor the MD cite *Brita*. In *Brown v. McClennan*, 239 Ariz. 529 (2016), the companion case decided the same day as *State v. Valenzuela*, 239 Ariz. 299 (2016), the supreme court unanimously stated

¶16 The State also argues that we should apply the good-faith exception to the exclusionary rule to uphold the trial court's ruling.

\*\*\*

But unlike the situation in Valenzuela, the State here waived this argument by failing to raise it until oral argument before this Court. [Emphasis Supplied]

---

[6] The MD does not apply the same standard to appellee's waiver of this argument that it applies to waiver by appellant.

The MD seizes upon this correct statement in *Brown*, in support of its

holding that conflicts with *Brita*. *Brown* would have been of no avail if the

last quoted sentence had concluded with the words following "by failing to

raise it" with the words "at the suppression hearing, which argument it did

not raise until oral argument before this Court."

### 6. Error Based Upon Appellee's Premature Destruction of Appellant's Blood Samples Which Denied Her Due Process Because It Had a Duty to Preserve It Until the Time of Trial

¶34 Because Espinosa had an unfettered opportunity to obtain an independent blood sample for testing, the state did not violate her due process rights by inadvertently destroying the second blood sample. [Emphasis Supplied]

This statement in the MD is erroneous and conflicts with numerous cases by

this court, including its holding in *State v. Kemp*, 168 Ariz. 384 (1981) and *State v.*

*Velasco and Alday* (RPI), 165 Ariz. 480, 487-9 (1990), recon.den., in which the

court stated:

> [3] This court's immersion in the subculture of DUI practice has not been entirely satisfactory.

> \*\*\*

> [4] ...[I]t is one thing to say that the police need not prepare the defendant's case, and it is quite another to say that principles of fundamental fairness permit the police to knowingly destroy or dissipate that which they systematically obtain for their own testing and evidentiary use, especially when they may keep such evidence without any significant burden and are aware the evidence may be of value to the defense. [Emphasis Supplied]

**RESPECTFULLY SUBMITTED** this 11th day of April, 2018.


/signature/ Richard D. Coffinger
RICHARD D. COFFINGER
Co-Counsel for Appellant

# IN THE SUPREME COURT

## STATE OF ARIZONA

| | | |
|---|---|---|
| **STATE OF ARIZONA,** | ) | Supreme Court No. |
| | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | Court of Appeals |
| **vs.** | ) | No. 1 CA-CR 17-0001 |
| | ) | |
| **ERIN RAE ESPINOSA,** | ) | Maricopa County Superior Court |
| | ) | No. CR2014-006004-001 |
| Appellant. | ) | |
| | ) | |

## APPELLANT'S APPENDIX TO ITS PETITION FOR REVIEW

Richard D. Coffinger
Bar No. 003040
6838 N. 58th Dr.
Glendale, AZ 85301
(623) 937-9214
*Co-Counsel for Appellant*

Lawrence Koplow
Bar No.
111 E. Taylor St., Ste. 120
Phoenix, AZ 85004
(602) 494-3444
*Co-Counsel for Appellant*

# TABLE OF CONTENTS

1. Supreme Court Order in Case No. CV-15-0073-PR, Dated September 22, 2015, Denying Petition for Review of Special Action Decision of the Court of Appeals

2. Supreme Court order in CV-17-0090-SA, Dated May 15, 2017, Declining to Accept Jurisdiction of the Petition for Special Action

3. Order in Court of Appeals, Division One, Case 1 CA-CR 17-0001, dated August 30, 2017, Granting Appellant Permission to File an Over-Length Opening Brief **up to 20,000** Words in Length

4. Order in Court of Appeals, Division One, Case 1 CA-CR 17-0001, dated December 12, 2017, Granting Appellant Permission to File an Over-Length Brief **Not to Exceed 26,452** Words

5. Appellant's Over-Length Reply Brief Consisting of 14,917 Words, Submitted on January 25, 2018, in Case 1 CA-CR 17-0001

# Appendix Item 1



SCOTT BALES
CHIEF JUSTICE

JANET JOHNSON
CLERK OF THE COURT

# Supreme Court

STATE OF ARIZONA
ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007-3231

TELEPHONE: (602) 452-3396

September 22, 2015

RE:  **ESPINOSA v HON. RICHTER/STATE ex rel. MONTGOMERY**
Arizona Supreme Court No. CV-15-0073-PR
Court of Appeals, Division One No. 1 CA-SA 15-0047
Maricopa County Superior Court No. CR2014-006004-001

GREETINGS:

The following action was taken by the Supreme Court of the State
of Arizona on September 22, 2015, in regard to the above-
referenced cause:

**ORDERED: Petition for Review of a Special Action Decision of the
Court of Appeals = DENIED.**

Janet Johnson, Clerk

TO:
Richard D Coffinger
Virginia L Richter
Diane Meloche
Ruth Willingham
adc

# Appendix Item 2



SCOTT BALES
CHIEF JUSTICE

JANET JOHNSON
CLERK OF THE COURT

## Supreme Court

STATE OF ARIZONA
ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007-3231

TELEPHONE: (602) 452-3396

May 15, 2017

RE:  **ERIN RAE ESPINOSA v HON. RICHTER/STATE OF ARIZONA**
Arizona Supreme Court No. CV-17-0090-SA
Court of Appeals, Division One No. 1 CA-CR 17-0001
Maricopa County Superior Court No. CR2014-006004-001

GREETINGS:

The following action was taken by the Supreme Court of the State
of Arizona on May 15, 2017, in regard to the above-referenced
cause:

**ORDERED: The Court declines to accept jurisdiction of the
Petition for Special Action.**

Janet Johnson, Clerk

TO:
Richard D Coffinger
Lawrence S Koplow
Virginia L Richter
Joseph T Maziarz
Linley Wilson
Amy M Wood
Hon. Randall M Howe
Hon. Michael K Jeanes
bp

# Appendix Item 3

IN THE

# COURT OF APPEALS

### STATE OF ARIZONA
### DIVISION ONE



DIVISION ONE
FILED: 8/30/17
AMY M. WOOD,
CLERK
BY: RB

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, | ) | Court of Appeals |
| | ) | Division One |
| Appellee, | ) | No. 1 CA-CR 17-0001 |
| | ) | |
| v. | ) | Maricopa County |
| | ) | Superior Court |
| ERIN RAE ESPINOSA, | ) | No. CR2014-006004-001 |
| | ) | |
| Appellant. | ) | DEPARTMENT M |
| | ) | |
| | ) | |

### ORDER STRIKING BRIEF

Presiding Judge Michael J. Brown, and Judges Jennifer B. Campbell and Margaret H. Downie, have considered appellee's motion to strike opening brief, appellant's response and cross-motion to permit appellee to file an overlength brief, and appellee's motion for status update. The court concludes that appellant's opening brief (1) fails to include adequate citations to the record, (2) improperly incorporates by reference arguments made in trial court pleadings and in a related special action proceeding, and (3) improperly cites a memorandum decision in support of one of the arguments. The court also concludes that the facts and legal arguments in this case warrant a brief in excess of 14,000 words. Therefore,

IT IS ORDERED striking the opening brief filed in this matter on July 11, 2017.

IT IS FURTHER ORDERED that appellant may file an opening brief not to exceed 20,000 words on or before September 29, 2017.

IT IS FURTHER ORDERED directing the clerk of this court to reference this order in the electronic case management system.

_____/s/_____
MICHAEL J. BROWN, Presiding Judge

A copy of the foregoing
was sent to:

David Simpson
Richard D Coffinger
Lawrence S Koplow

# Appendix Item 4

IN THE

# COURT OF APPEALS

### STATE OF ARIZONA
### DIVISION ONE



DIVISION ONE
FILED: **12/12/17**
AMY M. WOOD,
CLERK
BY: **RB**

STATE OF ARIZONA,                     )   Court of Appeals
                                      )   Division One
                       Appellee,  )   No. 1 CA-CR 17-0001
                                      )
          v.                          )   Maricopa County
                                      )   Superior Court
ERIN RAE ESPINOSA,                    )   No. CR2014-006004-001
                                      )
                       Appellant.  )
                                      )
_____  )

### ORDER GRANTING MOTION FOR LEAVE TO FILE OVER-LENGTH BRIEF

The court has considered appellee's motion for leave to file an answering brief exceeding the normal word limits permitted by Arizona Rule of Criminal Procedure 31.13(b).

IT IS ORDERED granting the motion and directing the Clerk of this Court to file the tendered brief.

_____/s/_____
ANTHONY MACKEY, Judge Pro Tem

A copy of the foregoing
was sent to:

David Simpson
Richard D Coffinger
Lawrence S Koplow

# Appendix Item 5

# IN THE COURT OF APPEALS

# STATE OF ARIZONA - DIVISION I

| | | |
|---|---|---|
| **STATE OF ARIZONA,** | ) | Court of Appeals |
| | ) | Division One |
| Appellee, | ) | No. 1 CA-CR 17-0001 |
| | ) | |
| | ) | Maricopa County |
| **v.** | ) | Superior Court |
| | ) | No. CR2014-006004-001 |
| **ERIN RAE ESPINOSA,** | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

## APPELLANT'S REPLY BRIEF

Law Office of Richard Coffinger
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID: 003040
r.coffinger@gmail.com
Co-Counsel for Appellant

# TABLE OF CONTENTS

**PAGE**

Table of Contents                                                        i

Statement of the Case                                                    1

Arguments

I.  Appellee's Trial Counsel Committed Numerous Intentional         11
    Acts of Prosecutorial Misconduct, to Gain a Tactical Advantage,
    Which Included His Lack of Candor Toward the Tribunal, That
    When Combined, Violated Appellant's Right to Due Process Of
    Law.

II.  The Superior Court Committed Reversible Error By Denying       32
     Appellant's Motion to Preclude Appellee From Presenting
     at Trial, Argument and Evidence in Support of Its Alternative
     Legal Theory That Appellee Had Waived at Appellant's
     Preliminary Hearing, in Violation of the Doctrine of Judicial
     Estoppel.

III.  The Superior Court Committed Reversible Error by Denying      33
      Appellant's Motion to Strike Appellee's Sentencing
      Enhancement Allegation That She Committed the Charged
      Offense While On Probation For a Prior Felony Offense Because
      Her Prior Class 6 Undesignated Aggravated DUI Offenses
      Were Designated as Misdemeanors Prior to the Date (1)
      Appellee Filed the Charge, and (2) Appellee Filed Its Allegation.

IV.  The Superior Court Committed Reversible Error by Denying       40
     Appellant's (1) Motion for Dismissal, With Prejudice, Based
     Upon the Superior Court's *Sua Sponte* Mistrial Declaration,
     Without Either a Manifest Necessity or Appellant's Consent,
     and (2) Motion For Directed Verdict of Acquittal, Pursuant to
     Rule 20, Ariz.R.Crim.Pro., That She Made in Her Second
     Trial After Appellee Rested Its Case-in-Chief.

i

V.     The Superior Court Committed Reversible Error by Denying          42
       Appellant's Second Motion for Reconsideration of her Motion
       to Suppress Appellee's Drug Content Analysis of her Blood
       Sample Because Appellee Waived Its Alternative Argument,
       Pursuant to A.R.S. §13-3925, by Failing to Preserve This
       Argument in the Superior Court.

VI.    The Superior Court Committed Reversible Error by Denying          45
       Appellant's Motion for Alternative Relief, Including Dismissal
       of the Charge, With Prejudice, Based on Appellee's Violation
       of Its Duty to Collect and Preserve Until Time of Trial, a Sample
       of Her Blood for Her Independent Chemical Analysis.

VII.   The Superior Court Committed Reversible Error by Its              47
       Rulings Relating to the Admission or Preclusion of Evidence,
       Discovery Issues, Jury Instructions, and Motions to Quash
       Subpoenas.

Conclusion                                                              56

# TABLE OF AUTHORITIES

**CASES**                                             **PAGE**

| Case | Page |
|---|---|
| *Alcorta v. State of Texas*, 355 U.S. 28, 78 S.Ct. 103 | 23 |
| *Amos v. Bowen,* 143 Ariz. 324 (1984) | 32 |
| *Baca v. Smith*, 124 Ariz. 353 (1979) | 31, 46 |
| *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629 (1935) | 12, 14 |
| *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528 (1984) | 31 |
| *Curran v. State of Delaware*, 259 F.2d 707 | 23 |
| *Franklin v. Clemett*, 240 Ariz. 587, (App.Div.1, 2016) | 38, 39, 49 |
| *Golder v. Arizona Dept. of Transp., Motor Vehicle Div.*, 170 Ariz. 414, (1993) | 38 |
| *Helge v. Druke and Armstrong RPI*, 136 Ariz. 434, (App.Div.2, 1983) | 48 |
| *Hasten v. State*, 35 Ariz. 427 (1929) | 49, 50 |
| *In re Peasley*, 208 Ariz. 27 (2004) | 51 |
| *In re Sawyer's Petition*, 229 F.2d 805, | 23 |
| *Jones v. Commonwealth of Kentucky*, 97 F.2d 335 | 23 |
| *Lucille v. Dodge*, 197 Ariz. 591, (App.Div.1-   ) | 38 |
| *Naupe v. Illinois,* 360 U.S. 264 (1959) | 14 |
| *McNutt v. Superior Court*, 133 Ariz. 7 (1982) | 32 |
| *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1 | 23 |
| *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340 | 23 |
| *Montaño v. Superior Court*, 149 Ariz. 385 (1986) | 31 |
| *Oshrin v. Coulter*, 142 Ariz. 109 (1984) | 31 |
| *People v. Savvides*, 1 N.Y.2d 554, | 23 |
| *Pointe Resorts, Inc. v. Culbertson*, 158 Ariz. 137 (1988) | 50 |
| *Pool v. Superior Court*, 139 Ariz. 38 (1984) | 11 |
| *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177 | 23 |
| *Scales v. City Court of Mesa*, 122 Ariz. 231 (1970) | 31, 46 |
| *State of New York ex rel. Whitman v. Wilson*, 318 U.S. 688 | 23 |
| *State v. Aleman*, 210 Ariz. 232 (App.Div.2-2005) | 1 |
| *State v. Burns*, 237 Ariz. 1 (2015) | 13 |
| *State v. Barr*, 217 Ariz. 445 (App.Div.1, 2008) | 39 |
| *State v. Brita*, 158 Ariz. 121 (1988) | 42, 44 |
| *State v. Cocio,* 147 Ariz. 277 (1985) | 43 |
| *State v. Dean*, 241 Ariz. 387 (App.Div.2 -2017) | 19 |
| *State v. Diaz*, 223 Ariz. 358 (S.Ct., 2010) | 51 |
| *State v. Duran*, 233 Ariz. 310 (2013) | 52 |

*State v. Ferrari*, 112 Ariz. 324 (1975)     14

*State v. Freeney*, 223 Ariz. 110 (2009)     22

 *State v. Graham* , 176 Minn. 164, 222 N.W. 909 (1929)     50

*State v. Hansen*, 156 Ariz. 291(1988)     15

*State v. Harrison*, 157 Ariz. 184 (App.1988)     31

*State v. Hendrix*, 165 Ariz. 580 (App. Div. 1, 1990)     45

*State v. Hughes*, 193 Ariz. 72 (1998)     28

*State v. Jessen*, 130 Ariz. 1 (1981)     13

*State v. Jones*, 197 Ariz. 290 (2000)     14, 15

*State v. Kemp*, 168 Ariz. 334 (1991)     45, 46

State v. Logan, 200 Ariz. 564 (2001)     55

*State v. Medina*, 232 Ariz. 391 (2013)     12

*State v. Mitchell*, 136 Ariz. 364 (1983)     41

*State v. Mullen*, 168 Ariz. 246 (App. Div. 1, 1990)     45

State v. Munoz, 224 Ariz. 146 (App.2010)     55

*State v. Patterson*, 230 Ariz. 270 (2012)     13

*State v. Ramos*, 235 Ariz. 230 (App.Div.1-2014)     28, 29

*State v. Rogers,* 186 Ariz. 508 (1996)     45

*State v. Roque*, 213 Ariz. 193 (2006)     14

*State v. Sisco*, 238 Ariz. 229 (App. Div. 1, 2015)     45

State v. Slemmer, 170 Ariz. 174 (1991)     55

*State v. Sorkhabi*, 202 Ariz. 450 (App. Div. 1, 2002)     45

*State v. Snyder*, 240 Ariz. 551(App.Div.2-2016)     1

*State v. Superior Court*, 149 Ariz. 279 (1986)     47

*State v. Towery*, 186 Ariz. 168 (1996)     19, 20, 22

*State v. Velasco*, 165 Ariz. 480 (1990)     31, 46

State v. Williams, 144 Ariz. 487 (1985)     16, 17

*United States v. Hasting*, 461 U.S. 499 (1983)     12, 13

*U.S. v. Sayetsitty*, 107 F.3d 1405 (9th Cir.1997)     29

*United States ex rel. Thompson v. Dye*, 3 Cir., 221 F.2d 763     23

*United States ex rel. Almeida v. Baldi*, 3 Cir., 195 F.2d 815     23

*United States ex rel. Montgomery v. Ragen*, D.C., 86 F.Supp.382     23

*Weston v. State*, 49 Ariz. 183 (1937)     49, 50

*White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978     23

## CONSTITUTIONAL PROVISIONS

Ariz. Const. art. II, § 11                                    4
Ariz. Const. art. II, §30                                    21
Ariz. Const. art. VI, § 21                                  4, 6

## STATUTES

A.R.S. § 424.02(A)                                           6
A.R.S. §11-1051(C)                                           3
A.R.S. §11-424.02(a)                                         5
A.R.S. §12-128.01                                          5, 6
A.R.S. §13-105                                           33, 48
A.R.S. §13-702                                              39
A.R.S. §13-708                                           35, 38
A.R.S. §13-3925                                       42, 43, 44
A.R.S. §28-692                                           43, 47
A.R.S. §28-1381                                      17, 31, 47
A.R.S. §28-1382                                             17
A.R.S. §28-1383                                          17, 41
A.R.S. §28-1385                                             17
A.R.S. §28-1401                                          40, 41
A.R.S. §28-1402                                          40, 41

## RULES

Rule 15.6, Arizona Rules of Criminal Procedure              50
Rule 19.1, Arizona Rules of Criminal Procedure          53, 54
Rule 35.1, Arizona Rules of Criminal Procedure              5
Rule 401, Arizona Rules of Evidence                        26
Rule 39(1), Arizona Rules of Civil Procedure                6
Rule 81, Arizona Supreme Court Rules                      4, 5
Rule 91, Arizona Supreme Court Rules                        5
Rule 111, Arizona Supreme Court Rules           34, 35, 36, 37
Supreme Court Administrative Order 2010-91                   3
Arizona Judicial Ethics Advisory Committee, Advisory Opinion   5
06-02 (April 25, 2006).
Canon 3B(8), Code of Judicial Conduct                       6

## OTHER AUTHORITIES

McAuliffe & Wahl, *Arizona Law of Evidence*, Vol. 1, Revised       26
Fourth Edition

*James Nesci*, Arizona DUI Defense: The Law and Practice,       30
Fourth Edition, Lawyers & Judges Publishing, Inc. (2015)

*Arizona Attorney Magazine, June 2006, Volume 43, No. 10*       35, 36

## Statement of the Case

Appellant states, on page 7, of her opening brief, "appellant's brief," that the information appellee filed against her in this case, was its sixth prosecution against her for the same alleged DUI prescription drug offense. Appellee conceded this issue by its statements in its answering brief, "appellee's brief:"

> This case was dismissed and refiled multiple times before it was presented to a jury. [p.5]

> [T]he case was filed *exactly six* times. [p. 33]

In Argument One, on pages 29-31 of appellant's brief, she cites and includes quotes from numerous Arizona appellate court opinions holding that prosecutors have special responsibilities and that they are held to a higher standard of conduct than ordinary attorneys. Although, on page 78 of its brief, appellee recognizes "the need [for attorneys] to follow ethical rules," it waived this issue by failing to address this issue in its brief. In *State v. Snyder*, 240 Ariz. 551, p24-25 (App.Div.2-2016), the court held that the state's failure to address an issue in its answering brief, "constitutes abandonment and waiver of that claim," and further stated "[W]aiver is a procedural concept that courts do not rigidly employ in a mechanical fashion. *State v. Aleman*, 210 Ariz. 232, p. 24, 579 (App.Div.2-2005)." The *Snyder* court further held, "we may employ our discretion when determining whether to address a significant, albeit waived, issue."

One of the ways in which appellee's trial prosecutor failed to satisfy his special responsibilities, by which he is held to a higher standard of conduct than ordinary attorneys, was his unbelievable number of errors in properly charging appellant. These errors included three dismissals based upon grand jury indictment remands and one dismissal of a direct complaint because he failed to file a timely information. As a result of these errors and the decision of the Maricopa County Attorney's Office (MCAO) to request the Peoria City Prosecutor to move for a dismissal of appellant's misdemeanor DUI charged in the Peoria City Court to allow the MCAO to prosecute her for the felony crime of aggravated DUI in the superior court, appellee's current charge against appellant is its **sixth** prosecution against her for the same DUI prescription drug offense.

On page 16 of appellant's brief, she argued that Comm. Richter had erred when she entered an order entitled "Ruiling" [*sic*][Ruling][R.A. 87], that denied appellant's motion for the Master Calendar Judge Joseph Kramer to transfer her case back to a DUI court for retrial [R.A. 80], following Comm. Richter's *sua sponte* declaration of a mistrial, without appellant's consent. Appellant explained in her brief, in footnote 6, on page 16, that she filed this motion because the DUI court judges are only assigned DUI cases and as a result, are more familiar with the DUI statutes and appellate court opinions construing

2

them. Appellant's brief lists numerous instances of Comm. Richter's lack of familiarity with this specialized area of the law. Appellant also cites on page 20 of her brief, Comm. Richter's  erroneous statement in her sentencing minute entry, that petitioner was a person "who is unlawfully present in the United States." Appellant also cited the court reporter's transcript of appellant's sentencing hearing, which clearly reflected that no portion of Comm. Richter's purported statements in her clerk's minute entry relating to appellant's immigration status were ever actually stated by her. The statements in the minute entry were obviously an afterthought by Comm. Richter, that she directed her deputy clerk of court to include in the minute entry in spite of the fact that she had not made these statements during appellant's sentencing [R.A. 223]. Appellant suffered additional prejudice from Comm. Richter's erroneous statements as a result of the fact that Comm. Richter's minute entry further states:

> Pursuant to A.R.S. 11-1051(C) and Supreme Court Administrative Order 2010-91, the clerk shall send a copy of this order to the United States and Immigration Customs Enforcement Agency. [Emphasis Supplied]

Comm. Richter also provided no basis for this false statement, which is clearly refuted by appellant's U.S. Permanent Resident Card [Appellant's Supplemental Appendix Item 2], which verified her legal permanent residency

3

in the U.S. from the date of its issuance on August 3, 2006, that remains valid until October 3, 2022.

The nature and scope of Comm. Richter's errors in appellant's case violated her judicial duty, pursuant to Rule 81, Arizona Supreme Court Rules, entitled "Arizona Code of Judicial Conduct."

This rule includes **Rule 2.5**, entitled, "**Competence, Diligence, and Cooperation,**" which states in subsection (A):

> A judge shall perform judicial and administrative duties competently, diligently, and promptly. [Emphasis Supplied]

The comment to this rule states:

1. Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office.

*** 

3. Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end;

4. In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

5. Article 2, § 11 of the Arizona Constitution requires that "Justice in all cases shall be administered openly, and without unnecessary delay." Article 6, Section 21 provides that, "Every matter submitted to a judge or the superior court for his decision shall be decided within sixty days from the submission thereof. The supreme court shall by rule provide for the speedy disposition of all matters not decides within such period." See

4

> Rule 91(e), Rules of the Supreme Court; A.R.S. §12-128.01. In addition, A.R.S. §11-424.02(a) prohibits a justice of the peace from receiving compensation if a cause "remains pending and undetermined for sixty days after it has been submitted for decision." These and other time requirements are discussed in depth in Arizona Judicial Ethics Advisory Committee, Advisory Opinion 06-02 (April 25, 2006). [A copy of which is attached in the Appendix of this brief as Item 1.] [Emphasis Supplied]

Arizona Supreme Court Rule 81 further provides,

> **Rule 2.7. Responsibility to Decide**
> A judge shall hear and decide matters assigned to the judge... [Emphasis Supplied]

On November 18, 2016, appellant filed her motion to dismiss, with prejudice, appellee's aggravating circumstance allegation based upon the court's release of the second jury after it returned its guilty verdict [R.A. 183]. On November 22, 2016, appellant reminded Comm. Richter that she had not ruled upon this motion in her motion to continue [R.A. 185]. Also, on November 22, 2016, appellee filed its response to appellant's motion to dismiss [R.A. 188]. Since appellant did not file a reply to her motion to dismiss, pursuant to Rule 35.1, Ariz.R.Crim.Pro., her motion became "at issue" on November 25, 2016. As of the date of appellant's filing of this reply brief, **Comm. Richter has not ruled upon appellant's motion to dismiss – which has been "at issue" for a period of over fourteen months.**

The Arizona Supreme Court's Judicial Ethics Advisory Committee's *Advisory Opinion 06-02*, which was filed April 25, 2006, states in part, on page 2,

> Given the complexity of the issues in this opinion, it is helpful at the outset to identify the various laws, rules and canons that relate to the

responsibilities of a judge to conduct the business of a court in a prompt and timely manner. <u>The state constitution states, "Every matter submitted to a judge of the superior court for his decision shall be decided within sixty days from the date of submission thereof. The supreme court shall by rule provide for the speedy disposition of all matters not decided within such period." Article VI § 21 Ariz. Const.</u> This provision is reinforced by A.R.S. § 424.02(A) and 12-128.01 ("the related statues") and under Rule 91(e). Although we will not interpret what constitutes a "submitted matter" under Rule 91(e), we note that the rule has its origins in the 1912 constitution and that as late as 1995, the Arizona legislature had qualified the term "submission" as "[w]here briefs are filed, the action shall not be deemed submitted until the time for filing the briefs has expired." Ariz.R.Civ.Pro. 39(1) (abrogated October 10, 2000). Lastly, Canon 3B(8) of the Code of Judicial Conduct ("the Code"), requires that "A judge shall dispose of all judicial matters promptly, efficiently, and fairly." [Emphasis Supplied]

Therefore, by failing to rule on appellant's motion to dismiss, within 60 days after it became "at issue" on November 25, 2016, Comm. Richter was not entitled to receive her salary after January 25, 2017. Apparently, after that date, through the date of the filing of this reply brief, Comm. Richter has wrongfully "certifie[d] that no cause before such judge or commissioner remains pending and undetermined for sixty days after it has been submitted for decision," as required by A.R.S. 12.128.01.

### Statement of the Facts

Appellee's brief includes on pages 5-7, under the heading "B. *The trial*" references to testimony admitted during appellant's second trial. Appellee states on page 1 of its brief, that during Michelle Murphy's direct examination she

6

testified that she "watched as Appellant 'went into oncoming traffic.'" Appellee also stated on page 1 "that Ms. Murphy later testified on direct examination 'Appellant later made a second turn and again went into oncoming traffic.'" Appellee omitted the fact that, on cross-examination, Ms. Murphy testified that no "vehicles [had] to take any evasive action as a result of [appellant's] driving from the street where she made the right turn until she came to be waiting in line with the parents," because "there was no [...] oncoming traffic." [R.T. 10/18/16, at 68.] On page 6, appellee states [appellant] admitted to taking several doses of clonazepam on the date she was arrested, but claimed she did so as prescribed for treatment of clinical anxiety. ([R.T. 10/25/16] at 38-45.) During this same portion of her direct examination, appellant gave the following additional testimony:

She became aware of her severe anxiety problems when she was growing up, during which time she was always nervous, would get sick to her stomach and did not want to go to school; however, she did not know the name of her emotional disorder. Also, when she was a child, she was abused by someone close to her for many years. When she became an adult, she began seeking medical treatment for her anxiety which included treatment from physicians, including psychiatrists; she began seeing Dr. Jack Hawks, D.O., for her anxiety in 2011 [Id. 37-39.] In August of 2011, her son, Evan, and daughter, Kala, were

enrolled at the West Wing Elementary School in Peoria, Arizona; on August 18, 2011, shortly after the start of the school year, she experienced heightened stress because things got a little busier schedule-wise. She described the way in which her clinical anxiety affected her, stating:

> Sometimes, [but] not often, […] maybe a couple of times a year I'll be perfectly fine [...] The doorbell will ring […] I just have this sheer panic. And there's no one coming after me. The police aren't at my door. I don't owe any bills. But I will just in one split second - panic.
>
> […] I can specifically remember one day I walked into my daughter's bathroom, and there's no window. So if you shut the door, it's dark. And I just shut the door and I sat on the edge of the bathtub for about 45 minutes, […] I was digging my fingers into my hands so badly that for about two hours afterwards there were still marks on my hands. And just for 45 minutes to an hour, I just - - I just prayed and prayed and prayed, God please take this away […]
>
> […] [A] couple of nights ago […] I wake up and it's just before three in the morning, and the reason I woke up is 'cause I was having an anxiety attack while I was sleeping. And I wake up and I can't feel my feet and my legs are numb, and I – I don't have it on today, but I almost always wear a heart rate monitor to check, and I checked my heart rate and it was 212.
>
> So I shook my husband and woke him up, and this has happened before […] and I said, "I think I'm having heart attack. We have to go to the hospital." And he always just says, "You're not having a heart attack. You're having an anxiety attack."
>
>           \*\*\*
>
> And I just kept saying probably 30 times, "They're trying to put me in prison for something I didn't do. They're trying to put me in prison for something I didn't do," and then he starts to cry.

8

Appellant further testified that after Officer Kunde placed her under arrest on August 18, 2011, he took her to the school's principal's office to administer the field sobriety tests to her, which was the same place that she had been taken following her 2009 arrest for aggravated DUI (alcohol), with a person under 15 years of age in the vehicle. As a result of her prior traumatic experience she suffered in the principal's office, she was unable to "[fix] her state of mind. There wasn't any calming down. [She] wasn't doing any deep breathing. [She] wasn't [...] sitting and meditating for 10 minutes...There was no calming down from this." (Id. at 59, Line 9]. Appellant then testified that while the new shoes she was wearing at the time impeded her walking and balance, the fact that she was "panicked" caused her to loose feeling in her feet and her "legs [to] go numb." Appellant compared how she had to hold on to the banister at home when having panic attacks with having to hold on to the car as she walked from the driver's door to the rear of her car.

On page 24 of appellant's brief, she stated:

Appellant was initially not charged with any civil or criminal traffic offenses following her arrest. Officer Kunde then released appellant without booking her and she was given a ride home by the police, because he believed that any charges against her – that might be filed after the DPS drug content test – would be filed in the Peoria City Court [R.T. October 25, 2016, p.111, l.19-15; p.119, l.23-p.120, l.6]

Appellee responds, on page 7, that appellant's third and final supervising probation officer, Adult Probation Officer (APO) David Kozak:

9

Testified that a standard term of probation is "to report any law enforcement contact within 72 hours." (R.T. 10/25/16 at 137.) Appellant did not comply with this requirement. (*id.* at 138, 144.) As a result, Officer Kozak was unaware of the events in this case when he recommended that Appellant's probation be successfully terminated. (*id.* at 138-44.)

APO Kozak further testified during appellee's case in chief at appellant's second jury trial that (1) he has "a caseload for low-risk offenders who don't have a regular face-to-face reporting contact (*id.* 136);" (2) he never met appellant face to face and his only contacts with her were by mail or telephone (id. 138); (3) he never reviewed appellant's terms and conditions of probation with her (*id.* 137); (4) Comm. Passamonte's judgment of guilt and sentence minute entry in connection with appellant's 2009 DUI convictions did not specifically mention the term and condition of appellant's probation which required her to report to her APO within 72 hours after she had any contact with law enforcement (*id.* 142); (5) the Peoria Municipal Court summons issued in connection with appellee's first prosecution against appellant was issued on February 8, 2012, a copy of which was subsequently mailed to appellant (*id.* 144); and (6) APO Kozak filed his application for termination of appellant's probation and misdemeanor designation on February 3, 2012, five days before the summons was issued (*id.* 144); however, he did not send a copy of his application to appellant.

10

**Argument One**

**Appellee's Trial Counsel Committed Numerous Intentional Acts of Prosecutorial Misconduct, to Gain a Tactical Advantage, Which Included His Lack of Candor Toward the Tribunal, That When Combined, Violated Appellant's Right to Due Process Of Law.**

**A. The Special Responsibilities of a Prosecutor**

On page 56 of appellant's brief, she included a quote from *Pool v. Superior Court*, 139 Ariz. 38 (1984), which was one of the cases she cited that established the special responsibilities of prosecutors, by which they are held to a higher standard of conduct than ordinary attorneys. Appellee waived this argument by failing to address it, and the authorities cited by appellant, in its brief. The *Pool* court further stated on this issue:

> Even if the defense had been guilty of serious misconduct, the prosecutor would not have been entitled to engage in abusive, argumentative and harassing conduct. Our system represents a rule of law based upon the principle that officers of the law are bound by and must act within the law, even though the necessity of so doing may put them at a disadvantage in dealing with criminals or those accused of a crime. Any other system is a step which will inevitably lead us, as it has led others, to a society where the worst criminals are often those who govern and administer law. Thus, to paraphrase the words of Justice Sutherland, the prosecutor is not the representative of an ordinary litigant; he is a representative of a government whose obligation to govern fairly is as important as its obligation to govern at all. The prosecutor's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done." Thus, "while he may

11

strike hard blows, he is not at liberty to strike foul ones." It is the prosecutor's duty to refrain from improper methods calculated to produce a wrongful conviction just as it is his duty to use all proper methods to bring about a just conviction. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).  [Emphasis Supplied]

In appellant's opening brief, on pages 29-48, she specified numerous instances of intentional prosecutorial misconduct by appellee's trial counsel, to gain a tactical advantage, which included his lack of candor to the tribunal, that when combined, violated appellant's right to due process of law. Appellee responds on page 8, citing *State v. Medina*, 232 Ariz. 391, 409 ¶ 76 (2013), claiming appellant failed to object to the numerous acts of prosecutorial misconduct, and as a result, that appellant's argument is only subject to fundamental error analysis by this court. In *Medina*, the defendant failed to make an objection in the trial court to the prosecutor's closing argument that he claimed on appeal was prosecutorial misconduct. *Medina* is not dispositive because appellant objected to each of the separate acts of the prosecutorial misconduct by appellee's trial counsel; however, some of her objections were made during the prosecutor's repeated acts of the same prosecutorial misconduct.

Appellee cites *United States v. Hasting*, 461 U.S. 499, 507 (1983), on page 9 of its brief, in which the court stated that victims should be forced "to relieve harrowing experiences now long past"[…]"merely" to chastise what the court

view[s] as prosecutorial overreaching." However, *Hastings* is not dispositive since the charged offense of aggravated DUI, as stated by appellant in footnote 8, on page 22 of her brief, "is a 'victimless' crime." Appellant agrees with appellee's statement on page 10 that prosecutorial misconduct therefore merits reversal only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Burns*, 237 Ariz. 1, 31 ¶ 146 (2015). "The principle," in short, "is no punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *State v. Jessen*, 130 Ariz. 1, 4 (1981)(internal ellipsis omitted.)

Appellant agrees with the holding in *State v. Patterson*, 230 Ariz. 270, 275, p19 (2012), cited on page 12 of appellee's brief, that an appellate court will not reverse a conviction based upon prosecutorial misconduct, unless "there is a reasonable likelihood it could have affected the jury's verdict and denied [the defendant] a fair trial." Appellant has satisfied this standard based upon the fact that more than two thirds of the then ten trial jurors in appellant's initial trial were "leaning" in favor of returning a verdict of not guilty at the time Comm. Richter declared a mistrial. In appellant's double jeopardy motion, R.A. 70, and in her opening brief on page 46 - neither of which were disputed by appellee – appellant set forth the 7:3 split that the initial trial jurors disclosed to trial counsel in the jury room during their interview following Comm. Richter's mistrial declaration. This fact makes it clear

that the subsequent prosecutorial misconduct by appellee's trial counsel was intentional in order to decrease the possibility that the subsequent two juries would return not guilty verdicts.

On pages 11-13 of its brief, appellee cites *Naupe v. Illinois,* 360 U.S. 264, 269 (1959) and *State v. Ferrari*, 112 Ariz. 324, 334 (1975), which cases appellant also cited, on page 36 of her brief. These cases hold that a prosecutor's knowing use of perjured or false testimony is a denial of due process and is reversible error without the necessity of the defendant showing prejudice. The subsequent authorities cited by appellee on this issue, hold that the defendant must show "a reasonable likelihood" that the false statement "could have affected" the jury's verdict. Appellant has satisfied this burden by the uncontested fact that more than two-thirds of the ten then sitting jurors in appellant's first trial were "leaning" in favor of returning a verdict of not guilty. Appellee, on page 11 in footnote 4 and on page 15, cites *State v. Jones*, 197 Ariz. 290, 305, p37 (2000), as authority for its argument that the current applicable standard for reversal of a conviction based upon prosecutorial misconduct is no longer "harmless beyond a reasonable doubt," as held in *State v. Roque*, 213 Ariz. 193, 228, p152 (2006). The language cited by appellee in *Jones*, states:

> Misconduct by the prosecutor during closing arguments may be grounds for reversal because he is a public servant whose primary interest is the pursuit of justice. *See Berger v. United States*, 295 U.S.

78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). <u>To determine whether a prosecutor's remarks are improper</u>,

> <u>[t]he trial court should consider</u> (1) whether the remarks call to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and <u>(2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks. Misconduct alone will not mandate that the defendant be awarded a new trial; such an award is only required when the defendant has been denied a fair trial as a result of the actions of counsel.</u> The trial court is in the best position to determine whether an attorney's remarks require a mistrial, and its decision will not be disturbed absent a plain abuse of discretion.

*State v. Hansen*, 156 Ariz. 291, 296-97, 751 P.2d 951, 956-57 (1988) (citations omitted). Furthermore, <u>prosecutors have wide latitude in presenting their closing arguments to the jury</u>: "excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, <u>limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury</u>." [Citation Omitted] [Emphasis Supplied]

Appellant did not cite *Jones* in her opening brief, however, the above quote from it supports her claim that she is entitled to a reversal of her conviction based upon her prosecutorial misconduct argument.

**B. Appellee willfully engaged in prosecutorial misconduct, by which it gained a tactical advantage, through its deliberate indifference and intentional ignorance of its repeated errors during its three prior grand jury presentations against appellant.**

On pages 31-33 of her opening brief, appellant argued the prejudice she suffered as a result of the increase of the cost, length, and burden of litigation with

15

little or no corresponding benefit resulting from the trial prosecutor's deliberate indifference and intentional ignorance of his repeated errors during the three grand jury presentations against appellant, all of which required remand. Appellee responds on pages 14-15, which he describes as a *"challenge to unspecified 'errors' during grand jury proceedings."* Appellee further complains "But appellant does not explain what these 'errors' were," and, "[t]he State [sic][appellee] cannot intelligently respond to an argument alleging unspecified errors in unspecified portions of the record."

Appellant did in fact explain in her brief both the nature of the prosecutorial misconduct with appropriate references to the record. In footnote 1 on page 7 and on page 32 of her brief, appellant explained that all of the trial prosecutor's grand jury misconduct, that resulted in the grand jury remand orders being entered in the three cases in which she was previously charged by way of indictment, as well as the five other cases in which other defendants charged with the same offense were granted grand jury remand orders, were a result of the fact that during each grand jury presentation, the prosecutor attending the grand jury proceeding failed to instruct the grand jurors on **all** applicable law, including the non-statutory *Williams* element of the charged offense. This prosecutorial misconduct by appellee's grand jury counsel was also explained by appellant in the documents which were the subject of appellant's motion for this court to take judicial notice of appellee's

16

other cases in which it charged appellant with the same offense, that was granted

by Judge Pro Tem Anthony Mackey on May 12, 2017. Therefore, appellee's

assertion that it "[C]annot intelligently respond to an argument alleging

unspecified errors in unspecified portions of the record" is without merit.

Appellee's appellate counsel did in fact acknowledge his understanding of the

basis for all of these remand orders, on page 79 of his brief, by his statement, "To

prove that charge, '[t]he State must show that the driver knew or should have

known that the license has been suspended,' revoked, or restricted." *State v.*

*Williams,* 144 Ariz. 487 (1985).

### C. Prosecutorial misconduct by asserting a legal theory at trial appellee had waived at appellant's preliminary hearing, in violation of the doctrine of judicial estoppel.

On pages 33-35 of her opening brief and on pages 34-36 of her petition for

special action, appellant first presented in this court her argument that appellee's

trial counsel waived its theory that appellant violated A.R.S. 28-1383(A)(1):

> [W]hile a restriction [was] placed on the person's driver license or
> privilege to drive as a result of violating section 28-1381 or 28-1382
> or under section 28-1385."

Appellant also included this argument in her opening brief in connection with her

argument of appellee's trial counsel's prosecutorial misconduct on pages 33-35

and the trial court's reversible error by allowing appellee's waived theory on page 48-49.

In her motion in *limine* to preclude appellee from presenting this waived theory [R.A. 42], appellant argued the legal principle of judicial estoppel, without expressly stating the term, as follows:

> The theory of the case advanced by DCA Serden's argument that the State had established probable cause at the preliminary hearing to hold defendant to answer, clearly limited the State to this single theory– rather than an alternative theory that defendant committed the aggravated DUI offense "while a restriction is placed on the person's driver's license or privilege to drive"– at trial. The State is barred from advancing its alternative theory by its "Statement of the Case" in its amended pretrial statement, which the trial judge, the Hon. Comm. Virginia Richter, read to the jury during the jury selection process. DCA Serden again confirmed defendant's revocation status was the State's only theory of the case when he made his opening statement to the jury on January 6, 2015.

On October 20, 2016, Day 4 of her second jury trial, both of appellant's co-counsel presented her judicial estoppel argument orally, at which time both of them stated that the argument was based upon the legal principle of "judicial estoppel," as follows:

> MR. COFFINGER: It's judicial estoppel, your honor. [R.T. Oct. 20, 2016, P. 86, L. 14-15] [Emphasis Supplied]

> MR. COFFINGER: [...] [A]fter the preliminary hearing before Commissioner Rummage, we filed a pleading...the State was trying to change their theory way back when, after the Commissioner Rummage made a finding of probable cause [...]

MR: KOPLOW: Your Honor, Just for the record, my co-counsel doing that, I would just like to give a cite, State versus Towery, Arizona Supreme Court 186, Arizona 168, recognizing that judicial estoppel can apply in a criminal case as well. They're taking an inconsistent position.

MR. COFFINGER: [I]t [appellant's motion *in limine*] was about having the State limited to the theories that they advanced. You denied it, but the motion had to do with [prohibiting] the prosecutor from going into theories not presented to Commissioner Rummage, who made the finding of probable cause. [...] And Mr. Serden, at the preliminary hearing, said, I'm not going with that [restricted theory] anymore, I'm just going with revoked. That's my only theory. Then you allowed him to go ahead and present both theories. But he was saying she was revoked at the time, and she violated a restriction under 13-1402. [R.T. Oct. 20, 2016, P. 87, L. 5 - P. 88, L. 9 [Emphasis Supplied].

In spite of appellant's clear preservation of her "judicial estoppel" argument in the trial court, appellee argues on page 16 of its brief, 'Appellant, however, does not explain where in the record she "assert[ed]" this theory...". In *State v. Dean*, 241 Ariz. 387 (Div.2 -2017), rev.den., Division II of the Arizona Court of Appeals court stated in footnote 6:

The state claims Dean has forfeited his argument because in his motion to suppress below, he did not make the specific claim that category B, the only category of the warrant found to be valid by the trial court, was not sufficiently particular to authorize a search of a computer. But Dean raised the issue of particularity to the trial court. The state responded to the claim that the warrant did not authorize seizure of the computer. The trial court ruled on this issue of particularity. In short, Dean squarely presented the claim we now address to the trial court and the trial court reached its merits. Once a claim is properly raised below, appellate briefing and argument need not be a precise facisimile of the briefing and argument occurring at

> the trial court level. No purpose would be served by finding the issue
> forfeited. [Citations Omitted]. [Emphasis Supplied]

Appellee argues on pages 22-24 of its brief that "appellant has not satisfied

the two remaining requirements" of *State v. Towery*, 186 Ariz. 168, 182 (1996),

namely that the question involved was the same and that the party that asserted the

inconsistent position was successful in the prior judicial proceedings. Appellee's

argument that the question involved was not the same is without merit. The

question involved at appellant's preliminary hearing was whether the state had

proven probable cause for the magistrate, Comm. James Rummage, to hold

appellant to answer to the charge in the direct complaint. Although the burden of

proof imposed upon appellee at appellant's trial was greater than its burden of

proof at the preliminary hearing, the issue was the same. Therefore, the statement

by appellee's trial counsel at appellant's preliminary hearing, involved the same

issue. Appellee concedes that its trial counsel, at appellant's preliminary hearing,

stated:

> "I'm not reiterating the restricted argument. I am just stating I'm
> relying on the revocation argument.

Thus, appellee waived its theory that appellant committed the aggravated

DUI while her license or privilege to drive was restricted as a result of a

prior DUI conviction at trial by his concession at her preliminary hearing.

Appellee's argument that it wasn't successful at her preliminary hearing

after waiving its "restricted" theory is also without merit, because, although

Comm. Rummage issued his preliminary ruling for a probable cause finding

prior to appellee's express waiver of its "restricted" theory, Comm.

Rummage permitted the parties to make additional argument on the issue

and he did not issue his bindover order holding appellant to answer until

after appellee waived its "restricted" theory. Appellant was charged in this

case by way of an information with the offense of Aggravated DUI, a Class

4 felony. Article 2, Section 30, of the Arizona Constitution, entitled,

"Indictment or information; preliminary examination," states:

> No person shall be prosecuted criminally in any court of record for a
> felony or misdemeanor, otherwise than by information or indictment;
> no person shall be prosecuted for a felony by information without
> having had a preliminary examination before a magistrate or having
> waived such preliminary examination.

Rule 5.4, entitled, "Determination of probable cause," states in

subsection a, entitled, "Holding a defendant to answer," states:

> If it appears from the evidence that there is probable cause to believe
> that an offense has been committed and that the defendant committed
> it, <u>the magistrate shall enter a written order holding the defendant to
> answer before the superior court</u> and, upon request, reconsider the
> conditions of release.

On page 26 of appellee's brief, in footnote 6, it noted appellant's

erroneous reference to R.A. 22. Appellant intended to refer the December

22, 2014, minute entry of Comm. Rummage, which is R.A. 17 instead of

R.A. 22. This minute entry clearly indicates that Comm. Rummage made his final probable cause finding and bindover order holding "defendant to stand trial on the charges as set forth in the Direct Complaint" after all arguments by the parties had been presented to Comm. Rummage. Appellee's citation of *State v. Freeney*, 223 Ariz. 110, 115, p30 n.4 (2009), on page 28 of its brief is misplaced because unlike *Freeney*, appellant is not arguing appellee's "failure to have submitted an element…for a finding of probable cause." Appellant is arguing appellee waived an alternative theory at appellant's preliminary hearing and was therefore prohibited from reasserting this theory at her trial.      Appellee's argument on page 28 of its brief, that appellant did not suffer any prejudice from it being allowed to reassert its waived "restricted" argument at trial, is also without merit because, as stated in *State v. Towery, supra*, on page 35 of appellant's brief:

> [It] is not intended to protect individual litigants, but is invoked to protect the integrity of the judicial process by preventing a litigant from using the courts to gain an unfair advantage.

Similarly, since the three requirements in *Towery, supra*, do not include a requirement of surprise by the prevailing party by being "blindsided" with a new theory at the last minute, appellee's argument that appellant had "ample notice" to prepare a defense for the "restricted" theory of the case is also without merit.

**D. Prosecutorial misconduct which included a lack of candor toward the tribunal during appellant's second trial, by making numerous intentional misstatements of fact and law and, during her third trial, by making a frivolous motion to Call Appellant's Co-Counsel As a Witness For Appellee**

**Appellee's Trial counsel violated his Duty of Candor Toward the Tribunal by His Intentional Misstatements**

Appellant supplements this argument with the following legal authorities:

A conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment, *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed 791; *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, *Curran v. State of Delaware*, 3 Cir., 259 F.2d 707. *See State of New York ex rel. Whitman v. Wilson*, 318 U.S. 688, 63 S.Ct. 840, 87 L.Ed. 1083, and *White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed 1348. *Compare Jones v. Commonwealth of Kentucky*, 6 Cir., 97 F.2d 335, 338, with *In re Sawyer's Petition*, 7 Cir., 229 F.2d 805, 809. *Cf. Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed2d 1. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. *Alcorta v. State of Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d9; *United States ex rel. Thompson v. Dye*, 3 Cir., 221 F.2d 763; *United States ex rel. Almeida v. Baldi*, 3 Cir., 195 F.2d 815, 33 A.L.R.2d 1407; *United States ex rel. Montgomery v. Ragen*, D.C., 86 F.Supp.382. See generally annotation, 2 L.Rd.2d 1575.

The principles that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. As stated by the New York Court of Appeals in a case very similar to this one, *People v. Savvides*, 1 N.Y.2d 554, 557, 154 N.Y.S.2d 885, 887, 136 N.E.2d 853, 854-855:

'It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. *** That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.'

On page 29 of appellee's brief, it includes a portion of the opening statement made by its trial prosecutor on October 18, 2016, during appellant's second jury trial. However, the omitted portions before and after the quoted portions of appellee's trial counsel's opening statement unfairly present the true context of the statement. The omitted portions are as follows:

[In Deputy County Attorney [DCA] Richard Serden's opening statement, he included a summary of the evidence that he intended to present against appellant at trial and a review of the applicable law. He then stated:] Now I've given you all of the State's good news.[1]

Now I'm going to give you the State's bad news. When blood was drawn, two vials of the blood were drawn, and the DPS lab tested one of the vials. The kit was then sent back to Peoria Police Department for storage. For several reasons that are really not germane to what's going on here, the case against the Defendant was filed, dismissed, filed, dismissed, and then refiled. During one of those filings, dismissals, and refilings, a notice was sent to Peoria Police Department that the case was over. It was called a disposition notice.

---

[1] In appellee's brief, on pages 53-54 and 90-98, it argues against appellant's prosecutorial misconduct and the trial court's reversible error arguments, respectively, that "the defense had no legal entitlement to the second vial of blood." The concession by appellee's trial counsel in his opening statement of the "good news/bad news" contradicts this argument.

> As a result of that disposition notice, in September of 2014, the Peoria Police Department destroyed the kit. So about three years after the incident - - for three years the kit was available to be tested. But after that, the Defense requested that they be able to retest the blood, and it was discovered that the kit was no longer available. So that is the bad news, from the State's perspective.

On page 32 of its brief, appellee argues, "Even assuming the prosecutor misstated the number of times the case had been filed, it was clearly an innocent mistake." [Emphasis Supplied].

Appellee's "innocent mistake" argument is refuted by the fact that on October 24, 2016, appellant specifically objected to the intentional misstatement made during appellee's trial counsel's opening statement [R.T. 10/24/16 p.70-71]. Also, as appellant stated, on page 37 of her brief, appellee's trial counsel exacerbated his initial prosecutorial misconduct by refusing the request of appellant's co-counsel, Lawrence Koplow, to inform the jury of his false statement in his opening statement. This conduct is even more reprehensible in light of the fact that, although appellee's trial counsel stated, "I will correct it in front of the jury then," he never fulfilled his promise that he made in open court, out of the presence of the jury.

**E. Prosecutorial misconduct during his rebuttal closing argument in appellant's second jury trial, when he made repeated disparaging comments directed at appellant's counsel.**

Although appellee waived appellant's argument regarding the special responsibility of prosecutors, by which they are held to a higher standard than ordinary attorneys, it argues on page 33 of its brief that the fact that its trial prosecutor intentionally misstated to the jury during his opening statement in appellant's second jury trial, that appellant had been prosecuted three times instead of six times did not prejudice appellant because the exact number of times appellee re-prosecuted appellant as a result of its unbelievable number of charging errors, was immaterial. However, on the same page, appellee concedes, "[I]t was **relevant** that the case was filed more than once – it explained while the blood vial was destroyed," however appellee then argues, "[T]he fact that the case was filed *exactly six* times was immaterial." This statement by appellee reflects its misunderstanding of the requirement of relevancy and materiality, both of which concepts are included in Rule 401, Ariz.R.Evid., which states:

> Evidence is relevant if:
> (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) The fact is of consequence in determining the action[2].

---

[2] *The Arizona Law of Evidence, Volume 1, Revised Fourth Edition*, by the late Daniel J. McAuliffe and Shirley J. (Wahl) McAuliffe, states on page 104, Section 401: 2, "The central concept in the law of evidence is that of relevance. Rule 401 combines in one term what were formerly treated as the two distinct concepts of materiality and relevancy. Materiality was an inquiry into whether the offered evidence was addressed to an issue in the case. The issues in the case are, of course, controlled by the pleadings and the substantive law. [citation omitted] Materiality is captured in Rule 401 by requiring, in order to demonstrate relevance, that the fact sought to be proved be "of consequence to the determination of the action." [citation omitted]

Finally, appellee's implication that, in spite of its trial prosecutor's intentional misstatement to the jury about the number of times it had prosecuted appellant, such misstatement was not prosecutorial misconduct because it was "O.K. for him to lie to the jury" about a marginally relevant matter, is without merit. Also, it certainly did not comply with the heightened standard required of prosecutors.

On pages 35-41, appellee responds to appellant's argument that its trial prosecutor had committed prosecutorial misconduct when he incorrectly stated to the jury, during his rebuttal closing argument, that appellant had stipulated to the reason her second blood vial had been destroyed. Appellee claims that there are two reasons for the rejection of this argument. First, appellee claims that appellant failed to support the argument with adequate citation to the record. On page 39 of her brief, appellant stated that appellee's trial counsel specifically stated, "The parties agreed prior to this being submitted to you that that's what happened [...] now the defense is arguing that it's proof of some great conspiracy." [R.T. 10/26/16, p. 70] Second, the record supports appellant's continuing objection to its trial counsel's misstatement regarding the purported stipulation. Appellant immediately prior to appellee's trial counsel's misstatement that appellant had entered into a stipulation regarding the destruction of her blood sample, Comm. Richter had ordered both of appellant's

co-counsel to refrain from making further objections during appellee's trial counsel's rebuttal argument, at which time the following proceedings occurred:

> MR. KOPLOW: Your Honor, could we have a sidebar, please? Please?"
> MR. COFFINGER: We can't - -
> THE COURT: <u>No sidebar. Objection's overruled</u>. This is argument. <u>Please allow Mr. Serden to make his argument</u>.
> MR. KOPLOW: Your Honor, you're not allowed to misstate the law. This is a misstatement of the law.
> THE COURT: Mr. Koplow, I understand you disagree. <u>Your objection's overruled</u>. [Emphasis Supplied]

Appellee concedes on page 37-38 of its brief, "Defense counsel refused [to accept appellee's proposed stipulation regarding the destruction of appellant's blood sample] because he wanted the prosecutor to testify about 'how do you issue these things, when do you issue these things, what part of your staff is involved in it, how does it get so it says approved by Aaron Harder, did you show it to him, how does that happen? *Id*. 6-7."

On page 51 of its brief, appellee cites *State v. Ramos*, 235 Ariz. 230, 238, p25 (App.Div.1-2014), in support of its argument that its trial prosecutor did not commit prosecutorial misconduct during his rebuttal argument, by stating defense counsel attempted to "distract" or "deflect" the jury's attention. However, the cited language from *Ramos* supports appellant's argument, stating:

> Jury argument that impugns the integrity or honesty of opposing counsel is [ ] improper," *State v. Hughes*, 193 Ariz. 72, 86 ¶59, 969

28

P.2d 1184, 1198 (1998), but "[c]riticism of defense theories and tactics is a proper subject of closing argument," *U.S. v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir.1997). Although some of the prosecutor's comments suggested that defense counsel was attempting to mislead the jury, we cannot say that those statements did more than criticize defense tactics.

Ramos was charged with operating a "chop shop" and theft of means of transportation. He argued that the prosecutor improperly impugned defense counsel during his rebuttal argument. Like appellant, he argued that the prosecutor improperly impugned his defense counsel during rebuttal argument. He argued as follows:

> [T]he prosecutor claimed that defense counsel's focus on the State's failure to prove Ramos owned the property upon which the trailer and stripped vehicle were found was an attempt to divert the jurors from the relevant evidence by raising distractions or "red herrings." The prosecutor also told jurors that defense counsel asked them to speculate and "check [their] common sense at the door."

On pages 41-43 of appellant's brief, she set forth the five separate disparaging comments against her counsel, all of which were objected to by appellant, made by appellee's trial prosecutor during his rebuttal argument that were obviously more egregious than the two comments made by the prosecutor in *Ramos*.

**Prosecutorial misconduct during appellee's rebuttal closing argument in appellant's second jury trial by knowingly making an incorrect statement of law.**

On pages 53-54 of appellee's brief, it argues that its trial prosecutor did not knowingly make "an incorrect statement of the law" when he argued that "there was no 'legal' requirement for the State to preserve a second vial of blood for the defendant." Appellee further argues on page 54 of its brief, "But regardless and as explained in part VI, *infra*, [pages 90-98] the prosecutor's argument accurately stated the governing law." These assertions by appellee in this portion of its brief conflict with its trial prosecutor's "good news/bad news" concession in his opening statement previously cited as well as his reference to the "good news/bad news" in his rebuttal closing argument, when he states:

I'll agree this doesn't look good for the State […] I'm gonna create this nightmare for myself intentionally? […] It was an inadvertent disposal […] but, again they are not entitled to that. [R.T. 10/26/16 p. 70-71] [Emphasis Supplied]

In *Nesci's Arizona DUI Defense: The Law and Practice*, Fourth Edition, Lawyers & Judges Publishing, Inc., 2015, by Tucson, Arizona attorney James Nesci, the author includes the following scholarly discussion of this issue, which includes citation of numerous reported Arizona appellate court opinions, in which the state – as it has done again in this case – sought Arizona's appellate courts to abandon the heightened due process standard in DUI cases that has been the law in Arizona for nearly 50 years, stating:

When the issue of the denial of the right to an independent test arises, the state usually tries to hide behind A.R.S §28-1381(M), which states that the suspect shall be given a reasonable opportunity to arrange for an independent test in addition to the law enforcement blood test. The last sentence reads: "The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." Subsection M is directed at those defendants who simply choose not to obtain an independent test – not at those defendants who are prevented from obtaining the independent test.

***

Under the Arizona and the U.S. Constitution the requirements of due process in DUI cases provide for two separate protections in order to afford the accused a meaningful opportunity to present a defense.

First, a person must be given a reasonably reliable sample of the evidence tested by the state in order to attack the validity of the test reading and hence the presumption of intoxication. *State v. Velasco*, 165 Ariz. 480 (1990); *State v. Harrison*, 157 Ariz. 184 (App.1988); *Baca v. Smith*, 124 Ariz. 353 (1979); *Scales v. City Court of Mesa*, 122 Ariz. 231 (1970).

Second, the due process clause requires the state to provide a fair chance to the accused to gather evidence of her innocence by informing the accused of her right to an independent test. *Montaño v. Superior Court*, 149 Ariz. 385 (1986).

The Arizona Supreme Court has never waivered in its resolve in mandating these protections, even against constant urging by the state to vacate these protections based on *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528 (1984). See, for example, *Oshrin v. Coulter*, 142 Ariz. 109 (1984); *Montaño v. Superior Court, supra* (separate guarantee of due process clause of Arizona Constitution require preservation even in light of *Trombetta*: "Due Process would be offended if, under the aegis of implied consent, we grant to the state a monopoly over objective means of proof").

In *Amos v. Bowen, supra*, and *McNutt v. Superior Court*, 133 Ariz. 7 (1982), the Supreme Court dismissed both cases since the defendants were not afforded an opportunity to obtain an independent blood test within two hours of driving. The delay of over two hours made the test of little or no evidentiary value. In *Amos,* [143 Ariz. 324 (1984) dismissal was mandated even though the delay by the arresting officer was unavoidable and unintentional. [Emphasis Supplied]

On pages 58-59, appellee's claim of prejudice as a result of its trial prosecutor's numerous acts of prosecutorial misconduct "does not hold water" even though it concedes that the prosecutor knew that 'more than two thirds of the jurors in [A]pellant's first trial" were inclined to acquit." In light of this concession, appellee provides no sound basis in opposition to appellant's argument that appellee's trial counsel's prosecutorial misconduct was intentional. However, appellant agrees with appellee's statement, on page 59:

Ethical attorneys routinely resist the temptation to gain illegitimate advantages at trial [...]"

Unfortunately for appellant, her trial prosecutor was not ethical and did not resist this temptation.

**Argument Two**

**The Superior Court Committed Reversible Error by Denying Appellant's Motion to Preclude Appellee from Presenting at Trial, Argument and Evidence in Support of Its Alternative Legal Theory That Appellee Had Waived at Appellant's Preliminary Hearing, in Violation of the Doctrine of Judicial Estoppel.**

Appellee addressed this argument on pages 59-60 of its brief, in which it incorporated by reference its prior argument in response to appellant's prosecutorial argument on pages 16-28.

**Argument III**

> **The Superior Court Committed Reversible Error by Denying Appellant's Motion to Strike Appellee's Sentencing Enhancement Allegation That She Committed the Charged Offense While On Probation For a Prior Felony Offense Because Her Prior Class 6 Undesignated Aggravated DUI Offenses Were Designated as Misdemeanors Prior to the Date (1) Appellee Filed the Charge, and (2) Appellee Filed Its Allegation.**

A.R.S. § 13-105(18) states:

In this title, unless the context otherwise requires: […]

(18) "Felony" means an offense for which a sentence to a term of imprisonment in the custody of the state department of corrections is authorized by any law of the state.

Based upon this definition, once appellant's undesignated Class 6 offenses were designated as misdemeanors, they could no longer be treated as "felony" offenses because following misdemeanor designation, the offenses were no longer offenses "for which a sentence to a term of imprisonment in the custody of the state department of corrections is authorized by any law of this state."

In appellant's opening brief, on page 50, she cited this court's memorandum decision in *State of Arizona v. Dawn Michelle Knapp*, No. 1 CA-CR 10-0787, filed

October 20, 2011. Appellant stated that the reason she cited the *Knapp* memorandum decision was "to assist the appellate court in deciding whether to issue a published opinion" in her case and appellant provided a hyperlink to the decision. Appellant's opening brief further states, on pages 50-51:

> [Rule 111 of the Arizona Supreme Court Rules] provides a list of factors which this court must consider when deciding whether to issue a published opinion. These include whether the decision [e]stablishes, alters, modifies or clarifies a rule of law," whether is "[c]alls attention to a rule of law which appears to have been generally overlooked," whether it "[c]riticizes existing law," and whether it "[i]nvolves a legal or factual issue of unique interest or substantial public importance[.]" Ariz. Sup. Ct. R. 111(b).

In appellee's Motion to Strike [appellant's] Second Opening Brief, filed September 6, 2017, appellee states on page 3:

> …while Appellant now lists the four factors which this Court must consider when deciding whether to issue a published opinion under Ariz. Sup. Ct. R. 111(b), she does not analyze the factors or explain why publication would be appropriate in this case. (O.B. at 50-51)

The issue presented in the *Knapp* decision is of profound importance to the bench and bar that have had to repeatedly deal with determining whether a prior Class 6 undesignated offense may be treated as a sentence enhancement felony conviction when the offense was designated a misdemeanor after the date of the defendant's alleged commission of the subsequent offense but prior to the sentencing in the subsequent case. In appellant's case, the superior court agreed with appellee that appellant could be subjected to a mandatory sentencing

enhancement for the commission of the present offense while on felony probation, pursuant to A.R.S. § 13-708(A), even though her prior offense had been designated a misdemeanor (1) prior to appellee's filing of the present charge, (2) and prior to appellee's filing of its sentence enhancement allegation, and (3) prior to appellant's sentencing in the subsequent case. This court, in the *Knapp* memorandum decision, ruled that the superior court committed reversible error in sentencing the defendant under the similar sentence enhancement allegation of having been convicted of a historical prior felony because Knapp's prior Class 6 undesignated offense had been designated a misdemeanor prior to her conviction in her subsequent case. In light of the limitation of citing memorandum decisions provided in Supreme Court Rule 111, appellant was unable to cite the *Knapp* memorandum decision to Comm. Richter. The importance of this issue, which has not yet been resolved in a published opinion, provides a strong basis for this court issuing a published opinion in this case. Such an opinion would preclude a court from ever again allowing appellee to obtain sentence enhancement based on a defendant's prior Class 6 undesignated conviction in a subsequent prosecution, if the prior offense was designated a Class 1 misdemeanor after the date of the commission of the subsequent offense but prior to the sentencing on the subsequent offense.

The June 2006 issue of the *Arizona Attorney* magazine, (Volume 42, Number 10), included several articles on memorandum decisions. The first article,

entitled, "The Secret History of Memo Decisions," was co-authored by retired Arizona Court of Appeals, Division One, Judge, the Hon. Donn G. Kessler, and by Thomas L. Hudson, Esq., of the Phoenix law firm of Osborne Maledon PA. These co-authors presented respective "con" and "pro" positions on the then proposed amendment to Arizona Supreme Court Rule 111 that would allow citation of memorandum decisions as persuasive but not controlling. The second article, was written by appellant's undersigned co-counsel, entitled, "Does the Honor System Separate the Wheat from the Chaff?"

Mr. Hudson's "pro" article on the proposed rule change began as follows:

> While conducting research in connection with a somewhat novel issue, you are unable to find any published decision on point, but you stumble across a memorandum decision from the Arizona Court of Appeals that squarely addresses your issue. What do you do? You would like to tell the judge about the decision. Your client would like you to tell the judge about it. The judge would even like you to tell her about it. But Arizona's current rules concerning the citation of memoranda decisions – among the strictest in the nation – flatly prohibit you from mentioning the case to the judge. [Footnote omitted] [Emphasis Supplied]

Appellant's undersigned co-counsel experienced the precise frustration described by Mr. Hudson in his hypothetical, because he was unable to cite this court's *Knapp* memorandum decision to Comm. Richter. However, thankfully, due to the Arizona Supreme Court's amendment to Rule 11, Appellant is permitted to

cite it to this court, "to assist the appellate court in deciding whether to issue a published opinion."

Since the *Knapp* court resolved an issue of first impression in Arizona, appellant argues that the court's ruling should have been by way of a published opinion rather than a memorandum decision.

Appellant's undersigned co-counsel addressed this precise issue in his article, which begins as follows:

> ...Does the published opinion rule based on the honor system effectively separate the wheat from the chaff?

> **The Published Opinion Rule**

> In 1985, the Supreme Court rule was renumbered as current Rule 111. It states in part:

>> **(b) When disposition to be by opinion.** *Dispositions of matters before the court requiring a written decision shall be by written opinion when a majority of the judges acting determine that it:*
>> 1. *Establishes*, alters, modifies, *or clarifies a rule of law,* or
>> 2. Calls attention to a rule of law which appears to have been generally overlooked, or
>> 3. Criticizes existing law, or
>> 4. Involves a legal or factual issue of unique interest or substantial public importance, or if the disposition of matter is accompanied by a separate concurring or dissenting expression, and the author of such separate expression desires that it be published, then the decision shall be by opinion. [Emphasis Supplied]

> Because an appellate court's disposition of all matters presenting an issue of first impression *a fortiori* "establishes...a rule of law," all such dispositions should be by a published opinion. Every appellate

court disposition that reverses the judgment, order or decision of a
lower court or agency *a fortiori*, clarifies a rule of law.

In spite of the clear mandate of the rule, currently many such cases are
resolved in memorandum decisions. The appellate judges are on the
honor system to follow the rule, and the workload considerations
described by Judge Kessler can make it difficult for even the most
conscientious judge to commit the extra time and effort necessary to
write a published opinion in such cases. He or she could simply
rationalize that, although the case presents an issue of first impression,
it is not important enough to be published, in spite of the rules
mandate. [Emphasis Supplied]

On page 62-63 of its brief, appellee presents its "backward-looking" "forward-looking" argument that the court should adopt separate standards for whether a person is convicted of a "felony" for sentence enhancement purposes, depending upon whether the state is seeking sentence enhancement for a felony pursuant to A.R.S. §§ 13-708(C) or 604(A). Statutes relating to the same subject matter should be read *in pari materia,* to determine legislative      *See Golder v. Arizona Dept. of Transp., Motor Vehicle Div*., 170 Ariz. 414, 416 (1993) *Lucille v. Dodge*, 197 Ariz. 591, 596 p13 (App.Div.1-   )

On page 107 of its brief, appellee cites the civil, tort motor vehicle case of *Franklin v. Clemett*, 240 Ariz. 587, ¶26 (App.Div.1, 2016),   in response to appellant's sub-argument in Argument VII, that the trial court committed reversible error by denying appellant's requested jury instruction on the meaning of the term "under the influence." Appellee's proposal for this court to establish separate meanings for the term "felony conviction" as used in the various

38

aggravating circumstance sentence enhancement statutes, depending upon whether it is "backward looking" or "forward looking," violates the *Franklin* holding that the plaintiff "has not demonstrated that this common understanding [of the meaning of the word or phrase at issue] differs depending on its context." Appellee's argument based on *State v. Barr*, 217 Ariz. 445 (App.Div.1, 2008), is also without merit. In *Barr*, the defendant was convicted of child molestation by furnishing harmful items to a minor. The *Barr* court stated:

> Barr also asserts that he should be granted relief because the offense that is the subject of his 1993 conviction was subsequently reduced to a misdemeanor. <u>The order designating the offense as a misdemeanor was entered on May 5, 2006</u>. Pursuant to A.R.S. 13-702(G)(Supp.2006), an undesignated offense "shall be treated as a felony for all purposes until such time as the court may actually enter an order designating the offense a misdemeanor." <u>Consequently, the trial court was correct in treating Barr's 1993 conviction as a felony for sentencing purposes when imposing sentence in the instant case on March 16, 2006</u>. [Footnote Omitted] [Emphasis Supplied]

Unlike the defendant in *Barr, supra*, whose misdemeanor designation did not occur until *after* he was sentenced for his subsequent conviction, appellant's misdemeanor designation occurred *before* she was sentenced for her subsequent conviction.

**Argument Four**

> **The Superior Court Committed Reversible Error by Denying Appellant's (1) Motion for Dismissal, With Prejudice, Based Upon the Superior Court's *Sua Sponte* Mistrial Declaration, Without Either a Manifest Necessity or Appellant's Consent, and (2) Motion For Directed Verdict of Acquittal, Pursuant to Rule 20, Ariz.R.Crim.Pro., That She Made in Her Second Trial After Appellee Rested Its Case-in-Chief.**

On page 79 of its brief, appellee argues:

> Here, as the trial court accurately summarized, Appellant "essentially denied that she 'knew' her license was revoked because she relied on her attorney's advice that she was able to drive once she obtained her SIIRDL license.

Like appellee's trial counsel and Comm. Richter, appellee's appellate counsel ignores the fact that, on the date of appellant's DUI arrest, the revocation of appellant's driver license and privilege was not "revoked" by ADOT-MVD, because *it had issued her a valid SIIRDL*. Appellee conceded this issue in its brief, on page 5, stating:

> [...] Appellant had a restricted privilege to drive with a special ignition interlock restricted driver license ("SIIRDL").

On page 27 of her brief, appellant summarized the testimony of the MVD records custodians that testified at her second trial, as follows:

> Wayne Ruiz, an ADOT-MVD custodian of records, testified that on August 18, 2011, the date of her DUI arrest, appellant had a valid driver license and privilege that was restricted pursuant to A.R.S. §§ 28-1401 and 1402, <u>even though her three-year revocation order remained on her ADOT MVD driver license record.</u> [R.T. October 20, 2016, p. 115, l. 19 – p. 116, l. 11] Appellant called as a defense

witness, retired MVD custodian of records Richard Schweinsburg, who testified that he recently retired from ADOT-MVD after a 20-year career. His job title during the final seven years of his employment was co-custodian of records for MVD and head of the ignition interlock section. Mr. Schweinsburg further testified during his DMV employment, he had testified hundreds of times as to the status of persons' driver licenses. [Id. p. 140, l. 7- p.143, l. 18] Mr. Schweinsburg testified that he concurred with Agent Ruiz's testimony that, on the date of her DUI arrest, appellant had a valid SIIRDL that was restricted pursuant to A.R.S. §§ 28-1401-02 and not for a DUI conviction. He also testified that during his 20-year MVD employment, he had never "heard of this kind of novel interpretation that you're still revoked [even] if you have a driver license." [Id. 159, l. 8-10] [Emphasis Supplied]

On page 64 of her brief, appellant cites *State v. Mitchell*, 136 Ariz. 364 (1983), which held that:

> We can thus conclude that while the piece of paper designated a "license" may be evidence of the privilege granted by the statutes to drive on the state's highways, it is the suspension, revocation or refusal of the privilege to drive by the State of Arizona which is the gravamen of the offense....
>
> *            *            *
>
> We therefore hold that the word "license" as used in A.R.S. §28-[1383(A)(1)] refers to the privilege granted by the State of Arizona to use its public highways. It necessarily follows that only the State of Arizona can revoke, suspend or refuse that privilege.

Appellee's brief fails to cite *Mitchell, supra*, or address its holding and therefore, it has also conceded this issue. Although ADOT-MVD's three-year "revocation" of her driver license and privilege, based upon appellant's 2009 Aggravated DUI conviction, remained on her driving record, it was not in effect for the period of

time during which she held a valid SIIRDL. Thus, for this reason, both sub-arguments of the trial court's reversible error presented in appellant's Argument IV of her brief – namely, 1) its *sua sponte* mistrial declaration and 2) its denial of appellant's Rule 20 motion - are meritorious and require reversal.

**Argument Five**

>  **The Superior Court Committed Reversible Error by Denying Appellant's Second Motion for Reconsideration of her Motion to Suppress Appellee's Drug Content Analysis of her Blood Sample Because Appellee Waived Its Alternative Argument, Pursuant to A.R.S. §13-3925, by Failing to Preserve This Argument in the Superior Court.**

On page 65 of appellant's brief, she cites *State v. Brita*, 158 Ariz. 121, (1988), which held that the state waives, and fails to preserve for appellate review, an argument based upon the statutory exception to the exclusionary rule, provided in A.R.S. § 13-3925, if it fails to present this argument in the superior court at the suppression hearing. Appellee did not cite *Brita* in its brief

In her reply in superior court [R.A. 108], on pages 2-5, appellant included a more extensive quote of the supreme court's holding in *Brita,* which states in part:

> In *Brita*, the defendant was involved in a serious automobile crash and was suspected of being DUI.  Brita was injured and transported to the hospital for treatment.  Although the investigating police officer believed that he had sufficient probable cause to arrest Brita for DUI, he did not arrest him at that time.  Instead the officer requested Brita to sign an implied consent form for a blood test.  The officer read Brita the admonitions on the back of the form, similar to the admonitions read to defendant in the case at bar, including the

admonition that Brita's driver's license would be suspended by MVD for one year if he did not sign the form.  Brita signed the form, and a blood sample was extracted by medical personnel at the direction of the officer. The officer was unaware that a sample of Brita's blood was drawn earlier for medical purposes.  The medical sample was not the subject of Brita's motion to suppress.  It was evidently disposed of by medical personnel and was not made available to law enforcement. After the second blood sample was drawn, the police arrested Brita, and he was subsequently charged with two counts of manslaughter and two counts of aggravated assault.   Retired Maricopa County Superior Court Judge Gottsfield granted Brita's motion to suppress his blood samples drawn by hospital personnel, pursuant to a warrantless search at the direction of the police.

Justice James Moellner delivered the unanimous opinion in *Brita*, stating:

The state, throughout the trial court proceedings, contended that the sample was legally obtained.  At no time did the state rely upon or call to the attention of the trial court A.R.S. §13-3925, the "good faith exception" statute.  The trial court, after a two-day evidentiary hearing, suppressed the test results.

*          *          *          *

... [T]he superior court held that the test had to be suppressed because it had not been taken post-arrest as required by the implied consent law, and it did not fall within the medical purpose exception of A.R.S. § 28-692(M) as interpreted in [State v.] *Cocio* [147 Ariz. 277, 709 P.2d 1336 (1985)]. The court of appeals, in a thorough analysis we approve, agreed with the trial court.

THE COURT OF APPEALS' CONSIDERATION OF A.R.S. § 13-3925

Having concluded that the trial judge had correctly decided the issues presented to him, the court of appeals reversed his ruling on an issue which had not been presented to him. In doing so, the court of appeals said:

Finally, we are mindful of the well settled rule that the ruling of the trial court on a motion to suppress will not be disturbed on appeal

absent clear and manifest error. [citation omitted]  The rule, however, is not applicable here because the good faith exception to the rule of exclusion was not urged by the state in the trial court and was raised for the first time on appeal.      154 Ariz. at 522, 744 P.2d at 434.

We disagree with the court of appeals' conclusion that an appellate court is freer to reverse on issues raised for the first time on appeal than it would be on issues presented and litigated in the trial court. It is particularly inappropriate to consider an issue for the first time on appeal where the issue is a fact-intensive one. .... [A] litigant's failure to object does not require an appellate court to decide unlitigated issues when to do so violates sound principles of judicial policy.

    ... [T]he court of appeals only referred to and discussed subsection A of A.R.S. § 13-3925, the "good faith exception" statute...

It is obvious merely from reading the statute that its applicability in a particular case depends upon the resolution of questions which are peculiarly factual in nature. While the state had ample opportunity to plead and argue the statute in the trial court, it did not elect to do so. Had it done so, the two-day evidentiary hearing on the motion to suppress might well have taken a decidedly different twist. It is highly undesirable to attempt to resolve issues for the first time on appeal, particularly when the record below was made with no thought in mind of the legal issue to be decided.

Under the circumstances of this case, which deals with an obvious legal issue which could and should have been raised at the hearing, we hold that the state, never having presented the issue to the trial court even by way of a motion for reconsideration, has waived it. The court of appeals should not have considered the alleged applicability of A.R.S. § 13-3925 for the first time on appeal. [citation omitted]; [Emphasis supplied] 158 Ariz. at 123-125.

Appellant's reply in superior court [R.A. 108], also cited the following five other Arizona appellate court opinions citing and in accord with *Brita*:

*State v. Hendrix*, 165 Ariz. 580, (App. Div. 1, 1990), rev. den., ("The state failed to present this position to the trial court. […] [T]he state's failure to develop this issue in the trial court prevents consideration of it on appeal; *State v. Mullen*, 168 Ariz. 246, (App. Div. 1, 1990), ("The state did not argue this position to the trial court, and has thus waived appellate review."); *State v. Rogers,* 186 Ariz. 508, (1996), ("[T]he issue […] was not raised by the state in the trial court and no factual record was made on it, [therefore] it would be inappropriate for an appellate court to base a ruling on that issue."); *State v. Sorkhabi*, 202 Ariz. 450, (App. Div. 1, 2002), ("The State's stipulation at the hearing neither spoke to the issue raised on appeal nor suggested it as an unanswered matter needing attention by the trial court;" *State v. Sisco*, 238 Ariz. 229, (App. Div. 1, 2015), ("[T]he state's [failure to secure] a ruling from the trial court on [the officer's good faith exception in part resulted in its abandonment of] that argument on appeal.")

**Argument Six**

> **The Superior Court Committed Reversible Error by Denying Appellant's Motion for Alternative Relief, Including Dismissal of the Charge, With Prejudice, Based on Appellee's Violation of Its Duty to Collect and Preserve Until Time of Trial, a Sample of Her Blood for Her Independent Chemical Analysis.**

In appellant's brief, on pages 67-71, she cited numerous Arizona cases holding that, in a DUI prosecution, the state is required to collect and preserve until time of trial a sample of the defendant's blood or breath, for his or her independent chemical analysis. One of the cases cited by appellant is *State v. Kemp*, 168 Ariz. 334 (1991). Appellee cites *Kemp* on pages 53, 90, 95, 96, and 97 of its brief; however, it argues that *Kemp* is not dispositive of this issue and in fact, it argues, on page 95, that it is "irrelevant" to it. Appellant incorporates her argument that she presented herein on pages 32-33 of this reply in support of this argument.

On page 70 of appellant's brief, she included the following portion of

footnote 4, from *Kemp*:

> [The court held that an independent test advisory was not required by
> police]... <u>at least when the sample taken by law enforcement officers
> will still be available for testing by the defendant at the time of trial</u>. [4]
>
> ───────────
> [4]<u>This defendant</u>, at the hearing on his motion to suppress, <u>failed to
> show that his blood sample was unavailable for independent testing.
> Therefore, he did not demonstrate a due process violation.</u>
> [...][Emphasis supplied]

On page 33 herein, in appellant's Argument I, she cites *State v. Velasco and Alday*

*(RPI)Velasco, supra*, a DUI criminal case in which the state administered a breath

test to the defendant to present evidence of his alcohol concentration. On page 68

of appellant's brief, she also cites *Velasco* and included two quotes from that

opinion. The following is a more expansive quote from *Velasco*, in which the

previously quoted portions of the opinion in appellant's brief are indicated in bold

face type:

> The state points out that subsequent to our decisions in *Scales* [*v. City
> Court,* 122 Ariz. 231(1979)] and *Baca* [*v. Smith*, 124 Ariz. 353 (1979)
> reh.den.], the United States Supreme Court held that the due process
> clause of the fourteenth amendment does not require the state and its
> agencies to preserve breath samples of DUI defendants for
> independent testing. [Citation Omitted] Thus, the state argues, much
> of the underlying rationale of *Scales* and *Baca* and many of the
> authorities cited or relied on by those cases are no longer viable. [...]
>
> We believe *Youngblood* is inapposite. That case dealt with the
> destruction of clothing containing semen stains, and as the Court
> noted, "unlike in *Trombetta*, the state did not attempt to make any use

of the materials in its own case in chief." Id., 488 U.S. at 56, 109 S.Ct. at 336. <u>In the case before us, like *Trombetta* but unlike *Youngblood*, the state did use "the materials"--the defendant's breath and its test results--in its case in chief</u>. **Blood alcohol test results in a § 28-692(B)** [renumbered A.R.S § 28-1381(A)(2), (with modifications) effective October 1, 1997] **prosecution are not merely "potentially useful" evidence, they are virtually the entire evidence**. A person may not be convicted of a violation of subsection (B) without evidence of chemical analysis of blood, breath, or urine showing a BAC in the proscribed range. *State v. Superior Court*, 149 Ariz. at 279, 718 P.2d at 181 (1986).

***

...[M]ere capture and delivery to the defendant of a sample in the state's possession that otherwise would be discharged and dissipated is not an onerous burden on the state. [...]

**...[I]t is one thing to say that the police need not prepare the defendant's case, and it is quite another to say that principles of fundamental fairness permit the police to knowingly destroy or dissipate that which they systematically obtain for their own testing and evidentiary use, especially when they may keep such evidence without any significant burden and are aware the evidence may be of value to the defense.** [Emphasis by Underlining Supplied]

**Argument Seven**

> **The Superior Court Committed Reversible Error by Its Rulings Relating to the Admission or Preclusion of Evidence, Discovery Issues, Jury Instructions, and Motions to Quash Subpoenas.**

A. **Reversible error by (1) denying appellant's motion for supplemental discovery for her investigator to interview prosecutors regarding their inadvertent, premature issuance of the Dispo[sition] Form they sent to the police, and (2) quashing appellant's subpoenas *duces tecum* served upon them compelling their appearance at appellant's second jury trial to testify regarding these matters.**

Appellee argues on page 103 that "[…] the only way the prosecutor's testimony could have *conceivably* been relevant would be if the trial prosecutor intentionally destroyed the evidence in bad faith." This argument ignores that there were varying degrees of potential culpability by appellee's trial prosecutors that resulted in the Peoria Police Department's premature destruction of appellant's blood sample two and half years prior to her trial. A.R.S. § 13-105(10) provides definitions for four culpable mental states in criminal prosecutions, namely: (a) intentionally, (b) knowingly, (c) recklessly, and (d) with criminal negligence. The trial court committed reversible error by denying appellant's request for her investigator to interview appellee's trial prosecutors and his bureau chief to ascertain which level of culpability resulted in the premature destruction of her blood sample. Without being able to investigate the circumstances that resulted in the MCAO sending the "Dispo Form" to the Peoria police, appellant was precluded from showing the respective culpability of the two prosecutors that caused this destruction. Appellant, in her brief, on page 73, cites *Helge v. Druke and Armstrong RPI*, 136 Ariz. 434, 438, 439 (App.Div.2, 1983), a civil case, which holds, according to appellee on page 105, "…[T]he party seeking quashal bears the burden of demonstrating that a subpoena is unreasonable, oppressive, or

irrelevant." Appellee's argument that the rules of criminal procedure provide a different allocation for criminal subpoenas is also without merit.

## B. Reversible by error in appellant's second trial by denying appellant's requested jury instruction on the meaning of "Under the Influence"

Appellee concedes that, during appellant's second jury trial, by refusing defendant's requested jury instruction on the meaning of the term "under the influence," the trial court provided no jury instruction on the definition of this dispositive term. Appellee does not dispute appellant's argument that the "under the influence" jury instruction requested by appellant [R.A. 158] that was based upon the Arizona Supreme Court's opinions in *Hasten v. State*, 35 Ariz. 427 (1929) and *Weston v. State*, 49 Ariz. 183, 187-88 (1937), was (1) not otherwise defined by the trial court and (2) "has been used in DUI cases for more than 50 years," as stated on page 73 of appellant's brief.

On page 107 of its brief, appellee cites *Franklin, supra*, a civil tort motor vehicle case, in support of its argument that the trial court did not commit reversible error by refusing to give appellant's requested jury instruction on "under the influence." Appellee argues, based on *Franklin*, that appellant's requested jury instruction was not required because "people of ordinary intelligence are able to understand what intoxicated to the slightest degree means." In *Franklin*, the court

49

actually approved the supreme court's following language that was included in

appellant's requested jury instruction:

> ¶25 [...] <u>a person is intoxicated in the slightest degree when that</u>
> <u>person</u> "is to some degree at least less able, either mentally or
> physically or both, to exercise the clear judgment and steady hand
> necessary" to drive an automobile. *Hasten* , 35 Ariz. at 431, 280 P. at
> 671 ; *Weston* , 49 Ariz. at 187, 65 P.2d at 654 (intoxicated in the
> slightest degree commonly understood as referring to <u>a person " 'so</u>
> <u>affected by intoxicating liquor as not to possess that clearness of</u>
> <u>intellect and control of himself that he otherwise would have</u>..' ")
> (quoting *State v. Graham* , 176 Minn. 164, 222 N.W. 909, 911 (1929)
> ). [Emphasis Supplied]

## C. Reversible error, in appellant's third trial, by denying appellant's motion to preclude appellee from calling Comm. Passamonte as a witness

In appellee's brief on pages 107-108, it argues that appellant's claims of

error based upon the trial court's ruling that appellee could call Comm.

Carolyn Passamonte as a rebuttal witness during the aggravation trial were

"moot" and "waived." Appellee's "mootness" argument, based upon *Pointe*

*Resorts, Inc. v. Culbertson*, 158 Ariz. 137, 140-141 (1988), is without merit.

Because appellee had not disclosed Comm. Passamonte to appellant as a

witness at least seven days prior to trial, as required by Rule 15.6(c),

Ariz.R.Crim.Pro., immediately after the trial court's ruling permitting

appellee to call Comm. Passamonte as a rebuttal witness if appellant testified

regarding her lack of knowledge that she has been placed on probation for a

Class 6 undesignated felony in her 2009 DUI case. Immediately thereafter,

the following proceedings occurred out of the presence of the jury:

> MR. COFFINGER: [...] I want to make sure I fully understand the Court's most recent ruling. As I understood it, it was if the defendant presents evidence and goes forward with testimony in the defense case, then you offered Mr. Serden the opportunity to attempt to call in rebuttal Commissioner Passamonte?

> THE COURT: Correct.

> *   **

> THE COURT: That based on the testimony that has been presented by the defense to this point in time, there is no rebuttal from Commissioner Passamonte that would address that testimony.

> MR. COFFINGER: Then we inform the Court we are resting at this time and will not call the defendant, based on your ruling. [R.T. 11/29/16, p.87]

By objecting to the trial court allowing appellee to call Comm. Passamonte

as a rebuttal witness, if appellant testified, appellant preserved this issue for

appellate review and her argument did not become moot because she made

the tactical decision to not testify. *State v. Diaz*, 223 Ariz. 358, ¶ 11 (S.Ct.,

2010). On page 74 of appellant's brief, she cited Comm. Passamonte's

motion to quash the subpoena served upon her by appellee the afternoon she

was ordered to appear [R.A. 142]. This motion, which was filed by her

counsel, Assistant Attorney General Kelly Gillilan-Gibson, cited *In re*

*Peasley*, 208 Ariz. 27 (2004). *Peasley, supra*, was also cited by appellant in

her argument in the trial court (R.T. 11/29/16, p. 82), as well as by Comm. Richter (*id.* p. 83). Appellee failed to address this argument and therefore waived this issue.

Appellee's reliance on *State v. Duran*, 233 Ariz. 310, 313, p19 (2013), on page 108, is also misplaced because the holding in the *Duran* case regarding impeachment evidence was limited strictly to the state's use of involuntary statements by the defendant for rebuttal or impeachment and had no application to the state's attempt to call a previously assigned judge to testify to what occurred during a court proceeding that could have been documented by audio and video recording of the proceeding.

Appellee's waiver argument is also without merit because appellee raised this issue in both the trial court and in her opening brief on pages 73-75.

**D. Reversible error in appellant's third trial on appellee's aggravating circumstance allegation by (1) denying her motion for procedural orders and (2) by refusing appellant's requested, modified RAJI non-capital *Blakely* jury instruction.**

Appellee argues on page 109 of its brief that appellant did not make "any reasoned argument." On pages 75-76 of appellant's brief, she presented her argument which included reference to the motion for procedural orders she filed

regarding the conduct of the aggravating circumstance phase before the third jury

[R.A. 187], in which, on page 2, she requested:

> At the commencement of the second phase of jury trial on the State's aggravating circumstance allegation, the court should direct the clerk to address the newly impaneled jury and (1) read the previous jury's guilty verdict, (2) read the State's allegation that the Defendant committed the offense while released from confinement on probation for a felony offense, and (3) inform the jury of Defendant's denial of this allegation.

In support of her argument, on page 75 of her brief, appellant cited Rule 19.1,

Ariz.R.Crim.Pro., which states in subsection (a)(1) RAJI Non-Capital Blakely

Instruction, entitled "Conduct of Trial:"

> Order of proceedings. The trial shall proceed in the following order unless otherwise directed by the court:
>
> (1) The indictment, information or complaint shall be read and the plea of the defendant stated.

The trial court denied appellant's requested procedural orders and jury

instructions, stating:

> THE COURT: I have provided counsel with the draft jury instructions. I have received several motions with regard to jury instructions. As previously indicated, I don't believe that this jury needs any information about the underlying DUI trial or verdict in order to make this decision. So I don't believe that any instructions which refer to the previous trial are appropriate. So I will deny defendant's supplemental requested jury instruction. [Emphasis Supplied][R.T. 11/28/16, p. 7]

Appellee argues on page 110 of its brief, that since Rule 19.1(a)(1) "does not require" the court proceeding with a sentence enhancement trial before a newly impaneled jury that did not return a guilty verdict to follow the procedure requested by appellant. Appellant's reliance on the general provisions of 19.1(b) relating to the jury trial of sentence enhancement allegations is not persuasive in light of the fact that, the jury that considered the sentence enhancement allegation is not the same jury that returned the guilty verdict that defendant was guilty of the charged offense.

In appellant's brief on page 75-76, that the trial court committed reversible error by denying her requested modified RAJI non-capital *Blakely* jury instruction [R.A. 190], a copy of which is included in the appendix as Item 6, which was supported by her memorandum of law in the superior court [R.A. 189]. In appellant's superior court memorandum, she stated that the preface to the RAJI Forth Edition, states in part:

> The Fourth Edition of REVISED CRIMINAL JURY INSTRUCTIONS (RAJI CRIMINAL) is the product of thousands of hours of work by the State Bar of Arizona Criminal Jury Instruction Committee. The project would not have been accomplished without the dedicated work of the members of the Criminal Jury Instruction Committee. RAJI CRIMINAL, 4TH EDITION represents a collaborative effort by defense attorneys, prosecutors and judicial officers.
>
> The First Edition of RAJI CRIMINAL was published in 1989 as RECOMMENDED ARIZONA JURY INSTRUCTIONS. Those jury

instructions were approved in advance of publication by the Arizona Supreme Court. Subsequently, the Arizona Supreme Court stopped approving jury instructions except in the context of appellate cases. Accordingly, the user is advised that these instructions have not been approved by the Arizona Supreme Court.

In *State v. Slemmer*, 170 Ariz. 174, 823 P.2d 41 (Ariz., 1991), the court stated the following in Footnote 9:

The RAJI publication contained the following introduction:

The Arizona Supreme Court expresses a qualified approval and recommends the use of the Arizona Uniform Jury Instructions unless the trial judge is satisfied that there is a compelling legal reason for modifying or refusing to give an instruction.

In *State v. Logan*, 30 P.3d 631, 200 Ariz. 564 (Ariz., 2001), the Arizona Supreme Court cited *Slemmer*, supra, stating:

¶ 12 ... In the past, we did give "qualified approval for various jury instructions, which were then published as Recommended Arizona Jury Instructions." RAJI *(Criminal)* iii (2000). In 1996, however, we determined that we would "no longer issue qualified approvals for *any* jury instructions." *Id.* As a result, the State Bar of Arizona created standard jury instructions and renamed them the "Revised Arizona Jury Instructions." A notice accompanying the instructions warns users of the new RAJI that "these instructions, as a group, have not received any approval from the Arizona Supreme Court." *Id.*

In *State v. Munoz*, 228 P.3d 138, 224 Ariz. 146 (Ariz App., 2010), the court stated in Footnote 8:

As of 1996, our supreme court no longer gives qualified approval of jury instructions. *State v. Logan, 200 Ariz. 564*, 566, ¶ 12, 30 P.3d 631, 633 (2001). Instead, the State Bar of Arizona has created standard jury instructions and renamed them the "Revised Arizona Jury Instructions." *Id.*

**CONCLUSION**

This court should file an opinion – not a memorandum decision – in which it dismisses the charge, with prejudice, based upon all of appellant's arguments that she has presented, in which she seeks that relief, and it should reverse all of the other court rulings by the superior court that appellant has argued were reversible error.

RESPECTFULLY SUBMITTED this 25th day of January, 2018.

/signature/
RICHARD D. COFFINGER
Co-Counsel for Appellant
6838 N. 58th Drive
Glendale, AZ 85301