Erin Rae Espinosa v.
Charles L. Ryan, Director of the Arizona Department of Corrections
and
The Attorney General of the State of Arizona


Case No.


Appendix Exhibit "I" to
Petition for a Writ of Habeas Corpus
Under 28 U.S.C. § 2254 by a Person in State Custody
(Non-Death Penalty)

RICHARD D. COFFINGER
ATTORNEY AT LAW
6838 N. 58TH DRIVE
GLENDALE, AZ 85301
STATE BAR ID #003040
623-937-9214
623-937-7072 (FAX)
R.COFFINGER@GMAIL.COM

LAWRENCE S. KOPLOW
KOPLOW LAW FIRM, P.L.L.C.
111 EAST TAYLOR ST., SUITE 120 MC8520
PHOENIX, AZ 85004
STATE BAR ID #019853
602-494-3444
LK@AZFIRM.COM
CO-COUNSEL FOR APPELLANT

## IN THE COURT OF APPEALS

## STATE OF ARIZONA - DIVISION I

| | | |
|---|---|---|
| **STATE OF ARIZONA,** | ) | Court of Appeals |
| | ) | Division One |
| Appellee, | ) | No. 1 CA-CR 17-0001 |
| | ) | |
| | ) | Maricopa County |
| **v.** | ) | Superior Court |
| | ) | No. CR2014-006004-001 |
| **ERIN RAE ESPINOSA,** | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

## APPELLANT'S OPENING BRIEF
### Filed Pursuant to this Court's August 30, 2017, Order

Law Office of Richard Coffinger
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID: 003040
r.coffinger@gmail.com
Co-Counsel for Appellant

# TABLE OF CONTENTS

**PAGE**

Table of Citations       4, 5, 6

Statement of the Case       7

Statement of Facts       20

Issues Presented       27-28

Argument

I.    Appellee's Trial Counsel Committed Numerous Intentional    28
Acts of Prosecutorial Misconduct, to Gain a Tactical Advantage,
Which Included His Lack of Candor Toward the Tribunal, That
When Combined, Violated Appellant's Right to Due Process Of
Law.

II.    The Superior Court Committed Reversible Error By Denying    47
Appellant's Motion to Preclude Appellee From Presenting
at Trial, Argument and Evidence in Support of Its Alternative
Legal Theory That Appellee Had Waived at Appellant's
Preliminary Hearing, in Violation of the Doctrine of Judicial
Estoppel.

III.    The Superior Court Committed Reversible Error by Denying    48
Appellant's Motion to Strike Appellee's Sentencing
Enhancement Allegation That She Committed the Charged
Offense While On Probation For a Prior Felony Offense Because
Her Prior Class 6 Undesignated Aggravated DUI Offenses
Were Designated as Misdemeanors Prior to the Date (1)
Appellee Filed the Charge, and (2) Appellee Filed Its Allegation.

IV.    The Superior Court Committed Reversible Error by Denying    50
Appellant's (1) Motion for Dismissal, With Prejudice, Based
Upon the Superior Court's *Sua Sponte* Mistrial Declaration,
Without Either a Manifest Necessity or Appellant's Consent,

and (2) Motion For Directed Verdict of Acquittal, Pursuant to
Rule 20, Ariz.R.Crim.Pro., That She Made in Her Second
Trial After Appellee Rested Its Case-in-Chief.

V.   The Superior Court Committed Reversible Error by Denying        65
     Appellant's Second Motion for Reconsideration of her Motion
     to Suppress Appellee's Drug Content Analysis of her Blood
     Sample Because Appellee Waived Its Alternative Argument,
     Pursuant to A.R.S. §13-3925, by Failing to Preserve This
     Argument in the Superior Court.

VI.  The Superior Court Committed Reversible Error by Denying        67
     Appellant's Motion for Alternative Relief, Including Dismissal
     of the Charge, With Prejudice, Based on Appellee's Violation
     of Its Duty to Collect and Preserve Until Time of Trial, a Sample
     of Her Blood for Her Independent Chemical Analysis.

VII. The Superior Court Committed Reversible Error by Its            72
     Rulings Relating to the Admission or Preclusion of Evidence,
     Discovery Issues, Jury Instructions, and Motions to Quash
     Subpoenas.

Conclusion                                                          76

# TABLE OF CITATIONS

**PAGE**

**U.S. CONSTITUTION**
Fourth Amendment                                                                 13
Sixth Amendment                                                                  54

**ARIZONA CONSTITUTION**
Article 2, §10                                                                   54
Article 2, §30                                                                   11

**U.S. SUPREME COURT OPINIONS**
*Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419 (2011)                    65
*Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523 (1967)                      57
*Green v. United States*, 355 U.S. 184, 78 S.Ct. 221 (1957)                      55
*Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d, 1217 (1959)        35
*Viereck v. United States*, 318 U.S. 236 (1943)                                  43
*California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528 (1984)                   71

**FEDERAL COURT OPINIONS**
*United States v. Sanchez*, 176 F.3d 1214 (9th Cir. 1999)                        40

**ARIZONA APPELLATE COURT OPINIONS**
*Accomazzo v. Kemp,* 234 Ariz. 169, 319 P.3d 231 (App.2014)                  59, 60
*Amos v. Bowen,* 143 Ariz. 324, 693 P.2d 779 (1984)                          67, 71
*American Family Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 217 P.3d 1212           31
(App.2009)
*Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1980)                              69
*Brown v. McClennen*, 239 Ariz. 529, 373 P.3d 517 (2017)                     14, 51
*Hasten v. State*, 35 Ariz. 427, 280 P. 670 (1929)                               72
*Helge v. Druke and Armstrong* 136 Ariz. 434, 666 P.2d 534 (App. 1983)           72
*In re Beren*, 178 Ariz. 400, 874 P.2d 320 (1994)                                47
*In re Estate of Cohen,* 105 Ariz. 337, 464 P.2d 620 (1970)                      34
*In re Peasley*, 208 Ariz. 27, 90 P.3d 764 (2004)                            29, 55
*Mack v. Cruikshank,* 196 Ariz. 541, 2 P.3d 100 (App.Div. 2-1999)                67
*Martin v. Wood*, 71 Ariz. 457, 229 P.2d 710 (1951)                              34
*McLaughlin v. Fahringer,* 150 Ariz. 274, 723 P.2d 92 (1986)                     56
*Montano v. Superior Court,* 149 Ariz. 389, 688 P.2d 275                  68, 71, 72
*Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984)                 68, 69, 71

*Phillips v. Clancy*, 152 Ariz. 415 (App.1986)                                           28  47  54

*Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261(1984)                          28, 44, 55

*Samaritan Foundation v. Goodfarb,* 176 Ariz. 497, 862 P.2d 870 (1993)          60

*Scales v. City Court,* 122 Ariz. 231, 594 P.2d 97 (1979)                                 71

*Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390 (App.1977)                              68

*Smith v. Ganske,* 114 Ariz. 515, 562 P.2d 395 (App.1977)                          72

*State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co.*,                                 34
19 Ariz.App. 594, 509 P.2d 725 (1973)

*State Farm Auto Ins. Co.v. Lee,* 199 Ariz. 52, 13 P.3d 1169 (2000)               59

*State v. Aguilar,* 217 Ariz. 235, 172 P.2d 423 (App.Div.2-2007)                   57

*State v. Brita*, 158 Ariz. 121, 761 P.2d 1025 (1988)                                      65

*State v. Brito*, 183 Ariz. 535, 905 P.2d 544 (App. 1995)                            66

*State v. Burge,* 167 Ariz. 25, 804 P.2d 754 (1990)                                       28

*State v. City Court,* 130 Ariz. 285, 635 P.2d 878 (App.1981)                       71

*State v. Denny*, 119 Ariz. 131, 579 P.2d 1101 (1978)                               42, 43

*State v. Dumaine*, 162 Ariz. 392, 783 P.2d 1184                                         43

*State ex rel. Romley v. Superior Court,* 184 Ariz. 409, 411,                             21
909 P.2d 476 (App.1995)

*State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921, 931 (1975)                           35

*State v. Fodor,* 179 Ariz. 442, 880 P.2d 662 (App.Div.1-1994)                  60, 63

*State v. Givens,* 161 Ariz. 278, 778 P.2d 643 (App.1989)                            58

*State v. Gonzales*, 105 Ariz. 434 (1970)                                                40, 41

*State v. Hardy*, 230 Ariz. 281, 283 P.3d 12 (2012)                                     55

*State v. Harrison,* 157 Ariz. 184, 755 P.2d 1172 (App.1988)                         71

*State v. Holsinger,* 124 Ariz. 18, 601 P.2d 1054 (1979)                              61

*State v. Howard*, 27 Ariz. 339, 554 P.2d 1282 (App. 1976)                          71

*State v. Hughes,* 193 Ariz. 72, 969 P.2d 1184 (1998)                           30, 41, 42

*State v. Kemp*, 168 Ariz. 334, 813 P.2d 315 (1991)                                 47, 68

*State v. Kinney*, 225 Ariz. 550, 241 P.3d 914 (App. 2010)                           66

*State v. Martinez,* 172 Ariz. 437, 837 P.2d 1172 (App.Div.1-1992)                49

*State v. Mitchell*, 136 Ariz. 364, 666 P.2d 464 (1983)                                49

*State v. Newell*, 212 Ariz. 389, 132 P.3d 833 (2006)                                 40

*State v. Noriega*, 142 Ariz. 474, 640 P.2d 775 (1984)                                28

*State v. Razinha*, 123 Ariz. 355, 599 P.2d 808 (App.1979)                          35

*State v. Rodriguez*, 205 Ariz. 392, 71 P.3d 919 (App.2003)                          51

*State v. Roque*, 213 Ariz. 193, 141 P.3d 368 (2006)                                  30

*State v. Sanchez,* 192 Ariz. 454, 967 P.2d 129 (App.Div.2-1998)                  70

*State v. Smith*, 219 Ariz. 132, 194, P.3d 399, 401 (2008)                           28

*State v. Speer,* 221 Ariz. 449, 212 P.3d 787 (2010)                                   55

*State v. Tarzian*, 136 Ariz. 238, 665 P.2d 582 (App.1983)                           32

*State v. Torres*, 233 Ariz. 479, 314 P.3d 825 (App.2013)   48, 50, 71
*State v. Towrey* 186 Ariz. 168, 920 P.2d 290 (1996)   34
*State v. Tuzon*, 118 Ariz. 205, 575 P.2d 1231 (1978)   53
*State v. Valenzuela*, 239 Ariz.299, 371 P.3d 627 (2016)   12, 13, 50, 65
*State v. Vannoy*, 177 Ariz. 206, 866 P.2d 874 (App.1993)   71
*State v. Velasco*, 165 Ariz. 480, 799 P.2d 821 (1990)   8, 68
*State v. Williams,* 144 Ariz. 487, 698 P.2d 732 (1985)   9, 10
*State v. Williams*, 111 Ariz. 511, 533 P.2d 1146 (1975)   43
*State v. Winton,* 153 Ariz. 302, 736 P.2d 386 (App.Div.1-1987)   49
*Throop v. F.E. Young & Co.,* 94 Ariz. 146, 382 P.2d 560, 568 (1963)   59
*Trebus v. Davis,* 189 Ariz. 621, 944 P.2d 1235 (1977)   10
*Torosian v. Paulos*, 82 Ariz. 304, 313 P.2d 382 (1957)   30
*Weston v. State*, 49 Ariz. 183, 65 P.2d 652 (1937)   56

**ARIZONA STATUTES**
A.R.S. § 12-120.21(A)(1) & (A)(2)   19
A.R.S. § 13-604(A)   47
A.R.S. § 13-703(B)(2)   47
A.R.S. § 13-3925   13, 26, 49, 50
A.R.S. § 13-4033(A)(1)   19
A.R.S. § 28-692 (repealed)   15
A.R.S. §28-1381(a)(2)   6, 8, 15, 49
A.R.S. §28-1382   49
A.R.S. §28-1383(a)(1)   6
A.R.S. §28-1385   49
A.R.S. §28-1401   21, 22, 25
A.R.S. §28-1402   13, 14, 21, 25, 49

**ARIZONA CRIMINAL RULES**
Rule 8.2   11
Rule 12.9   8, 9, 30
Rule 13.1   8, 10
Rule 15.6   54, 55
Rule 16.1   8, 10
Rule 19.1   57
Rule 20   47

**ARIZONA SUPREME COURT RULES**
Rule 105   24
Rule 111   46, 47

## STATEMENT OF THE CASE

On December 22, 2014, appellee filed an information [R.A. 15] that charged appellant with the crime of aggravated DUI, in violation of A.R.S. §28-1383(A)(1), a Class 4 felony. Appellee alleged that appellant drove or was in actual physical control of her SUV while her driver license and/or privilege to drive was **revoked** or **restricted for a DUI**, while she was under the influence of her prescribed drug, clonazepam (brand name Klonopin). The information was appellee's sixth prosecution against appellant for the same alleged DUI offense in the 3 ½ years following her arrest on August 18, 2011, by Peoria Police Officer Charles Kunde (#6857)[1].

On February 8, 2012 – nearly six months after appellant's arrest - appellee first charged her with the DUI offense as a Class 1 misdemeanor, in a complaint filed in the Peoria Municipal Court, Case TR2012-001138. On April 4, 2013, - 14

---

[1] On May 12, 2017, this court granted appellant's motion for it to take judicial notice of records in her following listed related cases: (1) her petition for special action filed on February 26, 2015, in this court, Case Number 1 CA-SA 15-0047, entitled, "*Erin Rae Espinosa v. The Hon. Virginia Richter, Commissioner of the Superior Court of the State of Arizona, in and for the County of Maricopa, and State of Arizona, ex. rel. William G. Montgomery, Maricopa County Attorney,*"("appellant's special action"), and (2) records from cases appellee filed against appellant in inferior courts, in which appellee previously charged appellant five times with same DUI (prescription drug) offense that is the subject of this appeal, and later moved and obtained dismissals, without prejudice: (1) Peoria City Court Case No. TR2012-001138; (2) Maricopa County Superior Court Case No. CR2013-441390; (3) Maricopa County Superior Court Case No. CR2014-001538; (4) Maricopa County Superior Court Case No. CR2014-002044 (indictment); (5) Maricopa County Superior Court Case No. CR2014-002044 (information). Each of the five charges, appellee's motions to dismiss, without prejudice, and the orders granting dismissal, were included as exhibits to appellant's motion to seal, filed in superior court (R.A. 227) and are included in Appellant's Supplemental Appendix as Item 1.

months after the charge was filed - the day before her scheduled jury trial, Presiding Judge George T. Anagnost, dismissed that complaint, without prejudice, on appellee's motion "so that the case could be submitted to the Maricopa County Attorney's Office for felony consideration." Appellee then re-charged appellant with the same DUI offense - as a Class 4 felony – in three indictments filed in three separate cases in the Maricopa County Superior Court. All of these cases were assigned to one of the two Criminal Division - DUI Courts, established in 2003, by then Presiding Judge Colin Campbell because:

> DUI cases involve a specialized area of the criminal law and, therefore, the assigned judges in the two DUI courts [would] become more familiar with and knowledgeable of this specialized area of the law. As a result of assigning all of the DUI cases to the two DUI courts, the other criminal division judges would not be required to become "immersed in the DUI subculture." In *State v. Velasco*, 165 Ariz. 480, 487, 799 P.2d 821 (1990), the supreme court stated, "This court's immersion in the subculture of DUI practice has not been entirely satisfactory." [R.A. 80 and 83]

The three indictments, which were filed in the following cases, were all dismissed, without prejudice, on appellee's motion: (1) CR2013-441390[2], filed on October 18, 2013, dismissed on February 28, 2014, by Comm. Phemonia Miller; (2) CR2014-001538[3], filed on April 11, 2014, dismissed on July 9, 2014, by

---

[2] This indictment – appellee's second charge against appellant – alleged two count of Aggravated DUI (prescription drug) in violation of A.R.S. § 28-1383(A)(1) and (4), "while driver license revoked or restricted" and "while ordered by the court or required pursuant to A.R.S. § 28-3319 by the Department to equip the motor vehicle with a Certified Ignition Interlock Device," respectively.
[3] This indictment – appellee's third charge against appellant – alleged only one count of Aggravated DUI, the same offense alleged in Count 2 of the previous indictment in CR2013-441390.

Comm. Charles Donofrio III; and (3) CR2014-002044[4], filed on June 25, 2014, dismissed on September 23, 2014, by Comm. Brian D. Kaiser. Appellee moved to dismiss each indictment, without prejudice, because appellant's three Rule 12.9 motions for a new finding of probable cause had been granted due to appellee's failure to properly instruct each grand jury panel as to **all** of the elements of the charged offense. Appellee repeated its error by omitting from its jury instructions the non-statutory, judicially imposed element of the crime established by the supreme court in *State v. Williams,* 144 Ariz. 487, 698 P.2d 732 (1985). The *Williams* court held that, the crime of aggravated DUI while driver license and/or privilege was revoked or restricted for a DUI, included the non-statutory element that the defendant knew or should have known of such revocation or restriction (the non-statutory *Williams* element). Appellee followed its normal practice at the Maricopa County Attorney's Office (MCAO) of providing grand jurors with the elements of criminal offenses that they would likely have to consider during their term. After the newly empaneled grand jurors were administered their oath by the empaneling judge – prior to being presented any cases - the prosecutor attending the grand jury proceeding played a digital recording of the reading of numerous Arizona criminal statutes, including A.R.S. § 28-1383(A)(1) ("the reading of the statutes"). Appellee followed this procedure for instructing the grand jurors as to

---

[4] This indictment – appellee's fourth charge against appellant – alleged only one count of Aggravated DUI, the same offense charged in Count 1 of the indictment in CR2013-441390.

the applicable law before the 595[th,] 610[th,] and the 611th Maricopa County Grand Juries, that all returned indictments against appellant. By following this procedure, without including the non-statutory *Williams* element, either at the time of the reading of the statutes or during the presentation of a case in which the jurors were being asked to consider charging the crime of aggravated DUI, appellee failed to instruct all of these grand juries as to all of the elements of this crime. Appellee could easily have cured this omission by simply reading the grand jurors Recommended Arizona Criminal Instruction RAJI 28.1383 (A)(1)-1, which includes the non-statutory *Williams* element. Also, during appellee's first grand jury presentation against appellant, in CR2013-441390, Comm. Miller ruled that there was a separate basis for her order granting appellant's Rule 12.9 motion because, in spite of the fact that appellee had received a prior written request from appellant for appellee to inform the grand jurors of appellant's request that she be allowed to testify before them, appellee failed to provide this notice. This omission violated the supreme court's holding in *Trebus v. Davis,* 189 Ariz. 621, 944 P.2d 1235 (1977).

In CR2014-002044, after the indictment was dismissed without prejudice, appellee charged appellant with the same offense in a direct complaint, which was appellee's fifth charge against appellant. On October 15, 2014, Comm. Jacqui Ireland presided over a preliminary hearing and found that appellee had established

10

probable cause to hold appellant to answer to stand trial, however, appellee failed to file a timely information in that case. On November 7, 2014, appellant filed a motion to dismiss the direct complaint in that case, without prejudice, pursuant to Rules 13.1(c) and 16.1(b), Ariz.R.Crim.Pro., based on appellee's failure to file a timely information within ten days after Comm. Ireland's probable cause finding. Appellee conceded that this fundamental charging omission deprived the court of jurisdiction to try appellant, pursuant to Art. 2, § 30, of the Arizona Constitution. On November 24, 2014, Comm. Charles Donofrio III dismissed the direct complaint in that case, without prejudice, on appellee's motion, due to appellee's failure to file a timely information.

On December 22, 2014, Comm. Rummage presided over a preliminary hearing on the direct complaint in this case. At the conclusion of the preliminary hearing, in response to appellant's argument that appellee had not established probable cause to believe that appellant committed the offense while her driver license or privilege was **restricted for a DUI,** appellee expressly waived this legal theory, and it relied solely upon its legal theory that she committed the offense while her driver license or privilege was **revoked.** Based upon appellee's waiver of its alternative legal theory, Comm. Rummage held appellant to answer to stand trial on the charge [R.A. 22].    Accordingly, appellee was the successful party at a "prior judicial proceeding" between the same parties that involved the same issue

11

and, therefore, it was subject to the doctrine of judicial estoppel. Comm. Rummage then, for the sixth time, conducted appellant's arraignment.

Also on December 22, 2014, appellant filed a notice of the impending expiration of her Rule 8.2(c) speedy trial time limit, in which she noted that the last day for her trial was on January 5, 2015 [R.A. 14]. This date became the "last day" for her trial in this case because it was the "last day" in her previous case that had been dismissed, without prejudice, due to appellee's failure to file a timely information. On January 5, 2015, acting Master Calendar Division Judge Joseph Kraemer assigned appellant's case for trial that day to Comm. Virginia Richter [R.A. 53], who was not assigned to either division of the two DUI courts.

On January 2, 2015, appellee filed an allegation that appellant committed the offense while she was released from confinement on probation for a felony offense [R.A. 18]. This allegation was based upon the two concurrent counts of her prior aggravated DUI convictions in Case No. CR2009-126740 ("appellant's 2009 aggravated DUI"). Appellant filed a motion to strike appellee's sentence enhancement allegation [R.A. 23], which included copies of:

(1)     Comm. Carolyn Passamonte's September 28, 2010, judgments of guilt in which she ordered that appellant's Class 6 offenses remain "undesignated" and her orders suspending imposition of sentence and placing appellant on supervised probation for two years, ending September 28, 2012; and

(2)     Comm. Miller's April 23, 2012, orders (1) granting the motion of appellant's assigned Supervising Adult Probation Officer (APO)

12

David Kozak for early termination of her probation based upon her successful completion of it as of that date, and (2) designating appellant's two concurrent Class 6 "undesignated" aggravated DUI counts as Class 1 misdemeanors.

Appellant also moved to strike appellee's sentence enhancement allegation based on its untimeliness [R.A. 20]. Comm. Richter denied appellant's motions [R.T., January 5, 2015, p.20].

Appellant filed her motion to suppress appellee's evidence of the drug content analysis of her blood sample [R.A. 93], based upon the Admin Per Se Implied Consent Admonitions read to her by Peoria Police Officer Sean Privett (#3062), that were printed on the back side of the ADOT Form 40-5807, revised in December of 2008. These admonitions were inherently coercive, due to the statements, included four times, that "Arizona law requires you" to submit to designated test. Due to the inherently coercive nature of the admonitions, appellant's blood samples were obtained in violation of appellant's right to be free from unreasonable searches and seizures, guaranteed by the Fourth Amendment of the U.S. Constitution[5].

Appellee's response to appellant's motion to suppress [R.A. 39] failed to argue, as an alternative argument, the good faith exception to the exclusionary rule provided in A.R.S. § 13-3925. Appellee also failed to preserve this alternative

---

[5] In *State v. Valenzuela*, 239 Ariz.299, 371 P.3d 627 (April 26, 2016), the supreme court ruled that these admonitions were inherently coercive, thereby approving the validity of appellant's argument in her motion to suppress.

argument for appellate review by failing to present it at oral argument on appellant's motion [R.T. January 7, 2009, p. 9-13]. Comm. Richter denied appellant's motion to suppress [R.A. 64].

On April 26, 2016, - the same day the supreme court filed its opinion in *Valenzuela*, supra, and its companion case, *Brown v. McClennan*, 239 Ariz. 529, 373 P.3d 517, (2016), appellant filed her second motion for reconsideration of the denial of her motion to suppress [R.A. 103]. In its response [R.A. 106], appellee argued, **for the first time in the superior court,** the good faith exception to the exclusionary rule, provided in A.R.S. § 13-3925. On August 12, 2016, Comm. Richter conducted oral argument on appellant's second motion for reconsideration, at which time appellant argued that appellee had waived the exception to the exclusionary rule, provided in A.R.S. 13-3925, by failing to include it in either its response to appellant's motion to suppress or at oral argument on the initial motion to suppress. Comm. Richter denied appellant's second motion for reconsideration [R.A. 122].

On January 5, 2015, in appellant's first jury trial, she orally objected to appellee presenting its alternative legal theory that she committed the offense while her driver license and/or privilege was **restricted for a DUI,** because appellee had expressly waived this theory at appellant's preliminary hearing. [R.T. January 5, 2015; pp.21-23] Appellant also made this argument in her written motion [R.A.

14

42]. Comm. Richter denied both motions. During appellant's second jury trial, she renewed her objection based upon the judicial estoppel argument; however, Comm. Ricther again denied appellant's motion. [R.T. October 20, 2016, p. 67, l. 14-19; p. 68, l. 12-19; p. 70, l. 13-16] On January 12, 2015 - the fourth day of appellant's first trial - Comm. Richter entered her *sua sponte* order declaring a mistrial, because she had denied appellee's request to call appellant's trial counsel, as a witness for appellee, to examine him regarding his attorney-client conversations with appellant about the restrictions imposed on her SIIRDL by A.R.S. § 28-1402. Comm. Richter scheduled the matter for a retrial on February 23, 2015. Appellant then filed a motion to dismiss the information, with prejudice [R.A. 66], arguing that a retrial was barred by the U.S. and Arizona constitutional prohibitions against double jeopardy, because appellant did not consent to Comm. Richter's *sua sponte* order declaring a mistrial, and there was no manifest necessity for a mistrial. Appellee then filed its response to appellant's double jeopardy motion to dismiss [R.A. 70] and appellant filed her reply [R.A. 72]. Comm. Richter denied appellant's double jeopardy motion in an order entitled "Ruiling" [*sic*][Ruling] [R.A. 75].

On February 26, 2015, appellant filed appellant's special action in this court, in which she sought interlocutory relief from three of Comm. Richter's rulings during her first trial. Appellant argued that these three rulings were either an abuse

of discretion or arbitrary and capricious, and that she had no plain, speedy, or adequately remedy to seek appellate review of these rulings by direct appeal. On February 27, 2015, prior to receiving any response from appellee, this court entered its order declining to accept jurisdiction of appellant's special action. She now presents her arguments that she presented on pages 14-31, 33-34, and 34-36, respectively, in appellant's special action, in her opening brief. Appellant now argues that these three rulings also constituted reversible error.

Prior to appellant's second trial, she filed a motion for the Master Calendar Judge Joseph Kramer to transfer appellant's case back to a DUI court for retrial [R.A. 80]. Notwithstanding the fact that appellant had submitted her motion to Judge Kramer, Comm. Richter denied it in an order entitled "Ruling" [sic][Ruling][R.A. 87][6]

---

[6] Appellant filed this motion because – unlike Comm. Richter, who was assigned to the non-DUI Criminal Division – the DUI court judges are only assigned DUI cases. As a result, the DUI court judges were more familiar with the DUI statutes and court opinions. Comm. Richter reflected her lack of familiarity with this specialized area of the law on multiple occasions, including the following:

1. Comm. Richter's January 24, 2017, order denying appellant's motion for a new trial, [R.A. 232], includes her citation of former A.R.S. §28-692(B), reflecting her understanding that that former statute remained in effect. A.R.S. §692B -which established Arizona's former "DUI per se" offense of driving, or being in actual control of a motor vehicle, with an alcohol concentration above .10 - was repealed and renumbered as modified in A.R.S. §28-1381(a)(2), by laws 1996, Ch. 76, §3, effective October 1, 1997;

2. Comm. Richter's statements on October 18, 2016, made on the record, outside the presence of the jury, in which she indicated her erroneous understanding of the DUI statutes currently in effect, at which time the following proceedings occurred :
The Court: ...[A.R.S. §28] 692, which is driving while under the influence....[A.R.S. §28] – 694.
Appellant's and Appellee's trial counsel then corrected Comm. Richter, informing her that those were the *former* statute numbers that had been repealed, at which time the following proceedings occurred:
Mr. Serden: <u>Actually, those are old statues, Your Honor. Those are old DUI statutes.</u>
The Court: <u>692 is part of the old one.[?] 1381 is driving or actual physical control. 1382 is aggravated driving or actual physical control. [?] 1384 is aggravated. [?]</u>
Mr. Serden: <u>82 is extreme. 83 is aggravated.</u>
Mr. Coffinger: <u>I agree with that.</u>
The Court: <u>82, 83, or 85. You want me to read</u> - -

16

More than 60 days before appellant's second jury trial, she requested that appellee notify the Peoria Police Department to release her blood sample for testing by her independent expert. Appellee informed appellant that it had destroyed appellant's entire blood kit in September of 2014, because it had inadvertently, prematurely sent a property Dispo[sition] Form to the Peoria Police Department, directing it to dispose of all evidence in its possession related to appellant's case. Based upon appellant's receipt of this notice of the destruction of her blood sample, she filed her motion to dismiss the charge, with prejudice, or in the alternative, to suppress the drug content analysis of her blood sample because appellee had failed to preserve, until trial, a portion of her blood sample for appellant's independent testing [R.A. 121]. Appellee conceded in its response [R.A. 136] that, on February 14, 2014, it had inadvertently, prematurely sent a Dispo[sition] Form to the Peoria Police Department, which directed it to "Release All Property" and, as a result, the police department had disposed of appellant's blood sample that it has been preserving for analysis by appellant's independent expert. The notice also stated that it was approved on February 26, 2014, by Deputy County Attorney (DCA) Aaron Harder, MCAO Vehicular Crimes Unit Bureau Chief. A copy of this Dispo[sition] Form was admitted in evidence as

Mr. Coffinger: [A.R.S. § 28-13] 85 is not. ..a criminal statute. That's ad min per se. [Emphasis Supplied] [R.T. October 18, 2016, p. 15-16]

Exhibit 38 at appellant's second trial [R.T. October 24, 2016, p. 69, l. 9-15]. A copy of it was also included in appellant's motion to seal, filed in this court as Exhibit 2. A copy is also included in the Appendix as Item 1.

Appellant's motion for supplemental discovery [R.A. 130] sought a court order for her investigator to interview appellee's trial counsel and his supervisor, DCA Aaron Harder, regarding their premature, inadvertent "Dispo[sition] Form." Appellant also served upon DCAs Serden [R.A. 181] and Harder [R.A. 180] subpoenas *duces tecum* for them to appear as appellant's witnesses, at her second trial, and produce documents relating to their issuance of the premature, inadvertent Dispo[sition] Form. Comm. Richter denied appellant's motion for supplemental discovery [R.A. 145] and granted appellee's motions to quash both of appellant's subpoenas [R.A. 156, p. 5].

Appellee's second jury trial commenced on October 17, 2016. On October 20, 2016, after appellee rested, appellant made a Rule 20 motion for a directed verdict of acquittal, [R.T. 10/20/16, p.138, 160-164] which was denied. During appellant's second jury trial – in both his opening statement and rebuttal closing argument – appellee's trial counsel engaged in multiple acts of intentional prosecutorial misconduct to gain a tactical advantage. Appellant objected to all of his improper statements, which were all overruled by Comm. Richter.

18

On October 27, 2016, the jury returned a verdict of guilty. Comm. Richter intended to immediately proceed with the aggravating circumstance phase of appellant's jury trial, before the second jury. However, appellee orally moved to release the second jury, based upon its claim that it had been tainted as a result of appellant's emotional outburst. Appellant's outburst, which included her uncontrollable screaming for God's help, while lying on the floor in a fetal position, occurred while the clerk was reading the jury's guilty verdict and while – at appellant's request - the clerk was polling the jurors regarding the unanimity of their guilty verdict.

Comm. Richter then set a third jury trial on appellee's sentencing enhancement allegation.

On November 28, 2016, appellant's third jury trial commenced before Comm. Richter. During appellant's third trial, Comm. Richter denied appellant's motion for various procedural orders [R.A. 187] and her request for a non-capital *Blakely* jury instruction [R.A. 189] in the form submitted by appellant that is included in the RAJI Criminal Fourth. On November 29, 2016, appellant's second day of the third trial, the jury returned its verdict in which it found that appellee had proven its sentencing enhancement allegation.

On December 28, 2016, Comm. Richter entered her judgment, based upon the jury's verdict, that appellant was guilty of the charged offense committed while

she was on felony probation. She then sentenced appellant to serve a minimum term of imprisonment of two-and-a-half years in the Arizona Department of Corrections, which sentence included all mandatory minimum DUI fines, surcharges and other assessments [R.A. 220, 223]. Comm. Richter's sentencing minute entry, on page 3, included the following immigration finding and order that she did not actually enter in open court. [R.T. December 28, 2016; p.8, l.12] [7]

> The Court has been informed that the Defendant was born in Canada. <u>In addition, the Court has been presented with sufficient evidence that Defendant has been identified by federal authorities or a 287(g) officer as a person who is unlawfully present in the United States.</u> [Emphasis Supplied]

Defendant has been a lawful permanent resident alien of the United States for the past 11 years and therefore she has no knowledge for the basis of Comm. Richter's finding and order. A copy of her Permanent Resident card is attached as Supplemental Exhibit 2.

Immediately following sentencing, appellant filed her timely notice of appeal [R.A. 218]. This court has jurisdiction of this appeal pursuant to A.R.S. § 12-120.21 (A)(1) and (2) and A.R.S. § 13-4033(A)(1).

## STATEMENT OF FACTS

On August 18, 2011, at around 3:30 p.m., appellant was in the driver seat of her 2002 Nissan Xterra SUV, at which time the vehicle's ignition key was in the

---

[7] When there is a *conflict* between the minutes and a reporter's transcript, the circumstances of the particular case determine which shall govern. *State v. Rockerfeller*, 9 Ariz. App. 265, 262, 451 P.2d 623 (App.Div.1-1969) reh.den., rev.den.

ignition switch, the engine was running, and its standard transmission was in neutral. Her SUV was stopped in a line of vehicles in front of the West Wing Elementary School in Peoria, Arizona. She was waiting to pick up her two children who were enrolled at the school. She normally walked her children between home and school, a distance of only three blocks. Since it was a hot summer afternoon, with a temperature of over 110 degrees Fahrenheit appellant wanted to give her children a ride home in her air conditioned SUV, so she drove to the school to pick them up. [R.T. October 25, 2016; p. 47, l.16; p.53, l.5-15; p.54, l.11- p.55, l.20] Appellant had taken one of her prescription medication clonazepam [brand name Klonapin] pills that day, at 10:00 a.m., 2:00 p.m., and 3:15 p.m. [Id.p.45-l.13-18], as prescribed by her treating physician Dr. Jack Hawks, D.O., for her diagnosed condition of clinical anxiety.

Appellant's SUV remained stopped for approximately five minutes, on an uphill, inclined paved street in front of the school. She was wearing new shoes that she had never worn before that fit loosely on her feet [Id. p.53, l.20 - p.54, l.2] As a result, her right foot slipped off the brake pedal, causing her SUV to roll slowly backwards, as a result of the force of gravity. The rear of appellant's SUV collided with the front of another SUV, owned and driven by its sole occupant, M.M. [The driver of the vehicle behind appellant's vehicle is referred to as M.M., because she

is a "victim" under the Victim's Bill of Rights ("VBR"), Ariz. Const. art. 2, §2.1.[8]].

M.M.'s SUV was stopped behind appellant's SUV, approximately five or six feet [R.T. October 18, 2016, p. 59, l. 11-14]. M.M. was waiting to pick up her child from school. M.M. noticed appellant had her foot on the SUV's brake pedal because its brake lights were on for a good five or six minutes. [Id. p. 59, l. 18-19] M.M. saw the SUV rolling backward with no brake lights or reverse lights on [Id. p. 60, l. 22-24], that resulted in a low speed collision, that caused minor damage to the front-end of M.M.'s SUV that cost $1,661.64 to repair, which was fully paid by appellant's automobile liability insurance carrier, USAA. [Id. p. 68, l. 3-9]  M.M. did not sustain any personal injury as a result of the collision.

Officer Kunde (#6857) was present at the school where he had been working traffic enforcement at the start of the school year. He was informed of the collision and contacted both drivers. He determined that appellant had not consumed any alcoholic beverage but he suspected that she might be impaired from a prescription medication. Appellant told Officer Kunde, and later, Officer Privett, that she had taken a 1mg tablet of clonazepam at the following times: 10:00 a.m., 2:00 p.m., and 3:15 p.m.

---

[8] In *State ex rel. Romley v. Superior Court, Maricopa County and Cunningham RPI*, 184 Ariz. 409, 411, 909 P.2d 476 (Ariz.Ct.App.Div. 1-1995), rev. den.,  the court held that, notwithstanding the fact that a DUI offense is a "victimless" crime, a person whose property was damaged as a result of the defendant's conduct has standing as a victim to receive restitution.

Officer Kunde escorted appellant to the principal's office because the principal had given him permission to use her office to conduct his DUI investigation of appellant, because he wanted to spare appellant the humiliation of performing field sobriety tests in front of the whole school and in front of her children. Officer Kunde administered a Preliminary Breath Test (PBT) to appellant, which was negative for ethanol. Officer Kunde conducted a DUI investigation of appellant, during which he administered field sobriety tests (FSTs) to her that, according to his training and experience, indicated her possible impairment.[Id. p. 88. l. 23-25] At the conclusion of Officer Kunde's investigation, he placed appellant under arrest for DUI prescription drugs, a misdemeanor, rather than felony, aggravated DUI, because he verified that she had a valid Arizona Special Ignition Interlock Restricted Driver License (SIIRDL), authorized by A.R.S. §§ 28-1401 and 28-1402, that had been issued to her on March 8, 2011, [Id. p. 109, l. 1-14] by the Arizona Department of Transportation – Motor Vehicle Division (ADOT MVD) [Supplemental Appendix Item 3]. Officer Kunde initially estimated that he had made 10-15 DUI arrests prior to his arrest of appellant, however, he subsequently revised his estimate to approximately 20-30 DUI arrests. He also testified that his arrest of appellant may have been his first DUI prescription drug arrest. [Id. p. 96, l. 16-19] Pursuant to A.R.S. § 28-1401(D), MVD did not delete from its records its three year revocation order of appellant's

23

driver license and privilege to drive, from October 18, 2010, to October 18, 2013. Appellant was transported to the Peoria Police Department, Main Station, where she was contacted by Officer Privet, a phlebotomist. At 3:49 p.m., he opened a Tritech Forensic blood kit and removed the two empty glass vials inside, that he filled with appellant's blood. Her blood sample in Vial No. 1 was for law enforcement testing and her blood sample in Vial No. 2 was for appellant's testing by her independent expert. Appellant was not initially charged with any civil or criminal traffic offense following her arrest. Officer Kunde then released appellant without booking her and she was given a ride home by the police, because he believed that any charges against her – that might be filed after the DPS drug content test - would be filed in the Peoria City Court. [Id. p. 111, l. 19-25; p. 119, l. 23-120, l. 6]

Peoria Police Sergeant James Brown testified that he assisted Officer Kunde in his DUI investigation by conducting a collision investigation and preparing a collision report. He also conducted an inventory search of appellant's SUV, prior to it being towed from the school, during which he found the envelope from Walgreens pharmacy for appellant's clonazepam prescription that she had picked up earlier that day, which stated, "TAKE 1 TABLET BY MOUTH THREE TIMES DAILY AND 1 TABLET AT BEDTIME FOR SEVERE ANXIETY." [R.T. January 6, 2015, p.75]. On cross-examination, he testified that he prepared a

24

one and-a-half page police report supplement that included his narrative of his involvement in the investigation. When appellant's counsel informed the court that appellee had failed to disclose to appellant a copy of Sgt. Brown's supplement report, Comm. Richter excused the jury to consider the issue out of its presence.

DCA Serden provided appellant with a copy of this report, which had hand-written notes at the bottom of page two. A copy of the report, including its hand-written notes, was marked for identification as Exhibit 29, and is included in the Appendix, as Item 2. DCA Serden stated that he had received the copy of the report from Officer Kunde during jury selection on the first day of trial. He further stated that Officer Kunde had used the bottom of page two as "scratch paper" on which he had written, "Where did you get the knowledge to ask all the scientific questions?" DCA Serden stated that he had written a response to Officer Kunde's question that stated, "Experience," followed by the number "2," which was circled and followed by "a gift for bullshit." He also stated that he had underscored the final word numerous times. [Id. p. 12, l. 22; p. 15, l. 1] Appellant then requested Comm. Richter to sanction appellee for its violation of its duty to timely disclose the report by giving an oral jury instruction at that time, pursuant to Rule 105, Ariz.R.Evid., which Comm. Richter denied [Id. p. 15, l. 2; p.16, l. 17], at which time she stated:

"I'll take the issue of any sanction for failure to provide a copy of Sergeant Brown's report under advisement. <u>I don't think that an instruction is necessary at this point in time. So, if you have a proposed final instruction that you would like me to give, we can consider that in final instructions.</u> [Emphasis Supplied][Id. p.16, l.18-24]

Appellant submitted her Requested Jury Instruction No. 2 [R.A. 158], a copy of which is included in the Appendix as Item 3, which was also denied by Comm. Richter.

Criminalist Brandon Nabozny, performed a drug content test on appellant's blood sample in Vial 1 and obtained test results of 94 ng/ml (nanograms per milliliter) of clonazepam.  Criminalist Nabozny testified at appellant's second trial that, with respect to the drug clonazepam – unlike ethanol – there is no general agreement in the scientific community that all persons above a certain level are impaired, at least to the slightest degree. [R.T. October 19, 2016, p. 146, l.21; p. 147, l. 16] He was not claiming that appellant's clonazepam level was the true value because there certainly could be some variability in the accuracy of the measurement, which he referred to as the "level of certainty." [*Id.* p. 112, l. 9-12] It may have been his first analysis in which he had identified the drug clonazepam. [Id. p. 146, l. 6-14]

Wayne Ruiz, an ADOT-MVD custodian of records, testified that on August 18, 2011, the date of her DUI arrest, appellant had a valid driver license and privilege that was restricted pursuant to A.R.S. §§ 28-1401 and 1402, even though her three-year revocation order remained on her ADOT MVD driver license record. [R.T. October 20, 2016, p. 115, l. 19 – p. 116, l. 11] Appellant called as a defense witness, retired MVD custodian of records Richard Schweinsburg, who testified that he recently retired from ADOT-MVD after a 20-year career. His job title during the final seven years of his employment was co-custodian of records for MVD and head of the ignition interlock section. Mr. Schweinsburg further testified during his DMV employment, he had testified hundreds of times as to the status of persons' driver licenses. [Id. p. 140, l. 7- p.143, l. 18] Mr. Schweinsburg testified that he concurred with Agent Ruiz's testimony that, on the date of her DUI arrest, appellant had a valid SIIRDL that was restricted pursuant to A.R.S. §§ 28-1401-02 and not for a DUI conviction. He also testified that during his 20-year MVD employment, he had never "heard of this kind of novel interpretation that you're still revoked [even] if you have a driver license." [Id. 159, l. 8-10]

## ISSUES PRESENTED

1. <u>Did Appellee's Trial Counsel Commit Numerous Intentional Acts of Prosecutorial Misconduct, to Gain a Tactical Advantage, Which Included</u>

His Lack of Candor Toward the Tribunal, That When Combined, Violated Appellant's Right to Due Process Of Law?

2.  Did the Superior Court Commit Reversible Error By Denying Appellant's Motion to Preclude Appellee From Presenting at Trial, Argument and Evidence in Support of Its Alternative Legal Theory It Waived at Appellant's Preliminary Hearing, in Violation of the Doctrine of Judicial Estoppel?

3.  Did the Superior Court Commit Reversible Error by Denying Appellant's Motion to Strike Appellee's Sentencing Enhancement Allegation That She Committed the Charged Offense While On Probation For a Prior Felony Offense Because Her Prior Class 6 Undesignated Aggravated DUI Offenses Were Designated as a Misdemeanors Prior to the Date (1) Appellee Filed the Charge, and (2) Appellee Filed Its Allegation?

4.  Did The Superior Court Commit Reversible Error by Denying Appellant's (1) Motion For Dismissal, With Prejudice, Based Upon the Court's Erroneous *Sua Sponte* Mistrial Declaration, in Appellant's First Jury Trial, Which It Granted Without Either a Manifest Necessity or Appellant's Consent, and (2) Motion for a Directed Verdict of Acquittal, Pursuant to Rule 20, Ariz.R.Crim.Pro., Made In Her Second Jury Trial.

5.  Did the Superior Court Commit Reversible Error By Denying Appellant's Second Motion For Reconsideration of Her Motion to Suppress Appellee's Drug Content Analysis of Her Blood Sample Because Appellee Waived Its Alternative Argument, Pursuant to A.R.S. §13-3925, by Failing to Preserve This Argument In the Superior Court?

6.  Did the Superior Court Commit Reversible Error by Denying Appellant's Motion for Alternative Relief, Including Dismissal, With Prejudice, Based on Appellee's Violation of Its Duty to Collect and Preserve Until Time of Trial, a Sample of Her Blood For Her Independent Chemical Analysis?

7.  Did the Superior Court Commit Reversible Error by Its Rulings Relating to the Admission or Preclusion of Evidence, Discovery Issues, Jury Instructions, and Motions to Quash Subpoenas?

**Argument 1**

**Appellee's Trial Counsel Committed Numerous Intentional Acts of Prosecutorial Misconduct, to Gain a Tactical Advantage, Which Included His Lack of Candor Toward the Tribunal, That When Combined, Violated Appellant's Right to Due Process Of Law.**

The standard of appellate review of this argument is *de novo. State v. Smith*, 219 Ariz. 132, 134, ¶10, 194, P.3d 399, 401 (2008).

A. **The Special Responsibilities of a Prosecutor**

In *State v. Noriega*, 142 Ariz. 474, 640 P.2d 775 (1984), overruled, on other grounds, by *State v. Burge*, 167 Ariz. 25, 28 n.7, 804 P.2d 754, 757 n.7 (1990), the supreme court recognized "the special responsibilities of a prosecutor" stating:

> We also emphasize that a prosecuting attorney is held to a higher standard of conduct than an ordinary attorney. As this court stated in *Pool v. Superior Court,* 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984):
>
> [T]he prosecutor is not the representative of an ordinary litigant; he is the representative of a government whose obligation to govern fairly is as important as its obligation to govern at all. The prosecutor's interest in a criminal prosecution "is not that it shall win a case but that justice shall be done." Thus, "while he may strike hard blows, he is not at liberty to strike foul ones." It is the prosecutor's duty to refrain from improper methods calculated to produce a wrongful conviction just as it is his duty to use all proper methods calculated to bring about a just conviction (citations omitted). [Emphasis Supplied]

In *In re Peasley*, 208 Ariz. 27, 90 P.3d 764 (2004), an attorney discipline case in which the supreme court ordered the disbarment of a

former Deputy Pima County Attorney for intentional misconduct, the

court stated:

> 20 <u>The hearing officer found that Peasley violated his duty as a</u>
> <u>prosecutor to the public and the court</u>…He further concluded that…
> <u>Respondent acted intentionally</u>."

> …<u>[W]e conclude that the hearing officer's factual findings are not</u>
> <u>clearly erroneous.</u>

> Recognizing a Government lawyers role as a shepherd of justice, <u>we</u>
> <u>must not forget that the authority of the Government lawyer does not</u>
> <u>arise from any right of the Government, but from power entrusted to</u>
> <u>the Government. When a Government lawyer, with enormous</u>
> <u>resources at his or her disposal, abuses this power and ignores ethical</u>
> <u>standards, he or she not only undermines the public trust, but inflicts</u>
> <u>damage beyond calculation to our system of justice. This alone</u>
> <u>compels the responsible and ethical exercise of this power.</u> [Emphasis
> Supplied]

Arizona Supreme Court Rule 42, entitled, "Arizona Rules of Professional

Conduct," includes ER [Ethical Rule] 3.3 entitled, "Candor Toward the Tribunal"

and ER 3.8, entitled, "Special Responsibilities of a Prosecutor."

ER 3.3 states:

(a) <u>A lawyer shall not knowingly</u>:
   (1)<u>Make a false statement of fact or law to a tribunal or fail to correct a false</u>
      <u>statement of material fact or law previously made to the tribunal by the</u>
      <u>lawyer.</u> [Emphasis Supplied]

The "Comment" to ER 3.8, states:

> A prosecutor has the responsibility of a minister of justice and not
> simply that of an advocate. <u>This responsibility carries with it specific</u>

obligations to see that the defendant is accorded procedural justice,... [Emphasis Supplied]

In *State v. Roque*, 213 Ariz. 193, ¶¶151-156, 228-229, 141 P.3d 368, p.403 (2006), the supreme court addressed the prosecutorial misconduct issue, stating:

> ¶ 152 In *State v. Hughes*, reviewing a case we called a "masterpiece of misconduct," we held that the cumulative effect of seven incidents of prosecutorial misconduct denied the defendant a fair trial. [Citation Omitted] *Hughes* set forth the test for reversal based on prosecutorial misconduct as follows:
>
> [A] defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial. To determine whether prosecutorial misconduct permeates the entire atmosphere of the trial, the court necessarily has to recognize the cumulative effect of the misconduct. [Citations Omitted] "Prosecutorial misconduct is harmless error if we can find beyond a reasonable doubt that it did not contribute to or affect the verdict." [Citation Omitted] [Emphasis Supplied]
>
> ****
>
> ¶ 154 The first step in evaluating [a] prosecutorial misconduct claim is to review each alleged incident to determine if error occurred.... If the defendant objected [at trial], the issue was preserved. [Citation Omitted].

B. **Appellee willfully engaged in prosecutorial misconduct, by which it gained a tactical advantage, through its deliberate indifference and intentional ignorance of its repeated errors during its three prior grand jury presentations against appellant.**

31

Appellee was solely responsible for causing these, "forays that served to increase of the cost, length, and burden of litigation with little or no corresponding benefit." *American Family Mut. Ins. Co. v. Grant,* 222 Ariz. 507, 512 ¶16, 217 P.3d 1212 (App. Div.1-2009).

In addition to the three Rule 12.9 remand orders granted to appellant, during the same time period, the DUI courts remanded five other indictments obtained by appellee against three other defendants charged with aggravated DUI, namely: CR2012-108237-001, Defendant Thad Thomas Amador, Comm. Phemonia Miller, June 28, 2012 (First Remand Order), December 19, 2012 (Second Remand Order), May 5, 2013 (Third Remand Order), CR2013-441785-001, Defendant Michael Howard Tatro, Comm. Jerry Bernstein, November 12, 2013, and CR2015-144059-001, Defendant Ronald Fredrick Pollard, Comm. David Sayer, February 5, 2016. Copies of these other remand orders are included in the Appendix as Item 4. Appellant requests the court to take judicial notice of these records from the superior court, based upon the same authorities she cited in her previously filed motion for the court to take judicial notice. These five other remand orders in addition to the three remand orders granted to appellant, establish appellee's **deliberate indifference and intentional ignorance of its same error.** *Torosian v. Paulos,* 82 Ariz. 304, 313, 313 P.2d 382 (1957). "Intentional ignorance such as willful evasion of knowledge...constitutes bad faith." *State v. Tarzian,* 136 Ariz.

32

238, 241, 665 P.2d 582, 585 (App.Div. 1 -1983) rehrg.den., rev.den. "An inference of a party's willful conduct may be drawn from the parties 'reckless indifference to or disregard to matters in the party's knowledge."

C. **Prosecutorial misconduct by asserting a legal theory at trial appellee had waived at appellant's preliminary hearing, in violation of the doctrine of judicial estoppel.**

Appellant presented this argument in appellant's special action, as argument IV, from pages 34-36[9].

On December 2, 2014, during the preliminary hearing before Comm. James Rummage, appellee's trial counsel, DCA Serden, initially argued that appellee had established probable cause that appellant committed the Aggravated DUI offense charged in the direct complaint, under the alternative theories, that appellant's

> ... privilege to drive was revoked and it had a restriction on it at the same time. And so under either one of those theories, the State has presented the Court with sufficient evidence from [sic] [for] the Court's probable cause. [RT (12/22/14) at page 46] [Emphasis supplied]

Appellant responded to appellee's trial counsel's "while restricted" theory arguing that appellee had established probable cause to believe appellant's driver license was restricted, pursuant to A.R.S. §28-1402(B), but not "as a result of

---

[9] Appellant's special action erroneously listed the date of her preliminary hearing before Comm. James Rummage as having occurred on December 2, 2014; however, the correct date of the preliminary hearing was actually December 22, 2014.

violating §28-1381 or 28-1382 or under 28-1385"– as required for the crime of

Aggravated DUI in violation of A.R.S. §28-1383(A)(1).

Appellee's trial counsel DCA Serden then expressly waived his second

alternative theory, stating:

> ... [Y]ou've heard the testimony of Mr. Ruiz [MVD Records
> Custodian]. ... The Defendant was allowed under certain
> circumstances to drive under those special restrictions under... 28-
> 1402.
>
> But the bottom line is, her privilege to drive was still revoked. She's
> not permitted to drive unless she was driving under those certain
> circumstances. Whether she was driving under those circumstances or
> not is irrelevant to these proceedings. The testimony and the evidence
> is her privilege to drive was revoked. It was revoked before she drove
> and it was revoked for an additional two years afterwards. That's the
> bottom line.
> And so the State has provided the Court with a preponderance
> [sic][probable cause] of the evidence that her privilege to drive was
> revoked on the date of August 18th, 2011....
>
>       *    *    *
>
> To make the Court's job easier, Your Honor, I'm not reiterating the
> restricted argument. I'm just stating I'm relying on the revocation
> argument. [RT (12/22/14) at pages 50-52] [Emphasis supplied]

This concession by appellee's trial counsel was binding on appellee

and limited it thereafter at trial to the single theory of revocation that it

ultimately asserted at appellant's preliminary hearing.

In *State v. Towrey*, 186 Ariz. 168, 920 P.2d 290 (1996), the supreme court

stated:

"Judicial estoppel prevents a party from taking an inconsistent position in successive or separate actions…[it] is not intended to protect individual litigants but is invoked to protect the integrity of the judicial process by preventing a litigant from using the courts to gain an unfair advantage…<u>the doctrine of judicial estoppel is no less applicable in a criminal than a civil trial…[t]hree requirements must exist…(1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding.</u>") [Emphasis Supplied]

The doctrine prevents a party who has assumed a particular position in one judicial proceeding from taking an inconsistent position in a subsequent proceeding. *Martin v. Wood*, 71 Ariz. 457, 229 P.2d 710 (1951).[1] An essential element of this doctrine, however, is that the position first asserted must have been successfully maintained. In *re Estate of Cohen*, 105 Ariz. 337, 464 P.2d 620 (1970). In *State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co.,* 19 Ariz.App. 594, 509 P.2d 725 (1973), the court explained the doctrine, stating:

> The essence of judicial estoppel is that a party *has gained an advantage-obtained judicial relief* - in one action by asserting one position, and that in view of his having gained that advantage, he must accept the burdens of that position in any subsequent litigation between the same parties involving the same issue. Under such circumstances the law will not allow a party "to have his cake and it too."

D. **Prosecutorial misconduct which included a lack of candor toward the tribunal during appellant's second trial, by making numerous intentional misstatements of fact and law and, during her third trial, by making a frivolous motion to Call Appellant's Co-Counsel As a Witness For Appellee**

**Appellee's Trial counsel violated his Duty of Candor Toward the Tribunal by His Intentional Misstatements**

An intentional misstatement by appellee's trial counsel violates the prosecutor's duty of candor to the tribunal, and, since it is equivalent to the prosecutor's presentation of knowingly perjured testimony, appellant is not required to show any prejudice to her in order for the appellate court to grant reversal on such an act of prosecutorial misconduct. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d, 1217 (1959); *State v. Ferrari*, 112 Ariz. 324, 334, 541 P.2d 921, 931 (1975), *accord; State v. Razinha*, 123 Ariz. 355, 359, 599 P.2d 808, 812 (App.Div. 2-1979).

**Misstatement About Number of Times Appellee Charged Appellant**

During appellee's trial counsel's opening statement, in appellee's second jury trial, he intentionally misstated to the court and jury, "…[T]he case against the Defendant was filed, dismissed, filed, dismissed, and then refiled." [R.T. October 18, 2016, p. 43] When appellee's trial counsel made this statement, he knew that it was actually the **sixth,** rather than the **third** time, appellee had charged her with the same offense, because, in appellant's Memorandum of Law for Magistrate at Preliminary Hearing [R.A. 11], in the "Procedural Discussion" on pages 2-5, appellant listed all six of appellee's prosecutions against her.  Appellant offered Exhibit 39 in evidence at her second trial, which was the court reporter's transcript of an excerpt of appellee's opening statement, which included this intentional

misstatement by appellee's trial counsel. Comm. Richter sustained appellee's objection to the admission of Exhibit 39. Appellee then exacerbated its prior intentional misconduct during the following proceedings:

CO-COUNSEL KOPLOW: **Are you gonna agree that it's been dismissed and refiled six times?**
DCA SERDEN: **No, because it's only been dismissed and refiled four times in this court. There's only four case numbers.**
CO-COUNSEL KOPLOW: **Has it been dismissed and refiled five times if you count the other court?**
DCA SERDEN: **I don't count that because I have no control over that [** [10] **]. In this case it has four case numbers, one 2013 and three 2014 case numbers.**
CO-COUNSEL KOPLOW: **If it had four case numbers, why did you tell the jury three?**
DCA SERDEN: **I misspoke. He could have corrected me in his opening statement.**

CO-COUNSEL KOPLOW: **Okay. Well, you have an obligation, I would say.**
DCA SERDEN: **I will correct it in front of the jury, then.** [Emphasis Supplied][R.T. October 24, 2016, p. 69-72]

Appellee's trial counsel never thereafter fulfilled his promise to inform the jury of his misstatement.

### Misstatement About Date "Case Started" and Number Of Indictments

During appellee's rebuttal closing argument at her second trial, appellee's trial counsel intentionally misstated that "the case" against appellant started on

---

[10] This statement by appellee's trial counsel to Comm. Richter and appellant's co-counsel was also false because he knew that appellee had initially charged appellant with the offense as a Class 1 misdemeanor in the Peoria City Court and that on April 4, 2013, presiding Judge Anagnost had granted appellee's motion for dismissal, without prejudice, on the day before her scheduled jury trial, "so that the case could be submitted to the Maricopa County Attorney's Office for felony consideration."

August 18, 2011, the date of her arrest, when he knew that she had not been initially charged at the time of her arrest, stating:

DCA SERDEN: ...**the case started in August 18th, 2011.**
CO-COUNSEL COFFINGER: **That's not true. It didn't start - - she got arrested. It didn't start until nine [*sic*][six] months later in Peoria City Court.**
THE COURT: **Objection's overruled.**
MR. COFFINGER: It didn't start - -
\*\*\*
DCA SERDEN:    **The case started on August 18, 2011, with the investigation of the defendant... And [Mr. Coffinger] said that there have been three grand juries in this case and they were all secret. ..there's actually four cases that have been filed in this court. Okay? Two of them went to grand jury - -**
CO-COUNSEL COFFINGER:   **Three of them.**
DCA SERDEN:   **Two of them went to grand jury, two of them went to preliminary hearing, one in front of Commissioner Ireland, on [sic][one] in front of Commissioner Rummage...** [Emphasis Supplied]

**Misstatement in Second Trial that Parties Stipulated About "Disp[sition] Notice"**

Appellant filed a timely motion for new trial of her second jury trial [R.A. 174], in which she presented, on pages 6-10, the following specific instances of appellee's trial counsel's intentional misconduct to gain a tactical advantage by making false statements that violated his duty of candor toward the tribunal, during his rebuttal closing argument:

> The prosecution also made false claims relating to "Exhibit #41" for the purposes of misleading the jury into believing the defense was being deceitful. This exhibit was a redacted portion [of a] pleading filed by the state regarding the destruction of the blood. The defense sought to have a larger portion of the pleading admitted. The court would only allow a footnote. Somehow the prosecutor then told the jury it was a stipulation by the defense that the destruction of the

38

blood was inadvertent. He specifically stated "The parties agreed prior to this being submitted to you that that's what happened,... now the defense is arguing that it's proof of some great conspiracy." ...this was a complete fabrication that the court permitted the prosecution to testify to during his closing argument. *See [State v.] Cornell*, 179 Ariz. at 331, 878 P.2d at 1369 (Counsel's questioning and argument cannot make insinuations that are not supported by the evidence). [Emphasis Supplied]

### Misstatement in Third Trial Opening Statement Omitting Felony Probation

On November 29, 2016, at the beginning of his opening statement in

appellant's third jury trial on appellee's aggravating circumstance allegation,

appellee's trial counsel made the following misstatement:

MR. SERDEN: ...Today's trial involves one very simple question: Was the defendant, Erin Espinosa, on probation on August 18, 2011? That is the question that you need to answer.
MR. COFFINGER: Your Honor, excuse me. It's for a felony. He's leaving that part out.
THE COURT: That is correct, Mr. Serden. If you would - -
MR. SERDEN: It's my opening statement. He can contradict me if he wants to. I can make my opening statement that way I - -
THE COURT: Your opening statement need to be a correct statement of the law, as well, and it is for a felony offense.
MR. SERDEN: ...She was on probation for a felony offense on August 18, 2011.
[R.T. November 25, 2016, p. 8, l. 19-p. 9, l. 8]


### Improper Argument Based On Facts Not In Evidence

Appellee's trial counsel, during his rebuttal closing argument, argued facts

that he knew were not in evidence, by arguing appellant had not conducted a

pretrial examination of Criminalist Nabozny or requested him to disclose

documents, at which time the following proceedings occurred:

MR. SERDEN: ...**Mr. Nabozny for six years was available for the defense to interview - -**

MR. KOPLOW: **Objection. He's about to...say some fact that's not in evidence about some pretrial interview.**

THE COURT: **Objection's overruled. Move on, Mr. Serden.**

MR. COFFINGER: **I have two transcripts of Nabozny's testimony, Your Honor. That's more than an interview. Two separate ones.**

THE COURT: **Objection is overruled. Please move on.**

MR. SERDEN: Mr. Nabozny was available to be interviewed. There's also the opportunity for the defense to request documents at any point, **which both - - which the State is obligated to provide. No such request was made.**

MR. KOPLOW: **Your Honor, objection, misstates evidence. Mr. Coffinger - - we ask you to take judicial notice of the record in this case that we filed a request for all Brady material in this case. We would consider that to be *Brady* material. So, therefore, what has just been said is misstated.**

THE COURT: **Objection's overruled. You may continue.** [Emphasis Supplied] [Id. pp. 65-66, lines 2-25 and 1-6]

**Frivolous Motion to Call Defense Counsel as Witness for Appellee**

In appellant's third trial, appellee's trial counsel made the following

frivolous motion:

MR. SERDEN: ...**[B]ased upon the statements that were made in the opening statement, I think Mr. Coffinger has once again made himself a witness in this case because he was her attorney in a prior case. He has argued to the jury that no one explained to her that this was [probation for] a felony...[T]he State...has a right to call him as a witness...[for] the sole purpose of[,]["][W]as it explained to her that this is a felony[?"]...I want to call him in my case-in-chief.**

Appellant's co-counsel objected to appellee's motion, stating:

40

MR. KOPLOW: **I argued in my motion for a new trial about the tactics being used here. This is continued prosecutorial misconduct, attempting to interfere with the attorney/client relationship.** [R.T. 11/29/2016, pp 53-54; 75-76]

E. **Prosecutorial misconduct during his rebuttal closing argument in appellant's second jury trial, when he made repeated disparaging comments directed at appellant's counsel.**

Appellant's motion of new trial of her second jury trial also included the following instances of appellee's trial counsel's intentional misconduct to gain a tactical advantage, during his rebuttal closing argument, my making the following disparaging comments against appellant's co-counsel:

**First Disparaging Comment Against Appellant's Counsel**

MR. SERDEN: ...In this case **the defense's job is to create reasonable doubt** in your mind.

MR. KOPLOW: Objection. That's not our job. Where is that in the job description?

THE COURT: Overruled. **You may continue.** [Emphasis in bold Supplied]

[R.T. October 26, 2016, p. 59, lines 6-10]

**Second Disparaging Comment Against Appellant's Counsel**

MR. SERDEN: What the defense tries to do is **they try to distract your attention –**
MR. KOPLOW: Objection. **That's an improper argument, disparaging other counsel. There are ethics opinions directly on point.** Your Honor. Are we gonna hold him accountable to this?

41

THE COURT: **Overruled. You may continue.** [Id. at lines 11-17]

**Third Disparaging Comment Against Appellant's Counsel**

MR. SERDEN: **What the defense normally tries to do, is** give you alternative views of what things are and **to deflect your attention to matters which really aren't part of that list.**

MR. KOPLOW: **Same objection. Deflecting attention is improper argument. It's unethical.**

THE COURT: **Overruled.** [Id. at lines 18-24]

****

MR. KOPLOW: **Does this Court not think that's not unethical conduct?** I can find [-] if you give me some time [-] **several cases where when you say the defense is trying to hide the ball or trying to pull one over on you, it's completely unethical. Why is the Court allowing this?**

THE COURT: That's not what he said.

MR. KOPLOW: Yes, it is, Your Honor. It's not the exact wording. [Id., page 60, lines 7-14.]

**Fourth Disparaging Comment Against Appellant's Counsel**

MR. SERDEN:...because Mr. Nabozny couldn't anticipate what else the defense wanted, **he almost had these crammed down his throat.**

MR. KOPLOW: **Objection, Your Honor.**

MR. SERDEN: Now, one of the other things - -

MR. KOPLOW: Objection, Your Honor. **That again is an attack on me. I did not try to cram something down someone's throat.**

42

THE COURT: **Objection's overruled**. The jury are to rely on their own recollection of the questionings and answering. [Emphasis Supplied] [Id. p. 64, lines 11-20]


**Fifth Disparaging Comment Against Appellant's Counsel**


MR. SERDEN: **Ladies and gentlemen, distraction.**

MR. KOPLOW: Again, Your Honor, **I'm objecting. That's a personal attack on me. I'm making my record.**

THE COURT: **Objection's overruled. You may continue.** *Id* p. 66 at ln 7-11.

In appellant's motion for new trial, on pages 9-10, she stated:


The Arizona Supreme [Court] has firmly established that arguments to the jury that impugns the integrity or honesty of opposing counsel are improper. *State v. Hughes*, 193 Ariz. 72, 86, ¶ 60, 969 P.2d 1184, 1198 (1998); *State v. Denny*, 119 Ariz. 131, 134 (1978); *State v. Gonzales*, 105 Ariz. 434, 436 (1970). Prosecutors' comments are concerning when they "seem to impugn the integrity of defense counsel and suggest to the jury that defense counsel is being deceitful." *State v. Denny*, 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978). It is always improper for the prosecutor to "impugn the integrity or honesty of opposing counsel." *State v. Newell*, 212 Ariz. 389, 403 ¶ 66, 132 P.3d 833, 847 (2006) (holding it was improper to imply that defense counsel was arguing for a position he knew to be false). A prosecutor commits misconduct when he denigrates the defense as a sham. *See United States v. Sanchez*, 176 F.3d. 1214, 1224 (9th Cir. 1999).

Here, the framing of defense counsel as deceitful and trying to distract the jury from the trust was not an isolated incident – it was a theme.

The only purpose of these repeated insults was to denigrate the defense as a "sham." *Id*. Accordingly, the defense objected each time such a remark was made. However, each time, the court overruled the objection...[These rulings by Commissioner Richter] not only

failed to reign in the prosecutor's actions, [they] condoned it. On several occasions [Commissioner Richter exacerbated the harm committed by appellee through her statement of] "overruled"…followed by "You may continue."

In *State v. Hughes, supra,* the supreme court stated the following with respect to prosecutorial misconduct made during the prosecutor's rebuttal closing argument:

> ¶59 Counsel can argue all reasonable inferences from the evidence. See *State v. Dumaine,* 162 Ariz. 392, 401, 783 P.2d 1184, 1193 (1989). Counsel's questioning and argument, however, cannot make insinuations that are not supported by the evidence. See Cornell, 179 Ariz. at 331, 878 P.2d at 1369; *State v. Williams,* 111 Ariz. 511, 515, 533 P.2d 1146, 1150 (1975)…<u>Jury argument that impugns the integrity or honesty of opposing counsel is also improper.</u> See *State v. Denny,* 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978); *State v. Gonzales,* 105 Ariz. 434, 436, 466 P.2d 388, 390 (1970). [Emphasis Supplied]

F. **Prosecutorial misconduct during appellee's rebuttal closing argument in appellant's second jury trial by knowingly making an incorrect statement of law.**

MR. SERDEN: …[I]f, in fact that second blood vial was for the defendant, if there was a law or some legal requirement, the defense would have brought that to your attention; ARS section such-and-such says the defense is entitled to that second vial. They didn't do that because --

MR. KOPLOW: **I'm gonna object to this**.

***

MR. KOPLOW: **I'm gonna object. My objection is judicial estoppel. In their opening statement he referred to this as bad news and took position A.**

****

44

THE COURT: **Objection sustained, Mr. Koplow. Thank you.**

MR. KOPLOW: Okay.

MR. SERDEN: **Sustained**?

THE COURT: **Oh, I'm sorry. Overruled**.

MR. SERDEN: Thank you. *Id*. at p.11, ln 10 – p.12, ln 3.

\*\*\*\*

MR. SERDEN: …[T]hey would have shown you a statute or law that says it is the defendant's right. **In fact, this document right here [Exhibit 8, admitted in evidence 10/19/2016 – IMPAIRED DRIVER ARREST RIGHT TO INDEPENDENT TEST] is the only legal obligation that the State has, and that's to tell the defendant --**

MR. KOPLOW: **Objection, misstates Arizona law. Your Honor, do you want to take judicial notice of what the actual law is in Arizona regarding this?**

THE COURT: **Objection is overruled**. Thank you, Mr. Koplow. *Id*. at ln 7-15 [R.T. pp 66-69, October 26, 2016.]

Appellee's trial counsel was a highly experienced prosecutor with nearly 30 years of experience prosecuting DUI cases. He was well aware of the Arizona case law requiring the state to preserve, until time of trial, a sample of the DUI arrestee's blood, for independent analysis, based upon *State v. Kemp*, 168 Ariz. 334, 813 P.2d 315, 335-337 (1991), and the cases stated therein and in appellant's motion to dismiss the charge, with prejudice, [R.A. 121] on pages 7-10.

In appellant's motion for new trial, she further stated:

In sum, the Prosecutor's intent to gain a tactical advantage through his misconduct was manifested by the repeated invocation of his theme of defense counsel's distraction and deceit. These were not inadvertent comments, but repeated to the extent that they pervaded the entire

45

rebuttal argument. Because <u>such comments had the clear potential for</u> <u>affecting adversely the defendant's right to a fair trial, the court should</u> <u>have taken prompt corrective action.</u> *Viereck v. United Sta*tes, 318 U.S. 236, 247 (1943). [Emphasis Supplied]

Appellee's trial counsel made a correct self-evaluation, when he stated that he had "a gift for b---s---" in his hand-written note to Officer Kunde, set forth herein on page 24. He displayed his character trait for prevarication on numerous occasions during the nearly six-year-long prosecution of appellant. His numerous acts of prosecutorial misconduct to gain a tactical advantage, which were also violations of his duty of candor toward the tribunal, when combined, denied appellant's right of due process of law in this prosecution. In appellant's motion to dismiss, with prejudice (double jeopardy) [R.A. 66], that she filed, following Comm. Richter's *sua sponte* mistrial declaration, she stated on page 4, that DCA Serden and undersigned counsel, who was appellant's only attorney during her first jury trial:

> ...then spoke off-the-record with the ten trial jurors, who advised them that three of the jurors were inclined to return a verdict of guilty, and seven of the jurors were inclined to return a verdict of not guilty. [Emphasis Supplied]

In appellee's response [R.A. 70], it did not dispute or contest this statement by appellant.

Based upon DCA Serden's knowledge that more than two-thirds of the jurors in appellant's first jury trial – at the time Comm. Richter entered her *sua sponte* mistrial declaration - "were inclined to return a verdict of not guilty," it is clear that his intent in committing the numerous acts of prosecutorial misconduct, during her second and third trials – like the misconduct committed by the prosecutor in *Pool, supra* – was "to avoid a probable acquittal or [to] harass [the] defendant." *Pool, supra*, 139 Ariz., 98, 105.

Unfortunately for appellant, Comm. Richter did not perform her function like the trial judge in *Pool, supra*, which the court described as follows:

> The trial judge here did not sit by and allow the prosecutor full reign. He sustained objections when made and raised his own when defense counsel made no objection. Eventually he did what his discretion permits and granted the mistrial. We find no fault with his actions. [Emphasis Supplied] 139 Ariz. 104.

**Reckless prosecutorial misconduct by destruction of appellant's blood sample prior to trial.**

Appellee's response to appellant's motion to dismiss, with prejudice, or, in the alternative, to suppress blood drug content test results based upon appellee's failure to preserve a sample for appellant's independent testing [R.A. 123] stated, in Footnote 1, on page 2:

> The state has determined that, after the dismissal without prejudice of one
> of the former incarnations of this case, specifically CR2013-441390-001,
> in February, 2014, the Maricopa County Attorney's Office inadvertently
> sent a disposition notice [R.A. 129] to the Peoria Police Department that
> the case had been dismissed. The blood kit was apparently destroyed in
> September, 2014." [Emphasis Supplied]

In spite of this concession, Comm. Richter denied all alternative forms of relief

requested by appellant, due to appellee's failure to preserve, until time of trial, a

sample of her blood that had been drawn for her independent testing, as required

by *State v. Kemp*, 168 Ariz. 334, 813 P.2d 315 (1991).

**Argument 2**

> **The Superior Court Committed Reversible Error By Denying
> Appellant's Motion to Preclude Appellee From Presenting at Trial,
> Argument and Evidence in Support of Its Alternative Legal Theory
> That Appellee Had Waived at Appellant's Preliminary Hearing, in
> Violation of the Doctrine of Judicial Estoppel.**

The standard of appellate review for this argument is *de novo*, based upon the

authority cited at the beginning of Argument 1.

Appellant presented this argument in her appellant's special action on pages

34-36 and herein on pages 32-35.

The superior court compounded its prior error in denying appellant's motion to

preclude appellee's alternative theory of the case that it waived at the preliminary

hearing, during appellant's second jury trial, when, at appellee's request and over

appellant's objection, it gave the following final jury instruction [R.A. 164], on

Page 10:

> **Driver's License Revoked or Restricted As a Result of a Prior DUI Conviction**
> The state has introduced two alternative theories of its case. While the theories are alternative, they are not mutually exclusive.
> You do not have to unanimously agree on a theory, but you must unanimously agree on a verdict.


**Argument 3**

**The Superior Court Committed Reversible Error by Denying Appellant's Motion to Strike Appellee's Sentencing Enhancement Allegation That She Committed the Charged Offense While On Probation For a Prior Felony Offense Because Her Prior Class 6 Undesignated Aggravated DUI Offenses Were Designated as a Misdemeanors Prior to the Date (1) Appellee Filed the Charge, and (2) Appellee Filed Its Allegation.**

The standard of appellate review is abuse of discretion. *State v. Torres*, 233 Ariz. 479, 481, ¶11, 314 P.3d 825, 827 (App.Div.2-2013).

Appellant presented this argument in appellant's special action, in Argument III, on pages 33-34.

Appellee refiled its sentence enhancement allegation [RA 18], pursuant to A.R.S. §13-708(C), that it had previously filed in one of the prior dismissed prosecutions, that alleged appellant committed the charged offense while released from confinement while she was on probation for a class 6 undesignated felony offense in Maricopa County Superior Court case CR2009-126740-001-DT.

On April 23, 2012, in that case, Maricopa County Superior Court Comm. Phemonia Miller entered an order designating both of those offenses as class 1 misdemeanors. These class 1 misdemeanor designations applied retroactively to the date of the entry of judgments of guilt. *State v. Winton*, 153 Ariz. 302, 736 P.2d 386 (App. Div. 1 1987, nor *State v. Martinez*, 172 Ariz. 437, 837 P.2d 1172, rev. den., cert den 113 S.Ct. 1601, 507 U.S. 992, 123 L.Ed.2d 163 (App. Div. 1 1992).

In *State of Arizona v. Dawn Michelle Knapp*, No. 1 CA-CR 10-0787, filed October 20, 2011, this court issued a memorandum opinion in which it resolved this issue that appellant argues justifies this court in now issuing a published opinion in her case. In *Knapp*, this court ruled that the state's sentence enhancement allegation was invalid because her prior Class 6 "undesignated" offense had been designated a misdemeanor prior to her conviction in her subsequent case. Appellant cites the *Knapp* memorandum decision, pursuant to Rule 111, Arizona Supreme Court Rules, "to assist the appellate court in deciding whether to issue a published opinion," and appellant has provided a hyperlink to the decision[11]. The Arizona Supreme Court Rules provide a list of factors which

---

[11] Arizona Supreme Court Rule 111, entitled "Publication of Opinions of the Supreme Court and Court of Appeals; Depublication," states in subsection c, entitled, "Disposition as Precedent,"

Memorandum decisions of Arizona state courts are not precedential and such a decision may be cited only…To assist the appellate court in deciding whether to issue a published opinion… A citation must indicate if a decision is

this court must consider when deciding whether to issue a published opinion. These include whether the decision "[e]stablishes, alters, modifies or clarifies a rule of law," whether is "[c]alls attention to a rule of law which appears to have been generally overlooked," whether it "[c]riticizes existing law," and whether it "[i]nvolves a legal or factual issue of unique interest or substantial public importance [.]" Ariz.Sup.Ct.R. 111(b).

### Argument 4

**The Superior Court Committed Reversible Error by Denying Appellant's (1) Motion for Dismissal, With Prejudice, Based Upon the Superior Court's *Sua Sponte* Mistrial Declaration, Without Either a Manifest Necessity or Appellant's Consent, and (2) Motion For Directed Verdict of Acquittal, Pursuant to Rule 20, Ariz.R.Crim.Pro., That She Made in Her Second Trial After Appellee Rested Its Case-in-Chief.**

The standard of appellate review for both subsections of this argument, is whether the superior court's factual findings and legal conclusions were clearly erroneous. *State v. Rodriguez*, 205 Ariz. 392, 397-98, ¶18, 71 P.3d 919, 924-25 (App. Div. 2- 2003).

A. **Denial of Appellant's motion to dismiss, with prejudice (double jeopardy), based upon the court's erroneous *sua sponte* mistrial declaration, without either a manifest necessity or appellant's consent.**

---

a memorandum decision. A party citing a memorandum decision must provide either a copy of the decision or a hyperlink to the decision where it may be obtained without charge. A party has no duty to cite a memorandum decision. [Emphasis Supplied] http://www.azcourts.gov/Portals/89/memod/CR/CR100787.pdf

Appellant presented this argument in appellant's special action on pages 14-31. On January 8, 2015, Appellant testified, on direct examination, that she never received any written notice from ADOT-MVD of any SIIRDL destination restrictions, and that she was unaware of such restrictions on the date of the alleged offense [R.T. January 8, 2015, p. 138, l.16 – p.139, l.2]. On cross-examination, she testified as follows:

> Q. [by DCA Serden] Did you ask Mr. Coffinger whether there were additional restriction under ARS 28-1402?
> A. No, I didn't.
> Q. Did you think it incumbent upon yourself to go find out what restrictions were under ARS 28-1402?
> A. I'm sorry I didn't. I called Mr. Coffinger and I felt he explained it to me fully.
> Q. Did you ask him–... what ARS 28-1402 says?
> A. I never said anything about ARS. When it says restricted interlock, that tells me you are restricted. You just have to have an interlock. [R.T. January 8, 2015, p. 151, l.11-l.22][DCA Serden then used a video projector to display on a screen in the jury's view a copy of A.R.S. §28-1402]
> Q. Then it says "only as follows," and without going into this only as follows, there are a bunch of specific restrictives or times and places that you can drive; Correct?
> A. Is that a law book? Are you suggesting that I was remiss, because I didn't go to a law library? I called a lawyer, [...] and I asked when I was at the MVD, so because I have this insurance and I have my interlock I can drive now? She said, yes. She never gave any[...] you could go here, but not here. You can go here or– never, never. I would not have been driving under those circumstances, if that his what they told me or if my lawyer had told me. I would not have driven the car.
> [DCA Serden then projected a copy of petitioner's SIIRDL (Appendix Item 3), which included on the front the notation, "Restricted Interlock A.R.S. 28-1402"]

Q.  Well did you see that right there?
A.  Yes, I did.  But it says "restricted interlock." I was restricted, because I needed an interlock and then I was fine. "Restricted interlock."
Q.  So you thought the rest of that was just extraneous and had no meaning or affect?
A.  I called and I asked a lawyer what it meant.
Q.  That's not an answer to my question.  My question is did you ignore that part, which clearly gives you notice that this is a restricted license, pursuant to ARS 28-1402? Did you ignore that explicit very clear unequivocal information on the front of your driver's license?
A.  I didn't— I called a lawyer to ask what it meant.  I called a lawyer. Isn't that being proactive enough? [Emphasis supplied] [RT January 8, 2015, p. 154, l.7-p. 155, l.10]

Prior to the conclusion of appellant's testimony, Comm. Richter then granted the evening recess and excused the jurors with the direction that they return on Monday, January 12, 2015, for the anticipated last day of trial, at which time the following proceedings occurred:

MR. SERDEN: Can I call Mr. Coffinger to the stand to explain what he told her about the ignition interlock?
THE COURT: No.
MR. SERDEN: That's now the issue.  Now she's going to rely on my attorney told me it.  I have no responsibility in this case.  I mean they are opening this can of worms.  He asked the questions, so his statement to her were completely legally wrong. [Emphasis supplied] [R.T. January 8, 2015,  p. 171, l.10-l.18]

On January 12, 2015, after Comm. Richter called the case and the parties entered their appearance but prior to the jury being brought into the courtroom, Comm. Richter stated, "...[W]hen we broke on Thursday, Mr. Serden had made a

request to call Mr. Coffinger as a witness based upon Ms. Espinosa's testimony."[R.T. January 12, 2015, p. 3]. DCA Serden then stated:

> ... The State requested that it be allowed to call Mr. Coffinger for testimony. As the Court is aware, one of the elements the State has to prove is that the defendant knew or should have known her license was revoked and/or restricted. In that circumstance, <u>she testified that based upon a conversation she had had with Mr. Coffinger, she believed that once she got the Special Ignition Interlock Restricted Driver's License her privilege to drive was no longer revoked. So, based on that conversation, the State made [a]... comment to the Court and Mr. Coffinger that it was going to request that it be allowed to call Mr. Coffinger to either confirm or deny that statement.</u> [Emphasis supplied] [R.T. Id., p. 3, 4]

Comm. Richter then stated:

> ... <u>[B]ased upon the nature of Ms. Espinosa's testimony and the elements that the State must prove, I do believe that it is appropriate that the State be allowed to explore that issue with Mr. Coffinger. And given that situation, obviously, we can't proceed with Mr. Coffinger being both your lawyer and a witness in your case. So the only option I have is to declare a mistrial</u>.... [Emphasis supplied] [R.T. Id., p. 4]

Appellant did not consent to Comm. Richter's *sua sponte* mistrial declaration, and Comm. Richter did not consider (1) any less drastic, viable alternative remedy, (2) appellant's rights under the attorney-client privilege in criminal cases, provided in A.R.S. §13-4062(2), or (3) the additional prohibitions imposed on defense counsel by the ethical requirements in Rule 42, Ariz.Supr.Ct.R., E.R. 1.6, relating to his duty to preserve the confidential communications with his client. Appellee never moved for a disqualification of

54

defense counsel, and Comm. Richter never conducted a hearing on whether defense counsel should be required to withdraw. She then recalled the jury into the courtroom and stated:

> Due to events that have occurred in this matter, we are no longer able to proceed with this trial. So you will not be required to participate any longer. [R.T. Id., p. 5]

Appellant and Appellee's attorneys then spoke off-the-record with the 10 trial jurors that remained in the jury room. The jurors stated that– although none of them had made a final determination of their verdict– three of them were inclined to return a verdict of guilty and seven of them were inclined to return a verdict of not guilty. Respondent Comm. Richter then addressed petitioner on the record stating:

> Ms. Espinosa, <u>you have two options: Either to continue with Mr. Coffinger as your lawyer and make sure that he does not become a witness in the retrial, or to have him be as a witness and have other counsel represent you in this matter</u>. [Emphasis supplied] [R.T. Id., p. 6].

The double jeopardy prohibition, guaranteed by the Sixth Amendment of the U.S. Constitution and Art. 2, Sect. 10 of the Arizona Constitution, barred appellant's retrial because the superior court's *sua sponte* mistrial declaration was without petitioner's consent and without a manifest necessity.

A mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and

a new trial granted. *State v. Hardy*, 230 Ariz. 281, 283 P.3d 12, cert. den. 133

S.Ct. 935, 184 L.Ed.2d 732 (2012). Accord: *State v. Speer*, 221 Ariz. 449, 212

P.3d 787, cert. den 130 S.Ct. 1520, 559 U.S. 947, 176 L.Ed.2d 126 (2010).

In *Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261 (1984), recon.

den., the supreme court granted special action relief of ordering the dismissal with

prejudice of the criminal prosecution against the defendant whose motion for a

mistrial was necessitated by prosecutorial misconduct, stating:

> The Court acknowledges that the [double jeopardy] clause gives the
> defendant an interest in having the prosecution completed by the
> tribunal before which the trial is commenced. This "interest"
> expresses a policy against multiple trials [citation omitted]. The
> fundamental principle is that:
>
> [T]he State with all its resources and power should not be allowed to
> make repeated attempts to convict an individual for an alleged
> offense, thereby subjecting him to embarrassment, expense and ordeal
> and compelling him to live in a continuing state of anxiety and
> insecurity, as well as enhancing the possibility that even though
> innocent he may be found guilty. *Green v. United States*, 355 U.S.
> 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). [Emphasis
> Supplied]

In *McLaughlin v. Fahringer,* 150 Ariz. 274, 723 P.2d 92 (1986), the 74 year

old great-grandmother of the alleged victim was charged with molesting her four-

year-old great-granddaughter. The *McLaughlin* court granted her special action

relief, stating:

[T]he only issue is <u>whether the declaration of a *sua sponte* mistrial by the trial court over petitioner's objection would bar reprosecution of petitioner on double jeopardy grounds. We believe reprosecution would place petitioner twice in jeopardy.</u>

      *            *            *            *

...A mistrial negates the defendant's "valued right to have his trial completed by a particular tribunal" [citations omitted]. <u>An improperly declared mistrial is a bar to retrial, provided, however, that it was not declared with the defendant's consent.</u> [citation omitted] ... <u>In instances where the trial court declares a mistrial *sua sponte*, whether the Double Jeopardy Clause permits retrial without the defendant's consent depends on whether there is a manifest necessity for the mistrial or whether the ends of public justice will otherwise be defeated</u> [citations omitted].

....<u>The record in this case does not reveal any circumstances which we believe rise to the level of manifest necessity calling for the declaration of a *sua sponte* mistrial.</u>

<u>The record indicates that the trial court made no real effort to determine whether there were any feasible alternatives to declaring a mistrial...</u>

        *            *            *

<u>No manifest necessity existed for the *sua sponte* declaration of a mistrial.</u> .... [Emphasis supplied] 150 Ariz. at 274-278
*State v. Aguilar*, 217 Ariz. 235, 172 P.2d 423 (App. Div. 2 2007), is

procedurally identical to appellant's case because in both cases, (1) the superior

court granted a *sua sponte* mistrial without the defendant's consent, (2) the

defendant sought, but was denied, special action relief to bar retrial based upon the

constitutional prohibitions against double jeopardy, and (3) the defendant was

57

convicted at retrial, sentenced, and filed a timely appeal. The *Aguilar* court reversed his conviction and ordered the dismissal of the charge with prejudice, stating:

> [The defendant contends] his second trial was barred by the Fifth Amendment's protection against double jeopardy....
>
> \*         \*         \*
>
> Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this "abhorrent" practice.
>
> ... [S]ee also *Gori v. United States*, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526-27, 6 L.Ed.2d 901 (1961) (Fifth Amendment protects defendants when "a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused."). Accordingly, we must apply the strictest scrutiny here.
>
> [O]ur supreme court has found that when a trial court fails to consider viable alternatives to a mistrial, manifest necessity has not been shown. *McLaughlin*, [supra].
>
> \*         \*         \*
>
> The trial court expressed concern over the state being deprived of the [untimely disclosed ballistic] report as evidence. But the trial court could not elevate this concern over the defendant's right to be protected from double jeopardy. See *Washington*, 434 U.S. at 503-04, 98 S.Ct. at 829-30. ..."The prohibition against double jeopardy unquestionably `forbids the prosecutor to use the first proceeding as a trial run of his case.'" *Id.* at 508 n. 24, 98 S.Ct. at 832 n. 24, quoting Note, Twice in Jeopardy, 75 Yale L.J. 262, 287-88 (1965). Because the trial court had feasible alternatives to declaring a mistrial, under

58

the strictest scrutiny, there was no manifest necessity to declare the mistrial. See *id.* at 507-08, 98 S.Ct. at 831-32.

*             *             *

Comm. Richter's order denying appellant's dismissal motion [R.A. 75] cites *State v. Givens*, 161 Ariz. 278, 778 P.2d 643 (App. 1989), which cited *Gori*, supra; however, *Givens* is not dispositive because after the trial started, the superior court judge granted the Rule 11 motion for a mental examination that the defendant personally requested, that was not joined in by his defense counsel.

Appellant neither expressly nor impliedly waived her attorney-client privilege pursuant to A.R.S §13-4062(2), which states:

A person shall not be examined as a witness in the following cases:

*          *          *

(2) An attorney, without consent of the attorney's client, as to any **communication made by the client to the attorney, or the attorney's** advice given in the course of professional employment. [Emphasis supplied]

Comm. Richter also relied upon *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000); and, *Accomazzo v. Kemp*, 234 Ariz. 169, 319 P.3d 231 (App. 2014), as authority for her denial of appellant's motion to dismiss. The majority opinion in *State Farm* includes the following test for determining whether a party impliedly waived its attorney-client privilege, stating,

59

...We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most, if not all actions, taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege. All of this occurred in the present case, and none of it, separately or together, created an implied waiver. But the present case has one more factor– State Farm claims its actions were the result of its reasonable and good-faith belief that its conduct was permitted by law, *and* its subjective belief based on its claims agents' investigation into an evaluation of the law. It turns out that the investigation and evaluation included information and advice received from a number of lawyers. It is the last element, combined with the others, that impliedly waives the privilege. State Farm claims that its actions were prompted by what its employees knew and believed, not by what its lawyers told them. But a litigant cannot with one hand wield the sword– asserting as a defense that, as the law requires, it made a reasonable investigation into the state of the law and in good faith drew conclusions from that investigation– and with the other hand raise the shield– using the privilege to keep the jury from finding out what its employees actually did, learned in, and gained from that investigation. [Emphasis supplied] 199 Ariz. at 66

Unlike the plaintiff in *State Farm*, appellant did not cross the line and assert the fourth factor.

In *Accomazzo*, supra, the court granted special action relief finding a non-waiver of the attorney-client privilege, stating:

¶ 9 ...The test we apply is "whether the client asserting the privilege has interjected the issue into the litigation and whether the claim of privilege, if upheld, would deny the inquiring party access to proof

needed fairly to resist the client's own evidence on that very issue."
*State Farm, supra*, 199 Ariz. 62, 13 P.3d at 1179 (2000) (quoting
Restatement (Third) of Law Governing Lawyers § 80 cmt. b). In other
words, <u>a party cannot use privileged information as a sword while
asserting the privilege as a shield.</u> [Emphasis Supplied]

In *State v. Fodor*, 179 Ariz. 442, 448-450, 880 P.2d 662 (App. Div. 1-1994)

the court of appeals reversed the defendant's perjury conviction based on the

state's introduction in evidence at trial of a transcript of a wiretapped conversation

between the defendant and an attorney that she had called for legal advice, stating:

> ... <u>In the criminal context, "unless a client consents, a lawyer may not
> be required to disclose communications made by the client to the
> lawyer or advice given to the client in the course of professional
> employment."</u> *Samaritan Foundation v. Goodfarb*, 176 Ariz. 497,
> 501, 862 P.2d 870, 874 (1993) .... "The privilege is intended to
> encourage the client in need of legal advice to tell the lawyer the
> truth." *Id.* Our supreme court further stated, "the privilege is central to
> the delivery of legal services in this country." *Id.*

> The test for determining whether a communication is protected by the
> attorney-client privilege is a subjective one; it focuses primarily on the
> state of mind of the client. [citations omitted]. The trial court must
> examine the circumstances under which the communication was made
> [citations omitted]. From those circumstances, the court must decide
> whether the party consulting the attorney believes that he or she is
> approaching the attorney in a professional capacity and with the intent
> of securing legal advice....

>         *          *          *

> ...As we observe above, <u>the purpose of the attorney-client privilege is
> to</u> encourage full disclosure to a legal adviser by one seeking legal
> services....

.... [T]he state's argument is contrary to the purpose of the attorney-client privilege– that of "encouraging clients to divulge matters freely to their lawyers." Wolfram, *supra*, §6.3.5; [citation omitted]. If we were to adopt the state's argument, we would effectively abolish the attorney-client privilege.

In *State v. Holsinger*, 124 Ariz. 18, 22, 23, 601 P.2d 1054, 1058, 1059 (1979), the Arizona Supreme Court reversed the defendant's convictions for offenses including first degree murder, entered by the former Maricopa County Superior Court Judge Sandra Day O'Connor, holding that, along with other trial errors, the prosecutor's cross-examination of defendant regarding her confidential communications with her attorneys violated her attorney-client privilege, stating:

The attorney-client privilege, A.R.S. §13-4062(2), belongs to the client and concerns communications between the attorney and the client. The reason for the privilege is not to protect the client, but to encourage free exchange of information between the attorney and the client and to promote the administration of justice [citation omitted]. Neither the client nor the attorney can be compelled to disclose these communications against the client's wishes [citations omitted]. Neither does the defendant in a criminal case waive the attorney-client privilege when she takes the stand to testify in her own behalf:

"To say that the broad protection of (the attorney-client privilege) is not available to a defendant when he takes the stand in a criminal case would entail consequences far more detrimental to the interests of society than does the rejection of the evidence that might be disclosed. When the client, especially one accused of crimes, asks for advice and guidance in the premises, he should be able to speak freely without any fear and in full confidence that what is said by him or to him by his attorney will not be subsequently subject to disclosure if he takes the witness stand during the trial of his case. Any other policy than strict inviolability, unless expressly waived, would seriously hamper

the administration of justice, for the client would perhaps refrain from telling the truth or withhold the truth, while the lawyer would be reluctant to give the correct advice and counsel if he thought it would be subject to disclosure in the event his client took the stand to testify in his own behalf." [Citation Omitted] [Emphasis supplied]

Appellant's direct examination testimony– which consisted of only two questions and answers– related to the advice she received from her defense counsel, regarding ADOT-MVD's authority to issue her a SIIRDL that would allow her to drive after her 3 year revocation order had been in effect for 90 days. Contrary to appellant's arguments, this benign testimony by appellant did not waive her attorney-client privilege.

Appellant testified on cross-examination (1) she did not ask her defense attorney whether there were additional restrictions in A.R.S. §28-1402; (2) she did not think it was incumbent on her to "go find out" what restrictions were under A.R.S. §28-1402; (3) she did not ask her defense attorney about the provisions of that law. Appellant concluded her response on cross-examination on this issue, stating, "I called and asked a lawyer what it meant," and "I called a lawyer to ask what it meant. I called a lawyer. Isn't that being proactive enough?"

Appellant did not impliedly waive the attorney-client privilege, because she did not make a direct or indirect attack on her defense counsel's competence or reputation.

63

Ariz.Supr.Ct.R. 42 entitled, "Arizona Rules of Professional Conduct," includes ER 1.6 entitled "Confidentiality of Information," which states in part:

(a) A lawyer shall not reveal information relating to the representation of a client <u>unless the client gives informed consent</u>....

In *Fodor*, supra, the court recognized that the attorney-client privilege is a separate issue from the attorney's ethical duty to preserve confidential communications with the client, stating:

...[A] lawyer's potential ethical conflict has nothing to do with whether a client communication with a lawyer is protected by the attorney-client privilege [A.R.S. §13-4062(2)]. 179 Ariz. at 449

**B. Error in denial of appellant's rule 20 motion for a directed verdict of acquittal made by appellant in her second jury trial.**

The superior court committed reversible error by denying appellant's Rule 20 Motion, in her second jury trial [R.T. October 20, 2016, p.138; 160-164]. In this motion, she argued that, on August 18, 2011, the date of her alleged DUI offense, her driver license and privilege were not revoked because ADOT-MVD had issued her a valid Special Ignition Interlock Restricted Driver License (SIIRDL). The *Mitchell* court stated:

<u>We can thus conclude that while the piece of paper designated a "license" may be evidence of the privilege granted by the statutes to drive on the state's highways, it is the suspension, revocation or refusal of the privilege to drive by the State of Arizona which is the gravamen of the offense</u>....

64

*       *       *

> We therefore hold that the word "license" as used in A.R.S. §28-[1383(A)(1)] refers to the privilege granted by the State of Arizona to use its public highways. It necessarily follows that only the State of Arizona can revoke, suspend or refuse that privilege.

Appellant also argued in her Rule 20 motion that there was no "restriction…placed on [her] driver's license or privilege to drive as a result of violating §28-1381 or under §28-1382, or under §28-1385," because ADOT-MVD's restrictions on her SIIRDL – which she voluntarily subjected herself to by obtaining it – were pursuant to A.R.S. §28-1402.

**Argument 5**

**The superior court committed reversible error by denying appellant's second motion for reconsideration of her motion to suppress appellee's drug content analysis of her blood sample because appellee waived its alternative argument, pursuant to A.R.S. §13-3925, by failing to preserve this argument in the superior court.**

The standard of appellate review of this argument is abuse of discretion. *State v. Torres*, 233 Ariz. 479, 481, ¶11, 314 P.3d 825, 827 (App. Div. 2 -2013).

In appellant's reply [R.A. 108] to appellee's response, [R.A. 106], she cited *State v. Brita*, 158 Ariz. 121, 761 P.2d 1025 (1988), which held that the state waives, and fails to preserve for appellate review, an argument based upon the statutory exception to the exclusionary rule, provided in A.R.S. § 13-3925, if it fails to present this argument in the superior court at the suppression hearing.

65

Appellant's reply also cited five other reported Arizona appellate court opinions in accord with *Brita*.

In *Valenzuela*, a majority of four of the five members of the supreme court, as it was then constituted, affirmed the trial court's order denying DUI defendant's motion to suppress his alcohol concentration test results, notwithstanding the fact that all five members of the supreme court ruled that his blood sample was obtained in violation of the Fourth Amendment due to the inherently coercive admonitions read to him - which were identical to those read to appellant - based upon the officer "good faith" exception to the exclusionary rule, provided in 13-3925. This statute was adopted by the Arizona Legislature in 1982 and nearly 30 years later, the U.S. Supreme Court approved this exception to the exclusionary rule in *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 2426 (2011).

In *Valenzuela*, the court emphasized that the state was entitled to relief under the good faith exception to the exclusionary because– unlike in appellant's case at bar– it preserved that argument at the hearing on defendant's motion to suppress.

In *Brown*, *supra*, the companion case to *Valenzuela*, supra, supreme court held that by failing to argue the good faith exception to the exclusionary rule in either its response or at oral argument on the defendant's motion to suppress, the state waived the good faith exception.

In *State v. Kinney*, 225 Ariz. 550, P. 7 241 P.3d 914 (App. Div. 2 -2010), the court held that a party's mere conclusory assertion of an argument is insufficient to preserve the issue for appellate review. In appellee's response to appellant's motion, appellee made such a mere conclusory assertion by providing the following argument, in support of the good faith exception, in its entirety, as follows:

> In previous responses, the state did not argue good faith because the case law at the time was clear – under the Court of Appeals decision in *State v. Brito*, 183 Ariz. 535, 905 P.2d 544 (App. 1995), the affidavit language was not coercive. However, since the Supreme Court has overruled *Brito*, the state is free to argue good faith in this court, which it now does. [Emphasis Supplied]

## Argument 6

**The superior court committed reversible error by denying appellant's motion for alternative relief, including dismissal of the charge, with prejudice, based on appellee's violation of its duty to collect and preserve until time of trial, a sample of her blood for her independent chemical analysis.**

The standard of appellate review for this argument is abuse of discretion,

*State v. Torres, supra.*

Appellee included herein, in her "Statement of the Case," on pages 16-17, the procedural and factual basis in support of this argument. Appellee also incorporates by reference, the argument she presented herein, in Argument 1,

on pages 41-42 and 44 based on prosecutorial misconduct in support of this argument.

The remedy for police failure to preserve a blood sample for a DUI suspect's independent test is dismissal of the DUI charges with prejudice. *Amos v. Bowen*, 143 Ariz. 324, 328, 693 P.2d 779, 983 (1984). See also *Oshrin v. Coulter,* 142 Ariz. 109, 111, 688 P.2d 1001, 1003 (1984).

In *Mack v. Cruikshank*, 196 Ariz. 541, 546, 2 P.3d 100 (App.Div. 2-1999), the court stated:

> ... [A] DUI suspect has a separate and distinct due process right to obtain an independent test at the suspect's own expense to refute the state's evidence, whether from scientific tests or otherwise.... Although it is a constitutional due process right, *Smith v. Cada,*114 Ariz. 510, 562 P.2d 390 (App.1997), it is codified in former 28-692(H), now 28-1381(M), which was adopted at the same time as the implied consent law. 1969 Ariz.Sess.Laws, ch. 41, §§ 1 and 2.
>
> The Due Process Clause of the Arizona Constitution guarantees to [a] DWI suspect[] a "fair chance to obtain independent evidence of sobriety essential to his defense at the only time it [is] available." *Montano v. Superior Court*, 149 Ariz. at 389, 688 P.2d at 275.

In *State v. Velasco and Alday (RPI)*, 165 Ariz. 480, 487-489, 799 P.2d 821 (1990), recon. den., the Arizona Supreme Court clarified the due process right of a defendant in a DUI prosecution to obtain independent chemical evidence to challenge the State's chemical evidence of impairment, stating under the heading, "The Demands of Due Process," as follows:

68

...We have power only to determine the minimal requirements raised by the federal and state constitutions and to prohibit admission of evidence or conviction of crime when those requirements are not met and the constitution would thus be violated.

         \*         \*         \*         \*

The Alday court stated, under the heading, "Should the Cases Requiring Independent Samples be Overruled

...Blood alcohol test results in a [per se DUI] prosecution are not merely "potentially useful" evidence, they are virtually the entire evidence. ....

         \*         \*         \*         \*

...[I]t is one thing to say that the police need not prepare the defendant's case, and it is quite another to say that principles of fundamental fairness permit the police to knowingly destroy or dissipate that which they systematically obtain for their own testing and evidentiary use, especially when they may keep such evidence without any significant burden and are aware the evidence may be of value to the defense. [Emphasis supplied]

In *State v. Kemp*, 168 Ariz. 334, 813 P.2d 315, 335-337 (1991), decided by the Arizona Supreme Court one year after its opinion in *Alday*, the court reaffirmed its hold in *Baca*, supra, and its progeny, stating:

Once again we are presented with a due process question in a DWI case. The State argues that the court of appeals created a new right that due process does not require. It claims that due process does not require law enforcement officers to advise a DWI defendant that he may obtain a portion of a blood sample seized because (1) blood testing leaves a portion of the seized blood sample available for independent testing by the defendant, and (2) blood testing is so accurate that an independent test would not provide exculpatory evidence. ... [B]ecause blood testing leaves a portion of the seized blood available for independent testing by the defendant, we need not address the State's argument regarding the accuracy of blood testing.

         \*         \*         \*         \*

We believe that breath testing is significantly different than blood testing. Although a blood test, like a breath test, "is virtually

69

dispositive of guilt or innocence, and collecting the evidence places only a slight burden upon the state," it is not "inherently evanescent." Rather, blood testing by gas liquid chromatography, the method generally used by laboratories in Arizona and the method used in this case, usually does not consume or destroy the whole sample. *See generally* D. Nichols, *Drinking/Driving Litigation: Criminal and Civil* (1985); 2 R. Erwin, *Defense of Drunk Driving Cases* § 17.05 (1989). Thus, the rationale used in *Montano [v. Superior Court,* 149 Ariz. 385, 719 P.2d 271 (1986)] is not present in a blood testing case because blood, when properly stored and maintained, is still available for testing by the defendant at the time of trial. This availability lessens the need for law enforcement officials to advise a DWI suspect that he may obtain, for independent testing, a portion of the blood sample being tested by the law enforcement agency.

We believe that the due process clause, as applied in DWI cases, can legitimately have two standards--one for breath testing cases and one for blood testing cases. Thus, we hold that law enforcement officers, when obtaining a blood sample pursuant to A.R.S. § 28-692(M), need not advise the suspect of his right to obtain a portion of the same sample for independent testing, at least when the sample taken by law enforcement officers will still be available for testing by the defendant at the time of trial. [4]

---

[4]This defendant, at the hearing on his motion to suppress, failed to show that his blood sample was unavailable for independent testing. Therefore, he did not demonstrate a due process violation. We do note, however, that if a defendant affirmatively requests a separate blood sample for independent testing, law enforcement officials may not interfere with his efforts to obtain such a sample. *Amos v. Bowen,* 143 Ariz. 324, 327-28, 693 P.2d 979, 982-83 (App.1984). [Emphasis supplied]

In *State v. Sanchez*, 192 Ariz. 454, 457, 458, 967 P.2d 129 (App. Div. 2, 1998), Div. 2 of the Arizona Court of Appeals again held that the due process clause in a DUI case requires the police to obtain and preserve defendant's blood sample for independent testing, stating:

¶7 Contrary to the state's argument, due process is satisfied only when the defendant is given a "reasonably accurate" replicate breath test, *State ex rel. Dean* [v. *City Court*, 163 Ariz. 510, 789 P.2d 180 (1990)], or a blood test. ... Sanchez was denied his right to "a meaningful opportunity to present a complete defense," [*California v.*] *Trombetta*, 467 U.S. [479] at 485, 104 S.Ct. [2528] at 2532, 81 L.Ed.2d [413] at 419 [(1984)], and was denied his due process rights. ...

¶8 The state next argues that, even if Sanchez's due process rights were violated, the proper remedy is suppression of the evidence, not dismissal, citing *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984); *Scales* [v. *City Court*, 122 Ariz. 231, 594 P.2d 97 (1979)]; *State v. Vannoy*, 177 Ariz. 206, 866 P.2d 874 (App.1993); [*State v.*] *Harrison*, [157 Ariz. 184, 755 P.2d 1172 (App.1988)]; and *State v. City Court*, 130 Ariz. 285, 635 P.2d 878 (App.1981). We disagree.

¶9 "[A]n unreasonable or unconstitutional interference with attempts to secure a blood sample for exculpatory purposes in a DWI prosecution ... requires a stay or dismissal of the charge as a remedy." *Amos v. Bowen*, 143 Ariz. 324, 328, 693 P.2d 979, 983 (App.1984). In *Amos* ... [t]he court held that although the delay was proper, the affirmative conduct of the police violated the defendant's right to obtain exculpatory evidence. Although a breath test was not at issue in *Amos*, the same due process rights of both the defendant there and Sanchez require that they be afforded a fair chance to obtain independent evidence of sobriety essential to their defense at the only time when it is available, whether it be from an independent blood test or a test given by the state. See *Montano*; [*Smith v.*]*Ganske*, [114 Ariz. 515, 517, 562 P.2d 395, 397 (App.1977)].

## Argument 7

**The Superior Court Committed Reversible Error by Its Rulings Relating to the Admission or Preclusion of Evidence, Discovery Issues, Jury Instructions, and Motions to Quash Subpoenas.**

The standard of appellate review for this argument is abuse of discretion,

*State v. Torres, supra.*

71

**A. Reversible error by (1) denying appellant's motion for supplemental discovery for her investigator to interview prosecutors regarding their inadvertent, premature issuance of the Dispo[sition] Form they sent to the police, and (2) quashing appellant's subpoenas *duces tecum* served upon them compelling their appearance at appellant's second jury trial to testify regarding these matters.**

Comm. Richter denied appellant's motion for supplemental discovery [R.A. 130] and also granted appellee's motion to quash the subpoena *duces tecum* that she served upon DCAs Serden and Harder, who, according to the premature, inadvertent Dispo[sition] Form, reviewed and approved it.

In *State v. Howard*, 27 Ariz. App. 339, 341, 554 P.2d 1282 (App.Div. 2-1976), the court held that the question of whether the defendant should be allowed to call a prosecuting attorney is within the trial court's discretion. In *State v. Tuzon*, citing *Howard, supra*, the court held that the defendant should be allowed to call a prosecutor if he or she demonstrates a compelling need. 118 Ariz. 205, 208, 575 P.2d 1231 (1978) reh.den.

In light of appellee's concession that appellant's blood sample was prematurely destroyed by the police as a result of the Dispo[sition] Form it sent, appellant showed a compelling need that she should have been allowed to have her investigator interview DCAs Serden and Harder to determine (1) the normal procedure for the issuance for such a form, (2) the cause of the breakdown from

72

the normal procedure, and (3) whether DCA Harder ever actually saw, reviewed, and authorized the issuance of the Dispo[sition] Form.

In appellant's response to appellee's motion to quash the subpoenas *duces tecum* served upon DCAs Serden and Harder [R.A. 153], she cited *Helge v. Druke and Armstrong* (RPI), 136 Ariz. 434, 438, 439, 666 P. 2d 534 (App.Div.2, 1983), in support of her argument that the motion to quash was improperly granted because it lacked specificity.

## B. Reversible by error in appellant's second trial by denying appellant's requested jury instruction on the meaning of "Under the Influence"

Comm. Richter denied appellant's requested jury instruction [RA 168], Appendix Item 5, on the term "under the influence" in spite of the fact that the instruction has been used in DUI cases for more than 50 years. It includes language approved by the supreme court in *Hasten v. State*, 35 Ariz. 427, 280 P. 670 (1929) and *Weston v. State*, 49 Ariz. 183, 187-88, 65 P.2d 652, 654-55 (1937).

## C. Reversible error, in appellant's third trial, by denying appellant's motion to preclude appellee from calling Comm. Passamonte as a witness

Following the lunch break on November 29, 2016, the second day of appellant's third trial, which was on appellee's aggravating circumstance allegation, appellee's trial counsel first informed the court and appellant's counsel

73

of his intent to call Comm. Passamonte as a witness for appellee in its case-in-chief. [R.T. November 29, 2016, p. 67, l. 12-22]

Commissioner Passamonte's counsel, Assistant Attorney General Kelly Gillilan-Gibson, filed a motion to quash the subpoena, or in the alternative, for a protective order [R.A. 142], which was denied by Com. Richter as "moot." In her motion, Comm. Passamonte argued:

> Arizona courts have expressed strong concerns about judicial officers being called to testify about matters relating to cases over which they have presided. [citation omitted]. [One is] a concern for the appearance of impropriety that a judge, while testifying for either party, may appear to shed the cloak of impartiality and throw the weight of judicial position and authority behind one of the two opposing litigants. Absent highly extraordinary and compelling circumstances, allowing litigants to examine judges is disruptive to the well-ordered functioning of the judiciary. "Only in the rarest of circumstances should a judge be called upon to give evidence as to matters upon which he acted in a judicial capacity, and these occasions, we think should be limited to instances in which there is no other reasonably available way to prove the facts sought to be established." In Re Peasley, supra. [Emphasis Supplied]

Appellee served Comm. Passamonte with its subpoena, 25 minutes after it directed her to appear and testify. Comm. Richter abused her discretion by denying appellant's motion to preclude Comm. Passamonte from testifying for appellee pursuant to the subpoena because (1) it was not timely served (2) there was alternative evidence available to appellee, namely the For the Record (FTR) digital recording of Comm. Passamonte's September 28, 2010 entry of her judgment of

guilt and suspension of sentence in appellant's 2009 aggravated DUI., and (3) appellee failed to timely disclose Comm. Passamonte as a witness no later than seven days prior to trial, as required by Rule 15.6(d) Ariz.R.Crim.Pro.

**D. Reversible error in appellant's third trial on appellee's aggravating circumstance allegation by (1) denying her motion for procedural orders and (2) by refusing appellant's requested, modified RAJI non-capital *Blakely* jury instruction.**

Appellant filed a motion for procedural orders regarding the conduct of the aggravating circumstance phase before the newly impaneled jury [R.A. 187] in which, on page 2, she requested the following:

> At the commencement of the second phase of jury trial on the State's aggravating circumstance allegation, the court should direct the clerk to address the newly impaneled jury and (1) read the previous jury's guilty verdict, (2) read the State's allegation that Defendant committed the offense while release from confinement on probation for a felony offense, and (3) inform the jury of Defendant's denial of this allegation.

Appellant requested this procedure based upon the provision of Rule 19.1, Ariz.R.Crim.Pro. After the second jury was discharged on appellee's motion, appellant obtained from the clerk multiple FTR digital and audio video recordings of her entire second trial. Appellant employed AZ Digital Transfers to edit these FTR recordings by deleting all proceedings occurring outside the presence of the jury. She offered these edited recordings in evidence at her third

trial, based on the following portions of the RAJI non-capital *Blakely* instruction:

> It is your duty as a juror to decide this case by applying these jury instructions to the facts as you determine them. You must follow these jury instructions. <u>You may also rely on the jury instructions that were read and given to you earlier. They are rules you should use to decide this case.</u>

> It is your duty to determine what the facts are in the case by determining what actually happened. Determine the facts only from the evidence produced in court. <u>When I say "evidence" I mean the testimony of witnesses and exhibits introduced in court during the earlier trial</u>. ...[Emphasis Supplied]

Appellant submitted her requested modified RAJI non-capital *Blakely* jury instruction [R.A. 190], a copy of which is included in the Appendix as Item 6, and her memorandum of law in support thereof [R.A. 189]. Comm. Richter denied all of the aspects of her motion for procedural orders as well as her requested jury instruction. [R.T. November 29, 2016, p.16, l.1-p.19, l.5]

## CONCLUSION

This court should file an opinion – not a memorandum decision – in which it dismisses the charge, with prejudice, based upon all of appellant's arguments that she has presented, in which she seeks that relief, and it should reverse all of the other court rulings by the superior court that appellant has argued were reversible error.

**RESPECTFULLY SUBMITTED** this 1st day of September, 2017.


/signature/
RICHARD D. COFFINGER
Co-Counsel for Appellant

RICHARD D. COFFINGER
ATTORNEY AT LAW
6838 N. 58TH DRIVE
GLENDALE, AZ 85301
STATE BAR ID #003040
623-937-9214
623-937-7072 (FAX)
R.COFFINGER@GMAIL.COM

LAWRENCE S. KOPLOW
KOPLOW LAW FIRM, P.L.L.C.
111 EAST TAYLOR ST., SUITE 120 MC8520
PHOENIX, AZ 85004
STATE BAR ID #019853
602-494-3444
LK@AZFIRM.COM
CO-COUNSEL FOR APPELLANT

# IN THE COURT OF APPEALS

## STATE OF ARIZONA - DIVISION I

| | | |
|---|---|---|
| **STATE OF ARIZONA,** | ) | Court of Appeals |
| | ) | Division One |
| Appellee, | ) | No. 1 CA-CR 17-0001 |
| | ) | |
| | ) | Maricopa County |
| **v.** | ) | Superior Court |
| | ) | No. CR2014-006004-001 |
| **ERIN RAE ESPINOSA,** | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

## SUPPLEMENTAL APPENDIX TO APPELLANT'S OPENING BRIEF FILED PURUSANT TO AUGUST 30, 2017, ORDER

Law Office of Richard Coffinger
6838 N. 58th Drive
Glendale, AZ 85301
State Bar ID: 003040
r.coffinger@gmail.com
Co-Counsel for Appellant

# Item 1



PEORIA MUNICIPAL COURT
8401 W. Monroe Street
Peoria AZ 85345
Tel. 623 773 7400

State of Arizona

vs.

Erin Rae Espinosa,

No. R 201200 3B

MISDEMEANOR COMPLAINT

**Defendant**

The undersigned, personally appearing and duly sworn, upon information, knowledge, or belief,
complains against the following defendant as follows:

Erin Rae Espinosa
26864 N. 88th Dr.
Peoria, Arizona 85383
DR# 11-011797

<u>COUNT</u> 1 Driving Under the Influence, a Class 1 Misdemeanor: Defendant, on or about the 30 day
of August, 2011, at 26716 N. High Desert, Peoria, Arizona, drove or was in actual physical control of
a vehicle while under the influence of intoxicating liquor, any drug, a vapor-releasing substance
containing a toxic substance or any combination thereof while she was impaired to the slightest
degree, in violation of A.R.S. §28-1381(A)(1).

<u>COUNT</u> 2 Criminal Damage, a Class 2 Misdemeanor: Defendant, on or about the 30 day of
August, 2011, at 26716 N. High Desert, Peoria, Arizona, recklessly defaced or damaged property, to
wit: automobile belonging to Michelle Murphy, causing damage in an amount of less than $250, in
violation of A.R.S. §13-1602(A)(1).

01/25/2012 08:40:36 am

Complainant / Title

01/26/2012/11:10:00 am          Control 3

Peoria City Prosecutor Approval

Declaration Under Penalty of Perjury
The undersigned Peoria Police Department officer, hereby states under penalty of perjury that the
foregoing complaint is true and correct to the best of declarant's knowledge, information, or belief.

Signature

K. PARKEY #8543

Printed Name

12/10/2012  17:16  6237...        PEORIA PROSECUTOR        PAGE 01

| PEORIA MUNICIPAL COURT | Case No.  TR2012001138 |
|---|---|

**PEORIA MUNICIPAL COURT**
8401 W. Monroe St.
Peoria, AZ 85345 (Tel. 623 773 7400)
(Fax 623 773 7407)

**Case No.  TR2012001138**

**State of Arizona**                               vs.

Erin Rae Espinosa                    **Defendant**

**MOTION**

☐ If checked, Rule 8 Time *NOT* Waived
☐ If checked, Motion Opposed

1. **Court Action Requested:**        ☒ **State**        ☐ **Defendant**        moves
☐ Continue PTC        ☐ Set Non-Jury trial        ☐ Set Jury Trial   Jury Waived _____ Initials
☐ Court Appt Atty requested            ☐ The State  ☐ is  ☐ is not  seeking jail and/or probation
☐ Continue the Trial / Hearing        ☐ Set for COP        ☐ Consolidate w/ _____
☐ Amend: _____
☒ Dismiss:    ☒ w/o prejudice    ☐ w/prejudice _____
☐ Issue Arrest Warrant – Defendant failed to appear for scheduled court proceedings
☐ _____

2. **Basis For Request:**
☒ Other Case is to be submitted to the Maricopa County Attorney's Office for felony
consideration. The Defendant's drivers license was revoked for a prior aggravated DUI and the
Defendant was on probation at the time of the offense.

3. **Movant:**

DATE:  December 10, 2012        Prosecutor: _____

Defendant Atty:_____

Defendant: _____

☐ A. Spiek 018642
☒ M. Dynes 024104
☐ S. Brumbaugh 018857
E-Mail Address: rdc4@mindspring.com_____

**PRINT Defendant Mailing address (complete if new address or defendant not present):**

_____
_____
_____
_____ **ZIP** _____

☐ Hand-delivered  ☒ eMailed

*Note: Motions are not automatically granted.
If you receive a notice to appear in court, you
must appear or the Motion may be denied.*



**PEORIA MUNICIPAL COURT**
8401 W. Monroe
Peoria AZ 85345
623 773 7400 (Tel)
623 773 7407 (Fax)

| State of Arizona | VS. | |
|---|---|---|
| ERIN RAE ESPINOSA<br>26884 N 88TH DRIVE<br>PEORIA, AZ 85383 | | Case No: M -0750 - TR - 2012001138<br><br>ORDER OF DISMISSAL |

The State having filed a Motion to Dismiss without prejudice in the above entitled matter, case is to be submitted to the Maricopa County Attorney's Office for felony consideration, and the Court being fully advised in the premises orders the case dismissed.

### O R D E R

IT IS HEREBY ORDERED that the above case shall be dismissed without prejudice against the Defendant, ERIN RAE ESPINOSA

Date April 04, 2013

*George T. Anagnost*
Peoria Municipal Court Judge

COPY OF THE FOREGOING mailed / delivered by SLS on April 4, 2013:

| Prosecutor: | Defense attorney: | Defendant: |
|---|---|---|
| ANH SPIEK<br>8401 W MONROE STREET<br>PEORIA, ARIZONA 85345 | RICHARD COFFINGER<br>6838 N 58TH DR<br>GLENDALE, AZ 85301 | ERIN ESPINOSA<br>26884 N 88TH DRIVE<br>PEORIA, AZ 85383 |

DSM.DOCX Dismissal Form (0308)

N 10/2~6

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

Aaron Harder
Deputy County Attorney
Bar ID#: 021116
301 West Jefferson, 6th Floor
Phoenix, AZ 85003
Telephone: (602)506-8506
mcaomjc1@mcao.maricopa.gov
MCAO Firm # 000320000
Attorney for Plaintiff

DR 11011797-Peoria Police Department
CA2013006700

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ERIN RAE ESPINOSA | ) CR 2013-441390-001 |
| | ) |
| Defendant. | ) |
| | ) 595 GJ 380 |
| | ) |
| | ) INDICTMENT |
| | ) |
| | ) **COUNT 1:** AGGRAVATED DRIVING OR ACTUAL |
| | ) PHYSICAL CONTROL WHILE UNDER THE |
| | ) INFLUENCE OF INTOXICATING LIQUOR OR |
| | DRUGS, A CLASS 4 FELONY |
| | ) **COUNT 2:** AGGRAVATED DRIVING OR ACTUAL |
| | ) PHYSICAL CONTROL WHILE UNDER THE |
| | ) INFLUENCE OF INTOXICATING LIQUOR OR |
| | DRUGS, A CLASS 4 FELONY |

The Grand Jurors of Maricopa County, Arizona, accuse ERIN RAE ESPINOSA, on this 18th day of

October, 2013, charging that in Maricopa County, Arizona:

1

**COUNT 1:**

ERIN RAE ESPINOSA, on or about the 18th day of August, 2011, drove or was in actual physical control of a vehicle, while under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substance, while her driver's license or privilege to drive was suspended, cancelled, revoked or refused, or while a restriction is placed on the person's drivers license or privilege to drive as a result of violating A.R.S. § 28-692, 28-694, 28-1381, 28-1382, 28-1383, or 28-1385, in violation of A.R.S. §§ 28-1381(A)(1), 28-1383(A)(1), 28-3001, 28-3304, 28-3305, 28-3315, 13-701, 13-702, and 13-801.

**COUNT 2:**

ERIN RAE ESPINOSA, on or about the 18th day of August, 2011, drove or was in actual physical control of a vehicle, under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs, or vapor releasing substance, while under a court order or requirement pursuant to A.R.S. § 28-3319 by the Department of Motor Vehicles to equip the vehicle with a Certified Ignition Interlock Device, in violation of A.R.S. §§28-1383(A)(4), 28-1381(A)(1), 28-1301, 28-3319, 28-3001, 28-3004, 28-3005, 28-3315, 13-701, 13-702, and 13-801.

A True Bill

("A True Bill")

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

/s/
/s/ AARON HARDER
DEPUTY COUNTY ATTORNEY

AH/rms/AO

Date: October 18, 2013

FOREPERSON OF THE GRAND JURY

2

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Curtner, Deputy
2/4/2014 4:31:42 PM
Filing ID 5691520

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E. Serden
Deputy County Attorney
State Bar of Arizona No. 012880
301 W. Jefferson Street, Suite 600
Phoenix, AZ 85003-2143
mcaomjc1@mcao.maricopa.gov
Telephone (602) 506-8506
MCAO Firm # 00032000
Attorney for the State

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | |
| Plaintiff, | ) | CR2013-441390-001 |
| | ) | |
| v. | ) | |
| | ) | |
| ERIN RAE ESPINOSA, | ) | MOTION TO DISMISS |
| Defendant. | ) | WITHOUT PREJUDICE |
| | ) | |

Pursuant to Rule 12.9(c), Arizona Rules of Criminal Procedure, the state moves the court to dismiss this case without prejudice.

On November 18, 2013, the defendant filed a motion to remand for a new finding of probable cause. The court granted that motion by minute entry on December 10, 2013.

Rule 12.9(c) states that the matter must be resubmitted to the grand jury within fifteen days of the court's order; if it is not, the remedy is dismissal without prejudice.

This matter has not been represented to the grand jury as of the date of this motion, therefore the state moves for dismissal without prejudice.

. . . . .

. . . . .

. . . . .

Respectfully submitted this 4th day of February, 2014.

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

By:    **/s/ Richard E. Serden**
        /s/ Richard E. Serden
        Deputy County Attorney

Copies of the foregoing delivered
this 4th day of February, 2014 to:

Hon. Phemonia Miller
Maricopa County Superior Court

Richard D. Coffinger, Esq.
6838 N. 58th Drive
Glendale, AZ 85301
r.coffinger@gmail.com

By:    **/s/ Richard E. Serden**
        /s/ Richard E. Serden
        Deputy County Attorney

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
03/03/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2013-441390-001 DT                                    02/28/2014

COMMISSIONER PHEMONIA L. MILLER          CLERK OF THE COURT
                                                    A. Beery
                                                    Deputy

STATE OF ARIZONA                         RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)                  RICHARD D COFFINGER

                                         DISPOSITION CLERK-CSC
                                         PRETRIAL SERVICES AGENCY-CCC


DISMISSAL WITHOUT PREJUDICE

The Court has received the State's Motion to Dismiss without Prejudice.

Pursuant to the State's motion and good cause appearing,

IT IS ORDERED granting the State's request and dismissing the above-entitled cause without prejudice.

IT IS FURTHER ORDERED releasing Defendant from Pretrial Services' supervision.

```
                                              FILED
                                           4|11|14 5|00pm
                                           MICHAEL K. JEANES, Clerk
                                           By  D. Juenez
                                                   Deputy
```

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E. Serden
Deputy County Attorney
Bar ID#: 012880
301 West Jefferson, 6th Floor
Phoenix, AZ 85003
Telephone: (602)506-8506
mcaomjc1@mcao.maricopa.gov
MCAO Firm # 000320000
Attorney for Plaintiff

DR 11011797-Peoria Police Department

CA2013006700-1

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA | ) |
| Plaintiff, | ) |
| vs. | ) |
| ERIN RAE ESPINOSA | ) CR 2014 - 0 0 1 5 3 8 - 0 0 1 |
| Defendant. | ) |
| | ) 610 GJ 352 |
| | ) |
| | ) INDICTMENT |
| | ) |
| | ) **COUNT 1:** AGGRAVATED DRIVING OR ACTUAL |
| | ) PHYSICAL CONTROL WHILE UNDER THE |
| | ) INFLUENCE OF INTOXICATING LIQUOR OR |
| | ) DRUGS, A CLASS 4 FELONY |

The Grand Jurors of Maricopa County, Arizona, accuse ERIN RAE ESPINOSA, on this 11th day of

April, 2014, charging that in Maricopa County, Arizona:

1

**COUNT 1:**

ERIN RAE ESPINOSA, on or about the 18th day of August, 2011, drove or was in actual physical control of a vehicle, under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs, or vapor releasing substance, while under a court order or requirement pursuant to A.R.S. § 28-3319 by the Department of Motor Vehicles to equip the vehicle with a Certified Ignition Interlock Device, in violation of A.R.S. §§28-1383(A)(4), 28-1381(A)(1), 28-1301, 28-3319, 28-3001, 28-3004, 28-3005, 28-3315, 13-701, 13-702, and 13-801.

a true bill

("A True Bill")

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

/s/
/s/ RICHARD E. SERDEN
DEPUTY COUNTY ATTORNEY

RS/sk/AO

Date: April 11, 2014

FOREPERSON OF THE GRAND JURY

2

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
R. Krane, Deputy
7/7/2014 10:52:39 AM
Filing ID 5970241

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E. Serden
Deputy County Attorney
State Bar of Arizona No. 012880
301 W. Jefferson Street, Suite 600
Phoenix, AZ 85003-2143
mcaomjcl@mcao.maricopa.gov
Telephone (602) 506-8506
MCAO Firm # 00032000
Attorney for the State

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | CR2014-001538-001 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MOTION TO DISMISS |
| ERIN RAE ESPINOSE, | ) | WITHOUT PREJUDICE |
| Defendant. | ) | (Assigned to the Hon. Charles Donofrio) |
| | ) | |

The state hereby moves for a dismissal of this case without prejudice, for the reason that the matter was resubmitted to the grand jury on June 25, 2014, which returned an indictment. That case, CR2014-002044-001, is intended to supplant this case, as the charge contains the correct statutory citations. It is set for arraignment before Comm. Newcomb on July 9, 2014 at 8:30 a.m.

There is a comprehensive pretrial conference also set for July 9, 2014 at 8:30 a.m. before this court. The state moves to vacate the CPTC.

Respectfully submitted this 7th day of July, 2014.

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

By: /s/ _____

/s/ Richard E. Serden
Deputy County Attorney

Copies of the foregoing delivered
this 7th day of July, 2014 to:

Hon. Charles Donofrio
Maricopa County Superior Court

Richard D. Coffinger, Esq.
6838 N. 58th Drive
Glendale, AZ 85301
r.coffinger@gmail.com
Attorney for the Defendant

By:    /s/ *[signature]*
       /s/ Richard E. Serden
       Deputy County Attorney

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
07/14/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-001538-001 DT                    07/09/2014

COMMISSIONER CHARLES DONOFRIO III       CLERK OF THE COURT
                                        Y. King
                                        Deputy

STATE OF ARIZONA                        RICHARD E SERDEN

v,

ERIN RAE ESPINOSA (001)                 RICHARD D COFFINGER

                                        DISPOSITION CLERK-CSC


                        CASE DISMISSED


     Pursuant to State's Motion to Dismiss,

     IT IS ORDERED dismissing without prejudice the above-entitled cause, quashing the
Warrant/Summons, and exonerating any bond set, all in accordance with the formal written
Order signed by the Court 07/09/2014.


Docket Code 042              Form G042              Page 1

MICHAEL K. JEANES, CLERK
BY
DEP
FILED

14 JUN 25 PM 4: 14

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E Serden
Deputy County Attorney
Bar ID #: 012880
301 West Jefferson, 6th Floor
Phoenix, AZ 85003
Telephone: (602) 506-8506
mcaomjc1@mcao.maricopa.gov
MCAO Firm #: 00032000
Attorney for Plaintiff

DR 11011797 - Peoria Police Department
1402963

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

THE STATE OF ARIZONA,

      Plaintiff,

vs.

ERIN RAE ESPINOSA,

      Defendant.

CR 2014 - 0 0 2 0 4 4 - 0 0 1

INDICTMENT
611 GJ 727

**COUNT 1:** AGGRAVATED DRIVING OR
ACTUAL PHYSICAL CONTROL WHILE
UNDER THE INFLUENCE OF
INTOXICATING LIQUOR OR DRUGS, A
CLASS 4 FELONY (ERIN RAE ESPINOSA)

The Grand Jurors of Maricopa County, Arizona, accuse ERIN RAE ESPINOSA, on June

25, 2014, charging that in Maricopa County, Arizona:

**COUNT 1:**

ERIN RAE ESPINOSA, on or about August 18, 2011, did drive or be in actual physical

control of a vehicle, while under the influence of intoxicating liquor, any drug, a vapor releasing

substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substance, while her driver's license or privilege to drive was suspended, cancelled, revoked or refused, or while a restriction is placed on the person's driver's license or privilege to drive as a result of violating A.R.S. § 28-692, 28-694, 28-1381, 28-1382, 28-1383, or 28-1385, in violation of A.R.S. §§ 28-1381(A)(1), 28-1383(A)(1), 28-3001, 28-3304, 28-3305, 28-3315, 13-701, 13-702, and 13-801.

A True Bill

("A True Bill")

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E Serden
Deputy County Attorney

Date: June 25, 2014

FOREPERSON OF THE GRAND JURY

Julie HChase

sk

Case 2:18-cv-02479-RM-FM Document 1-15 Filed 08/03/18 Page 96 of 115

COURT INFORMATION SHEET (CIS) .

COUNTY ATTORNEY CASE NO: 0131402963

**STATE v. ERIN Rae ESPINOSA**
**Defendant's**                    **SUMMONS**
**Last Known Address:**    26884 N 88th Dr
                                          Peoria, AZ 85383-3728

**REFILE**

**Defendant's**                  UNKNOWN
**Employer Address:**

CR 2014 − 0 0 2 0 4 4 − 0 0 1

**Defendant's**
**Attorney:**

**DEFENDANT'S DESCRIPTION:**

| Race W : | Sex F : | Hair: RO | Eyes BRO : | Wgt 110 : | Hgt 5'04 : | DOB: 09/19/1972 |

| FBI#: 576961DD1 | SID#: 20679425 | Booking#: P533993 | Soc Sec#: 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 |

FBI #: 576961DD1   SID #: 20679425   Booking #: P533993

**FILING STATUS:**

**Court #:**          **Date Filed:** CR 2014 − 0 0 2 0 4 4 − 0 0 1
Grand Jury #: 611 GJ 727                      Service Type: Summons
Date Indictment Filed: June 25, 2014

Superior Court #: _____ (Court Use Only)

**Attorney:**    Richard E Serden        **Bar ID:**    012880    **Location:** Downtown

**CHARGES:**
**COUNT 1:** AGGRAVATED DRIVING OR ACTUAL PHYSICAL CONTROL WHILE UNDER THE
INFLUENCE OF INTOXICATING LIQUOR OR DRUGS, A CLASS 4 FELONY

| COUNT | ARS LITERAL | DATE OF CRIME | PCN |
|-------|-------------|---------------|-----|
| 1 | 28-1383A1 | 8/18/2011 | |

**DEPARTMENTALREPORTS:**
DR 11011797 - Peoria Police Department

**EXTRADITE:**
AO

**CO-DEFENDANTS:**

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
I. OSUNA, Deputy
8/5/2014 4:59:07 PM
Filing ID 6030042

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E. Serden
Deputy County Attorney
State Bar of Arizona No. 012880
301 W. Jefferson Street, Suite 600
Phoenix, AZ 85003-2143
mcaomjc1@mcao.maricopa.gov
Telephone (602) 506-8506
MCAO Firm # 00032000
Attorney for the State

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| **STATE OF ARIZONA,** | ) | **CR2014-002044-001** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ERIN RAE ESPINOSA,** | ) | **MOTION TO SET** |
| **Defendant.** | ) | **PRELIMINARY HEARING** |
| | ) | (Assigned to the Hon. Brian Kaiser) |

The state moves the court to schedule a preliminary hearing in this case at its earliest

convenience. The defendant has filed a motion for remand to the grand jury, which raises several

issues. Without conceding the validity of those issues, and instead of going back to the grand jury

for another indictment, which may lead to yet another motion for remand, the state believes that the

most expeditious way to proceed, and the best use of both judicial and prosecutorial resources, is

for the court to set this matter for a preliminary hearing.

Defense counsel Richard Coffinger was contacted about this motion, and he stated that he

opposes the motion, because he believes that the court should instead rule on his motion for

remand first.

Respectfully submitted this 5th day of August, 2014.

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

By:    /s/ *[signature]*
        /s/ Richard E. Serden
        Deputy County Attorney

Copies of the foregoing delivered
this 5th day of August, 2014 to:

Hon. Brian Kaiser
Maricopa County Superior Court

Richard Coffinger, Esq.
6838 N 58th Dr
Glendale AZ 85301
Attorney for the Defendant

By:    /s/ *[signature]*
        /s/ Richard E. Serden
        Deputy County Attorney

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
10/02/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-002044-001 DT                                    09/23/2014

                                        CLERK OF THE COURT
COMMISSIONER BRIAN D. KAISER                 N. McKinney
                                               Deputy

STATE OF ARIZONA                        RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)                 RICHARD D COFFINGER

                                        DOCKET-CRIMINAL-CCC


                            MINUTE ENTRY

        10:28 a.m.

        Courtroom CCB 804

        State's Attorney:        Aaron Harder
        Defendant's Attorney:    Richard Coffinger
        Defendant:               Present

        A record of the proceedings is made by audio and/or videotape in lieu of a court reporter.

        This is the time set for Comprehensive Pretrial Conference.

        Court and counsel discuss Defendant's Motion for A New Finding of Probable Cause
Based Upon Denial of a Substantial Procedural Right During the Grand Jury Proceedings in this
Refiled Case Which Presents the Same Prosecutorial Error Committed before the Grand Juries in
Both of her Prior Dismissed Cases. State having no objections,

        IT IS ORDERED granting Defendant's Motion for a New Finding of Probable Cause.

        IT IS FURTHER ORDERED vacating Final Trial Management Conference set
11/24/2014 and Trial set 12/1/2014.

        Discussion is held.

Docket Code 177                    Form R000D                           Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-002044-001 DT                                    09/23/2014

Over objections by the Defense,

Deputy County Attorney, Aaron Harder, is sworn on behalf of the State for the issuance of a Direct Complaint.

Pursuant to Rule 2.2 of the Arizona Rules of Criminal Procedure, good cause appearing,

IT IS ORDERED granting the State permission to file a direct complaint in the Superior Court. The Court retains jurisdiction over the filing of the Direct Complaint.

IT IS ORDERED setting Status Conference on 10/8/2014 at 8:30 a.m. before Commissioner Ireland.

IT IS FURTHER ORDERED setting time for Preliminary Hearing on 10/13/2014 at 8:45 a.m. before Commissioner Ireland.

FILED: Direct Complaint

NEW LAST DAY: 4/11/2015

IT IS FURTHER ORDERED affirming prior release conditions.

10:42 a.m.  Matter concludes.

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY



FILED
MICHAEL K. JEANES, Clerk
By
N. McKinney, Deputy

Richard E Serden
Deputy County Attorney
Bar ID #: 012880
301 West Jefferson, 6th Floor
Phoenix, AZ 85003
Telephone: (602) 506-8506
mcaomcd@mcao.maricopa.gov
MCAO Firm #: 00032000
Attorney for Plaintiff

DR 11011797 - Peoria Police Department
0131402963

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

THE STATE OF ARIZONA,

    Plaintiff,

vs.

ERIN RAE ESPINOSA,

    Defendant.

CR2014-002044-001

DIRECT COMPLAINT

**COUNT 1:** AGGRAVATED DRIVING OR
ACTUAL PHYSICAL CONTROL WHILE
UNDER THE INFLUENCE OF
INTOXICATING LIQUOR OR DRUGS, A
CLASS 4 FELONY (Erin Rae Espinosa)

The complainant herein personally appears and, being duly sworn, complains on

information and belief against ERIN RAE ESPINOSA, charging that in Maricopa County,

Arizona:

COUNT 1:

ERIN RAE ESPINOSA, on or about August 18, 2011, did drive or be in actual physical

control of a vehicle, while under the influence of intoxicating liquor, any drug, a vapor releasing

substance containing a toxic substance or any combination of liquor, drugs or vapor releasing

substance, while her driver's license or privilege to drive was suspended, cancelled, revoked or refused, or while a restriction is placed on the person's driver's license or privilege to drive as a result of violating A.R.S. § 28-692, 28-694, 28-1381, 28-1382, 28-1383, or 28-1385, in violation of A.R.S. §§ 28-1381(A)(1), 28-1383(A)(1), 28-3001, 28-3304, 28-3305, 28-3315, 13-701, 13-702, and 13-801.

_/s/ Richard E Serden_
Deputy County Attorney

It is requested that a **SUMMONS** be issued.
IT IS requested that the Defendant appear for fingerprints and photograph.

Complainant

Agency: Peoria Police Department

Subscribed and sworn upon information and belief this ___ day of September, 2014.

The Clerk of the Superior Court of Maricopa County, Arizona, is hereby directed to file this cause in the Superior Court pursuant to Rule 2.2(b) of the Arizona Rules of Criminal Procedure.

JUDGE OF THE SUPERIOR COURT

sk/AO

Brian D. Kaiser

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
E. Masis, Deputy
11/17/2014 4:45:15 PM
Filing ID 6238735

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

Richard E. Serden
Deputy County Attorney
State Bar of Arizona No. 012880
301 W. Jefferson Street, Suite 600
Phoenix, AZ 85003-2143
mcaomjc1@mcao.maricopa.gov
Telephone (602) 506-8506
MCAO Firm # 00032000
Attorney for the State

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | |
| Plaintiff, | ) | CR2014-002044-001 |
| | ) | |
| v. | ) | |
| | ) | **MOTION TO DISMISS** |
| ERIN RAE ESPINOSA, | ) | **WITHOUT PREJUDICE** |
| Defendant. | ) | (Assigned to the Hon. Charles Donofrio) |
| | ) | |

The state hereby moves for a dismissal of this case without prejudice, for the reason that a preliminary hearing was held before Comm. Ireland on 10/13/14, and the defendant was held to answer. However, the state failed to file the information within ten days, as required by Rule 13.1, Arizona Rules of Criminal Procedure.

The state moves the court to dismiss this case without prejudice, so that it may be refiled.

Respectfully submitted this 17th day of November, 2014.

WILLIAM MONTGOMERY
MARICOPA COUNTY ATTORNEY

By:    /s/ _____
      /s/ Richard E. Serden
      Deputy County Attorney

Copies of the foregoing delivered
this 17th day of November, 2014 to:

Hon. Charles Donofrio
Maricopa County Superior Court

Richard D. Coffinger, Esq.
6838 N. 58th Drive
Glendale, AZ 85301
r.coffinger@gmail.com
Attorney for the Defendant

By: /s/ _Richard E. Serden_

/s/ Richard E. Serden
Deputy County Attorney

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
11/25/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-002044-001 DT                                      11/24/2014

COMMISSIONER CHARLES DONOFRIO III          CLERK OF THE COURT
                                                       M. Miholich
                                                       Deputy

STATE OF ARIZONA                              RICHARD E SERDEN

v.

ERIN RAE ESPINOSA (001)                        RICHARD D COFFINGER

MINUTE ENTRY

8:48 a.m.

Courtroom CCB 802

State's Attorney:          R. Serden
Defendant's Attorney:      R. Conffinger
Defendant:                 Present

A record of the proceedings is made by audio and/or videotape in lieu of a court reporter.

This is the time set for Initial Pretrial Conference.

Counsel for the Defendant having filed a motion to dismiss and upon stipulation of the parties,

IT IS ORDERED dismissing this case without prejudice.

IT IS FURTHER ORDERED releasing the defendant as to this cause only.

8:55 a.m.  Matter concludes.

Docket Code 500                    Form R000D                    Page 1

Item 2



Item 3



1  RICHARD D. COFFINGER
   Attorney at Law
2  6838 N. 58ᵗʰ Drive
   Glendale, AZ 85301
3  State Bar ID #003040
   623-937-9214
4  623-937-7072 (fax)
   r.coffinger@gmail.com
5  Co-Counsel for Appellant

                          IN THE COURT OF APPEALS
6
                             STATE OF ARIZONA
7
                               DIVISION ONE
8
9  STATE OF ARIZONA,              )    No. 1 CA-CR 17-0001
                                  )
10              Appellee,         )    MARICOPA County Superior Court
                                  )    No. CR2014-006004-001
11      vs.                       )
                                  )    APPELLANT'S NOTICE OF ERRATA AND
12                                )    CORRECTION TO HER TABLE OF CON-
   ERIN RAE ESPINOSA,             )    TENTS AND TABLE OF CITATIONS TO
13                                )    HER OPENING BRIEF
                Appellant.        )
14                                )
                                  )
15 _____)

16

17        Appellant, ERIN RAE ESPINOSA, by and through her undersigned co-counsel of record, gives

18 notice of her errata and her correction to her Table of Contents and Table of Citations, on pages 2-6 of her

19 opening brief, because as filed they included incorrect page numbers, filed pursuant to this Court's

20 August 30, 2017, Order.

21        DATED this 19ᵗʰ day of February, 2018

22

23                          /signature/
                            RICHARD D. COFFINGER
24                          Co-Counsel for Appellant

25

26

                                      1

# TABLE OF CONTENTS

**PAGE**

Table of Citations          4, 5, 6

Statement of the Case          7

Statement of Facts          20

Issues Presented          27-28

Argument

     I.    Appellee's Trial Counsel Committed Numerous Intentional    29
          Acts of Prosecutorial Misconduct, to Gain a Tactical Advantage,
          Which Included His Lack of Candor Toward the Tribunal, That
          When Combined, Violated Appellant's Right to Due Process Of
          Law.

     II.    The Superior Court Committed Reversible Error By Denying    48
          Appellant's Motion to Preclude Appellee From Presenting
          at Trial, Argument and Evidence in Support of Its Alternative
          Legal Theory That Appellee Had Waived at Appellant's
          Preliminary Hearing, in Violation of the Doctrine of Judicial
          Estoppel.

     III.    The Superior Court Committed Reversible Error by Denying    49
          Appellant's Motion to Strike Appellee's Sentencing
          Enhancement Allegation That She Committed the Charged
          Offense While On Probation For a Prior Felony Offense Because
          Her Prior Class 6 Undesignated Aggravated DUI Offenses
          Were Designated as Misdemeanors Prior to the Date (1)
          Appellee Filed the Charge, and (2) Appellee Filed Its Allegation.

     IV.    The Superior Court Committed Reversible Error by Denying    51
          Appellant's (1) Motion for Dismissal, With Prejudice, Based
          Upon the Superior Court's *Sua Sponte* Mistrial Declaration,

Without Either a Manifest Necessity or Appellant's Consent, and (2) Motion For Directed Verdict of Acquittal, Pursuant to Rule 20, Ariz.R.Crim.Pro., That She Made in Her Second Trial After Appellee Rested Its Case-in-Chief.

V.   The Superior Court Committed Reversible Error by Denying     65
     Appellant's Second Motion for Reconsideration of her Motion
     to Suppress Appellee's Drug Content Analysis of her Blood
     Sample Because Appellee Waived Its Alternative Argument,
     Pursuant to A.R.S. §13-3925, by Failing to Preserve This
     Argument in the Superior Court.

VI.  The Superior Court Committed Reversible Error by Denying     67
     Appellant's Motion for Alternative Relief, Including Dismissal
     of the Charge, With Prejudice, Based on Appellee's Violation
     of Its Duty to Collect and Preserve Until Time of Trial, a Sample
     of Her Blood for Her Independent Chemical Analysis.

VII. The Superior Court Committed Reversible Error by Its         71
     Rulings Relating to the Admission or Preclusion of Evidence,
     Discovery Issues, Jury Instructions, and Motions to Quash
     Subpoenas.

Conclusion                                                       76

# TABLE OF CITATIONS

                                                                    PAGE

**U.S. CONSTITUTION**
Fourth Amendment                                                     13
Sixth Amendment                                                      54

**ARIZONA CONSTITUTION**
Article 2, §10                                                       55
Article 2, §30                                                       11

**U.S. SUPREME COURT OPINIONS**
*Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419 (2011)        66
*Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523 (1967)       58, 59
*Green v. United States*, 355 U.S. 184, 78 S.Ct. 221 (1957)          56
*Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d, 1217 (1959)   36
*Viereck v. United States*, 318 U.S. 236 (1943)                      46
*California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528 (1984)       71

**FEDERAL COURT OPINIONS**
*United States v. Sanchez*, 176 F.3d 1214 (9th Cir. 1999)            43

**ARIZONA APPELLATE COURT OPINIONS**
*Accomazzo v. Kemp,* 234 Ariz. 169, 319 P.3d 231 (App.2014)        59, 60
*Amos v. Bowen,* 143 Ariz. 324, 693 P.2d 779 (1984)            68, 70, 71
*American Family Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 217 P.3d 1212   32
(App.2009)
*Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1980)                  69
*Brown v. McClennen*, 239 Ariz. 529, 373 P.3d 517 (2017)       14, 51, 66
*Hasten v. State*, 35 Ariz. 427, 280 P. 670 (1929)                   73
*Helge v. Druke and Armstrong* 136 Ariz. 434, 666 P.2d 534 (App. 1983)   73
*In re Beren*, 178 Ariz. 400, 874 P.2d 320 (1994)                    47
*In re Estate of Cohen,* 105 Ariz. 337, 464 P.2d 620 (1970)          35
*In re Peasley*, 208 Ariz. 27, 90 P.3d 764 (2004)              29, 55, 74
*Mack v. Cruikshank,* 196 Ariz. 541, 2 P.3d 100 (App.Div. 2-1999)    68
*Martin v. Wood*, 71 Ariz. 457, 229 P.2d 710 (1951)                  35
*McLaughlin v. Fahringer*, 150 Ariz. 274, 723 P.2d 92 (1986)      56, 58
*Montano v. Superior Court*, 149 Ariz. 389, 688 P.2d 275       68, 70, 71
*Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984)          68, 71

4

*Phillips v. Clancy,* 152 Ariz. 415 (App.1986) ........................... 54

*Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261(1984) ........ 29, 47, 56

*Samaritan Foundation v. Goodfarb,* 176 Ariz. 497, 862 P.2d 870 (1993) ........ 61

*Scales v. City Court,* 122 Ariz. 231, 594 P.2d 97 (1979) ........ 71

*Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390 (App.1977) ........ 68

*Smith v. Ganske,* 114 Ariz. 515, 562 P.2d 395 (App.1977) ........ 71

*State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co.,* ........ 35
19 Ariz.App. 594, 509 P.2d 725 (1973)

*State Farm Auto Ins. Co.v. Lee,* 199 Ariz. 52, 13 P.3d 1169 (2000) ........ 59, 60, 61

*State v. Aguilar,* 217 Ariz. 235, 172 P.2d 423 (App.Div.2-2007) ........ 57

*State v. Brita,* 158 Ariz. 121, 761 P.2d 1025 (1988) ........ 65, 66

*State v. Brito,* 183 Ariz. 535, 905 P.2d 544 (App. 1995) ........ 67

*State v. Burge,* 167 Ariz. 25, 804 P.2d 754 (1990) ........ 29

*State v. City Court,* 130 Ariz. 285, 635 P.2d 878 (App.1981) ........ 71

*State v. Denny,* 119 Ariz. 131, 579 P.2d 1101 (1978) ........ 43, 44

*State v. Dumaine,* 162 Ariz. 392, 783 P.2d 1184 ........ 43, 44

*State ex rel. Romley v. Superior Court,* 184 Ariz. 409, 411, ........ 22
909 P.2d 476 (App.1995)

*State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921, 931 (1975) ........ 36

*State v. Fodor,* 179 Ariz. 442, 880 P.2d 662 (App.Div.1-1994) ........ 61, 64

*State v. Givens,* 161 Ariz. 278, 778 P.2d 643 (App.1989) ........ 59

*State v. Gonzales,* 105 Ariz. 434 (1970) ........ 43, 44

*State v. Hardy,* 230 Ariz. 281, 283 P.3d 12 (2012) ........ 56

*State v. Harrison,* 157 Ariz. 184, 755 P.2d 1172 (App.1988) ........ 71

*State v. Holsinger,* 124 Ariz. 18, 601 P.2d 1054 (1979) ........ 62

*State v. Howard,* 27 Ariz. 339, 554 P.2d 1282 (App. 1976) ........ 72

*State v. Hughes,* 193 Ariz. 72, 969 P.2d 1184 (1998) ........ 31, 43, 44

*State v. Kemp,* 168 Ariz. 334, 813 P.2d 315 (1991) ........ 45, 48, 69

*State v. Kinney,* 225 Ariz. 550, 241 P.3d 914 (App. 2010) ........ 67

*State v. Martinez,* 172 Ariz. 437, 837 P.2d 1172 (App.Div.1-1992) ........ 50

*State v. Mitchell,* 136 Ariz. 364, 666 P.2d 464 (1983) ........ 49, 64

*State v. Newell,* 212 Ariz. 389, 132 P.3d 833 (2006) ........ 43

*State v. Noriega,* 142 Ariz. 474, 640 P.2d 775 (1984) ........ 29

*State v. Razinha,* 123 Ariz. 355, 599 P.2d 808 (App.1979) ........ 36

*State v. Rodriguez,* 205 Ariz. 392, 71 P.3d 919 (App.2003) ........ 51

*State v. Roque,* 213 Ariz. 193, 141 P.3d 368 (2006) ........ 31

*State v. Sanchez,* 192 Ariz. 454, 967 P.2d 129 (App.Div.2-1998) ........ 70

*State v. Smith,* 219 Ariz. 132, 194, P.3d 399, 401 (2008) ........ 29

*State v. Speer,* 221 Ariz. 449, 212 P.3d 787 (2010) ........ 56

*State v. Tarzian,* 136 Ariz. 238, 665 P.2d 582 (App.1983) ........ 32

*State v. Torres*, 233 Ariz. 479, 314 P.3d 825 (App.2013)   49, 65, 67, 71
*State v. Towrey* 186 Ariz. 168, 920 P.2d 290 (1996)   34
*State v. Tuzon*, 118 Ariz. 205, 575 P.2d 1231 (1978)   53, 72
*State v. Valenzuela*, 239 Ariz.299, 371 P.3d 627 (2016)   12, 13, 50, 66
*State v. Vannoy,* 177 Ariz. 206, 866 P.2d 874 (App.1993)   71
*State v. Velasco*, 165 Ariz. 480, 799 P.2d 821 (1990)   8, 68
*State v. Williams,* 144 Ariz. 487, 698 P.2d 732 (1985)   9, 10
*State v. Williams*, 111 Ariz. 511, 533 P.2d 1146 (1975)   44
*State v. Winton*, 153 Ariz. 302, 736 P.2d 386 (App.Div.1-1987)   50
*Throop v. F.E. Young & Co.,* 94 Ariz. 146, 382 P.2d 560, 568 (1963)   59
*Trebus v. Davis,* 189 Ariz. 621, 944 P.2d 1235 (1977)   10
*Torosian v. Paulos*, 82 Ariz. 304, 313 P.2d 382 (1957)   32
*Weston v. State*, 49 Ariz. 183, 65 P.2d 652 (1937)   73

**ARIZONA STATUTES**
A.R.S. § 12-120.21(A)(1) & (A)(2)   20
A.R.S. § 13-604(A)   47
A.R.S. § 13-708   49
A.R.S. § 13-3925   14, 28, 49, 50, 65
A.R.S. § 13-4033(A)(1)   20
A.R.S. § 28-692 (repealed)   16, 70
A.R.S. §28-1381(a)(2)   6, 8, 16, 34, 65
A.R.S. §28-1382   34, 65
A.R.S. §28-1383(a)(1)   9, 34, 65
A.R.S. §28-1385   34, 65
A.R.S. §28-1401   21, 23, 27
A.R.S. §28-1402   15, 23, 27, 34, 52, 53, 63, 65

**ARIZONA CRIMINAL RULES**
Rule 8.2   12
Rule 12.9   8, 9, 30
Rule 13.1   8, 11
Rule 15.6   54, 55, 75
Rule 16.1   11, 10
Rule 19.1   57, 75
Rule 20   28, 51, 64

**ARIZONA SUPREME COURT RULES**
Rule 105   25
Rule 111   50