1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9

Erin Rae Espinosa,

10
                    Petitioner,

11
v.

12
Charles L Ryan, et al.,

13
                    Respondents.

14

No. CV-18-02479-PHX-RM (DTF)

**REPORT AND RECOMMENDATION**

15
16
17

Petitioner Erin Rae Espinosa (Espinosa or Petitioner), formerly confined in the Arizona State Prison Complex, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition). (Doc. 1.) Before the Court are the Petition, Respondents' Limited Answer to Petition for Writ of Habeas Corpus (Answer), Petitioner's reply and two notices of supplemental authority filed by Petitioner (Docs. 21, 26, 27, 28.) This matter was referred to Magistrate Judge Ferraro for Report and Recommendation. (Doc. 16.)

18
19
20

As more fully set forth below, the Magistrate Judge **recommends** that the district court, after its independent review, **dismiss** the Petition.

21
22

**BACKGROUND**

23
24
25

In November 2014, the State of Arizona charged Petitioner with one count of aggravated driving under the influence (DUI). (Doc. 21-1 at 3-4.) The Arizona Court of Appeals summarized the evidence underlying Petitioner's offense as follows:

26
27
28

¶2      In the afternoon of August 18, 2011, Michelle Murphy waited in her parked car to pick up her daughter from school. Espinosa was also parked in the lane of waiting cars and was five or six feet directly in front of Murphy.

After a few minutes, Espinosa's vehicle rolled backwards and collided with Murphy's car. Murphy exited her vehicle to check on Espinosa who appeared "dazed" and responded negatively to Murphy's stated intent to call the police. Before arriving at the school, Murphy had observed Espinosa driving erratically.

¶3     Another parent contacted police officer Kunde who was nearby, and Kunde responded to the scene. As the officer talked with Espinosa through her open driver side window, he noticed an ignition interlock device near the middle console, and Espinosa's vehicle rolled forward and backward a couple times before Kunde directed her to park in the school's driveway. As she pulled away, Espinosa drove over the curb before coming to a stop. When Espinosa exited her vehicle to look for her driver license and registration in the back of the vehicle, she was "very unstable on her feet" and "wobbling[.]" Espinosa informed Kunde that she had not been drinking, but she had taken three doses of her prescribed clonazepam earlier that day.[] She did not find her license, which the state subsequently learned was revoked and subject to a number of restrictions.[]

¶4     Kunde administered field sobriety tests, and Espinosa exhibited numerous signs of impairment. A horizontal gaze nystagmus test revealed six out of six clues of possible neurological impairment. Kunde arrested Espinosa, and after reading her the "admin per se implied consent" form, a phlebotomist obtained Espinosa's consent to draw two samples of blood. The phlebotomist also advised Espinosa of her right to an independent blood test. The state's testing of one of the blood vials indicated an amount of clonazepam approximately twice the upper limit of the therapeutic range.

(Doc. 21-3 at 67-68.) This Court presumes the correctness of the court of appeals' recitation of the facts. *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (*per curiam*); *Runningeagle v. Ryan*, 686 F.3d 758, 762 n.1 (9th Cir. 2012) (affording the factual findings of the Arizona appellate court "a presumption of correctness" that a petitioner has the burden of rebutting with clear and convincing evidence).

A jury found Espinosa guilty as charged and later determined that she committed the offense while on probation for a felony offense. (Doc. 21-1 at 13-15.) The trial court sentenced Petitioner to a presumptive term of 2.5 years' imprisonment with 30 days of presentence incarceration credit. (Doc. 21-1 at 17-21.)

Petitioner filed a timely notice of appeal. *Id*. at 23-25. Petitioner filed an opening brief presenting seven claims. *Id*. at 27-103. The appeal was fully briefed. (Doc. 21-2 at 2-135; Doc. 21-3 at 2-64.) On March 13, 2018, the Arizona Court of Appeals issued a memorandum decision rejecting Petitioner's claims and affirming her conviction and sentence. (Doc. 21-3 at 66-82.) Petitioner filed a petition for review in the Arizona Supreme Court and the state filed a notice of acknowledgment. *Id*. at 84-97, 99. The Arizona Supreme Court denied review on August 31, 2018. *Id*. at 112. A few weeks earlier, on August 3, 2018, Petitioner filed the instant Petition. (Doc. 1.)

On August 28, 2018, the district court entered an order dismissing the claims alleged in Ground Two and the first part of Ground Three of the Petition because Espinosa failed to refer to or identify any federal basis for them. (Doc. 8 at 3.) As such, the Petition presents four grounds for relief:

> **Ground One**: The prosecutor committed "numerous intentional acts of prosecutorial misconduct" that violated Espinosa's right to due process;

> **Ground Three (part two)**: The superior court erred when it denied Espinosa's motion for a directed verdict of acquittal pursuant to Rule 20 of the Arizona Rules of Criminal Procedure because the evidence was insufficient;

> **Ground Four**: The superior court erred when it declined to reconsider its ruling denying Espinosa's motion to suppress evidence "because the State waived its alternative argument, pursuant to A.R.S. § 13–3925, by failing to preserve [its] argument in the superior court"; and

> **Ground Five**: The superior court erred when it denied Espinosa's "motion for alternative relief, including dismissal of the charge, with prejudice, based on the State's violation of its duty to collect and preserve until time and (*sic*) trial, a sample of her blood for her independent chemical analysis."

(Doc. 1 at 23, 42, 59–74.) Respondents filed their Answer arguing the Petition should be denied because all except for one of the claims alleged in Ground One and the claim alleged in part two of Ground Three are procedurally defaulted without excuse, the claim alleged in Ground Four is precluded from habeas review and the one exhausted claim

alleged in Ground One and the claim alleged in Ground Five are without merit. (Doc. 21.)

## ANALYSIS

### The Petition is Timely

Because the Petition was filed after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) governs. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, 267 n.3 (2000)). The AEDPA's one-year statute of limitations applies. *See* 28 U.S.C. § 2244(d)(1). *See Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir. 1999). The limitations period begins to run on the date when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The Arizona Supreme Court denied review on August 31, 2018.  Several weeks earlier, on August 3, 2018, Petitioner filed her Petition. The Petition is timely.

### Ground Four is Precluded from Habeas Review

In Ground Four, Petitioner claims the trial court committed reversible error in denying her second motion for reconsideration of the trial court's denial of her motion to suppress the results of her blood alcohol test in an apparent violation of her rights under the Fourth Amended to the United States Constitution. (Doc. 1 at 64, 68.) Petitioner urges that the state waived its alternative good faith exception argument by failing to raise this argument in the trial court when it filed its response to her second motion for reconsideration of her motion to suppress. She argues that the trial court and court of appeals erred when it determined the state did not waive its good faith exception argument. *Id.*; Doc. 26 at 14. Respondents argue that Ground Four is barred by *Stone v. Powell,* 428 U.S. 465, 494–95 (1976), and that Petitioner's claim is really a claim under state law rather than a Fourth Amendment claim. (Doc. 21 at 18-20.)

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 494–95. The Ninth Circuit has recognized that *Stone* bars

habeas relief based upon claims challenging the constitutionality of the state prisoner's arrest and seizure. *See Terrovona v. Kincheloe*, 912 F.2d 1176, 1178 & n.2 (9th Cir. 1990) (collecting cases from the First, Second, Sixth, Seventh, Eighth, and Eleventh circuits applying *Stone* to challenges against warrantless arrests); *Myers v. Rhay*, 577 F.2d 504, 509 (9th Cir. 1978) (applying *Stone* to arrests pursuant to a warrant).

"The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); and *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983)). "Consequently, once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

It is undisputed that Petitioner litigated her motion to suppress the results of her blood alcohol test in the trial court. (Doc. 21-3 at 10-12.) In considering the issue on direct appeal, the court of appeals held:

¶25    Espinosa argued in her motion to suppress the blood test results that the admin per se read to her was unduly coercive, resulting in her involuntary consent to draw the blood. Thus, Espinosa asserted, the warrantless blood draw violated her rights under the Fourth Amendment. In making this argument, Espinosa focused on the language in the admin per se form that 'required' her to submit to a blood test. In response, the state relied on *State v. Brito*, 183 Ariz. 535 (App. 1995), *abrogated by State v. Valenzuela*, 183 Ariz. 535 (2016). In *Brito*, this court held that the same 'require to submit' language that Espinosa challenged in the admin per se did 'not misstate the law[.]' *Id.* at 539. We also reviewed the record for fundamental error and did not find the 'requirement' language resulting in Fourth Amendment violations. *Id.*; *Valenzuela*, 239 Ariz. at 309, ¶ 32.

¶26    On April 26, 2016, the Arizona Supreme Court issued its opinion in *Valenzuela* abrogating *Brito*, 239 Ariz. at 309, ¶ 33. In doing so, the Court held that 'consent given solely in acquiescence to the admonition used here and in *Brito* is not free and voluntary under the Fourth Amendment and

cannot excuse the failure to secure a warrant.' *Id*. The Court concluded, however, that the officer who read the admin per se to Valenzuela was following 'binding precedent [i.e. *Brito*] that had sanctioned the use of the admonition …, and the good faith exception [to the exclusionary rule] therefore applies.' *Id*. Accordingly, the Court affirmed the trial court's denial of Valenzuela's motion to suppress breath and blood test results that the state used to secure two DUI convictions. *Id*. at 301-02, 310, ¶¶ 5-6, 35.

¶27     The same day the Court issued *Valenzuela*, Espinosa filed her second motion in the trial court seeking reconsideration – in light of *Valenzuela's* holding – of the court's denial of her motion to suppress. Espinosa also argued that the state had waived any argument that the good faith exception would apply in the case by failing to raise such an argument in response to Espinosa's motion to suppress and first motion for reconsideration. Agreeing with the state that the good faith exception applied to render admissible the blood test results, the court declined to reconsider its order denying the motion to suppress.

¶28     Espinosa argues the court erred in failing to reconsider the denial of her suppression motion. Espinosa appears to repeat her contention that the state waived its good faith exception argument by failing to raise it in response to the motion to suppress or in response to Espinosa's first motion for reconsideration.

¶29     We reject this argument. When the state responded to the motion to suppress, and when Espinosa first moved for reconsideration, our supreme court had yet to publish *Valenzuela* and overturn *Brito*. *Brito* was, therefore, good law at the time, and the state would have no reason to argue for application of the good faith exception. By arguing for application of the good faith exception in its post-*Valenzuela* response to Espinosa's second motion for reconsideration, the state properly preserved the issue. The trial court did not abuse its discretion. *State v. Smith*, 203 Ariz. 75, 79, ¶ 12 (2002) (exercising discretion to address merits of arguments that were arguably waived).

(Doc. 21-3 at 75-77.)  (Footnote omitted.)

Petitioner contends the appellate court's determination that the state did not waive its good faith argument is unsupported in the record, that the state courts inconsistently apply the "waiver of argument" rule and that the court of appeals "refused to apply the correct and controlling constitutional standards." (Doc. 1 at 68.) In support of her position

she cites *Miranda v. Leibach*, 394 F.3d 984 (7th Cir. 2005) and *Gamble v. State of Oklahoma*, 583 F.2d 1161 (10th Cir. 1978).

This Court agrees with Respondents that *Miranda v. Leibach* does not support her position that the Arizona courts have inconsistently applied "the waiver of argument rule." In *Miranda*, the United States Court of Appeals for the Seventh Circuit recognized:

> Despite the inconsistent treatment of the waiver rule in the Illinois courts, Miranda faces an uphill slope in the effort to demonstrate that the rule is not an adequate basis for the appellate courts decision to abstain from the merits of his Fourth Amendment claim.

394 F.3d at 995. The Seventh Circuit held that federal habeas review of the petitioner's Fourth Amendment claim was procedurally barred because the state appellate court's decision was based on the petitioner's waiver and rested on an adequate and independent state ground. *Id*. at 996 ("In our view, what dooms Miranda's argument vis-a-vis the adequacy of the waiver rule is his own concession before the Illinois Appellate Court that he had waived the Fourth Amendment claim."). The Seventh Circuit alternatively determined that Miranda had a full and fair opportunity to litigate his Fourth Amendment claim and, as such, the claim was barred by *Stone v. Powell*. *Id*. at 1001 ("Because the court's finding could be construed as one focused on the point in time at which Chavez gave his statement inculpating Miranda, and because there was at least some evidentiary support for the court's finding so construed…Miranda had a full and fair opportunity to litigate his Fourth Amendment claim in state court…"). This Court determines that *Miranda* does not support Petitioner's argument.

In *Gamble v. State of Oklahoma*, the United States Court of Appeals for the Tenth Circuit held the petitioner's Fourth Amendment claim was not barred by *Stone* where the state courts failed to consider a United States Supreme Court case "almost directly on point." 583 F.2d at 1163-64. The Tenth Circuit held the petitioner's opportunities to litigate his Fourth Amendment claim in the state courts were not "fair" within the meaning of *Stone*. 583 F.2d at 1163-64. *Gamble* does not help Petitioner. Petitioner here has pointed to no authority that is "directly on point" that the state courts refused to consider that would

have compelled the granting of her second motion for reconsideration. The court of appeals' decision rests on the determination that the law the state relied on – *Brito* – was good law at the time. After *Brito* was overruled, the state argued for the application of the good faith exception thereby "properly preserving the issue."

This Court also agrees with Respondents that a fair reading of Petitioner's claim in Ground Four establishes that her claim does not concern the state courts' Fourth Amendment analysis. Rather, Petitioner's claim in Ground Four concerns the proper remedy under Arizona law for alleged violations of Petitioner's Fourth Amendment rights. Indeed, in stating her claim, Petitioner alleges the trial court committed error when it denied her second motion for reconsideration of her motion to suppress because the state waived its alternative argument pursuant to Ariz. Rev. Stat. § 13-3925. *See* Doc. 1 at 64. Section 3924(C), Title 13, Arizona Revised Statutes, provides that a trial court:

> Shall not suppress evidence that is otherwise admissible in a criminal proceeding if the court determines that the evidence was seized by a peace officer as a result of a good faith mistake or technical violation.

*See* Ariz. Rev. Stat. § 13-3925(C). Significantly, federal habeas relief does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'")

In sum, generously construing Petitioner's claim in Ground Four as a Fourth Amendment claim, this Court determines that habeas review is precluded by *Stone v. Powell, supra*.

### The Claims Alleged in Ground One (Except One) and Part Two of the Claim Alleged in Ground Three Are Unexhausted

In Ground One, Petitioner alleges a host of prosecutorial misconduct claims. (Doc. 1 at 23.) Petitioner contends that she exhausted her prosecutorial misconduct claims by presenting them to the court of appeals in her direct appeal. Respondents argue Petitioner did not properly exhaust all her prosecutorial misconduct claims as the court of appeals determined that she waived all but one of the claims. (Doc. 21-3 at 69-70.) Accordingly, Respondents contend all of Petitioner's claims in Ground One are unexhausted except for

1   her claim of prosecutorial misconduct based upon the prosecutor's alleged misconduct

2   during rebuttal closing arguments. (Doc. 21 at 9-11.)

3          In part two of Ground Three, Petitioner claims the trial court erred when it denied

4   her motion to dismiss brought pursuant to Rule 20 of the Arizona Rules of Criminal

5   Procedure. (Doc. 1 at 59.) Respondents argue that Petitioner did not properly exhaust this

6   claim because she failed to present this claim as a federal constitutional claim in her direct

7   appeal. Respondents insist Petitioner relied solely on Rule 20, Ariz. R. Crim. P., and a

8   single state court case interpreting a state statute and the court of appeals resolved her claim

9   based on Arizona law. (Doc. 21 at 12-15.)

10         As explained below, this Court agrees with Respondents and determines that the

11  claims alleged in Ground One (except for the claim of prosecutorial misconduct during

12  rebuttal closing argument) and part two of the claim alleged in Ground Three are

13  procedurally defaulted.

14         <u>Exhaustion/Procedural Default</u>

15         A federal court may only consider a petitioner's application for a writ of habeas

16  corpus if "the applicant has exhausted the remedies available in the courts of the State."

17  28 U.S.C. § 2254(b)(1)(A); *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wooten*

18  *v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008).  Proper exhaustion requires a petitioner

19  to fairly present his federal claims at the trial level and to "invok[e] one complete round of

20  the State's established appellate review process," presenting the same federal claim to each

21  court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

22  (1999). In Arizona, a prisoner does not exhaust a claim for federal review in a non-capital

23  case unless he has presented it to the Arizona Court of Appeals.  *See Castillo v. McFadden*,

24  399 F.3d 993, 998 & n.3 (9th Cir. 2005) (citing *Swoopes v. Sublett*, 196 F.3d 1008, 1010–

25  11 (9th Cir. 1999)).

26         A claim is only "fairly present[ed]" when a petitioner "clearly state[s] the federal

27  basis and federal nature of the claim, along with relevant facts." *Cooper v. Neven*, 641 F.3d

28  322, 327 (9th Cir. 2011); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("If state

courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). "[T]he petitioner must make the federal basis of the claim *explicit* either by citing federal law or the decisions of federal courts, even if the federal basis is 'self-evident,' . . . or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000) (emphasis added; internal citations omitted), *modified by* 247 F.3d 904 (9th Cir. 2001).

A corollary to the exhaustion requirement, the "procedural default doctrine" - which limits a petitioner from proceeding in federal court where his claim is procedurally barred in state court - "has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.").

There are two types of procedural bars, "express and implied." *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). A claim is technically exhausted, but procedurally defaulted, when a petitioner attempted to raise it in state court and the state court expressly applied a procedural bar resting on an independent and adequate state law ground to avoid considering the merits of the claim. *See Nunnemaker*, 501 U.S. at 802–05; *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005) (stating procedural default "applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements") (internal quotation omitted). In determining whether the state courts have imposed a procedural bar, the district court reviews the "last reasoned opinion" of the state courts. *Nunnemaker*, 501 U.S. at 803; *Lambright v. Stewart*, 241 F.3d 1201, 1205 (9th Cir. 2001).

A claim is also technically exhausted, but implicitly procedurally defaulted, when a petitioner has not raised it in state court, but a return to state court to exhaust it would be

futile considering state procedural rules. *See Boerckel*, 526 U.S. at 848 (finding claims procedurally defaulted because habeas petitioner was time-barred from presenting his claims in state court); *Coleman*, 501 U.S. at 735 n.1 (noting that claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred").

This Court analyzes Petitioner's claims alleged in Grounds One and part two of Ground Three under the foregoing rubric.

**Ground One:** Petitioner states her claim in Ground One as follows:

> The state's trial counsel committed numerous intentional acts of prosecutorial misconduct to gain a tactical advantage which included his lack of candor toward the tribunal that when combined violated Petitioner's right to due process of law.

(Doc. 1 at 23.) In her direct appeal, Petitioner argued that the prosecutor committed numerous intentional acts of misconduct. (Doc. 21-1 at 28, 53-67.) The court of appeals held:

> ¶8    Espinosa argues the state "willfully engaged in prosecutorial misconduct, by which it gained a tactical advantage, through its deliberate indifference and intentional ignorance of its repeated errors during its three prior grand jury presentations against appellant." She also summarily asserts the prosecutor engaged in misconduct by arguing a theory of guilt at trial that was different from the theory pursued at the preliminary hearing and by making a 'frivolous motion' to call defense counsel to testify. Espinosa additionally contends the prosecutor deliberately misled the jury during opening statement and closing arguments regarding (1) the date 'this case' started[;] (2) the number of times the state filed charges against her[;] (3) the fact that, at the time of the incident, Espinosa was on probation for 'an offense' without clarifying that the offense was a felony; (4) a misstatement of law; and (5) a stipulation that purportedly did not exist. Finally, Espinosa claims: 'Reckless prosecutorial misconduct by destruction of [Espinosa's] blood sample prior to trial.'

> ¶9    Espinosa does not properly develop these arguments. She generally does not indicate where in the record she objected on prosecutorial misconduct grounds, and she cites no applicable supporting authority. Accordingly, Espinosa has abandoned and waived these issues. *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("In Arizona, opening briefs must present

significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim."); *State v. Lindner*, 227 Ariz. 69, 70 n.1, ¶2 (App. 2010) (Appellate court will not address a defendant's undeveloped arguments).

(Doc. 21-3 at 69-70.) The court of appeals addressed the merits of one of Petitioner's prosecutorial misconduct claims, namely, her claim that the prosecutor committed misconduct during rebuttal closing arguments. *Id*. at 70-71.

The case law that the court of appeals relied upon in determining that Petitioner waived and abandoned all but one of her prosecutorial misconduct claims, *Carver* and *Lindner*, relied on Arizona Rule of Criminal Procedure 31.13(c)(1)(vi). *See, e.g., Carver*, 771 P.2d at 1391 (citing Rule 31.13(c)(1)(vi)); *Lindner*, 252 P.3d 1033 n.1 (same). Rule 31.13(c)(1)(vi), Ariz. R. Crim. P., renumbered effective January 1, 2018 as Rule 31.10(a)(7), requires opening briefs to set forth an "'argument' that contains … appellant's contentions with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellate relies[,]" and "for each issue, references to the record on appeal where the issue was raised and ruled on, and the applicable standard of appellate review with citation to supporting legal authority." *See* Ariz. R. Crim. P. 31.10(a)(7). Respondents argue that the application of Rule 31.10(a)(7) is firmly established and regularly followed in Arizona and, as a result, federal habeas review is precluded.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 728. This Court agrees with Respondents that the application of Rule 31.10(a)(7) is firmly established and regularly followed in Arizona. *See, e.g., Carver*, 771 P.2d at 1390 (collecting cases); *State v. Foshay*, 370 P.3d 618, 627 n. 2-4 (Ariz. App. 2016) (relying on Rule 31.13(c)(1) in declining to consider several cursory assertions where the defendant failed to develop any supporting argument and determining those issues waived); *State v. West*, 362 P.3d 1049, 1069 n.9 (Ariz. App. 2015) (declining to consider allegation of prosecutorial misconduct

where defendant failed to comply with Rule 31.13(c)(1)(vi)); *State v. Lopez*, 175 P.3d 682, 687 n.5 (Ariz. App. 2008) (declining to address defendant's argument that did not comply with Rule 31.13(c)(1)(vi)); *Bersane v. Ryan*, 2010 WL 1195162, at *23 (D. Ariz. 2010) (where state appellate court declined to address double jeopardy claim for failure to comply with Rule 31.13(c)(1)(vi), such determination is independent of federal law). The Arizona Court of Appeals' application of Rule 31.10(c)(7), Ariz. R. Crim. P., is an independent and adequate state law ground determination that prohibits federal habeas review of Petitioner's prosecutorial misconduct claims, except the prosecutorial misconduct claim that the court of appeals rejected on the merits.

In sum, this Court determines that the prosecutorial misconduct claims alleged in Ground One (except for the claim alleging prosecutorial misconduct during rebuttal closing argument) are technically exhausted but procedurally defaulted.

**Ground Three:** Petitioner states part two of her claim in Ground Three as follows:

> The superior court committed reversible error by denying Petitioner's motion for directed verdict of acquittal, pursuant to Rule 20, Ariz. R. Crim. P., that she made in her second trial after the state rested its case-in-chief.

(Doc. 1 at 59.) Petitioner raised this claim in her direct appeal but did not present the issue as a federal constitutional violation. *See* Doc. 21-1 at 28-29, 77, 90-91. Petitioner failed to cite any federal constitutional authority in the argument section of her opening appellate brief on this issue. *Id*. at 90-91. The court of appeals held:

> ¶22    Espinosa also contends the trial court erred in denying her motion for judgment of acquittal made pursuant to Arizona Rule of Criminal Procedure 20. Espinosa appears to argue that the state presented insufficient evidence that her driver license was revoked at the time of the incident.

> ¶23    We review de novo a trial court's denial of a Rule 20 motion. *State v. Bible*, 175 Ariz. 549, 595 (1993). "A judgment of acquittal is appropriate when 'no substantial evidence [exists] to warrant a conviction.'" *State v. Nunez*, 167 Ariz. 272, 278 (1991) (quoting *State v. Clabourne*, 142 Ariz. 335, 345 (1984)); *see also* Ariz. R. Crim. P. 20(a). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277,

290 (1996).

¶24   Substantial evidence supports a conclusion that Espinosa's driver license was revoked and restricted at the time of the incident. *See* A.R.S. 28-§ 1383(A)(1) ("A person is guilty of aggravated [DUI] if the person … [c]omits a [DUI] when the person's driver license or privilege to drive is suspended, canceled, revoked or refused or while a restriction is placed on the persons' driver license or privilege to drive as a result [of a prior DUI conviction].") A custodian of records testified that, commencing October 18, 2010, Espinosa's driver license was revoked for 36 months, and on March 8, 2011, Espinosa applied for and received a SIIRDL, which allowed her to drive during the revocation period. The court did not err in denying Espinosa's Rule 20 motion.

(Doc. 21-3 at 75.)

A federal court may consider an application for a writ of habeas corpus only if the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see Coleman*, 501 U.S. at 731. To fairly present a claim to the appropriate state courts, the petitioner must have described the operative facts and the federal legal theory that support the specific claim. *See Baldwin v. Reese,* 541 U.S. 27, 29, 31 (2004); *Scott v. Schriro,* 567 F.3d 573, 582 (9th Cir. 2009) ("Full and fair presentation . . . requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.").

This Court agrees with Respondents that Petitioner did not fairly present part two of the claim alleged in Ground Three to the Arizona Court of Appeals. While there may be similarities between Petitioner's insufficient evidence claim under Arizona law and a due process sufficiency of evidence claim, "raising a state claim that is merely similar to a federal claim does not exhaust state remedies." *Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005). Petitioner did not fairly present part two of the claim alleged in Ground Three as a federal constitutional claim to the state courts.

Petitioner cannot now return to state court to exhaust her prosecutorial misconduct claims in Ground One or her claim in Ground Three. These claims are barred because

Arizona's procedural requirements would render futile a return to state court to exhaust these claims. Rule 32.2(a)(3), Ariz. R. Crim. P., precludes post-conviction relief on any claim that could have been raised on direct appeal. *See* Ariz. R. Crim. P. 32.2(a)(3); *Murray v. Schriro*, 745 F.3d 984, 1015 (9ᵗʰ Cir. 2014); *Johnson v. Schriro*, 401 F.Supp.2d 1013, 1021 n.2 (D. Ariz. 2015); *Shrum*, 203 P.3d 1175, 1178, ¶ 12 (Ariz. 2009) (en banc). If Petitioner returned to state court to exhaust the above referenced claims in Grounds One and Three, the state court would find them precluded under Rule 32.2(a). Although Rule 32.2(b), Ariz. R. Crim. P., exempts certain types of claims from preclusion, the above referenced claims alleged in Grounds One and part two of Ground Three do not meet any of these exceptions. *See* Ariz. R. Crim. P. 32.2(b).

In sum, this Court determines that all but one of the prosecutorial misconduct claims alleged in Ground One are technically exhausted but procedurally defaulted. The claim alleged in part two for Ground Three was not fairly presented and is procedurally defaulted.

### The Procedural Default Cannot be Excused

The district court may review a procedurally defaulted claim only if the petitioner alleges and proves cause and prejudice, or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Cooper*, 641 F.3d at 327. To establish "cause," a petitioner must demonstrate that "some objective factor external to the defense impeded [petitioner]'s efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (internal quotation omitted). To show "prejudice," a petitioner must demonstrate that the alleged constitutional violation worked to the prisoner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Stokley v. Ryan*, 705 F.3d 401, 403 (9th Cir. 2012); *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989). And, to prove a "fundamental miscarriage of justice," a prisoner must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.

Respondents argue the procedural default of the above referenced claims alleged in Grounds One and Three cannot be excused. (Doc. 21 at 16-17.) Respondents urge that Petitioner has not met her burden to establish cause and prejudice nor has she made a colorable showing of a fundamental miscarriage of justice. *Id*. at 17.

Petitioner admits that she did not discuss any grounds to excuse the procedural default of her claims in her Petition. (Doc. 26 at 12.)  In her reply, Petitioner argues that the district court should excuse her failure to exhaust and reach the merits of her procedurally defaulted claims because: (1) "[u]nder the rationale of *Martinez v. Ryan*, 566 U.S. 1 (2012), this is an equitable reason to excuse any procedural default[]"; (2) the procedural bar the court of appeals imposed on Petitioner's federal constitutional claims should not be enforced by the district court under the adequate and independent state grounds doctrine; and (3) a fundamental miscarriage of justice occurred as a result of "the state's numerous intentional acts of prosecutorial conduct to gain a tactical advantage[.]" (Doc. 26 at 6, 7-10 and 12.)

Petitioner's reliance on *Martinez v. Ryan* is misplaced. The United States Supreme Court has explained:

> The premise of *Martinez* is incompetent counsel. Indeed, the premise is *two* incompetent counsel – trial counsel and state PCR counsel. This quite different circumstance is reflected in the Court's more lenient rule in *Martinez* for excusing procedural default. […]

> Under the new *Martinez* rule, a procedural default by state PCR counsel in failing to raise trial-counsel IAC is excused if there is 'cause' for the default. The Court wrote in *Trevino*, summarizing its holding in *Martinez*:

>> We consequently read *Coleman* as containing as exception, allowing a federal habeas court to find 'cause,' thereby excusing a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires

1
2

that an "ineffective assistance of trial counsel [claim] … be raised in an initial-review collateral proceeding.' *Martinez*, 1132 S.Ct. at 1318-19.

3
4
5
6

*Detrich v. Ryan,* 740 F.3d 1237, 1244-45 (9th Cir. 2013) (quoting *Trevino v. Thaler*, __ U.S. __, 133 S.Ct. 1911, 1918 (2013)). Here, Petitioner has not raised a claim of ineffective assistance of counsel. Thus, the narrow ground to excuse the procedural default of a petitioner's unexhausted claims established by *Martinez v. Ryan* is inapplicable.

7
8
9
10
11
12
13
14
15

Petitioner has not convinced this Court that the Arizona Court of Appeals' invocation of Ariz. R. Crim. P. 31.10(a)(7) as grounds for its refusal to consider Petitioner's prosecutorial misconduct claims is not an adequate and independent state law ground. In support of her argument Petitioner discusses Pennsylvania's fugitive-disentitlement. (Doc. 26 at 8-9.) She argues that "[u]nlike Pennsylvania's fugitive-disentitlement doctrine, Arizona's rule allowing courts to ignore a party's argument that is sufficiently cited in the record deviates sharply from federal practice." *Id*. at 9. She also reiterates her argument that the superior court should have determined that the state waived the good faith exception to the exclusionary rule. *Id*. at 10.

16
17
18
19
20
21
22
23
24
25

"To qualify as an 'adequate' procedural ground," capable of barring federal habeas review, "a state rule must be 'firmly established and regularly followed.'" *Johnson v. Lee*, 136 S.Ct. 1802, 1805 (2016) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (1991). "A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system." *Johnson*, 136 S.Ct. at 1807 (quoting *Lambrix v. Singletary*, 520 U.S. 447, 525 (2005). This Court determines that Petitioner has not established that the Arizona Court of Appeals' invocation of Rule 31.10(a)(7) is not an adequate and independent state law ground. As laid out above, Rule 31.10(a)(7), Ariz. R. Crim. P., is firmly established and has been regularly followed in the Arizona state courts. *See* pp. 12-13, *supra*.

26
27
28

Lastly, this Court rejects Petitioner's claim that, due to the alleged intentional acts of prosecutorial misconduct, a fundamental miscarriage of justice would occur if the procedural default of her claims was not excused. Petitioner's argument on this point is:

1

2

3

> The state argues that its repeated acts of prosecutorial misconduct in the superior court does not qualify as a fundamental miscarriage of justice that excuses a procedural default. Ms. Espinosa contends that it does.

4 (Doc. 26 at 12.) Petitioner has failed to put forth what is required of her to establish a

5 fundamental miscarriage of justice; namely, that, considering <u>new</u> evidence, "it is more

6 likely than not that no reasonable juror would have convicted [her]." *Schlup*, 513 U.S. at

7 327. Petitioner's argument makes no mention of new evidence and fails to articulate how,

8 given this (unmentioned) new evidence, it is more likely than not that no reasonable juror

9 would have convicted her.

10 In sum, this Court determines there are no grounds upon which it can recommend

11 that the district court excuse the procedural default of the above discussed claims alleged

12 in Grounds One and Three of the Petition.

13 **The Sole Exhausted Claim Alleged in Ground One and the Claim Alleged in**

14 **Ground Five Are Without Merit**

15 As explained below, this Court determines that Petitioner's prosecutorial

16 misconduct claim based on the prosecutor's alleged misconduct during rebuttal closing

17 arguments alleged in Ground One and her claim that the trial court committed reversible

18 error when it denied her motion to dismissed based on the state's failure to preserve a

19 sample of her blood for independent testing are without merit.

20 Standard of Review under the AEDPA

21 Congress intended AEDPA to foster federal-state comity and further society's

22 interest in the finality of criminal convictions. *Panetti v. Quarterman*, 551 U.S. 930, 945

23 (2007) ("AEPDA's] design is to 'further the principles of comity, finality, and

24 federalism.'") (*quoting Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). Congress' very

25 purpose in enacting the AEPDA was "to restrict the availability of habeas corpus relief."

26 *Greenwalt v. Stewart*, 105 F.3d 1268, 1275 (9th Cir. 1997), *abrogated on other grounds*

27 *recognized by Jackson v. Roe*, 425 F.3d 645, 658-61 (9th Cir. 2005).

28 In the AEDPA, Congress set forth "a difficult to meet and highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions must be given the benefit of the doubt." *Pinholster*, 536 U.S. at 81. (Internal punctuation omitted.) The district court may grant a writ of habeas corpus, "only on the basis of some transgression of federal law binding on state courts." *Middleton, v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

The AEDPA limits the availability of habeas relief for a claim adjudicated on the merits to circumstances where the state court's disposition either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner bears the burden of proving his claims fit one of the criteria in paragraph (d). *Pinholster*, 563 U.S. at 181; *Lambright v. Blodgett*, 393 F.3d 943, 970 n. 16 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law when the court has applied a rule of law that contradicts the governing law set forth in Supreme Court precedent or has encountered a set of facts that are "materially indistinguishable" from a Supreme Court decision and yet reached a different result than the Supreme Court. *Early v. Packer*, 537 US 3, 8 (2002) (*per curiam*). Under § 2254's "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applies clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[E]ven a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

*Richter* explained:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

- 19 -

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement.

562 U.S. at 101. "If this standard is difficult to meet, that is because it was meant to be." *Id*. Section 2254(d)(1) sets "a daunting standard – one that will be satisfied in relatively few cases." *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).

In determining whether the state courts' resolution of a claim was contrary to, or an unreasonable application of, clearly established federal law, the district court must review the last reasoned state court judgment addressing the claim. *Cook v. Schriro*, 538 F.3d 1000, 1015 (9th Cir. 2008) (citing *Ylst*, 501 U.S. at 803). The reviewing federal court is to be "particularly deferential to [its] state court colleagues." *Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). The federal habeas court presumes the state court's factual determinations are correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**Ground One:** Petitioner argues the prosecutor committed misconduct during rebuttal closing argument. (Doc. 1 at 30.) In rejecting this claim, the court of appeals held:

¶10    Espinosa also contends the prosecutor engaged in misconduct during rebuttal closing argument by making disparaging comments about defense counsel. Such comments include:

[T]he defense's job is to create reasonable doubt in your mind[,]…they try to distract your attention[.] What the defense normally tries to do is…to deflect your attention to matters which really aren't part of that list. ... [The witness] almost had these crammed down his throat. … Ladies and gentlemen, distraction.

¶11    To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnely v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Reversal on the basis of prosecutorial misconduct requires that the conduct be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *State v. Atwood*, 171 Ariz. 576, 611 (1992) (quoting *United States v. Weinstein*, 762 F.2d 1522, 1542 (11th Cir. 1985) (quoting *United States v. Blevins*, 555 F.2d

1326, 1240 (5ᵗʰ Cir. 1997))); *see also State v. Lee*, 189 Ariz. 608, 616 (1997).

¶12     When considering a motion for a mistrial based on prosecutorial misconduct, a trial court should first consider whether the prosecutor's statements called jurors' attention to matters the jury was not justified in considering to reach its verdict, and the court then considers the impact those statements had on the jury. *Lee*, 189 Ariz. at 616. "Jury argument that impugns the integrity or honesty of opposing counsel is … improper." *State v. Hughes*, 193 Ariz. 72, 86, 59 (1998). However, "[c]riticism of defense theories and tactics is a proper subject of closing argument." *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9ᵗʰ Cir. 1997).

¶13     Applying the foregoing principles to the challenged statements in this case, we conclude that the prosecutor's comments were not improper. *See State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) ("Excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon the evidence which has not previously been offered and placed before the jury."); *State v. Amaya-Ruiz*, 166 Ariz. 152, 171-72 (1990) (determining prosecutor's arguments that defense counsel "blind-sided witnesses," created a "smoke screen," and relied on "inuendo and inference" to support her "outrageous" argument was "not improper"). No misconduct occurred.

(Doc. 21-3 at 70-71.)

As pointed out by Respondents, Petitioner fails to argue that the court of appeals unreasonably applied United States Supreme Court precedent in rejecting her prosecutorial misconduct claim. (Doc. 1 at 30-32.) Petitioner instead refers to her state court briefing submitted in her direct appeal in which she cites state court case law. *Id.* This is insufficient to meet her burden of establishing, under 28 U.S.C. § 2254(d)(1), that the Arizona Court of Appeals' rejection of her prosecutorial misconduct claim was "contrary to, or involved an unreasonable application of, clearly established federal law."

The Supreme Court has made clear that *Darden v. Wainwright*, 477 U.S. 168 (1986), is the "clearly established Federal law" applicable to a prosecutor's alleged improper comments for purposes of AEDPA review. *Parker v. Matthews*, 132 S.Ct. 2148, 2153 (2012)). Under *Darden*, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'" *Id.* (quoting *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974))). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642). "The past decisions of th[e United States Supreme] Court demonstrate that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

"Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence." *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). Even when prosecutorial misconduct rises to the level of a due process violation, such misconduct provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

Petitioner has failed to explain how the Arizona Court of Appeals' analysis is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Richter*, 562 U.S. at 103. Petitioner argues she has "satisfied [the AEDPA] standard based upon the fact that more than two thirds of the then ten trial jurors in [P]etitioner's initial trial were 'leaning' in favor of returning a verdict of not guilty at the time [her first trial was] declared a mistrial." (Doc. 1 at 25. This Court disagrees. The inference that the prosecutor's remarks caused the jury in Petitioner's *second* trial to return a verdict of guilty is speculation.

This Court determines that Petitioner is not entitled to habeas relief on her claim in Ground One that the prosecutor committed misconduct during rebuttal closing argument.

**Ground Five:** Petitioner contends in Ground Five that the trial court committed reversible error when it denied her motion to dismiss based on the state's failure to preserve

a sample of her blood for her independent chemical analysis. (Doc. 1 at 70.) In rejecting

her claim on direct appeal, the court of appeals held:

> ¶30    Espinosa argues the trial court should have granted her motion to dismiss or, alternatively, to suppress the blood test evidence because the state violated its duty to preserve until trial the second sample of her blood so she could independently test it. "We defer to the superior court's factual findings, but we review its legal conclusions de novo." *State v. Storholm*, 210 Ariz. 199, 200, ¶ 7 (App. 2005).
>
> ¶31    To provide context, the record reveals the following[:] Espinosa did not request the blood sample from the state until August 12, 2016, almost five years after the DUI incident. In response to Espinosa's request, the state, not knowing the sample had been destroyed, immediately took steps to assist Espinosa in obtaining the sample from police, including forwarding to her a release authorization form. On the day Espinosa requested the second blood sample directly from police, the parties first learned that the sample no longer existed. The record indicates police destroyed the blood kit based on previous prosecutors inadvertently notifying them by way of a disposition notice in September 2014 (Disposition Notice) that a case filed in 2013 against Espinosa stemming from the same driving incident had been dismissed with prejudice.
>
> ¶32    Espinosa's argument that the state had a duty to preserve the second blood sample is unavailing. The phlebotomist advised Espinosa at the time of the blood draw of her right to have her "blood drawn and tested by an independent source[.]" Thus, Espinosa knew at the time of her arrest that she had an opportunity to obtain an independently drawn blood sample for testing. This opportunity is all that due process requires. *See* A.R.S. § 28-1388(C) (2012) ("[The [DUI suspect who is] tested shall be given a reasonable opportunity to arrange for any … qualified person of the person's own choosing to administer a test or tests in addition to any administered at the direction of a law enforcement officer."); *State v. Olcan*, 204 Ariz. 181, 184, ¶ 11 (App. 2003) ("[Section 28-1388(C)] grants a defendant a reasonable opportunity to arrange for a competent person to draw an independent sample of the defendant's blood and analyze that sample regardless whether the state has collected, analyzed, and preserved a portion of the defendant's blood."). Espinosa apparently chose not to seek an independent blood draw, and she points to nothing in the record indicating the state improperly interfered with her attempt, if any, to do so. Indeed, the phlebotomist recommended a nearby medical center where Espinosa could have her blood drawn and tested. *Cf. Oshrin v. Coulter*, 142 Ariz. 109, 111 (1984) (holding due process violation occurs when DUI suspect request at

the time police collect a breath sample that they keep an extra sample for independent testing, charges are subsequently dropped, and the extra breath sample is destroyed before charges are re-filed); *Amos v. Bowen*, 142 Ariz. 324, 326-29 (App. 1984) (affirming dismissal of DUI charges with prejudice where defendant requested an independent blood draw at time of arrest and, while transporting defendant to a medical center to obtain the sample, police officer investigated separate criminal matter for two hours).

¶33    Espinosa's reliance on case law in unhelpful. In *State v. Kemp*, 168 Ariz. 334, 1991), the [Arizona] supreme court held that if police preserve a sample of a DUI suspect's blood for independent testing until trial, they "need not advise the suspect of his right to obtain a portion of the same sample for independent testing, at least when the sample taken by law enforcement officers will still be available for testing by the defendant at the time of trial." *Id.* at 336-37. Here, Espinosa was advised of her right to obtain her own blood sample. Accordingly, *Kemp* is irrelevant. *State v. Velasco*, 165 Ariz. 480 (1990), and *State v. Sanchez*, 192 Ariz. 454 (App. 1998), are also in applicable. Those cases addressed the state's former obligations regarding preservation of DUI suspects' *breath* samples. *Velasco*, 165 Ariz. at 488; *Sanchez*, 192 Ariz. at 481. Moreover, due process does not require law enforcement to provide DUI suspects their own breath samples for independent testing. *Storholm*, 210 Ariz. at 200, ¶ 8.

¶34    Because Espinosa had an unfettered opportunity to obtain an independent blood sample for testing, the state did not violate her due process rights by inadvertently destroying the second blood sample. The trial court, therefore, did not err by denying Espinosa's motion. *See* A.R.S. § 28-1388(C) ("The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.").

(Doc. 21-3 at 77-78.)

Petitioner does not contest the court of appeals' recitation of the facts. Rather, she argues the court of appeals' analysis "conflicts with numerous controlling Arizona appellate court cases" and with *Arizona v. Youngblood,* 488 U.S. 51 (1988). (Doc. 1 at 70–73.) The "numerous controlling Arizona appellate court cases" that Petitioner refers to are the same cases that the court of appeals distinguished in its decision, *Velasco* and *Kemp*. *See* Doc. 1 at 71-73. In her Petition, Petitioner merely quotes language from her opening brief submitted in her direct appeal. She fails to explain how the court of appeals' decision

is contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

As pointed out by Respondents, "the police do not have a constitutional duty to perform any particular tests." *Youngblood*, 488 U.S. at 59.  In order for a state to have a constitutional duty to preserve evidence, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed[] and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 488–89 (1984). Neither *Youngblood* nor *Trombetta* impose a duty to obtain potentially exculpatory evidence. *See, e.g., Miller v. Vasquez*, 868 F.2d 1116, 1119–20 (9th Cir. 1989) ("*Trombetta* did not impose a duty to *obtain* evidence" and "*Youngblood* does not directly apply because it dealt with failure to preserve rather than failure to gather potentially exculpatory evidence"). (Emphasis in original.) Accordingly, this Court determines that the Arizona Court of Appeals did not unreasonably apply *Youngblood* or *Trombetta* (which is the applicable United States Supreme Court precedent) when it held that Petitioner's due process rights were satisfied because she had an "unfettered opportunity to obtain an independent blood sample for testing[.]" *See* Doc. 21-3 at 78.

Petitioner is not entitled to habeas relief on her claim in Ground Five in the absence of any clearly established federal law imposing a duty on the state to collect potentially exculpatory evidence. *See Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (a state court's decision on an issue cannot be contrary to or an unreasonable application of federal law when there is no clearly established federal law directly addressing that issue); *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)) ("When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue.").

Assuming, *arguendo*, the law was clearly established (and this Court determines that Petitioner has not established such), Petitioner's claim in Ground Five still lacks merit. A petitioner must demonstrate that the failure to collect the evidence was motivated by bad faith and the evidence was material. *See, e.g., Miller*, 868 F.2d at 1120 ("Since, in the

absence of bad faith, the police's failure to *preserve* evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to *collect* such evidence violate due process."). (Emphasis in original.) Here, Petitioner cannot establish the requisite bad faith. For instance, the court of appeals determined that there was no support in the record for Petitioner's suggestion that the state somehow interfered with her attempt, "if any," to obtain an independent blood draw and that the state's destruction of the second blood sample was inadvertent. *See* Doc. 21-3 at 77 ("Espinosa apparently chose not to seek an independent blood draw, and she points to nothing in the record indicating the state improperly interfered with her attempt, if any, to do so."); *Id.* at 78 ("…the state did not violate her due process rights by inadvertently destroying her second blood sample.")

In sum, this Court determines that Petitioner is not entitled to habeas relief on the merits of her claim alleged in Ground Five.

## RECOMMENDATION

Ground Four of the Petition is precluded from habeas review. The claims alleged in Ground One (except the claim alleging prosecutor misconduct during rebuttal closing argument) and part two of Ground Three are procedurally defaulted without excuse and barred from habeas review. The claim in Ground One alleging that the prosecutor engaged in misconduct during rebuttal closing argument and the claim alleged in Ground Five are without merit. Accordingly, the Magistrate Judge recommends that the district court, after its independent review, **DISMISS** the Petition for Writ of Habeas Corpus.

…

…

…

…

…

…

…

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **2:18-cv-02479-RM.**

Dated this 6th day of March, 2020.

Honorable D. Thomas Ferraro
United States Magistrate Judge